1

1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
2
     - - - - - - - - - - - - - - - X
3
     UNITED STATES OF AMERICA        :     CR-08-640
4
         -against-                         U.S. Courthouse
5                                    :     Brooklyn, New York
     ROBERT SIMELS, SHAHEED KHAN
6    & ARIENNE IRVING
                 DEFENDANTS,         :
7                                          November 14, 2008
     - - - - - - - - - - - - - - - X       10:00 o'clock a.m.
8
            TRANSCRIPT OF STATUS CONFERENCE
9           BEFORE THE HONORABLE JOHN GLEESON
            UNITED STATES DISTRICT JUDGE
10
     APPEARANCES:
11
     For the Government:        BENTON J. CAMPBELL
12                              United States Attorney
                                147 Pierrepont Street
13                              Brooklyn, New York  11201
                                BY:  STEVEN L. D'ALESSANDRO
14                                   PAUL SCHOEMAN
                                Assistants U.S. Attorney
15

16   For the Defendant:        GERALD L. SHARGEL, ESQ.
                               HENRY MAZUREK, ESQ.
17                             For Deft Simels

18                             STEVEN L. BROUNSTEIN, ESQ.
                               For Deft Khan
19
                               JAVIER A. SOLANO, ESQ.
20                             For Deft Irving

21

22   Court Reporter:           SHELDON SILVERMAN
                               Official Court Reporter
23                             225 Cadman Plaza East
                               Brooklyn, New York 11201
24                             (718) 613-2537

25   Proceedings recorded by mechanical stenography. Transcript
     Produced By Computer Aided Transcription.

2

1          THE CLERK:   United States versus Simels, et al.

2          (Appearances noted.)

3          THE COURT:   Thank you for these letters in

4     anticipation of today's appearance.  It's very helpful.  I

5     guess we need to set a schedule.

6          There are a couple of issues that I would like to

7     address and anything else you want to bring up, you're welcome

8     to.

9          MR. BROWNSTEIN:   There's one issue regarding

10    Mr. Khan.

11         MR. SHARGEL:   The broader issue, two issues if I

12    may?

13         THE COURT:   Yes.

14         MR. SHARGEL:   The first, I think there's reference

15    to it in our letter, but the first deals with this tension

16    that exists between Mr. Khan asserting his lawyer-client

17    privilege through counsel and our need to look at privileged

18    documents, all documents including privileged documents

19    accordingly to defend my client.  There seems to be somewhat

20    of a stalemate because we have not, even though discovery has

21    been provided, we have not looked at the discovery because we

22    are prohibited from looking at privileged materials.

23    Mr. Simels has looked at the discovery but we have not.

24         This is a matter that I think has to be dealt with

25    immediately.  We are willing to make a motion, file that

3

1    motion within ten days of today, perhaps even seven days.   Our

2    motion is not complicated.   Then I would imagine not only

3    would the government weigh in, but there would be a response

4    by Mr. Khan's counsel.   That would need to be resolved in the

5    first instance.   That's number one.

6              THE COURT:    Makes sense to me.   The question I

7    have, based on that part of your letter, what relief are you

8    going to be seeking on that motion?

9              MR. SHARGEL:    Both disciplinary rules and the cases

10   support the proposition an attorney, at least our position, an

11   attorney is permitted to breach the lawyer-client privilege to

12   the extent necessary to defend him or herself.

13             THE COURT:    I understand.

14             MR. SHARGEL:    That's point one.

15             Point two, we have raised an issue with the

16   government that goes to the basic procedure in connection with

17   the use of -- they call it the privilege team.   We call it the

18   taint team, but by whatever description.

19             THE COURT:    Using the same process for the T3s.

20   Any objection to that?

21             MR. SCHOEMAN:    We can work it out.   The

22   government's concern, we would move quickly, try to move

23   quickly.

24             THE COURT:    We'll talk about the dates for this.

25   It makes all the sense in the world to me.   They've got an

4

1    opportunity to resolve their disagreements, in this instance

2    with the T3s, have opportunity to be heard on that.   That

3    makes sense.   You want to be heard, I'll listen.

4              MR. D'ALESSANDRO:   We've agreed to it.

5              THE COURT:   What else?

6              MR. SHARGEL:   That's it.   This may become part of a

7    later motion.   Apparently, there was a footnote dropped on the

8    last page of the government's letter that apparently the wall

9    has decided there are certain parts of the T3 they could look

10   at, listen to a portion of that if I'm not mistaken.   That

11   doesn't need to be resolved today.   I want to call that to

12   your attention.

13             THE COURT:   What significance of what you said

14   eludes me.   What was it you're saying?

15             MR. SHARGEL:   Each though we have this procedure in

16   place, at least as of this moment to have defense counsel

17   review the materials before they're turned over to the trial

18   team, that apparently --

19             THE COURT:   I've got it.   That's water under the

20   bridge.   If you're going to seek relief, you tell me.

21             MR. SHARGEL:   Yes, sir.

22             THE COURT:   Going forward, we'll have this other

23   process?

24             MR. SHARGEL:   Absolutely.

25             MR. BROWNSTEIN:   The difficulty I'm having,

1  Mr. Khan is having, the information, work product of and work

2  Mr. Simels has done on behalf of Mr. Khan in the underlying

3  matter, the matter pending before Judge Irizarry, a lot of

4  that information, it's our position that information is

5  privileged.  We're not willing to share it with anybody.  It's

6  not just with Mr. Shargel and his associate.  Our concern is

7  that exposing some of that information, not just if its

8  incriminating but exculpatory, comes before a jury or played

9  out --

10         THE COURT:    Incriminating, exculpatory in what

11  setting?

12         MR. BROWNSTEIN:    For the other case.

13         THE COURT:    Your case, in Mr. Khan's case before

14  Judge Irizarry?

15         MR. BROWNSTEIN:    That's correct.  We are concerned

16  exposing that information now and then let's say taking it a

17  step further, if I were defending Mr. Simels, I would want to

18  present to the jury, in fact how diligent he was in his

19  defense of Mr. Khan and how hard he had worked for Mr. Khan.

20  I would probably expose some of the things I did on behalf of

21  Mr. Khan in defending him.  It kind of lays out a road map of

22  his defense in the other case, in the case before

23  Judge Irizarry.  That presents us with a very difficult

24  position.

25         My position, at least at this point, I think things

1    should be held in abeyance until that matter is resolved,

2    until we know where it's going.  He's not going to waive any

3    privilege at this point in time.  I'm not going to say it's

4    not privilege, can be exposed.  Mr. Shargel can then go

5    forward.  I don't see doing that, Judge.  I don't see a basis

6    for doing it.

7            MR. SHARGEL:    Could we have the opportunity to put

8    the basis on paper?

9            THE COURT:    I get it.  He has important interest in

10   this other case.  I don't know how this gets resolved.  That's

11   why we're going to have motion practice.  We'll set a schedule

12   now.  You're free to oppose the relief sought by Mr. Shargel,

13   to suggest your own relief.  If you're going to make a motion

14   to hold the case in abeyance, brief it, probably argue it and

15   I'll rule on it.  I'm not blind to the fact this is a real

16   problem.  I don't know the answer yet.  I'll hear argument.

17           MR. SOLANO:    I think it's obvious since my client,

18   Ms. Irving, is in a similar situation factually as Mr. Simels,

19   we'll probably be joining with Mr. Shargel in his motion.  I

20   wanted that for the record.

21           THE COURT:    Very well.

22           It sounds like the discovery process is going to

23   take some time.  I'm curious in terms of scheduling to hear

24   from you how much time you think it ought to take or will

25   take.  There's computer files that you want.  Do you want me

1   to appoint David Wikstrom or you're agreeing for him to be a

2   special master.

3               MR. D'ALESSANDRO:   We ask for the appointment based

4   on the parties' discussions who would be someone that is

5   amenable to the appointment and there's no objection by either

6   side.

7               THE COURT:   When I appoint, that means you guys are

8   still paying, splitting it?

9               MR. SHARGEL:   It would seem to me the split would

10  include --  Mr. Khan is represented by CJA counsel.  It would

11  seem to me CJA funds would take care of at least a portion of

12  what Mr. Simels has to pay.  In other words, why should

13  Mr. Simels bear the burden of that expense for every

14  defendant?

15              THE COURT:   I don't know.  You can make an

16  application.  I'm sure it's not an issue as to which the

17  government --

18              MR. D'ALESSANDRO:   CJA point.  We may have to tee

19  up sooner.  The appointment of Mr. Brounstein was out of

20  necessity for confluence.  We couldn't 475 Mr. Khan for the

21  day that Ms. Irving and Mr. Simels were arrested.  It was out

22  of the interest of justice he had counsel.

23              We contacted Mr. White who is counsel in the drug

24  case before Judge Irizarry.  His position, he's not entering a

25  notice of appearance in this case.  What we have is

1  Mr. Brounstein's continued appointment pending Mr. Khan

2  getting new counsel.  I don't know what the status is of him

3  getting new counsel.

4           THE COURT:   Have you filled out an affidavit?  Is

5  he eligible?

6           MR. BROWNSTEIN:   I'm not sure.  Let me give you

7  what the status is in terms of other counsel.

8           One of the difficulties Mr. Khan has, he is seeking

9  new counsel.  One of the difficulties he's having as a direct

10 result of this arrest, this case, Mr. Khan was then placed in

11 the Special Housing Unit in the MCC.  His ability to contact

12 other counsel, to deal with his friends and family in

13 retaining other counsel has been inhibited by that.  That's

14 slowing down the process as well.

15          THE COURT:   Does that mean he's retaining other

16 counsel?

17          MR. BROWNSTEIN:   He's trying to.

18          THE COURT:   The intention is to substitute retained

19 counsel for you?

20          MR. BROWNSTEIN:   Yes, that is his intention.  He

21 can't do that or move forward in doing that until --  he's

22 under extreme --  excuse me, let me speak to him for a second,

23 Judge.

24          (Pause.)

25          MR. BROUNSTEIN:   His positions is at least he

1    intends to retain counsel in the matter before Judge Irizarry.

2    I'm making an assumption, probably a pretty good assumption,

3    whatever counsel jumps into that case will probably jump into

4    this case.  I'm not guaranteeing but that's my sense of it.

5              His ability to do that, I think Mr. White addressed

6    that in a letter to Judge Irizarry as well.  He hasn't

7    retained anybody yet because his ability to do so, besides the

8    fact he's incarcerated, it makes it much more difficult in the

9    Special Housing Unit.  That's also a problem we're having.

10             THE COURT:   You're going to have to attend to that

11   quickly.

12             MR. BROWNSTEIN:   Maybe you could help us.  What I'm

13   asking you to do is to maybe contact the MCC.

14             THE COURT:   Okay.

15             MR. BROWNSTEIN:   It's to contact the MCC.

16             THE COURT:   I don't mean to make light of it.

17             How infrequently is he allowed to use the phone,

18   have visits?

19             What's the issue?

20             MR. BROWNSTEIN:   One visit a week from his family,

21   one call every 30 days.  One phone call.  That's the problem.

22             THE COURT:   That's a problem that needs to be

23   addressed.  There are some issues that we really need to

24   address quickly.  One certainly is the extent to which counsel

25   of Mr. Simels in this case can look at the discovery.  I'll be

1   patient with you.   At the same time, I'm going to require that
2   we keep Mr. Brounstein in place -- he's a very able lawyer --
3   for the time being.   We'll place in suspension this whole
4   issue about eligibility for appointed counsel because I want
5   this case to proceed as well as it can in the short term but
6   sooner rather than later.
7           Let's talk now about how we can accommodate your
8   need to speak to people.   What can be done in this regard?
9   Can we talk to the MCC?
10          MR. D'ALESSANDRO:   I've placed a call to legal
11  counsel at the MCC.   I'm trying to get -- I want to know
12  exactly how to send the disks to the defendant so he has the
13  opportunity to inspect the evidence.
14          While I'm speaking to counsel, I'll raise the
15  concerns of the court to assist.
16          THE COURT:   Would you convey my strong
17  encouragement they figure out a way to pull him out so he can
18  make these arrangements and tell them I'll send them the CJA
19  bill if it takes more than a week or two?
20          MR. D'ALESSANDRO:   I will.
21          So there's context, I'm sure everyone is aware,
22  Mr. White is retained counsel on the underlying case.   I'm
23  sure he has an interest in making sure cocounsel appears.   His
24  family, obviously, understands the interest of it.   He was
25  arrested back in mid-September.   It's not that this is

1  something new that is "but for" his placement in the SHU is

2  not getting any attention.  In spite of that, I'll raise the

3  issues with legal counsel.

4        THE COURT:  Please do.  I'm going to return to this

5  issue about eligibility for appointed counsel.  If there's

6  limited funds -- if you're able to retain a lawyer for this

7  case, you're not entitled to a court appointed lawyer.

8  Mr. Brounstein is going to stay in place but only temporarily.

9        How did we get off on that tangent?

10        MR. D'ALESSANDRO:   Payment of --

11        THE COURT:   Mr. Wikstrom, any reason not to appoint

12  him as special master?

13        MR. SHARGEL:   No.

14        THE COURT:   I appoint him as special master.

15        How long is it going to take him to extract?  He's

16  just extracting from the computer files Khan case-related

17  material.  Then it goes to the wall AUSA.  I don't know how

18  extensive a process that is.  Can you educate me?

19        MR. D'ALESSANDRO:   What would happen at this point

20  with the forensic tool kit, soft carry, do a key word search

21  to extract data, also using any root directory system.

22  There's a file folder marked "Khan."  All that material would

23  go to the special master as opposed to the entire computer

24  where he would have to look through actual data that's there,

25  data that's been erased, things that are half-finished.  I

1   don't know how many computers were taken.  I don't know what

2   the volume of data is going to be.  It's very hard for me to

3   give the court any real guess as to how long it's going to

4   take.  Our intention is by using the DEA's forensic ability is

5   to winnow down to a manageable amount what the data is.  From

6   there he's going to have to look at it.

7           THE COURT:   Who does know this?

8           MR. MAZUREK:   Also list him with Mr. Shargel.  This

9   is not information not known.  It is the information of a

10  number of pieces of equipment that were taken as part of the

11  search warrant inventory, a file server and four hard drives.

12  Most of the materials are just going to be on the file server,

13  duplicated on the hard drives, and two laptop computers. It's

14  a fair amount.

15          The one issue that has not been resolved, that is

16  all the equipment that was taken have not yet been cloned by

17  the government.  We're still awaiting that, to receive that so

18  at least from our perspective, for one, the cloned computers

19  would be helpful to Mr. Simels on his on going practice.  He's

20  without all those computer files.  We've requested it from the

21  wall AUSA team.  We're still hearing the agents have not had

22  the opportunity to do that.  We're asking that that process be

23  as expedited as possible, considering there are other clients

24  Mr. Simels' law firm represents that do not have access to

25  certain files.

1          With respect to the timing, as I said, six different

2    machines.   There's a considerable amount of material on that.

3    We don't expect a lot of that material is Khan-related, should

4    be something that's easy to identify by the special master in

5    order to make that separation of material.

6          THE COURT:   Can you give me a hint?  Is it like a

7    week, a day, a month?

8          MR. MAZUREK:   I would say a month, 30 days.

9          THE COURT:   There are two meetings that were

10   subject to Title III surveillance?

11         MR. D'ALESSANDRO:   Yes.

12         THE COURT:   What's the running time?

13         MR. D'ALESSANDRO:   About two hours --  about four

14   hours total, I believe, on the outside.

15         THE COURT:   Is there any reason not to also set a

16   schedule today for these other motions mentioned in

17   Mr. Mazurek's letter?

18         MR. BROWNSTEIN:   I have one, a personal reason.

19   I'm scheduled to start trial, going to jury selection process

20   on Monday in front of Judge Weinstein.  I believe we're

21   beginning testimony December 1st, but selecting the jury,

22   starting jury selection Monday.  I'm sort of, in terms, tied

23   up for the next approximately 30 days.  Then I'm ready,

24   whatever.  That's the only reason I would ask the court to

25   hold that in abeyance.

14

1          THE COURT:     That might affect this motion about

2     the -- we'll come back to that.  I'm talking about the motion

3     to dismiss, severance motion, motion to suppress, audibility.

4     I think we'll get those on track today, although is the

5     government going to oppose the severance motion?

6          MR. SCHOEMAN:     Yes.

7          MR. D'ALESSANDRO:     From our perspective --

8          THE COURT:     From the audibility, that wasn't the

9     thing that struck me as requiring a motion, I thought.  If I'm

10    wrong about this, you'll change my mind, I'm sure, that if on

11    the tapes -- I mean if nothing can be heard on tapes, that's

12    one thing.  If it's a dispute regarding what's said on the

13    tapes, my understanding --  I haven't visited this in a few

14    years --  my understanding the way the circuit says we should

15    proceed, you each prepare, agree on what everyone in common

16    believes was said.  Then you prepare separate transcripts

17    reflecting the government's version, the defense version.

18         MR. SHARGEL:     With all due respect, that's

19    partially right.  The threshold question is audibility.  We're

20    at a little bit of a loss here.  We haven't listened to the

21    tapes.  I'm going on the basis of the government's claim and

22    also spoken to my client.  My client has listened to the

23    tapes.  I don't have firsthand knowledge of this, but from the

24    government and from my client, there's a question, a threshold

25    question of audibility.

1          As I understand the Second Circuit law, is that if

2   it's so inaudible it would deprive anything heard of

3   context --  am I making that clear?

4          THE COURT:    That's what I was alluding to.

5          MR. SHARGEL:    This is not a dispute what's said.  I

6   think we've done that with side-by-side transcripts.  We're

7   not there yet.  We don't know --

8          THE COURT:    That's not a motion you would make now

9   anyway?

10          MR. SHARGEL:    Sorry.

11          THE COURT:    A motion.

12          MR. SHARGEL:    A motion?

13          THE COURT:    You're reserving the right to make it

14   later.

15          MR. SHARGEL:    When there comes a time, hopefully

16   not if, but when there comes a time when we can listen and

17   make a good faith judgment the tape is so inaudible that it

18   should be inadmissible in all events, that's something that

19   your Honor would have to think about as a threshold issue.

20          THE COURT:    The others we deal with, the dueling

21   transcripts, in terms of the motions that can be reasonably

22   scheduled now, that's obviously not one of them, right?

23          MR. SHARGEL:    That's probably right.

24          THE COURT:    Due process motion to dismiss the

25   indictment, motion to sever and your motions to suppress,

1   certainly the motions to suppress the search and the T3, no

2   reason not to get that going.

3           MR. SHARGEL:   Correct.

4           MR. D'ALESSANDRO:   I don't know, since we all

5   agree, a threshold issue, I think it's been phrased, this

6   conflict of privilege which the defendants are suffering from

7   and getting through the discovery, respectfully, from the

8   government's perspective, we would prefer holding motion

9   practice in abeyance, getting those resolved, focusing our

10  attention on getting all the discovery done so we all know

11  what the landscape of what's been collected to date.   From

12  that point, we can then divert our attention on to` the

13  motions which need to be made and responded to.

14          MR. SHARGEL:   I believe that's right; I agree.

15  I'll tell you why.   There may be things we learn once we can

16  see the material that we can't see now.   If and when that

17  comes about, that would be part of the motion practice as

18  you've just described it, motions to suppress, particularly

19  the due process motion, the first motion.   I think we should

20  do this in two stages, actually, perhaps, three stages.   It's

21  not three stages.

22          Here's what I'm proposing.   I'm proposing in a very

23  short time --   I don't mean to make it more elaborate than it

24  should be.   In the short term, I said seven days before,

25  perhaps ten days, I'm happy to accommodate Mr. Brounstein's

1    schedule.   Actually, I'm starting a trial Monday as well.

2    Mr. Mazurek is available to do this.   In a very short time,

3    ten days, we should file the motion stating our position and

4    the case law that supports it in connection with what we'll

5    call the tension issue.   We all know what we're talking about,

6    dueling interests of assertion of privilege versus need to

7    break the privilege.   So, we could at least get that going.

8    Mr. Brounstein will answer that motion in accordance with any

9    schedule that you and he agree to and at the same time the

10   discovery would be proceeding apace with the special master,

11   Mr. Wikstrom, working with that material.   I think it's a

12   30-day task.   We will also work with the taint team in

13   connection with other matters in order to complete the

14   discovery.

15            Then when that's all done --

16            THE COURT:    Start the second stage.

17            MR. SHARGEL:    Second or third stage, whichever way.

18   Then we'll schedule the substantive motion.

19            MR. BROWNSTEIN:    The difficulty I have, putting

20   aside my trial, is that I think if Mr. Khan does retain

21   counsel, which I said is his intention, I think his retained

22   counsel should be the party that responds to that very very

23   important motion that Mr. Shargel is going to make, which

24   we're going to obviously oppose his request.   My suggestion to

25   the court is what the government suggested; put it over for

18

1    approximately 30 days.

2          THE COURT:   Why shouldn't I regard Mr. White as

3    available?  Aren't the same interests involved in the case

4    before Judge Irizarry?  Isn't he going to brief this?

5          MR. BROWNSTEIN:   I think Mr. White --

6          MR. SHARGEL:   He's present in court.

7          THE COURT:  Strikes me that you're here temporarily

8    and we're going to hold off a motion schedule for a month for

9    you?  No offense.

10         MR. BROWNSTEIN:   Not for me.  It's more for

11   Mr. Khan.

12         THE COURT:   It's for Mr. Khan, but he's represented

13   by counsel in the case in which you'll be prejudiced, you say.

14         MR. BROWNSTEIN:   I'm not sure what the full status

15   of his representation by Mr. White is.  Mr. White, my

16   understanding, was sort of retained to represent him as sort

17   of, if I'm correct, an advisor, not necessarily as lead

18   counsel.  Mr. Simels was lead counsel.  Mr. Simels was the

19   individual who is really guiding the defense.

20         What Mr. Khan is seeking to do, maybe Mr. White will

21   stick around, I'm not sure, but to retain lead counsel to

22   guide that defense.  Mr. White is not going to be the

23   individual trying that case and running that.  Mr. White is in

24   the courtroom.  If the court wanted to make inquiry, he could

25   step up.

19

1          THE COURT:    He's welcome to step up.

2          Good morning, Mr. White.  We've been talking about

3     you.  Everyone knows you're the renowned legal scholar, brief

4     writer.  Maybe I'm incorrectly assuming this need --  your

5     counsel of record in U.S. versus Khan that exists before

6     Judge Irizarry?

7          MR. WHITE:    I am.

8          THE COURT:    We need to resolve in this case this

9     tension.  You've been sitting here, knowing what we're talking

10    about, this tension between the obligation on the part of

11    Mr. Simels' counsel in this case to view the discovery, to

12    represent him on the one hand and the fact that discovery

13    contains privileged material as to which Mr. Khan is not

14    waiving his attorney-client privilege.  I think it's right

15    that's kind of a threshold issue I need to address quickly.

16         Your client, I'm told, is going to retain separate

17    counsel; that is, counsel other than Mr. Brounstein who is

18    appointed under the Criminal Justice Act in this case.  Sounds

19    like counsel in the other case, additional counsel to

20    substitute for Mr. Simels in the other case may also be

21    something to think about.  I want to resolve this.

22         My assumption, rightly or wrongly, is even if

23    Mr. Brounstein is not available, you might be to weigh in on

24    behalf of Mr. Khan's interest.

25         MR. WHITE:    There is a conference before

SS      OCR      CM      CRR      CSR

1    Judge Irizarry on the other case at 4:00 o'clock today.   After

2    this appearance, I'm going to meet with Mr. Khan downstairs

3    and discuss the very question of his legal representation.

4           I wrote to Judge Irizarry two weeks ago asking her

5    to address today the question of his legal representation,

6    including his representation by me, because whether and when

7    he's in a position to retain counsel or to continue me as his

8    retained counsel, is in doubt, your Honor.

9           I've basically been treading water ever since the

10   Simels case arose what my role in this case is going to be --

11   not this case, his other case.

12          As luck would have it, I was going to make an

13   application to be relieved just about that time but in light

14   of the developments, I held off because I am kind of the only

15   link with Mr. Khan on that case.   I've been appearing but

16   nothing has been happening on that other case.   While Mr. Khan

17   has explored retaining other counsel, it's a very foggy

18   situation.

19          THE COURT:   Anything scheduled in that case but for

20   the appearance?

21          MR. WHITE:   No, the trial is adjourned without

22   date.   It was supposed to start this Monday, as a matter of

23   fact.   Originally, it's just been -- that case, been put off

24   for status conference.   Nothing else is in the works.

25          THE COURT:   Sounds like I shouldn't be relying too

1  much on your assistance in this case in which you haven't even

2  entered a notice of appearance.

3          MR. WHITE:    In this case, that's correct.

4          THE COURT:   Thank you.

5          MR. WHITE:    That explains a little bit why I didn't

6  enter a notice of appearance in this case, why I think it's

7  good to make a note of the fact that there might be an

8  appearance of conflict.  I was cocounsel with Mr. Simels in

9  the other case, advocate witness rule issue if I needed to be

10 a witness on one side or the other in this case.  It would

11 have been very awkward in that case to come in here.

12         THE COURT:   Understood.

13         MR. WHITE:    Thank you.

14         THE COURT:   You're it.  When are you on trial?

15         MR. BROWNSTEIN:   We start jury selection, begins

16 the 17th, I believe start taking testimony December 1st.  I

17 think the trial is going to last no longer than two weeks.

18         THE COURT:   You have plenty of time.  You're not

19 starting until December 1st?

20         MR. BROWNSTEIN:   There's 80 tapes.

21         THE COURT:   Let's get this motion that's coming,

22 that you allude to the Sattar case, that motion, let's get it

23 filed.

24          How about you file, Mr. Shargel, Mr. Mazurek, on

25 November 25th?

1          MR. MAZUREK:    That's fine, yes.

2          THE COURT:    Any opposition papers to that motion

3    will be filed by the following Friday, December 5th.  Those

4    opposition papers, you don't need to oppose his motion and

5    then make your own.  If your opposition papers include an

6    alternative course of relief, you said you may want to seek to

7    hold the case in abeyance, you could do that either on the

8    25th, which is the filing date of the initial motion or in

9    your opposition to it, Mr. Brounstein, since you're on trial.

10   Any government response to the submission or submissions on

11   the 25th will be on December 5th.  Everyone will have an

12   opportunity to make a last hurrah submission on December 10th.

13          Why don't we reconvene on that issue on

14   December 12th?

15          MR. SHARGEL:    Could we do it at an earlier time or

16   later time?  I'm on trial with Judge Block.  He's working

17   Fridays.

18          THE COURT:    What's convenient for you?

19          MR. SHARGEL:    4:30 is fine.

20          THE COURT:    Is that okay with the government?

21          MR. D'ALESSANDRO:    Yes.

22          THE COURT:    Okay with counsel for Ms. Irving?

23          MR. SOLANO:    Yes.

24          THE COURT:    We have that schedule for that motion.

25          MR. SHARGEL:    Now that you set the schedule, the

1    only thing I want to say, if it helps Mr. Brounstein, if he's

2    starting a trial December 1st, starting testimony

3    December 1st, we're willing to file our motion more quickly so

4    that his response can get done before December 1st.

5             THE COURT:   You want to file it by next Friday?

6             MR. SHARGEL:   Yes.

7             MR. BROWNSTEIN:   I appreciate that.   Thank you.

8             THE COURT:   I guess it doesn't sound like anybody

9    wants me to schedule these other motions?

10            MR. SHARGEL:   That's correct.

11            MR. SOLANO:   That's correct, your Honor.

12            THE COURT:   I guess I won't do that then.

13            Let's set a date we can plan around, five or six

14   weeks out from the first or second week of the new year to

15   reconvene on these discovery issues and to set the schedule?

16   What makes sense, Mr. D'Alessandro, in the government's view?

17            MR. SHARGEL:   We'll be here on the 12th.

18            MR. D'ALESSANDRO:   That's only going to address the

19   issue of the tension.   Assuming you get an order, you'll then

20   have the opportunity to inspect the discovery.

21            MR. SHARGEL:   Good point.

22            THE COURT:   Why don't we come back in that first

23   full week of January for a status conference?

24            MR. SHARGEL:   That's fine.

25            THE CLERK:   Friday, January 9th at 10:00 a.m.

24

1          MR. BROWNSTEIN:   A little later?

2          MR. SHARGEL:   Could we do 4:30 again?  I may still

3   be on trial.

4          MR. BROWNSTEIN:   That's fine.

5          THE COURT:   Is that okay with everybody, that date?

6          MR. SCHOEMAN:   Yes, Judge.

7          THE COURT:   You had something you wanted to raise

8   about Mr. Khan?

9          MR. BROWNSTEIN:   In terms of his situation, his

10  incarceration.

11         THE COURT:   Anything else we should be addressing

12  today?

13         MR. SHARGEL:   No, sir.

14         THE COURT:   Anything from the government?

15         MR. SCHOEMAN:   We were discussing the speedy trial.

16         THE COURT:   Boy, this is a complex case if I ever

17  saw one.  Speak now if you oppose its designation as such.

18  I'm going to exclude the time between now and our next

19  appearance.

20         MR. SHARGEL:   We have no objection to that finding.

21         THE COURT:   On that ground.

22         MR. D'ALESSANDRO:   For the record, you previously

23  designated the case complex at the last status conference.

24         THE COURT:   Complex-squared.

25

SS      OCR      CM      CRR      CSR