UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,

    -against-                        08 CR 640 (S-1) (JG)

ROBERT SIMELS and
ARIENNE IRGING,

           Defendants.

- - - - - - - - - - - - - - - - X


GOVERNMENT'S MEMORANDUM OF LAW IN
<u>SUPPORT OF ITS MOTION FOR AN ANONYMOUS JURY</u>


                                         BENTON J. CAMPBELL
                                         United States Attorney
                                         271 Cadman Plaza East
                                         Brooklyn, New York 11201


MORRIS J. FODEMAN
STEVEN D'ALESSANDRO
Assistant U.S. Attorneys
    (Of Counsel)

I.    <u>PRELIMINARY STATEMENT</u>

      The government submits this memorandum of law in support of its motion for an anonymous jury.  Specifically, the government requests that the names, addresses and workplaces of members of both the <u>venire</u> and <u>petit</u> juries not be revealed. Also, we ask that transportation be provided to the jurors to and from the courthouse for the duration of the trial and that the jurors eat lunch together each day so that they do not mingle in the courthouse with the public and any potential trial spectators.

      The defendants, both criminal defense attorneys, are charged with conspiring and attempting to obstruct justice by tampering with potential witnesses and attempting to bribe a witness in their then-client Shaheed Khan's criminal trial.  They are also charged with importing and possessing their client's illegal wiretapping equipment.  As set forth below, the defendants' demonstrated willingness and ability to interfere with the judicial process, exposure to significant prison sentences and disbarment and the resulting incentive to tamper with the jury, along with the likelihood that this case will receive media attention, compel the conclusion that an anonymous jury is necessary to protect the jury and the judicial process.

II.   <u>STATEMENT OF FACTS</u>

    A.   <u>Factual Background</u>

       As detailed more fully in the Affidavit in Support of Arrest Warrants that was filed in this matter (the "Arrest Affidavit," attached hereto as Exhibit A), the defendants, Robert Simels and Arienne Irving, together with their client, Shaheed Khan and other members of Khan's Guyanese para-military drug organization,[1] conspired and attempted to obstruct justice by tampering with potential witnesses in Khan's criminal trial (the "Khan drug case").  In furtherance of their plan, and over the course of several months, a variety of options were discussed with a confidential source ("CS"), a former member of Khan's organization.  Arrest Affidavit at ¶¶ 7, 9.  These options included counseling witnesses, including the CS himself, to commit perjury, <u>id</u>. at ¶ 11, paying witnesses to provide false affidavits and testimony, <u>id</u>. at ¶ 27, and committing acts of violence, including murder, against them or their family members, <u>id</u>. at ¶ 26.

       As detailed in Special Agent Cassandra Jackson's Affidavit in Support of the Government's T-III Application in connection with this case, ("Jackson T-III Affidavit," attached hereto as Exhibit B), in or about March 2008, prosecutors learned that defendant Simels had lied to prison officials in an attempt to meet with an individual, identified in the superseding

---

[1]   Khan's organization, known as the Phantom Squad, would murder, threaten, and intimidate others in Guyana at Khan's direction.

indictment as John Doe #2, whom Simels and Khan suspected would
be an important government witness in Khan's upcoming trial.
Specifically, on or about March 27, 2008, Simels went to the GEO
Group Private Correction Facility in Queens and asked to speak
with John Doe #2.  Consistent with institution policy, a
correction officer asked Simels whether Simels was John Doe #2's
attorney.  Although Simels did not represent John Doe #2, and, in
fact, never represented John Doe #2, Simels falsely claimed that
he did represent John Doe #2.  Based on Simels' lie, John Doe #2
was brought to the visitor's room for an attorney visit.  When
the door was opened, Simels introduced himself to John Doe #2.
When John Doe #2 responded by saying that he did not know Simels,
Simels replied, "Well, I know all about you, [John Doe #2]."

> B.   The Defendants' Arrest and Search
>      of Their Office

On September 10, 2008, members of the DEA arrested the
defendants and executed a search warrant at their Manhattan
offices.  During the search, law enforcement recovered
approximately a box and a half of records, as well as illegal
electronic eavesdropping equipment, approximately $2,500 in cash,
jewelry, a loaded firearm and computers.  See Affirmation in
Support of an Anonymous Jury, attached hereto as Exhibit C) at ¶
5.  A subsequent forensic search of these computers revealed,
among other things, numerous scanned letters written by Khan
since his incarceration at the MCC to members of the Phantom
Squad.  Id. at ¶ 6.  One such letter discovered on the
defendants' office computer, written by Khan to Phantom Squad

member Paul Rodriguez and dated May 13, 2007, discusses plans to tamper with a cooperating witness' family members in Guyana to convince the cooperating witness (identified as Jane Doe #2 in the superseding indictment) not to testify at Khan's trial.  <u>Id</u>. The letter reads in relevant part as follows:

> Please call "Dancing Man" and tell him to make sure he pays the $ on time every month. I am happy to hear he spoke to her parents & that they are making excuses for her, ask him if he can't **have them call her to talk to my lawyers** [emphasis added], and we can try to work out something.  Ask him to say [sic] in close contact with them and to keep bugging them, why can't she just come back home [to Guyana]? and avoid lying on the stand.  So its clear that her parents are still there. Find out who is close to [Jane Doe #2's] dad, see if we can find out who is his best friend.  Go see Mr. Mohamed from Mohamed's Enterprise on Lombard St. or Chetson they would definitely know him.  Or ask Brian Lall to find out who he does most of his business with, Paul please push this issue, it can really help.  You have to get someone to look him straight in the eyes and tell him that <u>NO</u> one will accept her attempt to testify against me, let them might [sic] as well sell everything and leave [Guyana] <u>NOW</u>! Paul you know if anyone of you were here [in the United States], I would have guaranteed she can't testify, I can't understand, offer her parents a big amount of money to persuade them, you never know Paul this is worth a try.  Ask Dancing Man to make the approach.

(Emphasis and punctuation errors in original except as indicated).

      C.   <u>The Charges</u>

On September 19, 2008, a grand jury sitting in the Eastern District of New York returned a single-count indictment against the defendants Simels, Khan and Irving, charging them

6

with a conspiracy to obstruct justice, in violation of 18 U.S.C. § 1512(k).  The original indictment is attached hereto Exhibit D).[2]

On April 24, 2009, a grand jury returned a superseding indictment against Simels and Irving charging them together in fourteen counts, with conspiring to obstruct justice, in violation of 18 U.S.C. § 1512(k) (Count One); attempting to tamper with nine potential witnesses, in violation of 18 U.S.C. § 1512(b) (Counts Two through Ten); bribing a witness, in violation of 18 U.S.C. § 201(c)(2) (Count Eleven); and importation and possession of illegal eavesdropping equipment, in violation of 18 U.S.C. § 2512(1)(a) and (b).  Simels alone is charged with making a false statement to officials at the GEO Group, in violation of 18 U.S.C. § 1001(a)(2).  The superseding indictment is attached hereto as Exhibit E.

---

[2]    On March 16, 2009, the defendant Shaheed Khan pled guilty to, among other crimes, the obstruction of justice offense charged in this matter.

III. <u>LEGAL STANDARD</u>

The Second Circuit has repeatedly upheld the use of anonymous juries "when genuinely called for and properly used." <u>United States v. Vario</u>, 943 F.2d 236, 239 (2d Cir. 1991).  The district court has broad discretion to determine whether to grant an anonymous jury.  <u>United States v. Aulicino</u>, 44 F.3d 1102, 1116 (2d Cir. 1995).  A decision to empanel an anonymous jury must "receive close judicial scrutiny and be evaluated in the light of reason, principle and common sense."  <u>United States v. Thomas</u>, 757 F. 2d 1359, 1363 (2d Cir. 1985).

In determining whether to grant an anonymous jury, a court should balance a defendant's interest in maintaining the presumption of innocence and conducting an effective voir dire against the need to protect the safety of the jurors as well as the public interest in obtaining a fair and reliable verdict. <u>See</u> <u>United States v. Amuso</u>, 21 F.3d 1251, 1264 (2d Cir. 1994).

A district court may consider several factors in determining the propriety of ordering an anonymous jury: (1) the seriousness of the charges; (2) the dangerousness of the defendant; (3) the defendant's ability to interfere with the jury, either himself or through a criminal organization of which he is a member; (4) previous attempts to interfere with the judicial process by the defendant or his associates; and (5) the amount of public and media attention expected during the trial that might expose the jurors to extraordinary pressures that might impair their ability to be fair. <u>Aulicino</u>, 44 F.2d at 1116;

United States v. Thai, 29 F.3d 785, 801 (2d Cir. 1994); Paccione, 949 F.2d at 1192-93; Vario, 943 F.2d at 240; United States v. Tutino, 883 F.2d 1125, 1132 (2d Cir. 1989); United States v. Persico, 832 F.2d 704, 717 (2d Cir. 1987) (anonymous jury appropriate based on history of violence, willingness to obstruct justice, and expected publicity).  See also United States v. Ferguson, 758 F.2d 843, 854 (2d Cir. 1985) (anonymous jury appropriate where evidence at trial would include discussions of killing government witnesses and where district court articulated need to protect jurors' "privacy from the press"); Thomas, 757 F.2d at 1365; United States v. Barnes, 604 F.2d 121, 141-42 (2d Cir. 1979) (anonymous jury appropriate due to extensive pretrial publicity and abundant allegations of dangerous and unscrupulous conduct).

The Second Circuit has stated that "courts must protect the integrity of criminal trials" against attempted jury tampering "whether it emanates from defendants' enemies, from their friends, or from neither."  United States v. Borelli, 336 F.2d 376, 392 (2d Cir. 1964).  Since Borelli, the Second Circuit has frequently acknowledged that anonymous juries often are necessary to protect the integrity of trials and ensure a fair and impartial jury.  See, e.g. Paccione, 949 F.2d at 1183; Vario, 943 F.2d at 236; Persico, 621 F. Supp. 842 (S.D.N.Y. 1985), aff'd, 832 F.2d at 705.  This is especially true where the jury needs protection from outside influence.  Vario, 943 F.2d at 240;

9

<u>Amuso</u>, 21 F.3d at 1264; <u>Thomas</u>, 757 F.2d at 1365; <u>Ferguson</u>, 758 F.2d at 854.

Moreover, in the Eastern District of New York, courts have consistently empaneled anonymous juries in appropriate cases.  <u>See, e.g.</u>, <u>United States v. Cacace</u>, 321 F.Supp.2d 532 (E.D.N.Y. 2004); <u>United States v. Bellomo</u>, 263 F.Supp.2d 557 (E.D.N.Y. 2003); <u>United States v. Tyrone King</u>, 00 CR 1108 (S-5) (RJD) (E.D.N.Y. 2002); <u>United States v. Amuso</u>, 90 CR 446 (E.D.N.Y. 1992), <u>aff'd</u>, 21 F.3d at 1264-65 (2d Cir. 1994); <u>United States v. Legrano</u>, 93 CR 1231 (ARR) (fully anonymous and partially sequestered jury); <u>United States v. Cutolo</u>, 93 CR 1230 (EHN) (same); <u>United States v. Bisaccia</u>, 93 CR 479 (ILG) (same); <u>United States v. Persico</u>, 92 CR 351 (CPS) (two trials) (same); <u>United States v. Orena</u>, 93 CR 1366 (ERK) (same); <u>United States v. Malpeso</u>, 93 CR 1365 (RJD) (same); <u>United States v. Orena</u>, 92 CR 351 (S-4)(JBW) (three trials)(same, except jury only partially anonymous); <u>United States v. Robert Price</u>, 03 CR 297 (NGG); <u>United States v. Dupree Harris</u>, 04 CR 203 (ARR); <u>United States v. Ronell Wilson</u>, 04 CR 1016 (NGG); <u>United States v. Dwayne Stone</u>, 05 CR 401 (ILG); <u>United States v. Kenneth McGriff</u>, 04 CR 966 (FB); <u>United States v. Gerard Price</u>, 05 CR 492 (NGG).

IV.  <u>THE JURY IN THIS CASE SHOULD BE ANONYMOUS</u>

Based on the legal standard set forth above, there are multiple reasons why the jury in this case should be anonymous. The defendants' co-conspirators' history of violent activity and the defendants' own efforts and ability to obstruct justice, in addition to the likely media coverage of the trial, all weigh in favor of an anonymous jury.

A.  <u>The Defendants' Co-Conspirators Are Dangerous</u>

This case concerns the defendants' representation of the leader an extremely violent, murderous international narcotics organization, Shaheed Khan.  As discussed above and in the attached affidavits, the defendants and their co-conspirator client, Khan, are alleged to have conspired to obstruct justice through a variety of means, including violence.  While there is no reason to believe that either of the defendants themselves are likely to commit acts violence, certainly their co-conspirators, all members of the Khan's narcotics organization, have a long history of violence.  Consequently, the evidence at trial "will depict a pattern of violence" by the defendants' accomplices that could "cause a juror to reasonably fear for his own safety." <u>Vario</u>, 943 F.2d at 241.  Accordingly, there is strong reason to believe that the jury needs protection in the instant case. Moreover, if a jury questionnaire is used, jurors who are not assured anonymity will likely feel that much more concerned about the information they provide to the Court and the parties. Anonymity will have the salutary effect of promoting candor in

responding to the questionnaires and in deliberating conscientiously.

B.   The Defendants Have Obstructed Justice Before
     and Will Not Hesitate to Do So Again

It is equally plain that there is "a demonstrable history or likelihood of obstruction of justice on the part of the defendant[s] or others acting on [their] behalf." Vario, 943 F.2d at 241.  As discussed above and in the attached Affidavits, the defendants have repeatedly attempted to obstruct justice and will not hesitate to do so again.  Concerted efforts at obstruction have included lying to gain entrance to a prison facility in order to pressure a cooperating witness not to testify, offering to pay a witness money, including $10,000 to one witness, to testify falsely on their client's behalf at trial, and plans to "eliminate" perceived government witnesses by either bribing or committing acts of violence against them or their family members.  As the Court in Vario observed, "an obstruction of justice charge . . . has always been a crucial factor in our decisions regarding anonymous juries." Id. at 240; see also, Thomas, 757 F.2d at 1365 (justifying anonymous jury because of "strong evidence of defendants' past attempts to interfere with the judicial process, and [because] defendants were alleged to be part of a group that possessed the means to harm jurors").

Moreover, the defendants have the opportunity and means necessary to interfere with the jury.  First, neither defendant is in custody, affording each ample opportunity to contact

12

jurors, either directly or through third parties.  Unlike
incarcerated defendants, Simels' and Irving's telephone calls,
mail, internet access and contact with others will go unmonitored
during the course fo the trial, giving them each unimpeded
opportunity to locate and contact jurors.  In addition, defendant
Simels has the financial resources to bribe jurors or their
family or friends.

The defendants also have the incentive to interfere
with the jury.  The crimes with which they are charged are
extremely serious.  If convicted, the defendants face up to life
in prison and substantial monetary fines.  See, 18 U.S.C. §§
1512(j); 3571(b)(3).  Moreover, conviction of any the charged
felonies will mean almost certain disbarment.  As discussed
above, the defendants' have demonstrated willingness to obstruct
justice on behalf of their client.  Certainly, their motivation
to subvert justice and tamper with jurors is far greater given
that their own liberty, professional futures and livelihoods are
at stake.  Simply put, absent the prophylactic measure of an
anonymous jury, there no assurance that one or both defendants
will not again engage in similar conduct, believing that the
potential benefits outweigh the risks of being caught.

C.    The Public And Media Attention To The Case Is An
      Additional Reason Warranting Anonymity

The press coverage in this case also warrants an
anonymous jury.  This case already has been the subject of press
coverage, which likely will continue during the trial.  Articles
relating to this case have appeared in the New York Times, the

Daily News, and the New York Post and in newspapers in Guyana and
Baltimore, Maryland, copies of some of which are attached
collectively as Exhibit F.  Stories also ran on local television
stations related to the defendants' arrest.  Even defendant
Simels' request to remove property from his bond generated press
coverage in multiple outlets.  The media's proven interest in
this case "militate[s] in favor of an anonymous jury because it
. . . 'enhance[s] the possibility that jurors' names would become
public and . . . expose[s] them to intimidation by defendants'
friends or enemies, or harassment by the public.'" Vario, 943
F.2d at 240.

          In recent, well-publicized criminal cases throughout
the country, jurors have become fair game for the press, if not
during the trial then as soon as they are dismissed and after a
verdict.  In this climate, where jurors and dismissed jurors from
other trials have been interviewed as well as analyzed and
sometimes criticized, there is every reason to believe that
unless the jury in this case is anonymous, the press will deem
their names and any other information concerning the jurors to
which it is privy to be newsworthy, if not here in New York or
Baltimore, then certainly in Guyana, where their former client
and co-conspirator is a widely publically known figure.
Similarly, while most members of the press would likely respect a
court admonition not to communicate with a sitting juror, such an
order would not prevent the press from attempting to interview
jurors' family members, friends, neighbors and co-workers.  Nor

would it prevent the press from taking steps to line up post-verdict interviews of jurors.  Nor would it prevent others who learned of a juror's identity through the press from approaching the juror.  Moreover, even if none of this were to come to pass, given the current press climate, jurors who are not anonymous are likely to fear that they will become targets for the press either during the trial or after the trial is over.

Moreover, because anonymity would be useless if jurors were permitted to mingle freely with the public in the courthouse during recesses and at the beginning and end of each trial day, the jurors should eat lunch together each day and be escorted to and from the courthouse in a manner designated by the Marshals Service.  <u>Persico</u>, 621 F.Supp. at 880; <u>Maldonado-Rivera</u>, 922 F.2d at 976.

In short, there is significant reason to believe that jurors who are not anonymous will have their names and other identifying information published and are likely to be besieged, either personally or through family, friends, neighbors or others, by requests for interviews from the press.  Accordingly, there are powerful reasons in this case to take precautions to ensure that jurors return a verdict based solely on the evidence presented at trial, and not out of fear that they will be subject to public scrutiny or personal obloquy, either from the press or from their relatives, friends, neighbors or co-workers, because of their verdict.  A juror whose identity has become known may no longer feel free to cast his or her vote based solely on the

evidence. <u>See</u> <u>United States v. Gotti</u>, 777 F.Supp. 224, 226 (E.D.N.Y. 1991)(ILG)("The ability of a jury to render a fair and impartial verdict may be adversely affected by even a general fear of retaliation, and a distinct possibility of a serious threat to the safety of jurors requires precautionary measures to be taken.")(citation omitted).

V.   AN ANONYMOUS JURY WILL NOT PREJUDICE
     THE DEFENDANTS

        Once a district court determines that there is strong reason to believe that the jury needs protection, it may empanel an anonymous jury provided it takes reasonable precautions to minimize any potential prejudice therefrom.  <u>See</u> <u>United States v. Bellomo</u>, 263 F.Supp.2d 557, 559 (E.D.N.Y. 2003)(ILG)(granting motion for anonymous jury and noting the requirement "that a balance be struck between the government's interest in the judicial process and the defendant's interest in preserving and safeguarding the presumption of innocence"); <u>Thai</u>, 29 F.3d at 801; <u>Amuso</u>, 21 F.3d at 1264-65; <u>Paccione</u>, 949 F.2d at 1192; <u>Vario</u>, 943 F.2d at 239; <u>Tutino</u>, 883 F.2d at 1132; <u>Persico</u>, 832 F.2d at 717-18; <u>Thomas</u>, 757 F.2d at 1365.  A defendant has two legitimate concerns that are potentially affected by a decision to empanel an anonymous jury: (a) the right to make informed choices during the jury selection process, and (b) the right to be tried by jurors who are not prejudiced by reason of their anonymity.  Both of these concerns can be readily addressed.

A.   An Anonymous Jury Does Not Burden the Defendants'
     Ability To Make Informed Choices During Jury Selection

Although a defendant has the right to a meaningful <u>voir
dire</u> of potential jurors, <u>see</u> <u>Rosales-Lopez v. United States</u>, 451
U.S. 182, 188 (1981), the decision as to the questions to be
asked in <u>voir</u> <u>dire</u> largely rests within the informed discretion
of the trial judge.  <u>See</u> <u>United States v. Silva</u>, 715 F.2d 43, 50
(2d Cir. 1983) (absent a clear abuse of discretion, trial court's
ruling on questions to be asked will not be disturbed); <u>Barnes</u>,
604 F.2d at 137-140 (noting that "as long as a defendant's
substantial rights are protected by a voir dire designed to
uncover bias as to issues in the case and as to the defendant
himself, then reasonable limitations on the questioning should
not be disturbed on appeal").

The information that will be kept from the parties and
counsel if this motion is granted is not meaningful to the jury
selection process.  The names, addresses and places of employment
of the prospective jurors are not necessary to an informed
choice.  Receiving information regarding the general
neighborhoods in which the prospective jurors live and the
general nature of his or her work is sufficient.  The names of
prospective jurors, to the extent they provide information about
ethnicity, is not information needed for a meaningful <u>voir</u> <u>dire</u>.
<u>See</u> <u>Georgia v. McCollum</u>, 505 U.S. 42 (1992) (rule articulated in
<u>Batson</u>, prohibiting use of peremptory challenges in racially
discriminatory manner, applies to defendants).  Indeed, the use
of a jury questionnaire, which the defendant has requested and

the government joins, will result in the parties having more
information about the venire than is customary.[3]

B.   An Instruction will Diminish the Risk of
     Prejudice to the Defendants

Numerous courts have recognized that where anonymity is
necessary, the jurors can receive an instruction from the court
explaining the measures in a neutral way to prevent any negative
inference from being drawn by the jury.  Although the due process
clause of the Fifth Amendment protects the presumption of
innocence, "there is no per se rule that it may not be burdened."
Thomas, 757 F.2d at 1364; see also United States v. Scarfo, 850
F.2d 1015, 1026 (3d Cir. 1988).  Here, the burden is slight
compared to the interests in safeguarding the integrity of the
judicial process and can be lessened through a proper jury
instruction.  Most commonly, courts have explained to jurors that
their privacy and identities need protection from the media and
the curious. See, e.g., Thai, 29 F.3d at 801; Amuso, 21 F.3d at
1265; Tutino, 883 F.2d at 1133.

In the Colombo Family cases over which he presided,
Judge Weinstein explained the jury's partial anonymity by telling
prospective jurors that it would allow them to feel more
comfortable in giving candid answers to the personal questions
asked in voir dire and in the jury questionnaires.  In the Crown
Heights case, Judge Trager explained the jurors' anonymity by

---

[3]    Defendant Simels has submitted a jury questionnaire to the
Court.  The government agrees that a questionnaire is appropriate
and will work the defense in an effort to arrive a mutually
agreeable questionnaire for the Court's consideration.

telling prospective jurors that their names, addresses and places of employment would be kept confidential "in order to protect your privacy from press inquiries and others not connected with the case." That explanation will be credible to prospective jurors in this case. Thus, the government proposes that a similar explanation be given in this case in order to ameliorate any conceivable prejudice to the defendants from impaneling an anonymous jury.

As for partial sequestration, we propose that the jury be told that transportation is being provided to protect their privacy and in order to ensure a timely start to each day of trial. Here again, those explanations are routinely given in cases where transportation to and from court is provided. This practice has been routinely followed in this district in recent years, and should be followed here as well. See, e.g., United States v. Gerard Price, 05 CR 492 (NGG), United States v. Aquilar, 01-CR-1367 (RJD); United States v. McGriff, 04-CR-966 (FB); United States v. Wilson, 04-CR-1016 (NGG); United States v. Nelson, CR 94-823 (DGT); United States v. Orena, CR 93-1366 (ERK); United States v. Malpeso, CR 93-1365 (RJD); United States v. Cutolo, CR 93-1230 (EHN); United States v. Thai, CR 91-838 (CBA).

19

<u>CONCLUSION</u>

For the foregoing reasons, the Court should order that the jury in this case be anonymous and semi-sequestered.

Dated:     Brooklyn, New York
           April 29, 2009

                              Respectfully submitted,

                              BENTON J. CAMPBELL
                              United States Attorney
                              Eastern District of New York

                    By:   /s/_____
                          Morris J. Fodeman
                          Steven D'Alessandro
                          Assistant U.S. Attorneys
                          (718) 254-6614/7553


cc:  Clerk of the Court (JG) (by ECF)

     Counsel for Defendants (by ECF)