UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                                                       Case#: 08-CR-640(JG)

   -v-

                                                       **SENTENCING**
                                                       **MEMORANDUM**

ARIENNE IRVING

                Defendant.
_____

## Introduction

    This memorandum is respectfully submitted to attempt to assist the Court with information that we contend is relevant to consider in fashioning a sentence. Gall v. United States, –S.Ct.–, 2007 WL 4292116 (2007), United States v. Booker, 125 S.Ct. 738 (2005) and United States v. Crosby, 397 F.3d 103 (2d Cir. 2005). Sentencing is scheduled for December 4, 2009 at 3pm.

    Recognizing that the Court had an opportunity to observe the trial, it is the intent of this Memorandum to identify issues that may alter conclusions based upon the evidence presented.

    There can be no dispute that Arienne Irving (hereinafter referred to as "Irving") was a hard working employee prior to the charged conspiracy, and has no previous criminal history.

## Discussion of Sentencing Factors

    In light of the Supreme Court's recent decisions in United States v. Booker, 125 S.Ct. 738 (2005) and more recently Gall v. United States, –S.Ct.–, 2007 WL 4292116 (2007), federal courts must look not only to the Federal Sentencing Guidelines but the entirety of the Sentencing Reform Act to determine an appropriate sentence in a given case. The Guidelines are advisory and are to

be given no greater weight than any other factor in the Sentencing Reform Act. Further, under Gall federal courts do not need to find extraordinary circumstances to deviate from the guideline range, and must not presume the guideline range is reasonable without its own individual assessment of the factors. The factors to consider in imposing sentence are set forth in 18 U.S.C. 3553(a). The following is an application of those factors to the instant case.

*1) The Nature and Circumstance of the Offense and the History and Characteristics of the Defendant*

It continues to be Irving's contention that the Government failed to prove beyond a reasonable doubt that Irving has committed any offense. As laid out more fully in defendant's Rule 29 and Rule 33 motion, which will not be reiterated here, Irving was a hard-working and dedicated employee who only performed legal and lawful acts in connection with her employment at the law firm of Robert M. Simels, P.C.

The acts that were directly performed by and presented as evidence against Irving at trial boil down to: 1) meeting with the client, Shaheed Khan, in jail, 2) writing memoranda on such meetings, 3) sending transcripts and other discovery material and information to investigators, and 4) attending two meetings with a confidential informant and defendant Robert Simels (hereinafter "Simels") where only innocuous and non-criminal discussions were had in her presence. These facts are not disputed by either side. Instead, the conclusions made in regards to culpability based on this conduct are in dispute. The Government argued at trial that in evaluating defendant Simels's conduct and illegal actions the jury can determine Irving's culpability. Irving argued and continues to argue that in evaluating each defendant separately Irving's innocence is apparent.

Continuously during the course of this prosecution Irving and her purported conduct has been inappropriately lumped together with Simels. For this to continue to happen during

sentencing is unfair and improper as the Court is required to look at each defendant separate and independent from one another. *See, Pre-Sentence Memorandum*

Irving is a 31 year old woman who had been an attorney for approximately 4½ years prior to her arrest. She is from a small town outside of Buffalo, New York and moved to New York City in early 2004 in order to pursue her career as an attorney. Irving has been an attorney in good standing since her admittance in February 2004, and has never received any disciplinary action or grievances against her. Irving has been a law abiding citizen and upstanding attorney throughout her life and career.

Irving is from a hard working middle class Irish Catholic family. The earning of her law degree was not only a proud day for her, but for her entire family because despite being from a very large extended family, Irving is the only relative to ever become a lawyer. Irving's family is extremely close and has supported her throughout her life, and continues to support her during this ordeal.

Irving was taught at a young age the need to work hard to achieve your goals in life. She has worked at least one job, often times two jobs, since approximately the age of 13. She began babysitting and delivering newspapers at a very young age, and learned the value of a strong work ethic and the value of hard earned money. Irving worked throughout high school, college and law school part-time during the school year and full time in the summers. She paid her own way, with the help of student loans, through college and law school. Irving sacrificed and worked hard to achieve her goal of becoming an attorney. Once an attorney she continued to work hard in order to become the best attorney she could.

Irving is in this position for having gone to work and done her job and being in the wrong place at the wrong time. There can be no doubt that Irving would not be in this Court today facing

this sentencing if she had not worked for Robert Simels.   Irving had a bright future ahead of her, with no motivation to participate in any unlawful activities, but has now suffered tremendously both financially and emotionally because of this case.   This fact is extremely significant for this particular defendant, as the law and being an attorney was all Irving ever wanted to become.   As you will see from Irving's own letter and the numerous characters letters attached hereto as Exhibits 1 & 2 respectively, submitted on Irving's behalf, the loss of Irving's law degree is the worst punishment she could ever receive.   Being a lawyer was part of who Irving was as a person, and she now needs to somehow cope with no longer having part of herself.

Irving and her family have already suffered emotionally and financially.   The costs associated with defending this legal matter have left Irving's funds depleted beyond repair.  Irving's parents have had to remove funds from their savings and retirement in order to help Irving with the significant legal fees and every day expenses.   Should Irving be incarcerated for any period of time, those problems will be exacerbated.   Irving continues to honor her student loan obligations, despite her financial circumstances, which such debt would remain during her incarceration and would require her family to absorb.   Further, Irving is a young woman who would miss the most significant time of her life, should she be incarcerated.   She will lose the opportunity to meet someone, get married and have children.   All of which, Irving would ask this Court to consider as a fact to be considered by this Court in fashioning an appropriate sentence.

The illicit activities that occurred are highly inconsistent with Irving's character.  Numerous letters, attached hereto as Exhibit 2[1], were submitted on Irving's behalf attesting to her character in the community and among her friends and family.

---

[1] Because of the volume of letters, this exhibit is only attached to the hard copy of this motion.

*2) The need for the sentence imposed-*

    a)    to Reflect the Seriousness of the Offenses, Promote Respect for the Law, and Provide Just Punishment for the Offense.

There is no doubt that the Court has the discretion to impose a sentence which will address the instant offense in the context of this circumstance. Given the defendant's lack of criminal history, the affect incarceration will have on her family, and inevitable loss of her law license a sentence with no incarceration is sufficient to meet the goals of this subsection.

    b)    to Afford Adequate Deterrence to Criminal Conduct

The instant prosecution, with its psychological and financial penalties to date, is a lasting deterrence to Irving. Moreover, it is sufficient message to society that a law associate comparable to Irving's position, would know that should a similar situation arise, they will be arrested and prosecuted.

    c)    To Protect the Public from Further Crimes of the Defendant

The likelihood of recidivism by this defendant will be non-existent. The offensive conduct is inconsistent with every aspect of the defendant's otherwise exemplary lifestyle. Irving has no prior criminal history from which a pattern can be inferred. Further, Irving will inevitably no longer possess her law license, and as such, would not ever be in a position to participate in future offenses of this nature.

    d)    to Provide the Defendant with the Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner

Irving, is a hard worker, who already posses the necessary skill set to support herself, has achieved an advanced education degree, and does not require any further training and education. Irving has no other special needs that can best be provided for by the Bureau of Prisons.

*3) The Kinds of Sentences Available*

Counts 1, 3 and 5 of the instant offense have a statutory option of a fine or a maximum of twenty years imprisonment per count. 18 U.S.C. 1512(b)(2).

18 U.S.C. 3559 determines felony classification based on the maximum term of imprisonment authorized for the criminal charge. Irving was convicted of 18 U.S.C. 1512(b)(1). In reviewing 18 U.S.C. 1512(b)(2) the statute states, "[a person found guilty under this subsection] shall be fined under this title *or* imprisoned not more than 20 years." (Emphasis Supplied). In addition, 18 U.S.C. 1512(j) states, "If the offense under this section occurs in connection with a trial of a criminal case, the maximum term of imprisonment which *may* be imposed for the offense shall be the higher of that otherwise provided by law..." (Emphasis Supplied). As such, the Court is not required to utilize the underlying crimes punishment, but simply may. Therefore, defendant contends the charge is a Class C felony, as it is less than twenty-five years but ten or more years of imprisonment, and thus eligible for probation. 18 U.S.C. 3559(a)(3).

Notwithstanding the above, should the Court determine Irving is ineligible for probation based upon the classification of the offenses, it can still sentence Irving to a period of zero months imprisonment within the bounds of the law. See, U.S. v. Leahy, 186 F.3d 272, 274 (2nd Cir, 1999)[A sentence of zero months does not literally violate the prohibition on probation]; See also, U.S. v. Elliott, 971 F.2d 620 (10th Cir, 1992)[Sentence of zero months imprisonment is not "probation" within meaning of statutory prohibition against sentencing class B felons to term of probation.]

Counts 12 and 13 of the instant offense have a statutory option of a fine or maximum of five years imprisonment per count.

*4) The advisory sentencing range under the Federal Sentencing Guidelines*

6

Although Irving contends that a non-guideline sentence is warranted in this situation, the total offense should be a maximum of 28 with an advisory guideline range of 78-97 months. The pre-sentence report has determined Irving's guideline range as 34, with a guideline range of 151-188 months, using an upward adjustment for abuse of position of trust (2 level increase), which Irving contends lacks legal or factual support. Moreover, despite the pre-sentence report's determination, Irving is entitled to a minimal role departure of 4 levels based on the evidence presented at trial. USSG 3B1.2.

Abuse of Position of Trust

Public or private trust is defined as "a position of public or private trust characterized by professional or managerial discretion. Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature." U.S.S.G. _3B1.3 cmt. n. 1.

Person is in "position of public or private trust," for purposes of increase in base offense level under Sentencing Guidelines for crimes involving abuse of such trust, if position is one in which defendant has freedom to commit difficult-to-detect wrongs." US v. Viola, 35 F.3d 37, 45 (2nd Cir 1994).

Irving was directly supervised by Robert Simels during the relevant time period of the criminal conduct, and was required to obtain approval for all activities through Simels during the length of her employment. As such, Irving cannot be found to be in a position of trust, and the two (2) level enhancement under U.S.S.G. 3B1.3 is unwarranted.

Minimal/Minor Role

A defendant is eligible for a role adjustment when they are "substantially less culpable than the average participant." U.S.S.G. 3B1.2 App. Note 3(A). The determination of whether or not to

provide the departure "involves a determination that is heavily dependent upon the facts of the particular case." U.S.S.G. 3B1.2 App Note 3(c).

The 4 level departure for minimal role is for, "[the] defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant." U.S.S.G 3B1.2 App. Note 4.

A defendant is eligible for a 2 level departure for minor role for a person, "who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G 3B1.2 App. Note 5.

Based on the evidence introduced at trial, Irving is clearly less culpable than the average participant. The evidence against Khan and Simels demonstrating such culpability severely outweighed that of Irving. In evaluating culpability, this Court can review the defendant's status and assigned tasks in the conspiracy. The Government alleged at trial that Irving's role within the conspiracy was to relay messages and information between Khan and Simels and to provide contact information to Vaughn. The Government's own theory of Irving's role supports the assertion that she is eligible for a minimal role departure or at the very least a minor role departure. Irving was not involved in key discussions with the confidential informant. Irving was only present for two out of five meetings (May 13, 2008 and June 20, 2008), one of which she was out of for the majority of (June 20, 2008). Most significantly, Irving never participated in any conversations where criminal conduct was discussed.

Irving's role is comparable to that of a courier in a drug conspiracy, who are often found to have a minimal or minor role in such conspiracy. Similar to a courier transporting drugs from one location to another with limited, if any, knowledge of the extent of the conspiracy. Irving was

8

simply transporting information from one individual to another, with no evidence of her knowledge of the co-conspirators activities or extent of the conspiracy. Additionally, based on the acquittal of Irving on Counts 2, 4, 6-11, it can be inferred the jury found that Irving did not have full knowledge of the conspiracy and all the alleged activities within the conspiracy.

Finally, the compensation of a participant in a conspiracy as compared with co-conspirators may be considered in evaluating role in the offense. In the instant matter, there was no evidence submitted that Irving received any compensation for her purported role in the conspiracy. Clearly Khan would have been "compensated" by his unlawful efforts had they successfully resulted in acquitting him of the criminal charges against him and/or be released from prison. The Government submitted evidence that Simels received large sums of money, beyond that of a normal legal fee, to wit approximately $1.8 million, from Khan for his participation in the criminal conduct. However, there was no allegation or evidence provided that Irving received any of these sums or any other form of compensation, and in fact the evidence demonstrated Irving made a nominal salary as compared with an associate attorney at her level within a New York City law firm.

Based on the proof presented at trial, Irving should receive a departure of 4 total offense levels as a minimal participant. Alternatively, Irving should, at minimum, receive a reduction of 3 or 2 total offense levels as a minor participant.

*5) Any pertinent Policy Statement Contained in the Federal Sentencing Guidelines*

There are no policy statements relevant to the instant case.

*6) The Need to Avoid Unwarranted Sentencing Disparities*

The instant offense is a unique one as is this defendant. She has no prior criminal convictions. Her otherwise extraordinary character, loss of her law license, and purported level of

participation in a very unique case significantly reduces the risk of a sentencing disparity resulting from any sentence this Court chooses to impose.

*7) The Need to provide restitution*

There is no restitution required for this offense.

## Conclusion

It is respectfully requested that the Court consider the foregoing, Irving's letter (Exhibit 1) and the attached letters of support from Arienne Irving's friends and family (Exhibit 2) in imposing a non prison sentence, a sentence of probation, or alternatively minimal incarceration, with a recommendation that she serve the time at the satellite camp located at FCI Coleman in Florida. Further, should the Court implement a sentence of incarceration, Irving respectfully requests the opportunity to voluntarily surrender at the above referenced facility to begin service of such sentence on or after January 4, 2010.

Respectfully Submitted,

/s/
Javier A. Solano, Esq.
Law offices of Javier A. Solano PLLC
*Counsel for Arienne Irving*
350 Fifth Avenue, 59th Floor
New York, New York 10118
Tel: 212.714.6600