GERALD L. SHARGEL
ROSS M. KRAMER
EVAN L. LIPTON

# GERALD L. SHARGEL
LAW OFFICES

570 LEXINGTON AVE., 45TH FLOOR
NEW YORK, NEW YORK 10022
TEL: 212.446.2323
FAX: 212.446.2330
info@shargellaw.com

December 3, 2009

Hon. John Gleeson
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   United States v. Simels et ano,
      08 Cr. 640 (JG)

Dear Judge Gleeson:

    I write on behalf of Robert Simels to respectfully reply to two arguments in the government's Opposition to the Defendants' Sentencing Submissions, dated December 1, 2009 ("Gov't Resp."). The government's opposition largely rehashes trial arguments, at the expense of the mandate that sentencing courts "tailor the appropriate punishment to each offense." See United States v. Cavera, 550 F.3d 180, 187 (2d Cir. 2008).

    First, the government's argument regarding grouping under the Guidelines (Gov't Resp. at 14-16) is incorrect. In an obstruction case, as argued in Simels' sentencing memorandum, the relevant victim for grouping purposes is society at large. See United States v. Cueto, 151 F.3d 620, 639 (7th Cir. 1998) (holding that in obstruction case, for grouping purposes, "the harm to societal interests must be considered"); see also, e.g., United States v. Gastelum-Almeida, 298 F.3d 1167, 1175 (9th Cir. 2002) (holding that in false statement charge, "society at large is the victim," and "[t]he societal interest at issue … is the provision of truthful information for law enforcement."); United States v. McCoy, 242 F.3d 399, 409-10 (D.C. Cir. 2001) ("It is well-recognized that the societal interest harmed by perjury is the integrity of the legal system.").

    Indeed, in its opposition, the government itself identifies the proper victim of Simels' offenses, for grouping purposes: "Simels' crimes … represent a frontal assault on the integrity of the criminal justice system." (Gov't Resp. at 31.)

GERALD L. SHARGEL

Hon. John Gleeson<br>
December 2, 2009<br>
Page 2 of 4

In <u>Cueto,</u> the Seventh Circuit directly held that in an obstruction case, the primary harm is "to societal interests." See <u>Cueto</u>, 151 F.3d at 639. There, the sentencing court did not group the defendant's obstruction counts (and the Court of Appeals affirmed), only because the defendant obstructed justice at three distinct stages of a case: "Cueto's conduct invaded three distinct societal interests – the proper functioning of the FBI, the grand jury, and the district court – and each entity has a fundamentally separate and unique governmental function." See <u>id.</u> Here, Counts Two through Nine all involve obstruction in "the proper functioning of ... the district court," because each count involves an act taken after Shaheed Khan was already indicted. In fact, Simels was not even retained until after Khan was already indicted.

The government also attempts to distinguish <u>United States v. Agholor</u>, 34 Fed. Appx. 962, 2002 WL 663704, at *3-4 (5th Cir. March 25, 2002), a case involving immigration offenses, by stating that "the Guidelines themselves specifically identify the primary victim of immigration offenses to be 'society at large.'" (Gov't Resp. at 16.) Of course, this does nothing to distinguish <u>Agholor</u>: Application Note 2 to Section 3D1.2 offers two *examples* of cases where society at large is the primary victim (the exact wording is "e.g., drug or immigration offenses, where society at large is the victim"); the Note does not attempt to offer an exhaustive list of all such cases. And, courts have identified a host of cases aside from drug or immigration offenses where "society at large" is the victim for grouping purposes, including obstruction of justice. See <u>Cueto</u>, 151 F.3d at 639 (obstruction); <u>Gastelum-Almeida</u>, 298 F.3d at 1175 (false statement); <u>McCoy</u>, 242 F.3d at 409-10 (D.C. Cir. 2001) (perjury); <u>United States v. Napoli</u>, 179 F.3d 1, 7-8 (2d Cir. 1999) (money laundering).

The government states that "following Simels' argument to its natural conclusion would necessarily mean that the same punishment applies whether one is convicted of attempting to tamper with one witness or 100 witnesses." (Gov't Resp. at 16.) This is correct, with one limitation – obstruction counts should be grouped only as long as they all involve attempts to obstruct a single prosecution (or, a single stage of a prosecution, see <u>Cueto</u>, 151 F.3d at 639). There are numerous criminal statutes that can properly increase a defendant's guidelines range if he attempts to tamper with "100 witnesses," rather than a single witness.[1] However, in an obstruction count relating to a single prosecution, there is only a single victim – the proper administration of justice. In an obstruction count, the individuals involved (the "means" to the "end" of obstructing justice) can only be

---

[1] For example, a hypothetical defendant could be convicted of one count of obstructing justice and multiple counts of assault, related to different victims who were potential witnesses in a proceeding. None of those counts would group: for each assault count, there would be an individual victim, and for the obstruction count, the victim is the administration of justice.

GERALD L. SHARGEL

Hon. John Gleeson<br>
December 2, 2009<br>
Page 3 of 4

described as "secondary victims," and Application Note 2 explicitly instructs that "secondary victims" are not to be considered for purposes of grouping. See Agholor, 2002 WL 663704, at *4 (individuals whose identities the defendant used "were at most 'indirect or secondary victims' as contemplated by the application note to § 3D1.2(b)."); United States v. Zavala, Nos. 05-7001-cr, 06-3228-cr, 2007 WL 3230741, at *3 ("the victim of Count Four is the government, which is damaged by the use of false official documents, not the aliens, who are at most secondary victims").

Second, the government argues that Simels should receive a Guidelines sentence of 360 months to life "because it provides an individualized sentence that takes into account his egregious conduct," and because his individual characteristics are "common to many defendants" and are therefore "inherently suspect as grounds for a lower sentence." (Gov't Resp. at 26) (citing United States v. Rattoballi, 452 F.3d 127, 133 (2d Cir. 2006)). This argument ignores Supreme Court and Second Circuit precedent on two fronts: (a) the Guidelines, when properly calculated, will not in themselves provide an "individualized sentence," without "independent review of the sentencing factors, aided by the arguments of the prosecution and defense"; and (b) the 3553(a) factors raised by Simels, although "common to many defendants" are not "inherently suspect;" rather a sentencing court is explicitly required to consider "any factor concerning the background, character and conduct of the defendant." See Cavera, 550 F.3d at 188-91 (overruling Rattoballi in stating that "as the Supreme Court strongly suggested ... a district court may vary from the Guidelines range based solely on a policy disagreement with the Guidelines, *even where that disagreement applies to a wide class of offenders or offenses*.") (emphasis added). Only through such individualized consideration can a sentencing court reach an "informed and individualized judgment in each case as to what is 'sufficient, but not greater than necessary' to fulfill the purposes of sentencing." See Cavera, 550 F.3d at 189.

In his sentencing memorandum, Simels argues that his individual characteristics strongly favor a sentence well below the Guidelines range suggested by the government. He does not argue that these characteristics are unique, but only that they are relevant. In this case, we submit that Simels' family relationships, age and employment record suggest a sentence far lower than the advisory Sentencing Guidelines recommend. It is respectfully submitted that the Court should consider these characteristics in crafting an appropriate sentence, without the "suspect" perspective recommended by the government. (See Gov't Resp. at 26, citing Rattoballi, 452 F.3d at 133.) Indeed, given the astronomical guidelines range suggested by the government, such individualized consideration is particularly appropriate here. See Cavera, 550 F.3d at 187; see also United States v. Adelson, 441 F. Supp. 2d 506, 512 (S.D.N.Y. 2006), aff'd, 301 Fed. Appx. 93, at **1 (2d Cir. Dec. 9, 2008) (describing "the utter travesty of justice that sometimes results from the guidelines' fetish with abstract arithmetic, as well as the harm that guideline calculations can visit on human beings if not cabined by common sense."); United States v. Parris, 573

GERALD L. SHARGEL

F. Supp. 2d 744, 745, 754 (E.D.N.Y. 2008) (describing the "black stain on common sense" that can result from strict adherence to Guidelines formula).

Respectfully submitted,

*Gerald L. Shargel*

Gerald L. Shargel

cc: Morris Fodeman
Assistant United States Attorney

Javier A. Solano, Esq.
Attorney for Defendant Irving