```
                                                                    1

 1                      UNITED STATES DISTRICT COURT
                        EASTERN DISTRICT OF NEW YORK
 2
     - - - - - - - - - - - - - - - X
 3
     UNITED STATES OF AMERICA       :      08-cr-640 (JG)
 4
          -against-                        U.S. Courthouse
 5                                  :      Brooklyn, New York
     ROBERT SIMELS &
 6   ARIENNE IRVING,

 7         DEFENDANTS,              :
                                           July 10, 2009
 8   - - - - - - - - - - - - - - - X       9:00 o'clock a.m.

 9              TRANSCRIPT OF STATUS CONFERENCE
                BEFORE THE HONORABLE JOHN GLEESON
10              UNITED STATES DISTRICT JUDGE

11

12   APPEARANCES:

13   For the Government:        BENTON J. CAMPBELL
                                United States Attorney
14                              147 Pierrepont Street
                                Brooklyn, New York  11201
15                              BY:  STEVEN L. D'ALESSANDRO
                                     MORRIS FODEMAN
16                                   DANIEL BROWNELL
                                Assistants U.S. Attorney
17

18   For the Defendant:         GERALD L. SHARGEL, ESQ.
                                EVAN LIPTON, ESQ.
19                              For Deft Simels

20                              JAVIER A. SOLANO, ESQ.
                                For Deft Irving
21

22   Court Reporter:            SHELDON SILVERMAN
                                Official Court Reporter
23                              225 Cadman Plaza East
                                Brooklyn, New York 11201
24                              (718) 613-2537

25   Proceedings recorded by mechanical stenography. Transcript
     Produced By Computer Aided Transcription.


              SS       OCR      CM       CRR       CSR
```

2

```
1            THE CLERK:  United States versus Simels, et al.
2            (Appearances noted).
3            THE COURT:  Is Mr. Solano?
4            MR. BROWNELL:  I believe he went to the men's room.
5            MR. FODEMAN:  I'll look for him.
6            THE COURT:  Thank you, Mr. Fodeman.
7            (Pause.)
8            MR. SHARGEL:  Mr. Simels is not here.  His
9   appearance was waived.
10           THE COURT:  Yes.
11           THE CLERK:  Mr. Solano went to get his client.  I'm
12  not sure where he went to get her.
13           (Pause.)
14           THE COURT:  Now we have Mr. Solano.
15           Good morning, Mr. Solano.
16           MR. SOLANO:  Good morning, your Honor.
17           THE COURT:  We're here on this application to
18  enlarge the protective order.  I think I understand it.  If I
19  do it, what's at stake is whether in the body of the
20  recordings this CI that is not Rule 16 material, at least
21  thinks it is, one that might have been.
22           MR. SHARGEL:  I believe there are two now.
23           THE COURT:  You want to limit the exposure to those
24  recordings to counsel and to one of these Patois interpreters?
25           MR. D'ALESSANDRO:  Barring the two we identified,
```

3

1 correct.

2     THE COURT:  You want to enlarge it to include
3 Simels and Irving?

4     MR. SHARGEL:  I want to suggest one thing further.
5 The government made some concessions in their letter.  I would
6 like to make another concession on our part; that is, if your
7 Honor were to grant a modified application to vacate the
8 protective order, I would represent to the court that I would
9 put in place certain procedures that would ensure the
10 integrity of the information, such as tapes would never leave
11 my office, wouldn't be copied, no notes about the tapes would
12 leave the office, no information would be conveyed.

13     My understanding is that our clients don't have any
14 connection to the Guyanese community.  Everything they were
15 doing was in connection with the preparation and defense of
16 the Khan case for which they were retained.  I'm quite willing
17 to implement security procedures so this doesn't get out
18 there.

19     THE COURT:  I infer from all this -- I obviously
20 don't know what's on these tapes.  I infer an assertion on the
21 government's part this other investigative stuff that would be
22 disclosed by those would compromise?

23     What's the government's interest in not having
24 Simels and Irving help counsel review these tapes?

25     MR. D'ALESSANDRO:  For that reason.  We have, as

1  representatives of the government, although the DEA doesn't
2  have a representative here, they have a stake in this as well.
3  This is their evidence.
4          THE COURT:  You represent --
5          MR. D'ALESSANDRO:  Typically DEA or ICE counsel
6  like to appear.  It's their evidence.  It's not something that
7  as a prosecutor on the Simels case I would readily say I want
8  these tapes, turn them over, I can disclose them and there's
9  no real hand-wringing over it.
10         This is a situation where we understand our
11 obligations.  We understand the chronology of events.  We're
12 trying to make everybody happy, put everything in the sunshine
13 as much as possible, but we have at least three distinct
14 investigations that we have a concern.  I think it's a
15 legitimate one, that just putting them in the hands of
16 others --  I appreciate Mr. Shargel making that modification.
17 It's already in place it's not going to be copied,
18 disseminated.
19         THE COURT:  Sorry to interrupt.  The increment of
20 additional risk is Simels or Irving might get on the phone,
21 upset one of your investigations?
22         MR. D'ALESSANDRO:  Notify people they're targets of
23 the investigation, not just targets of an investigation, but
24 it's actual tapes against them, substance of the tapes.  It
25 could go to the very heart of it.  There's a public interest

5

1   as well.  It's not the government wants to maintain the
2   investigation.  The public has a right to make sure fugitives
3   from justice, criminals are prosecuted.  That's the concern we
4   have here.  The nature of the charges the defendants face
5   really go to the core of our criminal justice system.  It's
6   why we have this concern.
7              THE COURT:  Are there, in fact, other active
8   investigations that are revealed by these tapes?
9              MR. D'ALESSANDRO:  You will learn the substance of
10  the case; that is to say, the conversations with targets, the
11  negotiations that took place, the admissions by the targets.
12  As I stand here, I don't know whether all of them --  I know
13  from what your Honor can see, the two that were identified in
14  our most recent submission, some of them, the calls themselves
15  have the file name, has the name of the person they're talking
16  to.  Even if it's a situation where, perhaps, I don't know
17  from listening to it, I don't recognize the voice, there's an
18  independent indicator from the file name and I think some of
19  the trailers also follow up by saying "This is a call that I
20  made on this date to this person."  There's a lot of
21  information.
22             THE COURT:  What will happen if, assuming contrary
23  to an order I would enter, it would disseminate, what would
24  happen?  People would flee or destroy evidence, what?
25             MR. D'ALESSANDRO:  That's it.  They would flee.

6

1  They would destroy evidence.  They could seek to obstruct
2  justice by tampering with witnesses, reprisal actions that
3  could be taken.  Maybe it's lost on my articulation because
4  it's something that as a prosecutor I so often ask the court
5  in asking for affidavits for arrest warrants to be filed under
6  seal.  It's all the reasons why we seek to keep out of the
7  light of the public or in the wrong hands evidence of our
8  charges.  That's what's in place here.  All the legitimate law
9  enforcement concerns, that's what we have.
10             THE COURT:   How many conversations are at stake?
11             MR. D'ALESSANDRO:   A total of 80.  We've consented
12 to the disclosure of two --  81, excuse me.  I put in one of
13 my letters the exact number.  I believe it's 79.
14             THE COURT:   The other 79, they're not in English,
15 in this Patois or something?
16             MR. D'ALESSANDRO:   Some may be in English in that
17 they are trailers, the cooperator could say in an accent but
18 in English this was a call to so and so.
19             THE COURT:   Are there transcripts?
20             MR. D'ALESSANDRO:   No, there are not.
21             THE COURT:   Are they lengthy?
22             MR. D'ALESSANDRO:   Some of them are, yes.  There's
23 some personal meetings --
24             MR. FODEMAN:   Over an hour.
25             THE COURT:   What's the approximate total running

7

1  time?
2          MR. FODEMAN:   I know there are at least several I
3  reviewed with the informant that were over an hour.  Some are
4  very short, short telephone calls.
5          THE COURT:   What happened with these two that
6  mentioned Simels?  You just dropped the ball?
7          MR. FODEMAN:   I dropped the ball, Judge.  It's
8  completely my fault.  Remember I told you half of them,
9  Mr. D'Alessandro reviewed the other half.  I took notes with
10 the informant.  When we got to these two, go back to my notes,
11 I have them starred. I don't know if they're relevant or not.
12         Candidly, counsel is correct.  He is correct they
13 mention Simels a year before our investigation starts.  When
14 we're disclosing, we certainly didn't highlight them.  It's my
15 fault not conveying to Mr. D'Alessandro disclosing these have
16 tangential relationship to the case.  That's the situation.
17         THE COURT:   Anything further?
18         MR. SHARGEL:   The only thing I want to say,
19 reviewing them without the clients is probably useless, not
20 because of the Patois.  We can get an approved interpreter,
21 but because of the nuances, the Alderman case, things they may
22 recognize I wouldn't recognize.
23         Judge, I respectfully --
24         THE COURT:   Once you had what was actually said
25 cleared up on, wouldn't you at least be in a position to cull

8

out these conversations, ones as to which, arguably, your client's input would help and then come back to me on it rather than have all 79?

Let me back up a little bit. To me it's obvious, a legitimate interest on each side. The charges are what they are. If there are other investigative procedures, other investigations that could be jeopardized by disclosure of these to Mr. Simels, I understand their concern and the grand jury has indicted for what it has indicted him and Ms. Irving for, nothing to regard.

I'm also sensitive to your concern nuances and the like might escape you and Mr. Solano's attention, but it strikes me it might be once you know what is said on a tape, it might be obvious to you it has nothing whatsoever to do with Khan, this confidential informant.

Why should I require the government to bare the risk that that information in the hands of your client might get disseminated and end up with some other situation like the one that led to this indictment?

MR. SHARGEL:   That's reasonable.

THE COURT:   The allegations that led to this indictment.

MR. SHARGEL:   That's reasonable.  I could review them in the first instance, come back to the court, say I need help with respect to this because it's murky, because it may

9

relate to my client.

The only thing I would like to put before you is that there's a certain disconnect here. The cases I'm familiar with where discovery has been withheld from defendants, issues of national security, in those cases there's a finding the defendant is a part of the organization that's being investigated, perhaps a terrorist organization.

This is not such a case. There's a total disconnect here. Mr. Simels and Ms. Irving have no affinity, connection, association with the so-called "gang" that is under investigation. I don't know who these people are so I think at the end of the day, I'm going to say, at least in the first instance, what you're saying seems quite reasonable.

THE COURT: There's another difference which is in those cases, it's indisputably Rule 16 material. Here, the government's claims, apparently, they got it wrong with respect to. The government claims this is not material to which your team is entitled. There is a difference.

Reconciling the competing interests, I'm going to deny the application to enlarge it, enlarge the protective -- amend the terms of the protective order -- except, of course, to permit these interpreters to assist you in the first instance without prejudice to you coming back with a more targeted application to permit Ms. Simels and Ms. Irving to have access to particular tapes.

10

1   MR. SHARGEL: I'm sure you adopt what the
2 government suggests to the two tapes that have been identified
3 in the letter, that that comes now outside the protective
4 order?
5   THE COURT: Agreed.
6   MR. D'ALESSANDRO: May I make a further suggestion?
7 Before approaching your Honor with an application, we're more
8 than willing to speak, in the first instance, to Mr. Shargel
9 and Mr. Solano to hash it out. There may be something they
10 just don't understand that we may be able to provide them
11 before we engage further.
12   THE COURT: That should happen in any event.
13   I issued an order regarding T3. The government
14 obviously has a right to appeal that before trial. Once a
15 decision gets made up or down on that issue, would you share
16 it with the court and with counsel?
17   MR. D'ALESSANDRO: Of course.
18   THE COURT: One has not been made yet?
19   MR. D'ALESSANDRO: No.
20   THE COURT: Do you know when it will be made?
21   MR. D'ALESSANDRO: Soon. I apologize --
22   THE COURT: I'm not against three or four weeks,
23 but you want to plan around these things.
24   MR. D'ALESSANDRO: To put something in your Honor's
25 mind, we've already identified this for counsel. This morning

11

1  the government will be superseding the indictment.  We're not
2  adding any substantive charges.  We've disclosed to them we're
3  seeking to withdraw an attempt charge, identified that count
4  and changed one of the identifications of a John Doe by
5  amending the bill of particulars.  We've identified that as
6  well.
7              MR. SHARGEL:   United States versus Dinsa (ph),
8  it was superseded during the middle of the trial.
9              THE COURT:   We have an issue we need to address,
10 Mr. Solano.  You want to do it today or on another occasion?
11             MR. SOLANO:   I submitted the information your Honor
12 requested at the last conference.
13             THE COURT:   This (indicating)?
14             MR. SOLANO:   Yes.
15             THE COURT:   I'll take a look at it.  Your client is
16 not here?
17             MR. SOLANO:   She's not.  I don't think there's
18 going to be any issue with regard to your Honor's concerns.
19             MR. SHARGEL:   One more thing.  I wanted to confirm
20 on the 20th when the questionnaires are distributed counsel
21 need not be here?
22             THE COURT:   Correct.
23             MR. SHARGEL:   Knowing you.
24             MR. D'ALESSANDRO:   I'll submit a written protective
25 order for your Honor?

12

1            THE COURT:   Yes, please, that modifies it.   Have a
2  good day, everyone.

                SS       OCR      CM      CRR      CSR