1870

1          UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF NEW YORK
2
   - - - - - - - - - - - - - - - - - X
3
   UNITED STATES OF AMERICA,          :    08-CR-640
4
                    v.                :    U.S. Courthouse
5                                          Brooklyn, New York
   ROBERT SIMELS                      :
6  ARIENNE IRVING                          August 11, 2009
                         Defendants.  :    9:30 o'clock a.m.
7
   - - - - - - - - - - - - - - - - - X
8

9                    TRANSCRIPT OF TRIAL
                BEFORE THE HONORABLE JOHN GLEESON
10              UNITED STATES DISTRICT JUDGE, and a jury.

11
   APPEARANCES:
12

13 For the Government:          BENTON J. CAMPBELL
                                United States Attorney
14                              BY:  STEVEN L. D'ALESSANDRO
                                     MORRIS FODEMAN
15                                   DANIEL BROWNELL
                                     Assistant U.S. Attorneys
16

17 For the Defendants:          GERALD SHARGEL, ESQ.
                                EVAN L. LIPTON, ESQ.
18                              For Robert Simels

19
                                JAVIER A. SOLANO, ESQ.
20                              LAWRENCE BERG, ESQ.
                                For Arienne Irving
21

22 Court Reporter:             Gene Rudolph
                               225 Cadman Plaza East
23                             Brooklyn, New York 11201
                               (718) 613-2538
24
   Proceedings recorded by mechanical stenography, transcript
25 produced by CAT.

       GR     OCR     CM     CRR     CSR

1          (The following occurred in the absence of the jury.)

2          THE COURT:  Good morning.

3          Please be seated.

4          MR. D'ALESSANDRO:  Good morning, Your Honor.

5          THE COURT:  Good morning.

6          MR. FODEMAN:  Good morning, Judge.

7          MR. D'ALESSANDRO:  I just need --

8          THE COURT:  You are advancing on me like something

9     is going to happen.

10          MR. D'ALESSANDRO:  Before the jury came out I just

11    wanted to put something on the record.  I already advised

12    Mr. Shargel and Mr. Solano.

13          This morning when I was on my way to the courtroom,

14    one of the jurors got on the elevator, asked me if it was

15    going up or down.  I didn't answer.  He realized who I was.  I

16    tried to get off the elevator and he said no, no.  It's okay.

17    I just got off the elevator.  We took separate elevators up.

18          And then on my way into the courtroom, he was ahead

19    of me, turned around and said sorry.  I didn't speak to him.

20          I think we just have very polite jurors.

21          MR. SHARGEL:  Which number?

22          MR. D'ALESSANDRO:  One of the alternates.  I think

23    it's alternate number two.

24          MR. FODEMAN:  Judge --

25          THE COURT:  One second, before I forget.  I reworked

1872

1    the charge a little bit, to accommodate the fact that with

2    regard to Count Two, he government is relying only on

3    corruptly persuade.  I had described the elements of the

4    subsequent counts by reference to Count Two.  But they need to

5    be tinkered with.  So the subsequent counts incorporate by

6    reference Count Three instead, which involves intimidation and

7    the other threats.

8           Also, as you know, because I circulated another

9    draft yesterday, the request that I inspired at the charge

10   conference, which was removed, I have denied.  That's related

11   to the Counts 12 and 13.

12          MR. SHARGEL:  Your Honor, what about -- I didn't see

13   yesterday's version.  What about the second request in the

14   letter over the weekend which was --

15          THE COURT:  I moved that falsus in uno thing so it

16   is not right next to the defendant's testimony charge.

17          MR. SHARGEL:  Very well.

18          Thank you.

19          MR. FODEMAN:  Judge, I have worked desperately over

20   night to trim down my rebuttal.  I had originally asked for an

21   hour.  I am going to, if it's all right with the Court, try to

22   squeeze it into forty-five minutes.  Is that all right?

23          THE COURT:  I think that's fair.  I had said half an

24   hour.  Then Mr. Shargel went -- everybody went longer than

25   they anticipated.

Rebuttal   summation   -   Fodeman          1873

1          MR. FODEMAN:  Thank you, Judge.

2          THE COURT:  I don't think that's inappropriate given

3     the length of the defense summations.

4          All right.

5          MR. SHARGEL:  Ready to go.

6          THE COURT:  Bring in the jury, please, Ilene.

7          MR. BROWNELL:  Thank you.

8          (Jury present.)

9          THE COURT:  Good morning, everybody.

10          Nice to see you.

11          Have a seat.

12          All right.  Mr. Fodeman, are you ready with your

13     rebuttal summation?

14          MR. FODEMAN:  Yes, Your Honor.

15          Thank you.

16          THE COURT:  Go ahead.

17          MR. FODEMAN:  Good morning, everyone.

18          This right here, this is the record.  These good

19     people here, they have been taking down every word that has

20     been said during the course of this trial.

21          Those binders, that's all the exhibits that were

22     introduced in evidence in this case.

23          That's the record in this case.  So before I begin,

24     I just want to set the record straight about a few things that

25     counsel said yesterday.

Rebuttal   summation   -   Fodeman            1874

1        What am I talking about?  Do you remember that

2   timeline that Mr. Shargel put on the video monitor yesterday

3   towards the end of his summation?  He was trying to prove the

4   point that look, May 13th, Selwyn Vaughn comes into the first

5   meeting and then weeks go by and his client has no interest in

6   Selwyn Vaughn, doesn't care about him, not interested, had

7   nothing to do with him.  He says it wasn't until two weeks

8   later there is finally a voice message from Selwyn Vaughn to

9   the defendant.

10        Not true, not the record in this case.  Government

11   Exhibit 202, an email.  Who is from?  Robert Simels.  What's

12   the date?  May 19th.  Thanks for writing.

13        May 16th, just three days after the meeting.  Thank

14   you for meeting with us.  We are awaiting your note for Roger.

15        Does this sound like people who aren't interested in

16   dealing with Selwyn Vaughn?

17        How about May 10th?  Before the next meeting?

18   Contact us, that's the -- that's the subject.  Contact us.

19        These defendants want to talk to Selwyn Vaughn

20   because he offered them help in their case.

21        The Dancing Man letter, I call it, Government

22   Exhibit 810.  You remember that letter.  Mr. Shargel started

23   his whole summation with this letter.  You remember it.  My

24   brother Paul.  Here it is.

25        He started off by telling you, there is no evidence.

GR      OCR      CM      CRR      CSR

Rebuttal  summation  -  Fodeman          1875

1   We -- who is Paul?

2          Ladies and gentlemen, you have heard enough evidence

3   to know who Paul is.

4          Unsigned.

5          Ladies and gentlemen, take five minutes.  Read this

6   letter.  If you don't think it was written by Roger Khan, then

7   you weren't at this trial.

8          May 13th, he tells you, what does this have to do

9   with the trial?  Selwyn Vaughn didn't start dealing with them

10  until 2008?  This says 2007.

11         The conspiracy, it is charged starting in 2006.

12         Then he tells you, his main point, that there is no

13  evidence that this was ever sent from the law office of

14  Robert M. Simels.

15         Well, he is right.  He is right in the sense that we

16  don't have a two-year-old email sending it down to Guyana.

17  But there is evidence in the case to suggest that's exactly

18  what happened with respect to that letter.

19         You have seen it in this case, what they do with

20  letters that they take out of the jail for their client.  You

21  saw it.  Right here, on June 17th.

22         By the way, whose handwriting is that?  Roger

23  Khan's?

24         What's the attachment?  It's a letter from their

25  client.  Who is it being sent to?  It is an email being sent

GR      OCR      CM      CRR      CSR

Rebuttal   summation   -   Fodeman          1876

1   to Selwyn Vaughn.  That's what they do with these letters that

2   they take out of the jail.  They send them to where their

3   clients want them sent.

4          I mean, imagine for a second that their client

5   spends hours and hours and hours writing that letter to his

6   brother Paul, his friend in Guyana.  Pages and pages and

7   pages.  They take it out of the jail.  They scan it into their

8   computer.  And then just leave it there.  Do you think that's

9   what happened?  Is that what really happened?  They just leave

10  it there?

11         Client says yes, I wasted four hours writing a

12  letter and you never sent it?

13         Mr. Shargel, he's not the only culprit here.  Let me

14  talk to you about some of the things Mr. Solano said about the

15  record.

16         How is Arienne Irving supposed to know that Selwyn

17  Vaughn is a criminal?  The government -- this is -- I am

18  paraphrasing.  The government says that nothing was said

19  during the initial meeting, the May 13th meeting, about Selwyn

20  Vaughn being a drug dealer.  The government points to Selwyn

21  Vaughn talking about his cousin, Marvin.  Do you remember

22  this?  It talks about Marvin.  He says, the government wants

23  you to believe because they raised this topic about Marvin

24  working for Mr. Khan, that they had to know.

25         But then he shows you this, the part in blue.  He

Rebuttal  summation  -  Fodeman          1877

1   tells you, look, look, ladies and gentlemen, only says, all

2   was said my cousin was working for him.  I was dealing with

3   the boss.

4            How is she supposed to know they weren't talking

5   about working in the timber business?

6            Well, how about the page before?  Turns out that

7   what was said about Marvin Vaughn, in the defendant's

8   presence, was, he got locked up, in Surinam.  He was involved

9   in a drive-by.  It wasn't just a drive-by.  It was related to

10  a drug case, a drug deal gone bad.

11           Then what happened?  Roger Khan ordered him to come

12  home.  He didn't listen.  That's why he's in jail.

13           Mr. Solano wanted you to focus on this part, the

14  blue.  He didn't want to you turn the page back and read the

15  yellow.

16           He told you, the government is misrepresenting

17  things.  They are not telling you that Ms. Irving wasn't at

18  these meetings.  They didn't ask the questions.  I had to ask

19  the questions.  Don't believe anything the government says.

20           Really?  Is that what happened in the case?

21           Page 336 of the transcript.  Mr. D'Alessandro, the

22  government lawyer.

23           Was Ms. Arienne Irving at every one of those

24  meetings?

25           No, sir.

GR      OCR      CM      CRR      CSR

Rebuttal  summation  -  Fodeman          1878

1      When she was there, was she present during the

2  entire meeting?

3      She was in and out of the ^ plural rooms.

4      Page 435, was she there for the entire meeting, line

5  nine?

6      No, sir.

7      Was Mr. Vaughn asked about whether Ms. Irving was

8  there or not?  Of course he was.

9      Then this I think is the greatest.  Mr. Solano was

10  explaining to you that during that discussion in the initial

11  meeting, he was trying to say that his client was doing

12  everything right and Vaughn was the liar.  You remember there

13  was some discussion about having Vaughn go into the jail and

14  speak to Khan.  He would have to fill out a form to be able to

15  get in there.

16      Mr. Solano made a point of it.  Vaughn says, hey, I

17  could just say I'm a family member.  Why don't I just say I am

18  a family member and I can get in?

19      And then he showed you the form Ms. Irving filled

20  out.  It's not really a family member.  She told the truth.

21  She wrote friend.

22      Well, is that exactly what happened?  Is that really

23  exactly what happened?

24      Take a look at the transcript on this issue about

25  what to say on the form.

1          First, they are talking about, we have to get him on

2    the witness list.

3          Well, they have -- only certain people and you have

4    to be related.  He's only allowed one.

5          Then Vaughn says -- this is the part that Mr. Solano

6    wanted you to focus on.  Well, I could be a relative, Vaughn

7    says.  My father is Indian.

8          Irving, I think he's only allowed one friend.

9          If Mr. Solano had his way you would read this and

10   say Vaughn is a liar, trying to trick these guys and

11   Ms. Irving.  She is not a bad actor at all.

12         How about when they are actually filling out the

13   form, the next page, page 41.  Remember Vaughn raised visitor.

14   He is filling out the form.  Alien number.  Visa, visa number.

15         Vaughn asks, relationship to above named?  What do I

16   put?  Friend, family?  Relative?

17         What does Ms. Irving say?  Leave that blank.

18         Why?  Why leave it blank?  She knows that Vaughn is

19   not related to Khan.  Why is she even thinking about lying on

20   the form?

21         When she called the jail and she finds out the

22   friend slot is taken, we are going to write in relative?  Is

23   that what she is thinking about?

24         I could go on about things that were

25   mischaracterized and not accurate about the record.  I am not

Rebuttal  summation  -  Fodeman          1880

1    going to do that.  I've got a limited amount of time.

2          Because I have a limited amount of time, I want to

3    sort of narrow your focus, focus on what the issue is and what

4    the issue is not in this case.

5          This case is not about surge protectors.  It's not

6    about paying for parking.  It's not about CLE classes.  As

7    judge told you yesterday, it's not about sending messages.

8    It's not about where the defendant's photos were displayed

9    during the course of the trial, I submit to you.  That's not

10   what this case is about.

11         It is also not about all the legitimate work that

12   these defendants did on behalf of Roger Khan.  They worked

13   hard for him.  We told you that from the beginning.  No one is

14   disputing that.  They did things that lawyers are supposed to

15   do.  No doubt about it.  They represented him for years.

16         There was nothing wrong with going out and hiring a

17   team of licensed investigators.  Not a thing wrong with it.

18         There was nothing wrong with following up leads,

19   interviewing their client, talking to witnesses; nothing wrong

20   with that.

21         There is nothing wrong with trying to find dirt on

22   people, so you can discredit them.  That's the system.  That's

23   what you are supposed to be doing.

24         You want to go out and find evidence that someone is

25   a bigamist, as was suggested in this case, go for it.  That's

GR      OCR      CM      CRR      CSR

1    what you are supposed to be doing.

2           But what you are not supposed to be doing, as a

3    lawyer, or anyone for that matter, what you are not supposed

4    to be doing, is paying witnesses, threatening people, talking

5    about hurting people, and not directing other people to do the

6    same.  You can't do that.  You can't do it if you are a lawyer

7    and you can't do it if you are a civilian, a regular person,

8    not a lawyer.

9           It's not good enough to play by the rules 99 percent

10   of the time; not good enough.

11          They bring up Nigel Rodney, remember this talk

12   yesterday by Mr. Shargel?  Nigel Rodney, he's an experiment.

13   He's a cooperator.  And they didn't tamper with him, great,

14   great (clapping hands together.)  Found a witness you didn't

15   tamper with.  Fantastic.  Really great.  Doesn't matter that

16   Mr. Rodney, unlike Mr. Clarke, was willing to sit down and

17   talk seven different times so there would be no need to tamper

18   with him.

19          It's like the bank robber who says, okay, you got

20   me.  I robbed a Citibank, but I didn't rob the Chase, or the

21   murderer who comes in and says, all right, I murdered him but

22   I didn't murder all these people.

23          Come on, ladies and gentlemen.  It doesn't matter

24   that they thought their client was innocent, if you believe

25   that.  It doesn't matter.  Just because you think your client

Rebuttal   summation   -   Fodeman                1882

1   is innocent doesn't give you the right to toss away the rule

2   book.  It doesn't give you that right.

3          It doesn't matter if you thought the government

4   witnesses were going to lie about your client.  You are going

5   to hear a little -- you have heard a little bit about this

6   truth telling defense.  Sure, no one is saying that you can't

7   try to convince people to tell the truth.  But you can't do it

8   illegally.  You can't threaten people to do it.  You can't put

9   a gun to someone's head, obviously, and say you go tell the

10  truth.  You cannot do that.

11         You can't send out Selwyn Vaughn like a loaded

12  weapon to get at these witnesses, to use their words.

13         Just because you are a defense counsel does not

14  permit you to play the role of judge and jury.  You don't get

15  to make the decisions.  A jury does.

16         You don't get to buy the testimony you need.  You

17  don't get to threaten people and you don't get to do violence

18  against them to keep then off the stand.

19         These defendants had a lot invested in this case, no

20  doubt about it.  Both had spent lots and lots of time.  And in

21  Mr. Simels's case, he had spent lots and lots of money.  But

22  that doesn't give them the right to tamper with witnesses.

23         They spent 3800 hours on the case.  No one is

24  doubting a minute of it.  But you can't spend one hour,

25  one minute, one second, doing what these defendants did.

Rebuttal   summation   -   Fodeman                    1883

1          This case is not about what the defendants did
2     right.  They did do things right.  It's about what they did
3     wrong.
4          I mentioned the truth telling defense.  Again, just
5     briefly, yes, no one is saying that lawyers can't do their
6     job.  No one is saying they can't meet people and convince
7     them the error of their ways and try to convince them to tell
8     the truth.  Of course, that's their job.
9          But is that what you think Robert Simels was doing
10    when he said well, I don't really care if it's the truth or
11    not.  I don't give a damn.
12         Or when he gives Selwyn Vaughn the memo from his
13    client and says, he wants you to testify to all this shit.
14         Do you think he's seeking the truth there?
15         But even if you think he is, you can't go
16    threatening people.  You can't go harming people.  You can't
17    go buying people.
18         As reluctant as Robert Simels was to tell you, you
19    can't bribe people to tell the truth.
20         Another thing that's not an issue in this case, and
21    Mr. Shargel spent a lot of time on it, was what Mr. Mazzella
22    should have, could have, or what Mr. Shargel would have done.
23         I kept thinking about those six words.  Could have,
24    should have, would have.
25         First he tells you that law enforcement techniques

GR      OCR      CM      CRR      CSR

Rebuttal   summation   -   Fodeman                1884

1    are not your concern.  And the judge is going to tell you that

2    in probably about half hour.

3              Then he goes on to talk about what?  Law enforcement

4    techniques.

5              He says, he suggests to you, that there was no

6    reason why did -- why did Investigator Mazzella send Selwyn

7    Vaughn into the office in the first place?  What was the

8    evidence to suggest there was any wrong doing?  Dirty up the

9    government.

10             Well, he got some lady -- you got a -- you got a

11   corrections officer at the GO telling you that Mr. Simels

12   tried to lie his way into a jail.

13             Then you have a cooperating witness who says, I was

14   in Roger Khan's gang.  I helped him find people who were dead.

15   Now those gang members are telling me to go see his lawyer and

16   I can't think of a good reason for it.  What do you want me to

17   do?

18             Maybe, if Mr. Shargel had his way, Mr. Mazzella

19   would sit at his desk, feet up, eating donuts, doing nothing.

20   Don't respond.  Do nothing.  In response to those road signs,

21   do nothing.

22             But instead what does he do?  He sends Selwyn Vaughn

23   in and asks what do you want.

24             Look, I submit to you, if these defendants didn't

25   start coaching Selwyn Vaughn in the very first meeting, we

GR       OCR       CM       CRR       CSR

1   wouldn't be here.

2          Shouldn't have sent Selwyn Vaughn in.  Shouldn't

3   have told him to pursue this bribe angle.  This is like Monday

4   morning quarterbacking.  Shouldn't have told him to do that.

5   What should he have done?  Killed people instead?  That's the

6   other alternative being talked about.  Would it have made for

7   a really spectacular case if law enforcement had gone out and

8   killed Allison.  Wouldn't have been much consolation to

9   Allison?  Is that what they would have had us do?

10          Come on.  It's preposterous.  It's ridiculous.

11          What's the implication, that Robert Simels would

12   only bribe this witness, only started talking about bribing

13   witnesses because Selwyn Vaughn suggested it?  It's the

14   government's suggestion?  Is that the implication?

15          His defense is, I wasn't going to bribe anyone.  I

16   was never going to bribe anyone.  So what's the point of that?

17          The point, ladies and gentlemen, is to take the

18   focus off the defendants and put it on the government.  But

19   here is a news flash.  Guess what?  The government is not on

20   trial here.  Those two people are.  They're on trial.

21          So when Mr. Shargel thinks, and he can't stop

22   thinking about this since the case happened, he says, we

23   should have sent an undercover in.  We would have gotten

24   exquisite evidence of guilt if Mr. Simels was really guilty.

25   We should have had someone play the role of Leslie Camacho and

Rebuttal   summation   -   Fodeman          1886

1    then we'd all know and it would be so much easier for the jury

2    to know.  It sounded pretty good.  Mr. Mazzella, why didn't we

3    do that.

4              Think about it. What would be the exquisite

5    evidence?  The undercover would go in.  How she is supposed to

6    know every single thing about Leslyn Camacho's life and David

7    Clarke's life, to be able to answer this defendant's

8    questions, who seems to know everything about everyone I don't

9    know, but assuming she can pull it off, what's the tape going

10   to sound like?

11             I am Leslyn Camacho.  I am here for a bribe.

12             Robert Simels, great.  Here is the money.

13             And then where would we be?  We'd be right here with

14   the defendant saying I was going to sting her.  We'd be right

15   in the exact same spot.

16             It wouldn't prove one thing more than what we have

17   now.  But even if you thought it would be great, even if you

18   think it would be fantastic evidence, it doesn't mean the

19   defendant is not guilty with the evidence that has been

20   presented to you, the overwhelming evidence, the crystal clear

21   tapes that prove these defendants guilty.

22             Now I will talk to you a little bit about the

23   meaning of words.  Mr. Shargel said in his opening statement,

24   that words -- I want to get this right.  Words in the tape,

25   meaning the wire -- the tape that Vaughn was making -- don't

Rebuttal  summation  -  Fodeman          1887

1  convey meaning or intent.

2          What?  They don't send the true meaning of what he's

3  saying?  Is that -- that sounds like lawyer talk to me.  Let's

4  break it down.  Let's see how this played out.

5          Ladies and gentlemen, we have heard every excuse in

6  the book for those words during the course of the last

7  two-and-a-half weeks.  I got a list here.  Let me read it to

8  you because I couldn't possibly remember.

9          High school talk.

10          Locker room talk.

11          Trash talk.

12          Loose talk.

13          Unfortunate talk.

14          Just talk.

15          This one I had to look up last night, skullduggery.

16          Just keeping the conversation going.

17          Please, listen to the tapes.  Is that what's going

18  on here?

19          I was focusing on my computer.

20          We were having a blackout.

21          I didn't mean what I said.

22          I was turned around.

23          I was twisted around.

24          I was looking over here.

25          I was talking street.

Rebuttal  summation  -  Fodeman          1888

1          I was trying to talk down to Vaughn.  He's from a

2    third world country and I needed to talk to my audience.

3          How about this excuse?  The government is over

4    analyzing the tapes.

5          Okay.  I didn't mean what I said.

6          It's legalese.

7          It's lawyer talk.

8          It's legal vernacular.

9          It's a CLE class title.

10         And my favorite, this is the absolute best, I said

11   those things but I was lying when I said them.

12         I said I wanted Selwyn Vaughn to be my witness, over

13   and over and over again, but I was lying.  I was never going

14   to call him.

15         I said bring in Leslyn Camacho so I can bribe her.

16   But I was lying.  I was never, ever going to pay a bribe.  I

17   was going to sting her.

18         I was waiting for the excuse of aliens took over my

19   body and started making my mouth talk.

20         Ladies and gentlemen, when you are caught on tape

21   and you cannot deny what was said, you have to deny what was

22   meant.

23         I submit to you, ladies and gentlemen, that these

24   tapes when you listen to them, are the best reflection of what

25   these defendants meant.  Listen to them.

GR      OCR      CM      CRR      CSR

1           You might have noticed during the course of this

2    trial there was a different approach, shall I say, with the

3    presentation of evidence.  Nothing wrong with what was done.

4    I am not saying there was anything wrong.  You might have

5    picked up on the idea that it seems like the government's

6    playing the tapes, actually playing the evidence for you, and

7    then the defense isn't.  We are looking at cold transcripts.

8    We are putting our own spin on the way the words were said.

9    The amount of time that elapsed between sentences, to -- if it

10   helps.

11           Listen to the tapes.  Listen to the tapes.

12           The defense, I submit, didn't want you to listen to

13   the tapes during their presentation.  During Mr. Simels's

14   cross, was there any tape playing?  During their summation,

15   did you hear any tapes?  They didn't want you to hear those

16   tapes because it is devastating evidence of their intent,

17   devastating.  They just wanted you to rely on these cold

18   transcripts.

19           Now, I can't possibly go over all those excuses.

20   Impossible.  But let me just talk about a few here.

21           May 13th, you have seen this before.  Is this a

22   mistake, is this just lawyer talk here when he's telling him

23   not to describe him as a boss?

24           This is page 36.  Go look back and see how many

25   times Selwyn Vaughn had said he is the boss.  But now we get

Rebuttal  summation  -  Fodeman          1890

1   to page 36, we certainly don't want to describe him as the

2   boss.

3           Was that what?  Lawyer vernacular?  Lawyerese?

4   Aliens?  What?

5           But, of course, that isn't the worst of it.

6   Neutralize Clarke.  Who says neutralize Clarke?  Robert Simels

7   says neutralize Clarke.  He is talking about driving fear in

8   him and he says I agree with you, I agree with you.

9           Let me get something straight with everyone right

10  from the start.  Yes, lawyers say things like neutralize.

11  Agreed, lawyers say things like I am going to kill that guy on

12  cross.  True.

13          Is that what was going on here?  Honestly, honestly,

14  when Mr. Simels was talking to Selwyn Vaughn, was that what he

15  was saying to put it in context?  Put it in context.

16          How about this?  Is there any excuse, any

17  explanation, on the planet, for this line?  This is June 20th

18  when the thousand dollars comes out.

19          With George, he said you can deal with George the

20  way you think he needs to be dealt with in terms of finding

21  out where he is in this thing.  I don't think they'll put

22  the -- the heat on him that screwing around with the mother

23  would.

24          What's screwing around with the mother?  We are just

25  talking about killing the mother.  I mean, doing something

Rebuttal   summation   -   Fodeman          1891

1    violent to her.

2           This is not lawyer lexicon, ladies and gentlemen.

3    This is an instruction to a man to go out, find this person

4    and do what you have to do to keep them off the stand.  If it

5    means hurting them, fine.  If it means threatening them, fine.

6    It's sending a -- it's like sending a loaded weapon and aiming

7    them right at the witnesses.

8           This isn't street talk.  It's not -- it's not trash

9    talk.  It's not locker room talk.

10          By the way, while we are on the topic of the

11   thousand dollars that was paid at that very moment, ever

12   wonder why, if all this is legitimate, if, as Mr. Solano says,

13   this was just an investigator, as far as we knew, why isn't

14   the thousand dollars cash in the billing records?  Take a look

15   at those billing records.  Pour through them if you want.

16   They are in evidence.  This thousand dollars is not there.

17          Payments to other legitimate investigators, it's in

18   there.  3500, I don't know the exact numbers.  3500 to Deb

19   Martin, sure.  It's in there.  Paid by check.

20          You remember Deb Martin, this was a funny part of

21   the trial.  I asked Deb Martin, did -- did he pay you in check

22   or in cash?  She laughed.  She thought it was an absurd

23   question.

24          It is.  Because he's not an investigator.  He's a

25   tool, at their disposal, to win this case.

Rebuttal   summation   -   Fodeman                1892

1          Sometimes, ladies and gentlemen, actions speak
2    louder than words.
3          One other thing I just want to talk about quickly
4    and it is so preposterous.  Remember this?
5          I wasn't paying attention.  It was a blackout.  He
6    says this thing about driving fear into their hearts, in one
7    ear, out the other.  I wasn't paying attention.  Like three
8    days later it dawned on me that this guy is crazy.  He's
9    talking about hurting people.  I got to do something about it.
10         That was his testimony.
11         So what do I do about it?  I send out email,
12   Government Exhibit 208, and this -- the defense, I submit,
13   couldn't show you this enough.  It's about Roger.  It says
14   simply be careful in your efforts to gather information and
15   not do anything that can be misconstrued by anyone.  These are
16   difficult times and people will draw the most unfavorable
17   inference.  Be cautious.  Have authorization for gathering
18   materials.
19         Where is the don't kill anyone?  Don't hurt anyone?
20   Don't threaten anyone?
21         When does it end with, have authorization for
22   payment for gathering material?
23         I thought he was being sent out to look for
24   witnesses.  Right?  What materials are we talking about?
25         Okay.  So maybe it's not the most artfully drafted

Rebuttal   summation   -   Fodeman          1893

1   email in the world.  Maybe it could have been stronger.  But

2   you think the guy is a lunatic?  He's crazy, a liar, off the

3   reservation, right?  So what do you talk about?  This is

4   June 13th, two days after the June 11th meeting when he's

5   going off the reservation.  What do you talk to him about the

6   next meeting?  Do you say hey, Selwyn, relax.  You can't go

7   crazy.  This is America.  You can't hurt people.  You can't

8   harm people.  Can't buy people.

9            What are we talking about in the next meeting?  I

10  don't think he'd mind if you did violence to Allison.  Really

11  talked him off the ledge with that one.

12           Robert Simels took that stand.  He took an oath.  He

13  told you, among other things, I was never going to call

14  Fineman.  He was never going to call him.  Yes, I talked to

15  him about testifying.  Not once, not twice, not three times,

16  not four times, not five times, but at every single meeting

17  that we had, I talked to him about that issue.  Every single

18  one.  But I didn't mean it.  I was lying.

19           Take a look.  These are all the times that he talked

20  about calling Selwyn Vaughn as a witness.

21           Yes, I was coaching him.  I was telling him to say

22  things that weren't true.  But you can't suborn perjury for

23  someone you are not going to call.

24           What are you going to say when you are caught

25  suborning perjury?  It's like the guy who is caught with a gun

1  in his pocket by the police and he says, oh, officer, great, I

2  am glad you stopped me.  I was just bringing this down to the

3  precinct.

4          What are you going to say?

5          He's got -- invested 3800 hours in the case.  He's

6  got a trial coming up.  He thinks the guy is a liar and a

7  lunatic.  He's going to waste time prepping this guy who's

8  never going to testify?  What does he tell you?  I wanted to

9  flatter him.  Illegal alien, wanted to flatter him.  Come down

10  to federal court and be a witness.

11          Two words I have to say you should think about when

12  considering whether Selwyn Vaughn was not going to testify.

13          Says who?

14          Says who?

15          Says Robert Simels?

16          Don't get distracted by this whole Rule 15 motion

17  that they put on the screen yesterday.  That motion is asking

18  the Judge:  Judge, these people aren't coming to the United

19  States.  They won't be at the trial.  We need to video them in

20  Guyana.

21          Guess what?  It's not a witness list.  It's not who

22  we are going to call at the trial.  It's who do we need to

23  videotape in advance of trial because they are not in America.

24  They can't get into America.  They don't have visas or they

25  are unwilling to come.

Rebuttal   summation   -   Fodeman                1895

1          I'm sorry.  Is Selwyn Vaughn in Guyana or is he in

2     the United States?

3          They want you to believe well, obviously I wasn't

4     going to call this guy.  He is not on the Rule 15 motion.

5          Why would he be?

6          Sometimes you can say things, but that doesn't make

7     it true.

8          How about this, ladies and gentlemen?  He says, it's

9     a sting.  Again, says who?  Robert Simels?

10         Let me tell you why it's not a sting.

11         This is why it's not a sting.  Remember what he is

12    saying.  Yes, you caught me on tape trying to bribe this lady,

13    talking to Selwyn Vaughn, bribe her, bring her in saying false

14    things.  It was all a lie.  It was a ruse.  It was a sting.  I

15    was going to bring her in, tape her, run to the government and

16    look at your lying witnesses.  That was the plan from the

17    get-go, he told you, right from the start, when it was first

18    raised in July.  That was the plan.

19         Really?  Really?  If that's the plan, why would you

20    not tell Fineman?  Think about that for one second.  If it's

21    really a plan, why not tell him?  Look, get this girl in and

22    we are going to do just that.  Otherwise, what's going to

23    happen?  Number one, he is going to promise her $10,000.  She

24    is going to show up and she won't get jack.  Right?

25         (Continued on next page.)

GR        OCR        CM        CRR        CSR

Fodeman Summation                    1896

1      MR. FODEMAN:  He's dealing with her and reporting

2   back conversations she's saying.  Why not give him the

3   recorder?  You send a recorder down to Shoo Loo from Guyana to

4   record people saying bad things.  Look, she may never come

5   into my office, but at least let's get her on tape with Selwyn

6   Vaughn.

7          Was that ever done?  The reason why he didn't have

8   Selwyn Vaughn -- he didn't give Selwyn Vaughn the money, as

9   Mr. Shargel suggested he ought to.  It was really a bribe.  He

10   didn't want Selwyn Vaughn running off.  He didn't trust some

11   people he never met.  I am going to give five grand, and I'm

12   not going to hear from anyone.

13          He didn't want to lose it.  That's why he didn't

14   give Fineman the money.

15          If it's a sting, why is he telling the witnesses

16   through Fineman it's just a legal witness fee?  You're trying

17   to get the woman in to do something illegal, but you're

18   telling her that it's completely legal.

19          Maybe some of you thought it was okay.  Maybe Leslyn

20   Camacho thinks when a lawyer tells her, You can pay someone

21   ten thousand or five thousand to testify for someone, that is

22   okay.  You would want to tell her the exact opposite.  It's a

23   bribe; right?

24          I'm not even going to show you on T-26, T-28.  I

25   have limited time.  That's why I'm not showing you it.  Tell

ANTHONY M. MANCUSO,   CSR   OFFICIAL COURT REPORTER

1    her it's a witness fee.  Put it in her head it's fine.  When I

2    get her to come in and collect it, I'll run to the government

3    and I'll say, Look at this crime, and I won't tell the

4    government I told her there's nothing wrong with it.  If it's

5    a sting, why play hardball about the money?  You want her to

6    come in and get caught on tape; right?  You're never going to

7    pay her any money; right?  Why play hardball?  Get her numbers

8    down.  Tell her it's too expensive.  It's too much.  What if

9    she walks away?  There goes your sting.  You're out of luck.

10          How come no investigator?  We heard about a team of

11   licensed investigators.  Who was the investigator on September

12   10?  Could have been an eyewitness to this bribe.  Where was

13   he?  How about Deb Martin being there?  Not there.  She would

14   have been a eyewitness to this bribe.

15          Why not call law enforcement in advance, like their

16   own expert said he did.  He walked out of that jail.  What did

17   he tell you his first call was?  His first call was to the

18   U.S. Attorney's Office.  It's not like you're running to the

19   prosecutor who is on your case.  You can run to a different

20   prosecutor and keep up a firewall.  Why not do that?  That

21   way, no one can come around later and say, Hey, you were

22   bribing her.  At least this way, you've covered yourself.

23          He doesn't do that.  He says, I didn't have the

24   evidence, I didn't have the evidence yet?  Her telling you

25   that she want to be bribed is evidence, that's evidence.  At

Fodeman Summation                    1898

1   minimum, you would want a document that you're about to do a

2   sting.  You would want to cover yourself.

3           In all those documents, in those computers, if this

4   was a sting, don't you think there would be a shred, one iota

5   of evidence that this was going to be a sting?  Something, a

6   memo, all these detailed memos where it was discussed that

7   this was going to be a sting.  The defendant don't have any

8   burden do produce anything.  Don't you think there would be

9   some evidence to support this claim?

10          Finally -- I don't know that's finally, I'm getting

11  close to "Finally" -- $2500 in the drawer.  Is that just dumb

12  luck?  He tells you this was not to pay Leslyn Camacho.  It

13  happens to be exactly half of $5,000.  Coincidence?  Maybe.

14  You may have noticed in his opening statement, Mr. Shargel

15  didn't even mention this 2500.  He said all that there was

16  there was $40.  You might have thought that he was not going

17  to bribe her until this came out.

18          While we're on the topic, don't you think there

19  would be some evidence?  We have these detailed billing

20  records.  He tells you, I got that money from another client.

21  Where is the proof of that?  Again, no burden to do anything.

22  You think if this came from some other source, not Khan, we

23  would be hearing about it?

24          And what's right next to that?  Khan money.  The

25  blue Post-It note.

Fodeman Summation                    1899

1        And, finally, the September 5 memo.  This is the
2   memo that says September 5, five days.  The sting plan has
3   been in the works for over almost two months by now, and they
4   write -- I should say Ms. Irving writes in a memo directed to
5   Mr. Simels, Roger wants to know if we can tape the meeting.
6   They say, This is great.  This proves that we were going to
7   tape the meeting.  It's right here.
8        No, it doesn't.  It proves the opposite.  This was
9   in place for two months; right?  The whole plan, the whole
10  plan, according to Mr. Simels, was to get her in and tape her,
11  this meeting with their client every single week, oftentimes
12  more.  They are talking about Leslyn Camacho and her meeting.
13       The fundamental point of the whole sting is to catch
14  her on tape.  Why, just five days before, does Roger Khan say,
15  We should tape it?  That was the whole thing, tape it.
16  Because he knows that the whole reason that they are bringing
17  her in is to bribe her, not to sting her.  He wants to get her
18  on tape, so just like he has the affidavit, he'll have more
19  leverage on her down the road.
20       And if that was not all enough, we have the bug from
21  the jail.  If that was not enough to prove the defendant's
22  claim that he was not trying to do a sting, then nothing is.
23       The defendant talked about the power of suggestion.
24  You listen to the tape.  You listen to them with the
25  transcript, you listen to it without.  You listen for the

ANTHONY M. MANCUSO,   CSR   OFFICIAL COURT REPORTER

1   word "Leslyn," and see if the word "Leslyn" isn't in there.

2          And what about linking this to Fineman?  What about

3   that line?  How come there's nothing on the tape about the

4   sting that's coming up?

5          And why in the world, if these -- if this is really

6   going to be a sting and those Title III -- I'm sorry -- those

7   recordings at the jail are really about -- remember what they

8   were saying?  She has to lower the amount.  I wrote her a

9   stinging letter.  He's talking about the prosecutor, according

10  to Mr. Shargel.  If that's really not about lowering the

11  amount of the bribe, why, on the very, very next day, the very

12  next day, he said exactly what they are talking about?  So, I

13  have to get the numbers down.  Is that just a coincidence, a

14  horrific coincidence for Mr. Simels?

15         Please.

16         Let me talk to you a little bit about Ms. Irving.

17  The gist of her defense is, I didn't know what was going on.

18  I wasn't around for most of the meetings, that ^ I was either

19  on jury duty or in Europe.  Or, I was text-messaging to

20  Guyana.  I was walking around the office.  I didn't know what

21  was going on.  Yes, I did a lot of work on the Khan case, and

22  I discussed it all with the client, and what I did was all

23  legitimate.  The rest, I was doing what I was told,

24  mindlessly.  I thought Fineman was just an investigator.

25         First of all, before we go any further, did you ask

Fodeman Summation                         1901

1   yourself there, If nothing was wrong with what was going on in

2   those meetings, nothing was wrong with it, as counsel would

3   suggest, why is Mr. Solano so eager to establish his client

4   wasn't at them?  Right?  How many footsteps did we hear?

5   Right?  If nothing's wrong with what's going on, then why do

6   you have to not be there?  I'll put that aside.

7            She can't possibly think that Selwyn Vaughn is just

8   an investigator.  Just another Deb Martin.  Really?  Really?

9   Do you have conversations like this with your client about Deb

10  Martin?  Don't do anything stupid in terms of the Clarke's

11  mother.  Hey, Deb Martin, don't do anything stupid.

12           This memo proves that she was the one who was

13  talking to the client about the plans with Selwyn Vaughn,

14  Clarke's mother, and these other witnesses.  She's the one

15  reporting back.  She's the conduit.  She's the one who conveys

16  the information both ways, to Robert Simels from Robert

17  Simels, to Roger Khan from Roger Khan.  That's her role.

18           No one's saying that she came up with this plan.  No

19  one is saying she would have even done it if she worked for

20  another lawyer.  No one says she's the mastermind.  No one is

21  saying if she didn't work there, it wouldn't have happened,

22  anyway.  Rather than stop what she saw, she joined in.  She

23  made a choice.  She made a decision.  It's her decision.

24           Decisions have consequences.  She's an attorney.

25  Talk about five minutes as an attorney.  She knows better.

ANTHONY M. MANCUSO,   CSR   OFFICIAL COURT REPORTER

1   When she's witnessing people being coached, you can't stand

2   silent, even if you think you're going to lose your job.

3   Tough choice to make, I grant you that.  She was in the uneasy

4   spot, but her choice to make.  Lots of people commit crimes

5   because of who they are associated with.  You don't get to

6   say, Well, I was just running around with the wrong crowd, so

7   it's not my fault.  You making choices in life.  You have to

8   live with them.

9           And this, Mr. Solano didn't address at all.  RK says

10  he wants to wait until the judge rules on the 404(b) motion

11  before writing down what Fineman should say.  He doesn't

12  address it, because there's no explanation for it.  It's

13  coaching a witness.

14          By the way, Fineman is not really testifying.  Why

15  is she writing that?  It's not the quantity.  She's not being

16  charged with obstructing justice for an hour.  That's not the

17  charge.  She's not being charged with being in a meeting where

18  obstruction of justice happened.  She's being charged with

19  helping to obstruct, an attempt to obstruct justice and

20  conspiring to obstruct justice.

21          It's not the quantity of the time she's on the tape,

22  it's the quality.  It's the time she's in the jail where we

23  don't have recordings, the time when she's going back and

24  forth reporting this information.

25          She says she doesn't know what's going on.  I just

Fodeman Summation                    1903

1   was mailing tapes.  Listen to the conversation before she's

2   told, Mail the tapes.  Tell them to go grab these guys.  Do

3   you believe she would say that to Deb Martin, really?  Really?

4   Mr. Solano said this was a nightmare for her.  I'm sure it is.

5   You might have sympathy for her.  You may.  The judge will

6   tell you you can't decide the case on sympathy.  You decide it

7   on the evidence.

8            THE COURT:  How much more do you have?

9            MR. FODEMAN:  Five minutes, your Honor.

10           THE COURT:  Okay.  Wrap it up.

11           MR. FODEMAN:  Just a word on the wiretaps, and then

12  I'm winding up.

13           Here is the defense:  The government made me do it.

14  They told me to do it.  Okay.  If they didn't tell me to do

15  it, I didn't know what I had.  All right.  If I knew what I

16  had, it didn't work.  If I knew all that, I only brought in

17  half at a time, and he brought the other half.  And finally,

18  It was in my boss's office.  The government made me do it.

19           It sounds terrible.  Obviously, if that's what

20  happened here, they cannot be convicted 100 percent if they

21  were tricked into bringing the stuff here to comply with the

22  discovery.  Agreed, not guilty.  That's not the evidence.

23  That's not evidence in the case.

24           We showed you all these letters back and forth.  As

25  if there's a discovery request.  Please show us the equipment,

Fodeman Summation                1904

1   and then he's trying to comply.  I can't do it now, because I

2   don't have the time.

3          Look at these letters.  308-C 308-C.  And look at

4   the last one.  It's from the government.  And what does it

5   say?  "Furthermore" -- this is August 14, had the equipment

6   now for two months --  "Furthermore, you have ignored our

7   requests to have our computer expert inspect the original

8   recordings.  The recordings, not the equipment, the original

9   recordings is what's being asked for.

10         They ignored it.  They are not trying to comply.

11  You can say things, but it doesn't make it so.

12         How about that, I didn't know what I had?  I'm not

13  going to talk about it.  You know they knew exactly what they

14  had.  Besides, it seems a little inconsistent.  I was bringing

15  the stuff here because it was wiretap equipment and I made

16  these tapes, but I didn't know it was wiretap equipment.

17  Fine.  It didn't work.  Total red herring.  Listen to the

18  judges's instruction on this.

19         This is the blackberry; right?  Designed to send

20  e-mails, make calls; right?  Take the battery out, right, what

21  is it designed to do?  Still designed to send e-mails and make

22  phone calls.  The issue is design, not operability.  If they

23  were charged with possessing operational equipment that could

24  actually do stuff, not guilty.  That's not the crime.  If they

25  turn off a service, still designed.  You bring it to Europe,

1    doesn't work, still designed.  That's the issue.  I only

2    brought in half, and it was not in my office.  I don't know

3    what to say about that.

4            Ladies and gentlemen of the jury, these defendants

5    would have you believe that they are victims, they are the

6    victims of a manipulative Selwyn Vaughn.  They confounded

7    them, to use their word.  They are victims of the client who

8    didn't pay his own.  They are the victims of Ms. Waite's, from

9    the GEO, lies.  They are victims of the government, who

10   tricked them to bringing in this wiretap equipment.  They are

11   the victims of the government, who can't come up with clear

12   tapes.  They can launch a shuttle, but they can't come up with

13   clear tapes.  They are the victims of the overzealous

14   investigators.  They are the victims of over-analyzing

15   government lawyers.

16           They are the victims of their own ill-chosen words.

17   Make no mistake, ladies and gentlemen of the jury, these two

18   people before you, they are not victims.  They seek to blame

19   everyone but themselves, but they don't want to look in the

20   mirror.  They are here because they made choices, and they

21   decided they had to win at all costs.

22           Mr. Shargel said Robert Simels was the kind of

23   lawyer that his client would appreciate.  I'm sure his client

24   appreciated the efforts that these defendants made.  I'm not

25   sure you would appreciate it if you happen to have the

1    misfortune of being a witness in a case against Mr. Simels or

2    Ms. Irving.

3            These defendants ignored their oaths as lawyers, and

4    rather than just defend criminals, which is what they should

5    be doing, they decided to become criminals.  They forgot the

6    obvious basic, fundamental principle is to not commit crimes.

7    Lawyers cannot commits crimes.

8            Now, ladies and gentlemen, now, for two and a half

9    weeks, it's time for these defendants to be held accountable

10   for their actions, for the breach of the trust that was

11   afforded to them as attorneys, and hold them responsible for

12   their choices, not because Mr. Brownell and Mr. D'Alessandro

13   or Mr. Mazzella or me say so, but because the evidence says

14   so.

15           Thank you, ladies and gentlemen of the jury.

16           THE COURT:  Thank you, Mr. Fodeman.

17           Can I see counsel at sidebar?

18           (Sidebar.)

19           THE COURT:  The reference to the wiretap, the

20   suppressed wiretap tape in the summation, in this rebuttal,

21   reminded me that when it came in, the only instruction I gave

22   was the one you requested, which relates to the audibility.

23           MR. SHARGEL:  I didn't want the impeachment

24   instruction, if that's where you're going.

25           THE COURT:  That's my question.

1          MR. SHARGEL:  I have another point.

2          Judge, I appreciate your remarks about waiting for a

3    jury note, but now the issue has been framed, and Mr. Fodeman

4    expressly argued that it didn't matter whether the equipment

5    was working or not.

6          We submitted briefs to your Honor on that question.

7    I stand by that proposition, that the statutory language makes

8    clear that it has to be capable of intercepting at a time of

9    possession.  That can be inferred about what you say, but with

10   all due respect, I don't think in light of the rebuttal

11   summation, that it's clear enough, because if the jury simply

12   hears your Honor's instructions, and the last words from

13   Mr. Fodeman, from the lawyers, says it doesn't matter whether

14   it works or not, drawing an analogy to his blackberry, I think

15   there can be a conviction on a wrongful basis.  The statutory

16   language is in the present tense.  It's clear, and I think

17   that understanding, as lawyers, what the statute requires, I

18   think it's in the charge, but I don't think it's clear enough,

19   and we've had a lawyer say that it doesn't have to be working.

20   I think it should be clarified.  That's my position.

21         THE COURT:  The charge that I have in my hand was

22   unobjected to.  What precisely do you want me to say now?

23         MR. SHARGEL:  In the plainest of language, to say

24   that the equipment had to have been working and capable of

25   intercepting communications for Count Twelve at the time that

Charge of the Court                1908

1   it was brought into the country, and Count Thirteen at the

2   time that it was possessed in his office.

3             THE COURT:  Denied.

4             (In open court.)

5             THE COURT:  Okay.  You have heard all the evidence.

6   You've heard the arguments of counsel.  It's my job now to

7   instruct you on the applicable law.

8             You can't base your verdicts on any view of the law

9   other than the one that I give you in these instructions.  As

10  all the lawyers told you during their summations, if there

11  appears to you to be any difference between the law as stated

12  by counsel and the law that I state to you now, of course,

13  it's my instructions on the law that you must follow.

14            Do not single out any one of these instructions as

15  alone stating the law.  Rather, when you retire in a little

16  while to commence your deliberations, I want you to consider

17  my instructions to you as a whole.

18            I'll going to begin by giving you -- and just so you

19  know, I'm guessing this is going to last about forty-five

20  minutes, my charge -- I'm going to give you some instructions

21  about your role and the way you are to review the evidence in

22  the case.  Then I'm going to give you instructions about the

23  particular crimes charged, and the elements the government

24  must prove with respect to each, and then I'll briefly give

25  you some instructions about your deliberations.

Charge of the Court                    1909

1        In charging you on the applicable law, let me be

2   clear that I am expressing no opinion to you about how you

3   should decide the facts of the case.  That's a task that, as I

4   mentioned this to you before, that's left exclusively to the

5   jury.  Nothing I've said or done in the course of the trial,

6   or, for that matter, during the course of these instructions,

7   is intended to be taken by you as expressing any opinion on my

8   part about the facts, or the credibility of the witnesses, or

9   the weight to be given by you to any of the evidence.  You are

10   the sole judges of the facts of the case.

11        I'm the judge of the law.  You must find the facts

12   in accordance with the law as I give it to you now.

13        In determining the issues of fact presented in this

14   case, it's your duty as jurors to consider all the evidence

15   before you with complete impartiality, and to render your

16   verdict without bias or prejudice or sympathy as to either of

17   the defendants or the government.  These parties, like all

18   parties who bring their disputes before this court, are equal

19   before the law, and you can assume, you should assume that the

20   case is important to both the government and to each of the

21   defendants.

22        The defendants Robert Simels and Arienne Irving are

23   before you because they have been charged in an indictment

24   with violations of federal law.  The charges are just that.

25   They are accusations.  They are not evidence.  The defendants

ANTHONY M. MANCUSO,  CSR  OFFICIAL COURT REPORTER

Charge of the Court                    1910

1   have pleaded not guilty to the charges against them.  The

2   government must therefore prove those charges beyond a

3   reasonable doubt.

4          The government's burden to prove the defendants

5   guilty beyond a reasonable doubt never shifts to the

6   defendants.  The defendant in a criminal case need not call

7   any witness nor produce any evidence.  The law presumes each

8   defendant to be innocent of the charges against him or her,

9   and each defendant must be presumed by you to be innocent

10  throughout your deliberations.  Only if you as a jury are

11  satisfied that the government has proved the defendant guilty

12  beyond a reasonable doubt as to a particular charge will the

13  presumption of innocence cease to operate.  If the government

14  fails to prove a defendant guilty beyond a reasonable doubt,

15  you must find him or her not guilty.  The presumption of

16  innocence alone is sufficient to require that a defendant be

17  found not guilty unless you, as jurors, are unanimously

18  convinced beyond a reasonable doubt of that defendant's guilt

19  on that particular charge.

20         What is a reasonable doubt?  The words almost define

21  themselves.  It's a doubt that's based upon reason and common

22  sense.  It's a doubt that a reasonable person has after

23  carefully weighing all of the evidence or lack of evidence.

24  It's a doubt that would cause a reasonable person to hesitate

25  to act in a matter of importance in his or her own personal

Charge of the Court                    1911

1   life.  Proof beyond a reasonable doubt must therefore be proof
2   of such a convincing character that a reasonable person
3   wouldn't hesitate to rely and act upon it in the most
4   important of her own affairs.  A reasonable doubt is not a
5   caprice or a whim, a reasonable doubt is not a speculation or
6   a suspicion.  A reasonable doubt is not an excuse to avoid the
7   performance of an unpleasant duty.  It is not sympathy.  The
8   law doesn't require the government prove guilt beyond all
9   possible doubt.  Proof beyond a reasonable doubt is sufficient
10  to convict.
11         If, after a fair and impartial consideration of all
12  the evidence or lack of evidence concerning a particular
13  charge against a particular defendant, you have a reasonable
14  doubt, it is your duty to acquit that defendant of that
15  charge.  On the other hand, if, after a fair and impartial
16  consideration of all the evidence, you are satisfied of the
17  defendant's guilt beyond a reasonable doubt, you should vote
18  to convict.
19         I remind you that the defendants are being tried
20  here together, but in reaching your verdicts, you must bear in
21  mind that guilt is individual.  Your verdict as to each
22  defendant must be determined separately with respect to that
23  defendant, solely on the evidence, or lack of evidence,
24  presented against him or her and without regard to the guilt
25  or innocence of anyone else.

Charge of the Court                 1912

1           Your verdicts in the case must be based on the

2    evidence or lack of evidence.  The evidence in this case

3    consisted of the testimony of the witnesses, both on direct

4    and cross-examinations; the evidence that the -- the exhibits,

5    rather, that were received in evidence by me; and the

6    stipulations by the parties that certain facts can be

7    considered to have been proved.

8           The statements made by the lawyers to you in

9    openings and closing statements are not evidence.  Questions

10   as to which I sustained an objection are not evidence, and any

11   evidence that I ordered stricken during the course of the

12   trial is not evidence and must be entirely disregarded by you

13   during your deliberations.

14          As a general matter, the law recognizes two types of

15   evidence from which you can properly find the facts of the

16   case.  One is direct evidence, such as the testimony of an

17   eyewitness to an event.  The other is indirect or

18   circumstantial evidence, which is proof of a chain of

19   circumstances that points to the existence or nonexistence of

20   some other fact or facts.  A simple example we use here of

21   circumstantial evidence is if you were to assume you came to

22   court on a nice, bright, dry, sunny day, and then after

23   several hours here in the courtroom, you saw people coming

24   through those rear doors, wearing wet raincoats and shaking

25   wet umbrellas.  And if you were to further assume that I shut

Charge of the Court                    1913

1   the blinds so you couldn't see out the window, well, in those

2   circumstances, you would have no direct evidence that it was

3   raining.  You couldn't observe that, but you might infer it

4   from the circumstances you observed in the courtroom.  You

5   might infer that the weather had changed and it had begun to

6   rain outside.  That's what circumstantial evidence is all

7   about.  Based on facts that you find to have been established,

8   you draw such reasonable inferences or conclusions as seem

9   justified to you in light of your experience and good judgment

10  and common sense.

11          The law makes no distinction between direct and

12  circumstantial evidence.  You can consider and rely on both.

13  What the law requires is that before any defendant is

14  convicted of a crime, the jury be satisfied of that

15  defendant's guilt beyond a reasonable doubt based on its

16  assessment of all the evidence in the case.

17          In alleging dates, the charges refer to "on or

18  about," "on or about," or "between" particular dates.  I may

19  make reference to those dates in my instructions to you.  The

20  proof doesn't need to establish with certainty the exact date

21  of an alleged offense.  The law requires only a substantial

22  similarity between the dates alleged and the dates established

23  by the evidence.

24          As jurors, you are the sole judges of the

25  credibility -- of the believability -- of the witnesses, and

Charge of the Court                    1914

1    of the weight that the witnesses' testimony deserves.  You

2    should carefully examine all the testimony given, the

3    circumstances under which each witness testified, and every

4    matter in evidence that tends to show whether or not a

5    particular witness is worthy of your belief.  If you find that

6    any statement made by a witness from the witness stand was

7    false in whole or in part, you can disregard the particular

8    testimony you find was false, or, if you want, you can choose

9    to disregard that witness's entire testimony as unworthy of

10   your belief.

11            Your decisions in this regard, your credibility

12   decisions, may depend on how the witness impressed you when

13   the witness testified.  Was the witness candid and forthright,

14   or did the witness seem to be hiding something or seem to you

15   to be evasive or suspect in some way?  You may wish to

16   consider how the witness's testimony on direct examination

17   compared with the witness's testimony on cross.  Was the

18   witness consistent in the testimony given, or were there

19   contradictions?  Did the witness appear to you as someone who

20   knew what he or she was talking and was trying to report his

21   or her knowledge to you accurately?  How much you choose to

22   believe a witness may be influenced by any interest the

23   witness may have in the outcome of the case or any bias that

24   you may have perceived the witness to have had.  In this case,

25   one of the defendants, Robert Simels, testified and was

ANTHONY M. MANCUSO,  CSR  OFFICIAL COURT REPORTER

Charge of the Court                    1915

1   subjected to cross-examination like any other witness.  You

2   should examine and evaluate his testimony just as you would

3   the testimony of any witness who has an interest in the

4   outcome of the case.

5          You heard the testimony of law enforcement

6   witnesses.  As I mentioned to you during jury selection, the

7   mere fact that a witness is employed as a law enforcement

8   officer does not make that witness's testimony deserving of

9   more or less consideration or greater or lesser weight than

10  the testimony of a non-law-enforcement witness.  At the same

11  time, it's legitimate for defense counsel to question the

12  credibility of a law enforcement witness.

13         At bottom, it's your decision, after reviewing all

14  the evidence, whether to credit the testimony of a law

15  enforcement witness and, if so, what weight to give it.

16         You heard the testimony of an expert witness,

17  Anthony Ricco.  Experts are witnesses who, by education or

18  experience, have acquired learning or experience or expertise

19  in a specialized area of knowledge.  You should give the

20  expert opinions that were received in evidence in this case as

21  much or as little weight as you think they deserve.

22         You heard the testimony of Selwyn Vaughn, a paid

23  informant who was employed by the government to assist in the

24  investigation of the defendants.

25         The government is permitted to use and to compensate

Charge of the Court                    1916

1   paid informants during its investigations and prosecutions.

2   However, because such informants have a financial incentive to

3   curry favor with the government, their testimony should be

4   scrutinized by you with care and viewed with caution by you

5   when you decide how much of it to believe and what weight to

6   give it.  You should asks yourselves whether the informant

7   would benefit more by lying or by telling the truth.  If you

8   believe that the witness was motivated by hopes of personal

9   gain, was the motivation one that would cause him to lie, or

10  was it one that would cause him to tell the truth?  Did his

11  motivation color his testimony in any way?

12          On the other hand, your own personal feelings about

13  the government's use of confidential informants are

14  irrelevant, and should not enter into your deliberations in

15  any way.  If you are satisfied beyond a reasonable doubt that

16  a particular defendant committed a particular crime charged,

17  the government's use of an informant is irrelevant to your

18  determination.

19          There was testimony during the trial that attorneys

20  interviewed witnesses in preparation for and during the course

21  of the trial.  You must not draw any unfavorable inference

22  from that fact.  To the contrary, attorneys are obliged to

23  prepare their cases as thoroughly as possible, and in the

24  discharge of that responsibility, they may properly interview

25  witnesses before the trial and indeed, as necessary,

Charge of the Court                1917

1   throughout the course of the trial.

2           The defendant Arienne Irving did not testify in the

3   case.  Under our Constitution, a defendant has no obligation

4   to testify, or to present any other evidence, for that matter.

5   I remind you it's the prosecution's burden the prove a

6   defendant guilty beyond a reasonable doubt, a burden that

7   remains with the prosecution throughout the trial and never

8   shifts to a defendant.  A defendant is never required to prove

9   that he or she is innocent, and, of course, is never required

10  to take the witness stand.

11          You may not attach any significance to the fact that

12  Ms. Irving chose not to testify.  No adverse inference against

13  her may be drawn by you because she chose not to take the

14  witness stand.  You can't consider this against her in any way

15  during your deliberations.  Indeed, I order you not even to

16  discuss the fact that Ms. Irving did not testify, during your

17  deliberations.

18          You heard testimony and argument by counsel about

19  other participants in the events giving rise to this case who

20  are not defendants in the case.  Don't speculate about the

21  reasons for that.  The only issue in this case is whether the

22  government has proven the charges against these defendants

23  beyond a reasonable doubt.  Also, the question of the possible

24  punishment of a defendant, should that become necessary, is of

25  no concern to the jury, and it should not in any sense enter

Charge of the Court                    1918

1    into or influence your deliberations.  The duty of imposing

2    sentence, should that become necessary, rests exclusively with

3    me, the Court.  Your function is to weigh the evidence in the

4    case and to determine whether or not the defendants have been

5    proven guilty beyond a reasonable doubt, solely on the basis

6    of the evidence.  Under your oath as jurors, you cannot allow

7    a consideration of the punishment that may be imposed upon a

8    defendant, should he or she be convicted, to influence your

9    verdicts in any way, or in any sense to enter into your

10   deliberations.

11           As I've instructed you, you should consider both the

12   evidence and the lack of evidence at arriving at your

13   verdicts, but be aware that the government is under no

14   obligation to use all available investigative techniques.  Its

15   sole obligation, to prove the elements of the offenses charged

16   beyond a reasonable doubt.  When the parties agree on the

17   existence of a fact, their agreement is called a stipulation.

18   You the jury must accept such a stipulation and consider the

19   stipulated fact proven beyond a reasonable doubt.

20           Let me turn to the charges in the case, and since

21   they all implicate the concepts of knowledge and intent, let

22   me discuss these with you before I turn to the elements of the

23   particular charges.

24           A person acts knowingly if he acts intentionally and

25   voluntarily, and not because of ignorance, mistake, accident

ANTHONY M. MANCUSO,   CSR   OFFICIAL COURT REPORTER

Charge of the Court                    1919

1    or carelessness.  Whether a defendant acted knowingly may be

2    proven by his or her conduct and by all the facts and

3    circumstances surrounding the case.

4            A person acts intentionally when he acts

5    deliberately and purposefully.  That is, a defendant's acts

6    must have been the product of his conscious objective rather

7    than the product of mistake or accident.  It's sufficient that

8    a defendant intentionally engages in the conduct that the law

9    forbids.  By that I mean, the government is not required to

10   prove that the defendant is aware of the particular law that

11   forbids the conduct in which a defendant knowingly and

12   intentionally engaged.

13           Let me turn to the specific counts, and I emphasize,

14   again, what I said earlier, which is, you have to consider the

15   evidence separately with respect to each defendant and each

16   count.  You'll be asked to render separate verdicts with

17   respect to each defendant and each of the counts they face,

18   and you'll take back with you into the jury room a verdict

19   sheet, a separate verdict sheet, for each defendant for each

20   charge that the defendant is facing.

21           By way of overview, both defendants are charged with

22   conspiring to tamper with witnesses in the case against Roger

23   Khan by intimidation, threats and corrupt persuasion, with the

24   intent to influence or prevent the testimony of those

25   witnesses or cause them to withhold their testimony.  Then,

Charge of the Court                          1920

1    after the conspiracy charge, I'll charge you on the eight

2    separate charges of attempted witness tampering; those charges

3    are identical, except for the witness the defendants are

4    alleged to have tampered with, and with respect to one of

5    those eight counts, Ms. Irving is not charged at all.  Then

6    both defendants are charged with attempting to bribe Leslyn

7    Camacho.  Both are also charged with both importing and

8    possessing this eavesdropping equipment about which you heard

9    ample argument, and Simels alone is charged with making a

10   false statement to that prison employee, Ms. Waite, when

11   Simels went to visit David Clarke.

12          So, Count One is the conspiracy to tamper with

13   witnesses.  It charges the defendants with conspiring, between

14   August 2006 and September 2008, to tamper with witnesses in a

15   narcotics-trafficking trial of Roger Khan.  More specifically,

16   the government alleges that the defendants and others

17   conspired to corruptly persuade Selwyn Vaughn, David Clark,

18   George Allison, also known as "Chinaman," Vijai Jainarine,

19   also known as "Son," Ryan Pemberton, also known as "Sancho,"

20   Leslyn Camacho, Alicia Jagnarain, and Farrah Singh to either

21   testify in conformity with the defendant's theory of the case,

22   or to refuse to testify through the offer of money or through

23   actual or threatened violence.

24          A conspiracy is a criminal partnership, an agreement

25   involving two or more people to violate the law.  A conspiracy

ANTHONY M. MANCUSO,   CSR   OFFICIAL COURT REPORTER

1  to commit a crime is an offense distinct from the underlying

2  crime that the conspirators agreed on and intended to commit.

3          To prove the crime of conspiracy, the government

4  must prove beyond a reasonable doubt two elements:

5          First, that two or more people entered into the

6  charged conspiracy, and again, I remind you the charged

7  conspiracy is a conspiracy to intimidate, threaten and

8  corruptly persuade others with the intent to influence or

9  prevent their testimony in the Khan case or to cause them to

10 withhold their testimony in that case.

11         The second element of a conspiracy charge is that

12 the defendant you are considering became a member of the

13 conspiracy with knowledge of its criminal goal or goals, and

14 intending by his or her actions to help it succeed.

15         So, those are the two elements, and let me elaborate

16 a little bit on both of the elements for you.

17         The first is that the government must prove beyond a

18 reasonable doubt that two or more people entered into the

19 unlawful agreement charged.  One person can't commit the crime

20 of conspiracy alone, nor, I should add, can someone conspire

21 with an undercover agent or an informant, such as Selwyn

22 Vaughn.  Rather, the proof must convince you that at least two

23 persons (not including Vaughn) joined together in the common

24 criminal scheme alleged.

25         Now, the government doesn't need to prove an express

Charge of the Court                    1922

1    or formal agreement.  It doesn't need to prove that the

2    alleged conspirators stated, in words or writing, what the

3    scheme was, or what its object or purposes were, or the means

4    by which they would be accomplished.  It's sufficient if the

5    proof establishes that the conspirators tacitly came to a

6    mutual understanding to accomplish an unlawful act by means of

7    a joint design or a common plan.

8             Since a conspiracy is, by its very nature,

9    characterized by secrecy, direct proof may not be available.

10   You may therefore infer the existence of a conspiracy from the

11   circumstances of the case and from the conduct of the parties

12   involved.  In a very real sense, then, in the context of

13   conspiracy cases, actions often speak louder than words.  You

14   may, in determining whether an agreement existed here,

15   consider the actions and statements of all those you find to

16   be participants as proof that that common design existed to

17   act together to accomplish the unlawful purpose of the charged

18   conspiracy.  That is the first element, the existence of the

19   conspiracy charged.

20            The second element that has to be proved beyond a

21   reasonable doubt is that the defendant you are considering

22   became a member of the charged conspiracy with knowledge of

23   its criminal goal or goals, and intending, by his or her

24   actions, to help the conspiracy succeed.  I've explained to

25   you what it means to act knowingly and intentionally.  But in

Charge of the Court                    1923

1    the context of the conspiracy charge that you will consider, I

2    want to stress that merely being present at a place where

3    criminal conduct is underway doesn't make a person a member of

4    the conspiracy to commit the crime.  This is true even if the

5    person knows that a crime is being committed.  By the same

6    token, the fact that a person, without knowledge that a crime

7    is underway, merely happens to act in a way that furthers the

8    purpose or objectives of the conspiracy doesn't make a person

9    a conspirator.  More is required under the law.  What is

10   required is that a defendant must have participated with

11   knowledge of at least some of the purposes or objectives of

12   the conspiracy, and with the intention of aiding in the

13   accomplishment of the unlawful goals of the conspiracy.

14           In sum, a defendant with an understanding of the

15   unlawful character of the conspiracy, must have intentionally

16   engaged, advised or assisted in it for the purpose of

17   furthering the illegal undertaking.

18           Now, the extent of a defendant's participation in a

19   conspiracy has no bearing on the issue of guilt.  Each member

20   of a conspiracy may perform separate and distinct acts and may

21   perform them at different times.  Some conspirators may play

22   major roles, while others play minor roles.  A defendant need

23   not have known the identities of each and every member of a

24   scheme.  He or she need not have been fully informed as to all

25   the details or the scope of the conspiracy.  He or she need

Charge of the Court                    1924

1    not have been a member of the conspiracy for its entire

2    duration.  The key inquiry is simply whether the defendant you

3    are considering joined the conspiracy charged with an

4    awareness of at least some of its basic aims and purposes, and

5    with the intent to help the conspiracy succeed in achieving

6    those unlawful goals.

7              So, that's what it means to conspire to commit a

8    crime.  The government needs to prove beyond a reasonable

9    doubt that the charged agreement existed, and, second, that

10   the defendant you are considering became a member of that

11   agreement.

12             Let me explain to you the elements of the crime of

13   witness tampering, and that's the claim that Simels and Irving

14   are charged with conspiring to commit.  Now, these

15   instructions that I'll give you about witness tampering play a

16   role in nine of the charged crimes.  With regard to Count One,

17   they describe the crime that the conspirators allegedly agreed

18   to commit.  And in a few minutes, when I turn to Counts Two

19   through Nine, which each focus on a particular person, what

20   I'm going to tell you now describes the crime that the

21   defendants are alleged to have attempted to commit.  Okay.

22   The crime of witness tampering has two elements that must be

23   proved beyond a reasonable doubt.

24             First, that the defendant used intimidation on,

25   threatened, or corruptly persuaded another person, and,

Charge of the Court                    1925

1    second, that the defendant acted knowingly and with the intent

2    to either influence or prevent the testimony of any person in

3    an official proceeding or caused or induced any person to

4    withhold testimony from an official proceeding.

5              (Continued on next page.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Charge of Court                                    1926

1        THE COURT:   (Continuing)

2            Intimidation includes frightening a person,

3    inspiring or affecting him or her by fear or deterring him or

4    her by threats.

5            To "threaten" means to express through words or

6    gestures or both an intention to do harm.

7            A defendant need not intend to carry out the threat.

8    It doesn't matter whether the person threatened is actually

9    frightened or thinks he or she is in physical danger.  It is

10   enough that the threat had a reasonable tendency to make the

11   person fearful.

12           The phrase "corruptly persuades" means to act

13   knowingly and with a wrongful or evil purpose, to convince or

14   induce another person to engage in certain conduct.

15           Those are the elements of the crime of witness

16   tampering, which in Count One the defendants are charged with

17   conspiring to commit and in counts two through nine they are

18   charged with attempting to commit.  I will get to those

19   charges in a minute.

20           Before I leave Count One, let me tell you what I

21   mentioned to you during the trial before Anthony Ricco

22   testified, that is, conduct by a lawyer that amounts to

23   lawful, bona fide legal representation of the lawyer's client,

24   does not violate the witness tampering statute.  "Bona fide"

25   means in good faith, which is a state of mind, consisting of

Charge of Court                    1927

1   honesty and belief of purpose, faithfulness to one's duties or

2   obligations, or observance of a reasonable standard of fair

3   dealing in a given profession.

4          You heard testimony from Mr. Ricco on the subject of

5   representing defendants in criminal cases.  In considering the

6   conspiracy charged in Count One, and in considering all of the

7   attempted witness tampering charges I will be turning to in a

8   few moments, you may consider that testimony, along with all

9   the other evidence in the case, in determining whether the

10  government has proven beyond a reasonable doubt the elements

11  of the particular crime charged and that the conduct of the

12  defendant you are considering did not constitute lawful bona

13  fide legal representation.

14         As to Counts one through nine, Robert Simels argues

15  that he was providing lawful, bona fide legal representation

16  on behalf of Roger Khan.  I instruct you that it is

17  permissible for an attorney to interview a potential witness

18  against his or her client, even if that potential witness is

19  represented by counsel.  It's also permissible for an attorney

20  to retain an investigator to locate potential witnesses and to

21  make payments to obtain information, as long as those payments

22  are not made to influence a witness' testimony in court.

23         Simels, like any defendant, has the right if he

24  chooses to have me instruct the jury on his theory of defense

25  on each count.  I have done so here with regard to Count One

Charge of Court                              1928

1   and I will continue to do so as I go through the rest of the

2   counts.  However, bear in mind that a defendant has no

3   obligation to prove his theory of defense.  At all times the

4   burden is on the government to prove beyond a reasonable doubt

5   the elements of charged crime.

6            Let me turn to this string of counts that charge

7   attempt to tamper with a witness.  Those are counts two

8   through nine.

9            Count Two charges the defendants with attempting,

10  between May 2008 and September 2008, to tamper with Selwyn

11  Vaughn in the narcotics trial of Roger Khan.

12           As I mentioned a few moments ago, this offense has

13  two elements.

14           First, that the defendant attempted to corruptly

15  persuade Selwyn Vaughn.

16           And, second, that the defendant you are considering

17  acted knowingly and with the intent to influence or prevent

18  the testimony of Vaughn in the Khan trial or with the intent

19  to cause Vaughn to withhold his testimony from that trial.

20           I have already told you what it means to "corruptly

21  persuade" someone.  You will apply those instructions in

22  connection your consideration of this charge.

23           In this count, and in this seven other witness

24  tampering charges I will be discussing with you momentarily,

25  the government has not charged the defendants with the

GR      OCR      CM      CRR      CSR

1    completed crime.  Rather, it has charged them with attempting

2    to commit the crime.  Here, in Count Two, with attempting to

3    tamper with Selwyn Vaughn.

4            A defendant attempts a crime when he or she takes a

5    substantial step towards committing a crime, with the intent

6    to commit the crime.  Mere preparation, which may consist of

7    planning the offense or of devising or obtaining or arranging

8    for a means for its commission is not an attempt.  The acts of

9    a person who intends to commit a crime will constitute an

10   attempt when the acts themselves clearly indicate an intent to

11   commit the crime, and the acts are a substantial step in a

12   course of conduct planned to culminate in the commission of

13   the crime.

14           The government -- this is in connection with this

15   Count Two -- that Robert Simels and/or Arienne Irving

16   attempted to have Selwyn Vaughn testify falsely regarding, for

17   example, the nature of his job, the relationships between

18   Roger Khan and others, Khan's lack of involvement in drug

19   trafficking and other crimes, and David Clarke's activities in

20   or about 2002.

21           For his part, Simels contends that he was using

22   Vaughn to locate persons who were sources of information or

23   potential witnesses for or against Khan.  He further argues

24   that he did not attempt to cause Vaughn to threaten,

25   intimidate, or corruptly persuade any potential witness, and

Charge of Court                    1930

1   that he did not intend to call Vaughn himself as a witness at

2   Khan's trial.

3            Count Three charges attempt to tamper with a

4   witness, and it focuses on David Clarke.

5            It alleges that, between May of 2008 and September

6   of 2008, the defendants attempted to tamper with David Clarke.

7            All of these attempt charges relate to that period,

8   May of 2008.

9            No.  I guess not.

10           This Count Three, which relates to Clarke, focuses

11  on the period between approximately May 2008 and

12  September 2008.  The offense has two elements.

13           First, that the defendant attempted to use

14  intimidation on, or to threaten, or corruptly persuade David

15  Clarke.

16           Second, that the defendant acted knowingly and with

17  the intent to influence or prevent the testimony of Clarke in

18  the Khan trial, or with the intent to cause Clarke to withhold

19  his testimony from that trial.

20           I have explained to you the meaning of these words,

21  "threat," "intimidate" and the phrase "corruptly persuade."

22  They have the same meaning throughout these instructions and

23  you will apply those definitions throughout your

24  deliberations.

25           The government alleges that Simels and Irving

GR      OCR      CM      CRR      CSR

Charge of Court                                    1931

1   attempted, through Vaughn, to have Clarke either refuse to

2   testify or to testify in conformity with the defense theory of

3   the case -- for example, that he and Khan were enemies and not

4   involved together in drug trafficking -- through the payment

5   of money or through acts or threats of violence.

6           Simels argues that he was attempting to contact

7   Clarke to interview him and to obtain information relevant to

8   the case against Khan, and that he intended to dissuade Clarke

9   from offering what he believed to be false testimony against

10  Khan.  Simels argues that he did not attempt to make any

11  payments to Clarke.

12          Count Four alleges an attempt to tamper with a

13  witness, and it focuses on George Allison, also known as

14  Chinaman.

15          It focuses on the period between May of 2008 and

16  September of 2008.  The elements of this crime are the same as

17  the elements with regard to Count Three with regard to Clarke.

18          The government alleges that Simels and Irving

19  attempted, through Vaughn, to have Allison either refuse to

20  testify or to testify in conformity with the defense theory of

21  the case -- for example, to Khan's lack of involvement in drug

22  trafficking -- through the payment of money or through acts or

23  threats of violence.

24          Simels argues that he was attempting to locate

25  Allison in order to interview him to obtain information

Charge of Court                    1932

1  relevant to Khan's defense.  He argues that he did not attempt

2  to cause Selwyn Vaughn to threaten or intimidate Allison.

3         Count Five alleges attempt to tamper with Vijai

4  Jainarine, also known as Son.

5         It focus on that May to September 2008 period.  The

6  elements are the same as the elements with regard to counts

7  three and four.

8         The government alleges that Simels and Irving

9  attempted, through Vaughn and others, to have Vijay Jainarine

10 either refuse to testify or testify in conformity with the

11 defense theory of the case, through the payment of money or

12 through act or threats of violence.

13        Simels argues that he was attempting to contact

14 Jainarine in order to interview him to obtain information

15 relevant to Khan's defense and that he intended to dissuade

16 Jainarine from offering what he believed to be false testimony

17 against Khan.  Simels argues that he did not attempt to cause

18 Vaughn to threaten or intimidate Jainarine.

19        Count Six alleges attempt to tamper with the

20 witness, and it focuses on Ryan Pemberton, also known as

21 Sancho.  It focuses on the same time period.

22        The elements of this offense are the same as the

23 elements of count three through five.

24        The government alleges that Simels attempted,

25 through others, to have Ryan Pemberton either refuse to

GR      OCR      CM      CRR      CSR

Charge of Court                    1933

1    testify or testify in conformity with the defense theory of

2    the Khan case, through the payment of money or through the

3    acts or threats of violence.

4           Simels argues that he was attempting to locate

5    Pemberton to interview him to obtain information relevant to

6    the defense of the Khan case.  He argues that the draft

7    affidavit seized from his office was based on information

8    Simels believed to be true, and that the affidavit was not

9    even sent to Guyana, where Pemberton was located.  He further

10   argues that he did not attempt to have any person threaten or

11   intimidate Pemberton.

12          Count Seven alleges attempt to tamper with Leslyn

13   Camacho.

14          It focuses on that May 2008 to September 2008 time

15   period.  The elements are the same as the elements of counts

16   three through six.

17          The government alleges that Simels and Irving

18   attempted, through Vaughn, to have Camacho either refuse to

19   testify or testify in conformity with the defense theory of

20   the Khan case, by paying her money.

21          Simels argues that he was attempting to locate

22   Camacho in order to interview her to obtain information about

23   Clarke relevant to the defense of the Khan case.  He argues

24   that he intended to dissuade Clarke from offering what Simels

25   believed to be false testimony against Khan.  He further

Charge of Court                          1934

1  argues that he did not attempt to make any unlawful payments

2  to Camacho.

3          Count Eight is the second to last of the attempt to

4  tamper with a witness charges.  It focus on Alicia Jagnarain.

5          Is this right?  May 2007 or should that say May

6  2008?

7          MR. D'ALESSANDRO:  It is correct as it is written,

8  Your Honor.

9          THE COURT:  Okay.  Time period alleged is May 2007

10  to September 2008.  The elements are the same as the elements

11  I have described for you in counts three through seven.

12          The government's theory of the case is that Simels

13  and Irving attempted, through Vaughn and others, to have

14  Jagnarain either refuse to testify or to testify in conformity

15  with the defense theory of the Khan case, through the payment

16  of money or through acts or threats of violence.

17          Simels argues that he was attempting to locate

18  Jagnarain in order to interview her and obtain information

19  relevant to the defense of the Khan trial and that he intended

20  to dissuade her from offering what Simels believed to be false

21  testimony against Khan.  He further argues that he did not

22  attempt to cause Vaughn to threaten or intimidate Jagnarain.

23          Count Nine, it is the last of attempt to tamper

24  counts.  It focuses on Farrah Singh.

25          It alleges that between May of 2008 and September of

Charge of Court                     1935

1    2008, the defendants attempted to tamper with her.  The

2    elements of the crime are the same as the elements of counts

3    three through eight.

4         The government alleges that Simels and Irving

5    attempted, through Vaughn, to have Farrah Singh testify in

6    conformity with the defense theory of the case -- for example,

7    that Alicia Jagnarain is unworthy of belief -- through the

8    payment of money or through acts or threats of violence.

9         Simels argues that he was attempting to locate Singh

10   in order to interview her to obtain information relevant to

11   Khan's case.  He argues that Singh was not a potential witness

12   at Khan's trial.

13        (Continued on next page.)

14

15

16

17

18

19

20

21

22

23

24

25

GR      OCR      CM      CRR      CSR

1936

1    THE COURT:  And you'll see this from the verdict

2    sheets, but I should make explicit what was implicit when I

3    spoke to you about Count Six, which is that Ms. Irving is not

4    charged with regard to the Ryan Pemberton count.  She is not

5    included as a defendant in the attempt to tamper with Ryan

6    Pemberton.

7        Now, you heard reference to this in Mr. Shargel's

8    summation.  With regard to Count One, conspiracy to tamper

9    with witnesses, Count Three, attempt to tamper with charge,

10   Count Five, attempt to tamper with Jagnarain, Count Six,

11   attempt to tamper with Pemberton, Seven, attempt to tamper

12   with Camacho, and Eight, attempt to tamper with Singh, Simels

13   also argues that his conduct existed solely of lawful

14   behavior, and that his sole intention was to encourage, induce

15   or cause those prospective witnesses to testify truthfully

16   about Khan, or, in any event, not to testify falsely against

17   him.

18        This defense is referred to in the law as the

19   truth-seeking defense, and it's what we call an affirmative

20   defense as to which the defendant Simels bears the burden of

21   proof, and his burden is a burden of proof by a preponderance

22   of the evidence.

23        So, only as to this narrow issue, which relates to

24   the particular charges I've just identified, is it the case

25   that the defendant has a burden, the defendant Simels has a

1  burden.  In all other respects, what I have told you remains

2  true, that the government at all times bears the burden of

3  proof beyond a reasonable doubt.

4          But in this context, Simels must affirmatively prove

5  this defense by a preponderance of the evidence.  What this

6  means is that even if you find that the government has proved

7  all of the elements of those charges beyond a reasonable doubt

8  with regard to Simels, you must nevertheless find him not

9  guilty if he proves, with respect to one of those particular

10 counts, or all of them, the truth-seeking defense by a

11 preponderance of the evidence.  Simels establishes this

12 defense if he proves by a preponderance of the evidence that

13 he was only engaged in lawful conduct in that his sole

14 intention was to encourage the potential witness to testify

15 truthfully, or, in any event, not to testify falsely against

16 Khan.

17         To prove something by a preponderance of the

18 evidence means something different than proving something by

19 beyond a reasonable doubt.  But a preponderance of the

20 evidence is a lesser standard, and it means to prove something

21 is more likely true than not true.  In this context, it means

22 the greater weight of the evidence.

23         If the evidence appears to be equally balanced, you

24 must resolve this question against Simels.  However, I

25 emphasize that the fact that Simels has raised this

1938

1   affirmative defense in no way relieves the government of its

2   burden of proving all of the elements of these crimes, these

3   charges, Counts One, Three, Five, Six, Seven and Eight, beyond

4   a reasonable doubt, as I've defined that burden and the

5   elements of those crimes for you.

6           So, I'm turning away now from the attempt to tamper

7   with witnesses charges.  Let me turn to Charge Ten, Count Ten,

8   which charges the defendants with bribery of a witness, and it

9   relates to Leslyn Camacho.

10          Before you can find the defendant you are

11  considering guilty of this bribery charge, the government --

12  you must find that the government proved beyond a reasonable

13  doubt two elements.  First, that between May of 2008 and

14  September 2008, the defendant you are considering indirectly

15  offered or promised money to Leslyn Camacho, and, second, that

16  the defendant you are considering did so for or because of the

17  testimony to be given by Ms. Camacho in the trial of Roger

18  Khan.

19          Again, I remind you you must consider the evidence

20  separately with regard to each defendant on each count.  The

21  bribery statute makes no distinction between offering,

22  promising or giving a bribe.  The mere offer or promise of a

23  bribe is just as much a violation of statute as the actual

24  giving of a bribe.  However, a defendant must actually intend

25  to offer a bribe.  If he or she is only trying to trick the

1939

1    offeree into believing that a bribe has been offered, the

2    defendant's conduct does not violate the bribery statute.

3    Simels argues that he did not intend to pay a bribe to

4    Camacho, and that the words spoken to Vaughn were a ruse to

5    induce Camacho to come to his office.

6              Count Eleven, the only defendant in this count is

7    Simels, and it charges that on March 27, 2008, he falsely

8    stated to a representative of GEO Group that he represented

9    David Clarke.  This GEO Group is a private company managing a

10   detention facility pursuant to a contract with the United

11   States Bureau of Prisons, which is part of the Department of

12   Justice.

13             In order to prove the defendant guilty of this

14   count, the government must prove beyond a reasonable doubt:

15   First, that Simels made the statement he's charged with

16   making, which is that he actually represented David Clarke;

17   second, that the statement or representation was material;

18   third, that it was false; fourth, that he knew it was false,

19   Simels knew it was false; and fifth, that the statement was

20   made in a matter within the jurisdiction of the government of

21   the United States.

22             Most of those elements are self-explanatory, but let

23   me say that a fact is material if it could have influenced the

24   government's decision or activity.  The government is not

25   required to prove that the persons at the jail actually relied

1   on the statement, but it must prove beyond a reasonable doubt

2   the materiality of the statement at issue, and that is, that

3   it could have influenced the government's decisions or

4   activity.  To be within the jurisdiction of the government of

5   the United States means that the statement must concern an

6   authorized function of the government.  Simels argues in

7   connection with this charge that he did not make a false

8   statement to an official at the GEO Group detention facility.

9          Counts Twelve and Thirteen relate to this equipment

10  that's down on the table.  Count Twelve alleges that between

11  September of 2007 and June of 2008, the defendants imported

12  eavesdropping equipment.

13         Before you can find either defendant guilty of this

14  crime, the government must prove beyond a reasonable doubt

15  each of the following elements:

16         First, that the defendants intentionally sent

17  through the mail or the defendant that you are considering

18  intentionally sent through the mail or sent or carried in

19  foreign commerce a device;

20

21         Second, that when the device was sent, its design

22  rendered it primarily useful for surreptitiously intercepting

23  wire, oral or electronic communications;

24         Third, that when the defendant you are considering

25  sent the device, he or she knew or had reason to know that the

1941

1  device -- that the design of the device rendered it primarily

2  useful for this purpose

3          Those are the three elements.

4          "Foreign commerce" means commerce between anyplace

5  place in the United States and any place outside the United

6  States.  A device is primarily useful for a particular purpose

7  if most people who obtain the device use it for that purpose.

8          An interception is surreptitious when it's

9  accomplished without the consent of all parties to the

10 intercepted communication. "Wire communications" include

11 cellular telephone calls.

12         Count Thirteen also pertains to this equipment.  It

13 alleges that during the same time period, the defendants

14 possessed the alleged eavesdropping equipment.

15         Before you can find the defendant you are

16 considering guilty of this charge, the government must prove

17 beyond a reasonable doubt that the defendant you are

18 considering:

19         First, intentionally possessed eavesdropping

20 equipment or a device;

21

22         Second, that at the time of the possession, the

23 design of the device rendered it primarily useful for

24 surreptitiously intercepting wire, oral or electronic

25 communications;

1942

1

2          Third, that at the time of the possession, the

3    defendant you are considering knew or had reason to know that

4    the design of the device rendered it primarily useful for that

5    purpose;

6

7          Fourth, that at the time of the possession, the

8    defendant knew or had reason to know that the device had been

9    sent through the mail or sent in foreign commerce.

10          I've explained to you the key phrases, "primarily

11    useful" and "surreptitious" already.  They have the same

12    meaning here.

13          With regard to possession, the law recognizes two

14    types of possession:  Actual possession, which is when a

15    person physically holds something.  The other is what we call

16    constructive possession, which means you don't physically hold

17    it, but you have the power and the intention to exercise

18    control over it, dominion over it.

19          So, for example, a person who keeps valuables in a

20    safe deposit box or a bank wouldn't have physical possession

21    of the bank vault, but would have constructive possession of

22    those items.  A person can have constructive possession of

23    something without ever actually touching it, and constructive

24    possession can arise even when someone else is actually

25    physically possessing the item in question.

1    Whereas possession, actual or constructive, has to

2    be proved beyond a reasonable doubt, proof of ownership

3    doesn't.

4    As to these counts, Twelve and Thirteen, Simels

5    argues that he didn't know or have reason to know that the two

6    Panasonic laptop computers and bases that are the subject of

7    these counts were capable of surreptitious interception of

8    wire, oral or electronic communications at the time he

9    imported them or possessed them.

10    He argues that in fact, they were not capable of

11    surreptitious interception at the time that he imported or

12    possessed them.  He argues that his sole intention was to

13    utilize the recordings made using that equipment to defend

14    Khan in his criminal case, and to provide the government with

15    access to the equipment, and to inspect it in advance of the

16    narcotics-trafficking trial of his client Roger Khan.

17    All right.

18    Those are the charges and the elements of the

19    charges.

20    In a few minutes, you're going to retire and

21    commence your deliberations.  Traditionally, you need a

22    foreperson for your deliberations in order for them to proceed

23    in an orderly way, and traditionally, Juror No. One acts as a

24    foreperson.  But that's not binding on you.  You're free to

25    choose another juror to act as foreperson, if you wish.

1944

1    Obviously, the foreperson's vote and the foreperson's views

2    about the weight and effect of the evidence are not entitled

3    to greater weight than the vote and the views of the other

4    jurors.

5              Your function, ladies and gentlemen, is to reach a

6    fair conclusion based on the evidence in the case within the

7    framework of the law as I've given it to you.  There could

8    hardly be a more important function.  Your verdicts in the

9    case must be unanimous.  You must all agree on each and every

10   entry that is made on these verdict sheets, and in fact, I'll

11   ask you, after your verdicts are announced, whether each of

12   you -- whether the announced verdicts are the verdicts of each

13   of you individually.

14             When you return to the jury room this time, I'm not

15   going to say, Don't discuss the case.  I'll stop saying that

16   from now on, because now, it's your duty to do just that, to

17   discuss the case, to consult with each other about the

18   evidence about the issues in the case with a view towards

19   reaching agreement on your verdicts, provided you can do so

20   without violating your individual judgment and your

21   conscience.

22             During the course of your deliberations, you

23   shouldn't surrender a conscientious belief as to what the

24   truth is and what the weight and the effect of the evidence

25   is, and each of you has to decide the case for yourselves and

1945

1    not simply acquiesce in the conclusions of your fellow jurors.

2           On the other hand, I do ask you to examine the

3    issues and the evidence before you with candor, with

4    frankness, with an open mind, with the appropriate degree of

5    deference to the views of each other.  Listen to each other,

6    discuss the issues and the evidence before you.  Don't

7    hesitate, during your deliberations, to change your opinions

8    from time to time if you're convinced they are wrong.

9           Remember that the parties and the Court are relying

10   on you to give a full and conscientious consideration and

11   deliberation to the evidence and issues before you.  Only by

12   doing so will you carry out to the fullest your oath as

13   jurors, which is to well and truly try the issues in the case

14   and to render true verdicts.

15          If it becomes necessary during your deliberations to

16   communicate with me for any reason, just send me a note that's

17   signed by your foreperson.  Please don't attempt to

18   communicate with me in any way other than in such a note, and

19   I won't communicate with you except in writing after

20   consulting with counsel or orally here in open court, again,

21   after consulting with counsel.

22          If you want to have any of the testimony repeated,

23   simply say so in a note that you will give to the marshal, who

24   will be outside the room during your deliberations.

25          If that happens, let me say two things to you.  One,

1946

1  be as specific as you can.  If you only want a particular

2  witness's testimony, tell us that.  If you only want part of a

3  particular's witness's, testimony tell us that, too.  Second,

4  being be patient.  It always takes longer to comply with the

5  jury's readbacks requests than juries think it should.  We

6  have to sift through the record and find what's responsive to

7  your requests.  So, don't think we have ignored it, if you ask

8  for a readback of testimony, that it takes some time to either

9  send the transcript into the jury room or bring you back into

10 court to read the testimony back to you.

11        If you want to see any of the exhibits that were

12 received in evidence, simply say so in a note.  We'll send the

13 exhibits into the jury room for your inspection.  If you want

14 to hear any of the tapes in evidence, say so.  We'll bring you

15 back into open court and play those tapes for you.

16        When you've reached your verdicts, send me a note,

17 signed by your foreperson, that says, The jury has reached its

18 verdicts, and don't say anything else in that note.  Don't

19 tell us what the verdicts are.  For that matter, throughout

20 your deliberations, don't indicate to us in any way how you

21 stand in your deliberations.  We don't want to know that.

22 It's your business.

23        Don't give us a numerical count as to how you stand

24 or anything like that.  And when you've reached a verdict,

25 just say that you have reached your verdicts and nothing else.

1947

1          All right.  Let me see counsel, please, at sidebar,

2    to see if there's anything else I need to tell you.

3          (Continued on next page.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1948

1       (Side bar.)

2       THE COURT:  I want to keep two alternates.

3       THE CLERK:  Juror number one has to go to the

4   restroom.

5       (In open court.)

6       THE COURT:  Go ahead.  Rush in there.  Then come

7   back out.

8       Anybody else?  Only if it is an emergency.

9       All right.  It is an emergency.  Go ahead.  But be

10  quick and come right back out.  Let's not open the flood gates

11  here.  It's only going to take minute or two.

12      (Side bar.)

13      MR. SHARGEL:  No pun intended.

14      THE COURT:  No pun intended.

15      Any objection to the verdict sheet, by the way?

16  Separate verdict sheets.

17      MR. SHARGEL:  May I look at it?

18      MR. SOLANO:  May I see it?

19      THE COURT:  Sure.

20      MR. SHARGEL:  With respect to the charge --

21      MR. SOLANO:  No, Your Honor.

22      MR. SHARGEL:  No objection.

23      With respect to the charge, I want to preserve the

24  arguments that I made up until this point.  I don't think I

25  need to catalog them now.

GR      OCR      CM      CRR      CSR

1949

1        There is one thing that I apparently I dropped the

2    ball on.  It is this.  The -- it was late when we requested

3    the affirmative defense, 1512(e), I believe, and my position,

4    and I think the request was that as to each of the tampering

5    charges, and I see that what Your Honor did is rely on our

6    version of the offense on the question of whether it was to

7    seek the truth but the entire effort in defending Khan, as I

8    argued in summation, as I argued in opening, I postured during

9    the case, was that this defense would apply to everything

10   because this whole representation of Khan was for the purpose

11   of eliciting the truth and dissuading false testimony.

12       Even going out interviewing Farrah was with an

13   attempt to get her to -- I am not sure that that's a perfect

14   example.  A perfect example is George Allison.  The reason

15   they wanted to talk to George Allison was to find out whether

16   he was a witness or not a witness, was, again, toward ensuring

17   that the truth was presented.

18       Pursuant to Rule 30(d), all that is required is I

19   take exception before deliberations begin.  So even though

20   Your Honor was good enough to give us versions of this, your

21   version of the charge, I think that Rule 30(d) --

22              THE COURT:  Can I interrupt you for a second?

23              MR. SHARGEL:  Yes.

24              THE COURT:  This is a 1512(b) -- 1512 affirmative

25   defense?  You want me to tell the jury it applied --

GR      OCR      CM      CRR      CSR

1950

1       MR. SHARGEL:  To every count.

2       THE COURT:  One through nine?

3       MR. SHARGEL:  Yes.

4       THE COURT:  I'll tell them that.

5       Any objection?

6       MR. D'ALESSANDRO:  No.

7       MR. SHARGEL:  Thank you.

8       I don't know if anyone else has anything.

9       THE COURT:  Any other objections?

10      MR. D'ALESSANDRO:  There is nothing that I think

11  that you need to go back.  My understanding is Your Honor's

12  preference is not to send the jury charge back.  But I think

13  that in the writing of the GO offense, it says that the GO was

14  under contract with the Bureau of Prisons.  I think that we

15  corrected that to the Marshal Service.  It's an immaterial

16  issue as it is.  I don't believe we need to highlight it for

17  the jury.  But if the jury charge goes back, I think we should

18  need to correct that.

19      There is no objection other than that.

20      MR. SHARGEL:  No objection either way.

21      THE COURT:  Okay.

22      MR. D'ALESSANDRO:  Putting it on the record, Judge.

23      THE COURT:  Yes.

24      (Continued on next page.)

25

1      (In open court.)

2      THE COURT:  Okay.  A couple of things.

3      First, I am only going to keep two alternates during

4 deliberations.  Which means, Ms. Jackson, Ms. Hodges, you get

5 to be excused with the thanks of the Court and the parties.

6      Obviously, this case itself demonstrates how

7 important it is to have alternates, how they sometimes

8 substitute for the jurors one through twelve.

9      But I don't think it is necessary to keep all four

10 of you during deliberations.  So I think we are just going to

11 keep Mr. Jenab and Mr. Peduzzi.  You are going to have the

12 delightful task of sitting separately, not discussing the

13 case, during the jury deliberations.

14      But Ms. Jackson and Ms. Hodges, with the thanks of

15 the Court and the parties, you are excused.  You can go back.

16 Ilene will take you back to the jury room to gather up your

17 stuff and have a good day and thank you again.

18      (The two alternates are excused and leave the

19 courtroom.)

20      THE COURT:  Ilene, we are going to need a place, I

21 should have mentioned this to you earlier, to accommodate

22 Mr. Jenab and Mr. Peduzzi.

23      THE CLERK:  We have one.

24      THE COURT:  You have one?  Always a step ahead of

25 me.

1    There is one other just addition.  I had mentioned

2 to you, with regard to that affirmative defense as to which

3 Simels bears the burden of proof by a preponderance of the

4 evidence, I had mentioned to you that he is asserting that

5 defense with regard to --

6    MR. SHARGEL:  Page 20, Judge.

7    THE COURT:  Thanks.

8    With regard to counts one, three, five, six, seven

9 and eight, but Mr. Shargel has asked at side bar, and the

10 government has not objected, to have me instruct you that that

11 defense is both available to him and asserted with regard to

12 all of those first nine counts, both the conspiracy to tamper

13 with witnesses and the attempt to tamper with witnesses counts

14 in two through nine.

15    Okay.  So don't limit to it the ones I specified for

16 you during my initial charge.

17    All right.  Will the marshal please come forward?

18    THE MARSHAL:  Yes, sir.

19    THE COURT:  Raise your right hand, sir.

20    (The marshal is duly sworn/affirmed by court.)

21    THE COURT:  Here are the verdict sheets.  I don't

22 want you to deliberate at any point, I don't want you to

23 deliberate if your excused colleagues are still in the room,

24 of course, and at any point during your deliberations I don't

25 want you deliberating when less than twelve of you are

1953

1    present.  Okay?

2          If someone goes off to the restroom, I want you to

3    stop.  It is important that all twelve of you deliberate

4    simultaneously.

5          Are our alternates, Mr. Jenab and Mr. Peduzzi, you

6    won't be deliberating at all.  I hope you enjoy each other's

7    company because you will be sharing one another's company

8    during the deliberations.  We will send you in lunch.  I

9    promise, we won't forget about you.  I won't be trying some

10   other case three months from now and remember that you are in

11   another jury room.  But we need you, just in the unlikely

12   event that you are needed.

13         Okay.  So you can return to the jury room and

14   commence your deliberations.

15         Here are the verdict sheets, one for each defendant.

16         (The following occurred in the absence of the jury,

17   as they begin their deliberations, at 11:40 am.)

18         THE COURT:  All right.

19         MR. SHARGEL:  Your Honor, the jurors, I don't know

20   if you noticed while they were filing out, but they each took

21   their transcript books with them.

22         THE COURT:  Let's go get them.

23         Bring the jury back in, please.

24         I am going to tell them -- well, what do you want me

25   to tell them?  We may as well deal with this issue now.

1954

1      MR. SHARGEL:  Your Honor said earlier in the trial

2  that given the audibility of the recorded conversation made by

3  Selwyn Vaughn, that you were inclined to allow --

4      THE COURT:  Come up to side bar.

5      (Jury present.)

6      (Side bar.)

7      THE COURT:  I didn't notice.  Thank you for bringing

8  it up.

9      We may as well deal with this issue now.

10     You raised at pretrial, and as I mentioned to you

11 during the course of the trial, it occurred to me, not with

12 respect to the MCC tape --

13     MR. SHARGEL:  Right.

14     THE COURT:  -- but with respect to these other

15 tapes --

16     (In open court.)

17     THE COURT:  Everyone can please be seated.  We will

18 be right with you.

19     (Side bar.)

20     THE COURT:  That the transcripts themselves are

21 sufficiently non-controversial and sufficiently useful that if

22 the jury asks for those transcripts, I am going to send them

23 in with an admonition that, obviously, the tapes are the

24 evidence.

25     I mean, I am perfectly willing to take them back now

1    but I intend to -- I don't want to leave them with the

2    impression that under no circumstances can they have them.

3              MR. SOLANO:  Judge, my position is that they not be

4    allowed to take the transcripts in.  I've argued during this

5    entire trial that I think it is important, critical for them

6    to understand if Ms. Irving is in any meeting at that

7    particular time, I pointed out many times during

8    cross-examination, that you could hear her heels leaving the

9    room.  That's really the only indication at many points of

10   when she is or isn't in the room.

11             So my position is that they can't get any sense of

12   that and I think the best way for them to get a sense of that

13   is to actually listen to the transcripts.

14             I would object to the transcripts going back.

15             THE COURT:  I don't think that objection has any

16   merit.  I think these jurors, like any other jury, they are

17   not stupid.  They listened to your argument.  They know that

18   Irving is not in the room.  Not for nothing, you could have

19   proposed on the transcript "footsteps" to be on there.  I

20   don't think that's a reason to deprive the jury of the

21   transcripts.  It doesn't make sense to me.

22             I am going to tell them that -- I am going to tell

23   them to leave them here but if they, like anything else, if

24   they request it I will send it in.

25             But with respect to those I will send it in only

1 with the admonition that the tapes themselves are the

2 evidence. I am going to tell them I am not going to send in

3 the MCC transcripts. Those I will allow them to listen

4 to -- to use them as an aid if they listen to them.

5          MR. SOLANO: I was going to say, would Your Honor

6 also instruct them that if they ever at any point want to

7 listen to the tape, to determine whether or not they could or

8 couldn't hear footsteps, I know it is an obvious request, that

9 they just let us know.

10          THE COURT: I will tell them they can listen to the

11 tape. I am not going to start identifying what purposes they

12 might want to listen to the tape for.

13          Does anybody want to be heard further?

14          MR. SHARGEL: No.

15          MR. D'ALESSANDRO: Your Honor, I understand the

16 arguments that are being made here. I think the jury, the

17 bulk of them took the jury binders and the transcripts back,

18 obviously through that have signalled that they want this

19 back. It seems to me if Your Honor simply identifies for them

20 you have taken that back. We understand that you as jurors

21 want that back. Here is the admonition with regards to those

22 transcripts. Rather than depriving them of it to get a note

23 to send it back to them. We've already sent them out to

24 deliberate and brought them back.

25          THE COURT: I will treat it like any other -- it is

1   not even an item in evidence.  It's an aid.  But I think it's

2   an important aid that would help structure their

3   deliberations.

4            I am going to tell them if they want it they will

5   ask for it.

6            Anything further?

7            MR. SHARGEL:  No, sir.

8            MR. D'ALESSANDRO:  No.

9            (In open court.)

10           THE COURT:  You probably didn't get a lot of

11  deliberating done since you last were here.

12           The reason I brought you back is I saw you walk

13  off -- I didn't see it.  It was brought to my attention that

14  you walked off with the transcript books.

15           Leave them here for now.  Like anything else, if you

16  want evidence, just write a note asking for it.  If you ask

17  for those, they will be sent back in.  I will have some

18  instructions for you if that is the case in that regard.  But

19  for now I want to you leave those here.  If you would like to

20  have the transcript books for your deliberations, just send me

21  a note that indicates that you want them.

22           Okay?

23           If that is the case, I may as well tell you now, if

24  you do want them and send me such a note, I am going to send

25  in only the transcripts of the conversations recorded through

1958

1    Vaughn, those tape-recorded phone calls and other

2    conversations and only the ones you asked for, and with a

3    reminder that it is the evidence -- I told you this a couple

4    of times during the trial -- the evidence is the tape-recorded

5    conversations, the tapes, not the transcript.

6              If you want the transcripts to assist in your

7    deliberations, you will request them and they will be sent in.

8    But always bear in mind that the evidence is the recording

9    itself and the words that are spoken on the tape and not what

10   is on the transcript.

11             Okay?

12             Now you get to go back in but this time you leave

13   your black books.

14             Thank you, ladies and gentlemen.

15             All rise.

16             THE CLERK:  You can take your yellow pads with you.

17   Okay?

18             (The following occurred in the absence of the jury.)

19             THE COURT:  Before we recess in the case on trial,

20   they will eat from one to two, which means -- you can be

21   seated in the back, if you want, and in the well, if you

22   want -- which means if I get a note between one and two, we

23   won't deal with it until 2:00 o'clock.  So you can be anywhere

24   you want for lunch.

25             If you are not physically present in the courtroom,

GR       OCR       CM       CRR       CSR

1959

1   make sure you are very close and that Ilene knows how to get

2   you.

3          Please put your heads together on the exhibits, so

4   assuming we get a note for all the exhibits, I would like to

5   be able to comply with that note expeditiously.  So make sure

6   you agree on what's in evidence and what's not and have your

7   exhibits ready to go into the jury room.

8          If I get a note that can be responded to in a

9   non-controversial way, like if they ask for more pencils, I

10  will just send it in and the next time we meet I will put it

11  on the record.

12         Sometimes we will get notes about exhibits that

13  again don't produce controversy see and I will just ask Ilene

14  to see if you agree on those, and if you do we will comply

15  with the note and put it on the record the next time we

16  convene.

17         All right?  Any objections?  Any questions?

18         MR. D'ALESSANDRO:  No, Your Honor.

19         MR. SHARGEL:  No, Your Honor.

20         MR. SOLANO:  No, Your Honor.

21         THE COURT:  Okay.  We are in recess in the case on

22  trial.

23         (Recess taken.)

24         (Continued on next page.)

25

GR      OCR      CM      CRR      CSR

1960

1          (The following occurred in the absence of the jury

2     at 12:30 pm.)

3          THE COURT:  In the case on trial, we have a note,

4     jury note one.

5          (So marked.)

6          It says:  Request judge's instructions.

7          I don't see a good reason not to send them in,

8     except I want to bring them out and give them a strong caution

9     about not losing sight of my admonition to consider the charge

10    as a whole.  I don't want them becoming little lawyers with

11    green eyeshades going through this phrase by phrase.  I think

12    they should have the charge.

13         MR. SHARGEL:  Is that what you intend to tell them,

14    no green eyeshades?

15         THE COURT:  I am gong to tell them -- no

16    offense -- I don't want them becoming lawyers.  I want them to

17    look at this as a whole.

18         The one experience I had in the past with a charge

19    going into the jury room, an experience I had, was I have

20    discovered they were in there really arguing over little

21    phrases in a manner like lawyers, which obviously has had a

22    telling effect on me and my take on this issue.

23         Yes, that's what I am going to tell them.

24         Any objection?

25         MR. D'ALESSANDRO:  No, Your Honor.

1961

1          I would just renew -- the change that I had

2    mentioned at the side bar, if it is necessary.

3          THE COURT:  I don't think it is necessary.  I don't

4    think it matters who they are contracting with.

5          MR. SHARGEL:  I agree.

6          THE COURT:  All right.  Do you want to be heard?

7          MR. SOLANO:  No, Your Honor.

8          THE COURT:  All right.  Bring them in, please,

9    Ilene.

10         THE CLERK:  Yes, Your Honor.

11         MR. SHARGEL:  Judge, Mr. Simels is not here.

12         THE COURT:  Do you know where he is?  Can you try to

13   go find him?

14         MR. SHARGEL:  I don't think he is far away.

15         THE COURT:  Let's wait one minute.

16         (Pause.)

17         MR. LIPTON:  He is on his way upstairs from the

18   cafeteria.

19         THE COURT:  Thank you.

20         (Pause continues.)

21         THE COURT:  Okay.  Please seat the jury.

22         THE CLERK:  Yes, Your Honor.

23         (Jury present.)

24         THE COURT:  Please be seated.

25         We will need the alternates also, please.

1962

1    THE CLERK:  Yes, Your Honor.

2    THE COURT:  Most of the time I won't bring the

3 alternates in, but on this one, just in the unlikely event one

4 of them joins you, I want them to hear what I have to say on

5 this.

6    (Alternates present.)

7    THE COURT:  Okay.  Your note asks for my

8 instructions.  I could have just sent them in.  I will give

9 them to you now.  But what I am about to say to you is

10 important enough to me to haul you back out into court and

11 tell it to you.

12    Here are the instructions.  You can take them back

13 into the jury room.  I wanted to emphasize that what I said to

14 you at the outset of the instructions, and which you will see

15 now in the written instructions, and that is, to consider my

16 instructions to you as a whole.  Don't single out any one as

17 alone stating the law.

18    And no one has more respect for lawyers than me.

19 Most of the people in the courtroom are lawyers.  I am a

20 lawyer.  I love lawyers.  But I don't want you to become

21 lawyers.  You are jurors.  You are finding the facts.  I don't

22 want to run even the slightest risk that I will send this in

23 and turn it into a little law school class where you are

24 parsing over the little phrases.  Obviously, these are

25 important.  You will follow them.  But remember your function

GR     OCR     CM     CRR     CSR

1    is to find the facts and don't lose sight of the fact that I

2    want you to consider these instructions as a whole.

3              Okay?  So here you go with that strong admonition.

4              Please return to the jury room and resume your

5    deliberations.

6              (The following occurred in the absence of the jury

7    at 12:40 pm.)

8              MR. SHARGEL:  Your Honor, just based on human

9    experience, my request is that the jury get twelve copies of

10   that jury charge.  Because, otherwise, the person holding the

11   jury charge has a dominant role almost by logical definition

12   because he or she is kind of in charge of what section they

13   are talking about or referring to.

14             THE COURT:  Any objection?

15             MR. D'ALESSANDRO:  No.

16             THE COURT:  All right.  No objection, I will do it.

17             It runs the risk that we have twelve lawyers in

18   there.

19             MR. D'ALESSANDRO:  I mean, that's --

20             THE COURT:  But I think it is six of one, half dozen

21   of another.

22             MR. D'ALESSANDRO:  I agree.

23             THE COURT:  The risk remains.  I will make some more

24   copies and send them in.

25             MR. SHARGEL:  Thank you, Judge.    (Recess taken.)

1964

1        (The following occurred in the absence of the jury

2   at 12:55 pm.)

3        THE COURT:  Please be seated.

4        What's the problem?

5        MR. SHARGEL:  I'm sorry to inconvenience you.  You

6   did pursuant to my request change the charge.

7        THE COURT:  Yes.

8        Here is what propose to do.  I will send that in for

9   the one copy they have and attach it to the other copies.

10        MR. SHARGEL:  Perfect.

11        THE COURT:  All right?

12        Just so the record reflects what we are talking

13   about, the enlargement of the assertion of that truth seeking

14   defense to all of the 1512(b) charges.  I will send that in.

15        Fair enough?

16        MR. FODEMAN:  No objection.

17        THE COURT:  We will send one in now.  I will attach

18   the other eleven to the copies that we are making.

19        MR. SHARGEL:  Very well.

20        MR. LIPTON:  Thank you.

21        MR. SHARGEL:  Can we go to lunch five minutes early?

22        THE COURT:  You can go to lunch five minutes early.

23   If there is a verdict we will take it without you.

24        This is Court Exhibit 2.

25        (So marked.)    (Continued on next page.)

GR      OCR      CM      CRR      CSR

1965

1        (The following occurred in the absence of the jury

2   at 2:45 pm.)

3        THE COURT:  I just want to make a record in the case

4   on trial of jury note two, which I told you about before court

5   reporter arrived.

6        It says:  All jurors, except one and four, would

7   like to make phone calls and get some fresh air.

8        It's now a quarter to three.  A little more than an

9   hour ago I had the jurors taken out to the park all together

10  with a marshal for about 20 minutes.

11       For the last half an hour or so they have been back

12  deliberating.

13       Okay?

14       (Recess taken.)

15       (Continued on next page.)

16

17

18

19

20

21

22

23

24

25

GR      OCR      CM      CRR      CSR

1966

1         (The following occurred in the absence of the jury

2    at 4:00 o'clock pm.)

3         MR. SHARGEL:  We have resolved any dispute.  It's

4    all resolved.  We are ready to go.  Sorry to bring you down.

5         THE COURT:  That's all right.

6         MR. D'ALESSANDRO:  We can put on the record what's

7    going back, Your Honor.

8         THE COURT:  Sure.

9         MR. D'ALESSANDRO:  It's --

10        THE COURT:  Let's put on the record the note, which

11   says, need Fed Ex vouchers -- this is jury note three --

12   Fed Ex vouchers for eavesdropping equipment.

13        Photograph of eavesdropping equipment.

14        Communication to and from government pertaining to

15   possession of equipment.

16        (So marked.)

17        THE COURT:  Go ahead.

18        MR. D'ALESSANDRO:  The Fed Ex vouchers are

19   Government Exhibits 601 and 602.

20        Photograph -- photographs of the equipment are

21   Government Exhibits 116, 117, 118, one 19, 120, 124, 125, 123

22   and Irving 11.

23        The correspondence pertaining to the back and forth

24   are defense exhibits.

25        MR. SHARGEL:  Defense Exhibit 308-B, 308-C, 308-D as

1967

1    in David, 308-E and 308-I, redacted as agreed.

2              THE COURT:  I am glad I didn't miss that.

3              MR. D'ALESSANDRO:  It's nice to see you again,

4    Judge.

5              THE COURT:  It would have been a shame to send that

6    in without making that record.

7              Thank you.

8              MR. D'ALESSANDRO:  Thank you.

9              (Recess taken.)

10             (Continued on next page.)

GR      OCR      CM      CRR      CSR

1968

1          (The following occurred in the absence of the jury
2    at 4:15 pm.)
3          THE COURT:  Please be seated.
4          You have seen this note, right?
5          MR. D'ALESSANDRO:  Yes.
6          MR. SHARGEL:  Yes.
7          THE COURT:  Jury note four, request Anthony Ricco's
8    address.
9          (So marked.)
10          MR. SHARGEL:  I think they mean testimony.
11          THE COURT:  So do I.
12          I suggest I write on this and just put, what do you
13    mean by his address?  I will send it back in.
14          MR. D'ALESSANDRO:  No objection.
15          THE COURT:  Surely, they don't mean his address.
16    Should I ask -- maybe I will just put, do you mean his
17    testimony?
18          MR. FODEMAN:  That's good.
19          THE COURT:  Okay?
20          MR. FODEMAN:  Yes.
21          THE COURT:  Do you mean his address -- do you mean
22    his testimony?
23          MR. D'ALESSANDRO:  No objection.
24          MR. SOLANO:  No objection.
25          THE COURT:  Are you all right with that?

GR      OCR      CM      CRR      CSR

1969

1      MR. SHARGEL:  Yes.

2      THE COURT:  If they mean his testimony, do we have

3  this ready so we can send it in?

4      MR. D'ALESSANDRO:  No.  We will work on it now.

5      THE COURT:  Would you do that?

6      MR. D'ALESSANDRO:  Absolutely.

7      THE COURT:  I'd rather do that than give a reading

8  with feeling of Tony Ricco's testimony.

9      I am also going to put on this, and if you mean his

10  testimony, do you mean all of his testimony.

11      MR. SHARGEL:  Judge, I would -- I would object

12  because I think that that is suggestive -- suggesting to them

13  that they choose a portion, may be putting pressure on them to

14  choose a portion.  If we are sending it back there and the

15  answer to your note is they want his testimony, I think that

16  literally read that means all of his testimony.

17      THE COURT:  All right.  Overruled.

18      Do you want to be heard?

19      MR. FODEMAN:  No.

20      THE COURT:  If they want all of it, they will say

21  yes.

22      And if you mean his testimony, would you like all of

23  his testimony?

24      All right.  That will be marked Court Exhibit 3,

25  which is on the same piece of paper as jury note four.

GR      OCR      CM      CRR      CSR

1970

1          (So marked.)

2          MR. SHARGEL:  Judge, may I ask how long you intend

3     to keep the jury, what your practice is?

4          THE COURT:  My practice is, if we don't see them on

5     this, to send in a note about a quarter to five to tell them

6     if they want I will let them stay late.  If they want to go

7     home at five, they can go home at five.

8          MR. SHARGEL:  Very well.

9          (Pause.)

10         THE COURT:  By the way, is his office address in the

11    record?

12         MR. SHARGEL:  No.

13         MR. LIPTON:  No.

14         MR. SHARGEL:  He just says that he is from Harlem.

15         THE COURT:  Is his office address in Harlem?

16         MR. D'ALESSANDRO:

17         MR. BROWNELL:  No; Lower Manhattan.

18         (Pause continues.)

19         THE CLERK:  We have an answer.

20         THE COURT:  All right.  Jury note five consists of

21    two notes.

22         One responds to the question I sent in.  It says:

23    I apologize for my misstatement.  We need Mr. Ricco's

24    testimony.

25         So we will send in his testimony.

GR      OCR      CM      CRR      CSR

1971

1        The second piece of the new note says:  Request

2   Simels's testimony in regards to cracking the password on the

3   laptops.

4        (So marked.)

5        MR. D'ALESSANDRO:  We will get to work on that.

6        THE COURT:  Please do.

7        If I remember correctly, there wasn't a lot of stuff

8   in Ricco's testimony.  I don't remember a lot of objections or

9   sidebars.

10       MR. D'ALESSANDRO:  There are two sidebars and there

11  is one objection and a motion to strike and I believe another

12  objection.

13       THE COURT:  If you have them tagged --

14       MR. SHARGEL:  We are just double-checking.

15       MR. D'ALESSANDRO:  What I have done is I have taken

16  Post-it notes to cover objections.  Where the motion was

17  granted, I removed the side bar.  Defense counsel is looking

18  at it, if we are okay to get a copy made.

19       THE COURT:  Once you agree on it give it to us, we

20  will go out and blacken out what has to be blackened out and

21  make a copy and then we will do the same . This isn't very

22  lengthy.  I'm sure the Simels's testimony -- was there any

23  cross on it, on cracking the code?

24       MR. SHARGEL:  No.

25       MR. D'ALESSANDRO:  I don't believe so.

GR       OCR      CM       CRR      CSR

1972

1      THE COURT:  That should be pretty easy.

2      (Pause.)

3      MR. D'ALESSANDRO:  If you can run it through copier

4   with the Post-it notes there.  I put Post-it notes where there

5   are objections and motions to strike.  It can go through the

6   copier.

7      THE COURT:  I will do it.

8      THE CLERK:  Okay, judge.

9      THE COURT:  Would one of you hang around to get the

10   other stuff and bring it up?

11      THE LAW CLERK:  Yes, Your Honor.

12      (Recess taken.)

13      (After recess.)

14      (The following occurred in the absence of the jury.)

15      THE COURT:  Okay.  Please be seated.

16      There is some dispute?

17      MR. FODEMAN:  Yes, Judge.

18      We have agreement with respect to certain portions

19   of the transcript, but with respect to one section, the

20   government's view is that a certain paragraph is nonresponsive

21   to the note.  The note asks for, as I recall it -- I don't

22   have it in front of me exactly.  Here.  I will read it.  All

23   Simels's testimony in regards to cracking the passwords on the

24   laptops.

25      On page 1312, at the very bottom --

1973

1           MR. SHARGEL:  Line 25.

2           MR. FODEMAN:  Line 25 starts the question.

3           THE COURT:  This is what you disagree about?

4           MR. SHARGEL:  Yes.

5           MR. FODEMAN:  This is the -- yes, this is the

6     section.

7           THE COURT:  You think it shouldn't go in and

8     Mr. Simels thinks it should?

9           MR. FODEMAN:  Yes.

10          We are in agreement that the question starting on

11    line 25 --

12          MR. SHARGEL:  On the next page, very simply, whether

13    its line ten or line seventeen.  That's the dispute.

14          MR. FODEMAN:  Right, where it should end.

15          (Pause.)

16          THE COURT:  We will send in the whole answer.

17          MR. FODEMAN:  Okay.

18          THE COURT:  What else?

19          MR. SHARGEL:  That's it.

20          MR. FODEMAN:  Everything else we are in agreement.

21          THE COURT:  Do we have something I could copy?

22          MR. FODEMAN:  Yes.

23          MR. SHARGEL:  There is no side bar?

24          MR. FODEMAN:  There are sections --

25          MR. D'ALESSANDRO:  One second.  We need to put

1974

1    Post-it notes on the part that needs to be redacted.

2            THE COURT:  Okay.  There is something you want to

3    add to this, Mr. Solano?

4            MR. SOLANO:  Absolutely not.

5            MR. SHARGEL:  Are we going to wait to hear from

6    them?

7            THE COURT:  I will send in this note, unless someone

8    talks me out of it.  It says:  Ladies and gentlemen, would you

9    prefer to leave at 5:00 or to deliberate some more after 5:00

10   o'clock?  The choice is yours.  But please let us know.

11           In no event am I going to let them stay past 5:30,

12   5:45.

13           But that's what I intend to send in.  Sometimes if

14   they are working on a particular area, it is helpful to them

15   to stick around a little longer.

16           MR. SHARGEL:  That's fine.

17           THE COURT:  Any objection?

18           MR. FODEMAN:  No, Judge.

19           THE COURT:  Mr. Solano?

20           MR. SOLANO:  Yes.

21           THE COURT:  Any objection?

22           MR. SOLANO:  No, Your Honor.

23           (Court Exhibit 4 is marked.)

24           THE COURT:  I've already sent in on the way back

25   down two copies of Ricco's testimony.  It's not that long, so

1975

1    I thought I'd make one more.

2              (Pause.)

3              THE COURT:  Jury note six says:  We prefer to leave

4    at 5:00 o'clock.

5              (So marked.)

6              THE COURT:  All right.  We will go -- there are like

7    four pounds of Post-its on these.  I will send you a bill if

8    you break my copy machine.  I will copy these and send them

9    in.

10             Here is what I am going to do.  If we hear nothing

11   from them before five, I am just going to, unless you persuade

12   me otherwise, have Ilene go in, tell them to go home, don't

13   discuss the case, be back by 9:30.  Tell them, remind them not

14   to deliberate unless all 12, until all 12 are present and just

15   send them home.

16             Anybody object to that?

17             MR. SHARGEL:  No disrespect to Ilene intended, but I

18   would prefer that Your Honor did it.

19             THE COURT:  Fine.

20             In here?

21             MR. SHARGEL:  No, inside.

22             THE COURT:  I will do it inside.

23             MR. SHARGEL:  In the jury room.

24             THE COURT:  I will do it inside.

25             Any objection?

1976

1    MR. D'ALESSANDRO:  No, Judge.

2    THE COURT:  All right.  That's what we will do.

3    Unless you hear from me before five, I will see you

4    then or if not tomorrow.

5    If the clock strikes five and you haven't heard from

6    anyone, feel free to leave.

7    MR. SHARGEL:  Thank you.

8    THE COURT:  We are in a very delicate stage.  Just,

9    everyone, avoid any accidental contact with the jurors.  Why

10   don't you not leave precisely at five.  Give it a few minutes

11   so they are out the door.

12   MR. SHARGEL:  Fine.

13   THE COURT:  All right.

14   MR. D'ALESSANDRO:  Great.

15   THE COURT:  Thank you, everyone.

16   (Recess taken until 9:30, August 12, 2009.)

17

18

19

20

21

22

23

24

25

GR      OCR      CM      CRR      CSR

1977

1                    E X H I B I T S

2

3    C O U R T   E X H I B I T S:

4

5     jury note one                              1960

6     Court Exhibit 2                            1964

7     jury note two                              1965

8     jury note three                            1966

9     jury note four                             1968

10    Court Exhibit 3                            1969

11    jury note five                             1970

12    Court Exhibit 4                            1974

13    jury note six                              1975

14

15

16

17

18

19

20

21

22

23

24

25

GR      OCR      CM      CRR      CSR

1

## $

$10,000 [1] - 1895:23
$2500 [1] - 1898:11
$40 [1] - 1898:16
$5,000 [1] - 1898:13

## 0

08-CR-640 [1] - 1870:3

## 1

10 [1] - 1897:12
100 [1] - 1903:20
10th [1] - 1874:17
11 [2] - 1870:6, 1966:22
11201 [1] - 1870:23
116 [1] - 1966:21
117 [1] - 1966:21
118 [1] - 1966:21
11:40 [1] - 1953:17
11th [1] - 1893:4
12 [4] - 1872:11, 1975:14, 1976:16
120 [1] - 1966:21
123 [1] - 1966:21
124 [1] - 1966:21
125 [1] - 1966:21
12:30 [1] - 1960:2
12:40 [1] - 1963:7
12:55 [1] - 1964:2
13 [1] - 1872:11
1312 [1] - 1972:25
13th [5] - 1874:4, 1875:8, 1876:19, 1889:21, 1893:4
14 [1] - 1904:5
15 [2] - 1894:16, 1895:4
1512 [1] - 1949:24
1512(b [2] - 1949:24, 1964:14
1512(e [1] - 1949:3
16th [1] - 1874:13
17th [1] - 1875:21
19 [1] - 1966:21
1960 [1] - 1977:5
1964 [1] - 1977:6
1965 [1] - 1977:7
1966 [1] - 1977:8
1968 [1] - 1977:9
1969 [1] - 1977:10
1970 [1] - 1977:11
1974 [1] - 1977:12
1975 [1] - 1977:13
19th [1] - 1874:12

## 2

2 [2] - 1964:24, 1977:6

20 [2] - 1952:6, 1965:10
2002 [1] - 1929:20
2006 [2] - 1875:11, 1920:14
2007 [4] - 1875:10, 1934:5, 1934:9, 1940:11
2008 [22] - 1875:10, 1920:14, 1928:10, 1930:5, 1930:6, 1930:8, 1930:11, 1930:12, 1931:15, 1931:16, 1932:4, 1933:14, 1934:6, 1934:10, 1934:25, 1935:1, 1938:13, 1938:14, 1939:7, 1940:11
2009 [1] - 1870:6, 1976:16
202 [1] - 1874:11
208 [1] - 1892:12
20th [1] - 1890:17
225 [1] - 1870:22
25 [3] - 1973:1, 1973:2, 1973:11
2500 [1] - 1898:15
27 [1] - 1939:7
2:00 [1] - 1958:23
2:45 [1] - 1965:2

## 3

3 [2] - 1969:24, 1977:10
30(d [2] - 1949:18, 1949:21
308-B [1] - 1966:25
308-C [3] - 1904:3, 1966:25
308-D [1] - 1966:25
308-E [1] - 1967:1
308-I [1] - 1967:1
336 [1] - 1877:21
3500 [2] - 1891:18
36 [2] - 1889:24, 1890:1
3800 [2] - 1882:23, 1894:5

## 4

4 [2] - 1974:23, 1977:12
404(b [1] - 1902:10
41 [1] - 1879:13
435 [1] - 1878:4
4:00 [1] - 1966:2
4:15 [1] - 1968:2

## 5

5 [2] - 1899:1, 1899:2
5:00 [3] - 1974:9, 1975:4
5:30 [1] - 1974:11
5:45 [1] - 1974:12

## 6

601 [1] - 1966:19
602 [1] - 1966:19
613-2538 [1] - 1870:23

## 7

718 [1] - 1870:23

## 8

810 [1] - 1874:22

## 9

99 [1] - 1881:9
9:30 [3] - 1870:6, 1975:13, 1976:16

## A

a.m [1] - 1870:6
able [3] - 1878:14, 1886:7, 1959:5
absence [10] - 1871:1, 1953:16, 1958:18, 1960:1, 1963:6, 1964:1, 1965:1, 1966:1, 1968:1, 1972:14
absolute [1] - 1888:10
absolutely [2] - 1969:6, 1974:4
absurd [1] - 1891:22
accept [1] - 1918:18
access [1] - 1943:15
accident [2] - 1918:25, 1919:7
accidental [1] - 1976:9
accommodate [2] - 1872:1, 1951:21
accomplish [2] - 1922:6, 1922:17
accomplished [2] - 1922:4, 1941:9
accomplishment [1] - 1923:13
accordance [1] - 1909:12
according [2] - 1899:10, 1900:9
accountable [1] - 1906:9
accurate [1] - 1879:25
accurately [1] - 1914:21
accusations [1] - 1909:25
achieving [1] - 1924:5
acquiesce [1] - 1945:1
acquired [1] - 1915:18
acquit [1] - 1911:14
act [9] - 1910:25, 1911:3, 1922:6, 1922:17, 1922:25, 1923:7, 1926:12, 1932:12, 1943:25
acted [4] - 1919:1, 1925:1, 1928:17, 1930:16
actions [6] - 1892:1, 1906:10, 1921:14, 1922:13, 1922:15, 1922:24
activities [1] - 1929:19
activity [2] - 1939:24, 1940:4
actor [1] - 1879:11
acts [15] - 1918:24, 1919:4, 1919:5, 1923:20, 1929:8, 1929:10, 1929:11, 1931:5, 1931:22, 1933:3, 1934:16, 1935:8, 1943:23
actual [4] - 1920:23, 1938:23, 1942:14, 1943:1

2

**add** [2] - 1921:20, 1974:3
**addition** [1] - 1952:1
**address** [8] - 1902:9, 1902:12, 1968:8, 1968:13, 1968:15, 1968:21, 1970:10, 1970:15
**admonition** [5] - 1954:23, 1956:1, 1956:21, 1960:9, 1963:3
**advance** [3] - 1894:23, 1897:15, 1943:15
**advancing** [1] - 1871:8
**adverse** [1] - 1917:12
**advised** [2] - 1871:11, 1923:16
**affairs** [1] - 1911:4
**affecting** [1] - 1926:3
**affidavit** [3] - 1899:18, 1933:7, 1933:8
**affirmatively** [1] - 1937:4
**afforded** [1] - 1906:11
**agent** [1] - 1921:21
**ago** [1] - 1928:12, 1965:9
**agree** [9] - 1890:8, 1918:16, 1944:9, 1959:6, 1959:14, 1961:5, 1963:22, 1971:19
**agreed** [5] - 1890:11, 1903:22, 1921:2, 1924:17, 1967:1
**agreement** [11] - 1918:17, 1920:24, 1921:19, 1922:1, 1922:14, 1924:9, 1924:11, 1944:19, 1972:18, 1973:10, 1973:20
**ahead** [6] - 1871:18, 1873:16, 1948:6, 1948:9, 1951:24, 1966:17
**aid** [3] - 1956:4, 1957:1, 1957:2
**aiding** [1] - 1923:12
**aiming** [1] - 1891:6
**aims** [1] - 1924:4
**air** [1] - 1965:7
**Alicia** [3] - 1920:20, 1934:4, 1935:7
**alien** [2] - 1879:14, 1894:9
**aliens** [2] - 1888:18, 1890:4
**alleged** [8] - 1913:21, 1913:22, 1920:4, 1921:24, 1922:2, 1924:21, 1934:9, 1941:14
**allegedly** [1] - 1924:17
**alleges** [15] - 1920:16, 1930:5, 1930:25, 1931:12, 1931:18, 1932:3, 1932:8, 1932:19, 1932:24, 1933:12, 1933:17, 1934:25, 1935:4, 1940:10, 1941:13
**alleging** [1] - 1913:17
**Allison** [10] - 1885:8, 1885:9, 1893:10, 1920:18, 1931:13, 1931:19, 1931:25, 1932:2, 1949:14, 1949:15
**allow** [3] - 1918:6, 1954:3, 1956:3
**allowed** [3] - 1879:4, 1879:8, 1955:4
**almost** [3] - 1899:3, 1910:20, 1963:11
**alone** [5] - 1908:15, 1910:16, 1920:9, 1921:20, 1962:17
**alternate** [1] - 1871:23
**alternates** [9] - 1871:22, 1948:2, 1951:3, 1951:7, 1951:18, 1953:5, 1961:25, 1962:3, 1962:6

**alternative** [1] - 1885:6
**America** [3] - 1893:7, 1894:23, 1894:24
**AMERICA** [1] - 1870:3
**amount** [5] - 1880:1, 1880:2, 1889:9, 1900:8, 1900:11
**amounts** [1] - 1926:22
**ample** [1] - 1920:9
**analogy** [1] - 1907:14
**analyzing** [2] - 1888:4, 1905:14
**angle** [1] - 1885:3
**announced** [2] - 1944:11, 1944:12
**another's** [1] - 1953:7
**answer** [5] - 1871:15, 1886:7, 1969:15, 1970:19, 1973:16
**Anthony** [3] - 1915:17, 1926:21, 1968:7
**anticipated** [1] - 1872:25
**anyplace** [1] - 1941:4
**anyway** [1] - 1901:22
**apologize** [1] - 1970:23
**appear** [1] - 1914:19
**APPEARANCES** [1] - 1870:11
**applicable** [2] - 1908:7, 1909:1
**applied** [1] - 1949:25
**apply** [3] - 1928:21, 1930:23, 1949:9
**appreciate** [3] - 1905:23, 1905:25, 1907:2
**appreciated** [1] - 1905:24
**approach** [1] - 1889:2
**appropriate** [1] - 1945:4
**area** [2] - 1915:19, 1974:14
**argued** [4] - 1907:4, 1949:8, 1955:4
**argues** [24] - 1927:14, 1929:23, 1931:6, 1931:10, 1931:24, 1932:1, 1932:13, 1932:17, 1933:4, 1933:6, 1933:10, 1933:21, 1933:23, 1934:1, 1934:17, 1934:21, 1935:9, 1935:11, 1936:13, 1939:3, 1940:6, 1943:5, 1943:10, 1943:12
**arguing** [1] - 1960:20
**argument** [3] - 1917:18, 1920:9, 1955:17
**arguments** [3] - 1908:8, 1948:24, 1956:16
**ARIENNE** [1] - 1870:6
**Arienne** [6] - 1870:20, 1876:16, 1877:23, 1909:22, 1917:2, 1929:15
**arise** [1] - 1942:24
**arranging** [1] - 1929:7
**arrived** [1] - 1965:5
**arriving** [1] - 1918:12
**artfully** [1] - 1892:25
**aside** [1] - 1901:6
**asserted** [1] - 1952:11
**asserting** [1] - 1952:4
**assertion** [1] - 1964:13
**assessment** [1] - 1913:16
**assist** [2] - 1915:23, 1958:6

**Assistant** [1] - 1870:15
**assisted** [1] - 1923:16
**associated** [1] - 1902:5
**assume** [4] - 1909:19, 1912:21, 1912:25
**assuming** [2] - 1886:9, 1959:4
**attach** [3] - 1917:11, 1964:9, 1964:17
**attachment** [1] - 1875:24
**attempt** [29] - 1902:19, 1928:7, 1929:8, 1929:10, 1929:24, 1930:3, 1930:7, 1931:10, 1931:12, 1932:3, 1932:17, 1932:19, 1933:10, 1933:12, 1934:1, 1934:3, 1934:22, 1934:23, 1936:5, 1936:9, 1936:10, 1936:11, 1936:12, 1938:6, 1945:17, 1949:13, 1952:13
**attempted** [15] - 1920:2, 1924:21, 1927:7, 1928:14, 1929:16, 1930:6, 1930:13, 1931:1, 1931:19, 1932:9, 1932:24, 1933:18, 1934:13, 1935:1, 1935:5
**attempting** [12] - 1920:6, 1926:18, 1928:9, 1929:1, 1929:2, 1931:6, 1931:24, 1932:13, 1933:4, 1933:21, 1934:17, 1935:9
**attempts** [1] - 1929:4
**attention** [3] - 1892:5, 1892:7, 1957:13
**Attorney** [1] - 1870:13
**attorney** [4] - 1901:24, 1901:25, 1927:17, 1927:19
**Attorney's** [1] - 1897:18
**attorneys** [3] - 1906:11, 1916:19, 1916:22
**Attorneys** [1] - 1870:15
**audibility** [2] - 1906:22, 1954:2
**audience** [1] - 1888:2
**August** [4] - 1870:6, 1904:5, 1920:14, 1976:16
**authorization** [2] - 1892:17, 1892:21
**authorized** [1] - 1940:6
**available** [3] - 1918:14, 1922:9, 1952:11
**avoid** [2] - 1911:6, 1976:9
**awaiting** [1] - 1874:14
**aware** [2] - 1918:13, 1919:10
**awareness** [1] - 1924:4

**B**

**bad** [3] - 1877:10, 1879:11, 1896:4
**balanced** [1] - 1937:23
**ball** [1] - 1949:2
**bank** [3] - 1881:19, 1942:20, 1942:21
**bar** [6] - 1948:1, 1948:12, 1952:9, 1954:4, 1954:6, 1954:19, 1961:2, 1971:17, 1973:23
**base** [1] - 1908:8
**based** [7] - 1910:21, 1912:1, 1913:7, 1913:15, 1933:7, 1944:6, 1963:8

**bases** [1] - 1943:6
**basic** [2] - 1906:6, 1924:4
**basis** [2] - 1907:15, 1918:5
**battery** [1] - 1904:20
**bear** [3] - 1911:20, 1928:2, 1958:8
**bearing** [1] - 1923:19
**bears** [3] - 1936:20, 1937:2, 1952:3
**became** [3] - 1921:12, 1922:22, 1924:10
**become** [4] - 1906:5, 1917:24, 1918:2, 1962:20
**becomes** [1] - 1945:15
**becoming** [2] - 1960:10, 1960:16
**BEFORE** [1] - 1870:9
**begin** [4] - 1873:23, 1908:18, 1949:19, 1953:17
**beginning** [1] - 1880:13
**begun** [1] - 1913:5
**behalf** [2] - 1880:12, 1927:16
**behavior** [1] - 1936:14
**belief** [5] - 1914:5, 1914:10, 1927:1, 1935:7, 1944:23
**believability** [1] - 1913:25
**benefit** [1] - 1916:7
**BENTON** [1] - 1870:13
**BERG** [1] - 1870:20
**best** [3] - 1888:10, 1888:24, 1955:12
**better** [1] - 1901:25
**between** [17] - 1889:9, 1908:11, 1913:11, 1913:18, 1913:22, 1920:13, 1928:10, 1929:17, 1930:5, 1930:11, 1931:15, 1934:25, 1938:13, 1938:21, 1940:10, 1941:4, 1958:22
**beyond** [33] - 1910:2, 1910:5, 1910:12, 1910:14, 1910:18, 1911:1, 1911:8, 1911:9, 1911:17, 1913:15, 1916:15, 1917:6, 1917:23, 1918:5, 1918:16, 1918:19, 1921:4, 1921:17, 1922:20, 1924:8, 1924:23, 1927:10, 1928:4, 1937:3, 1937:7, 1937:19, 1938:3, 1938:12, 1939:14, 1940:1, 1940:14, 1941:17, 1943:2
**bias** [2] - 1909:16, 1914:23
**bigamist** [1] - 1880:25
**bill** [1] - 1975:7
**billing** [3] - 1891:14, 1891:15, 1898:19
**binders** [2] - 1873:21, 1956:17
**binding** [1] - 1943:24
**bit** [5] - 1872:1, 1882:5, 1886:22, 1900:16, 1921:16
**black** [1] - 1958:13
**blackberry** [2] - 1904:19, 1907:14
**blacken** [1] - 1971:20
**blackened** [1] - 1971:20
**blackout** [2] - 1887:20, 1892:5
**blame** [1] - 1905:18
**blank** [2] - 1879:17, 1879:18
**blinds** [1] - 1913:1
**blue** [3] - 1876:25, 1877:14, 1898:25

**body** [1] - 1888:19
**bona** [4] - 1926:23, 1926:24, 1927:12, 1927:15
**book** [2] - 1882:2, 1887:6
**books** [4] - 1953:21, 1957:14, 1957:20, 1958:13
**boss** [4] - 1877:3, 1889:23, 1889:25, 1890:2
**boss's** [1] - 1903:18
**bottom** [2] - 1915:13, 1972:25
**box** [1] - 1942:20
**breach** [1] - 1906:10
**break** [2] - 1887:4, 1975:8
**bribe** [24] - 1883:19, 1885:3, 1885:12, 1885:15, 1885:16, 1886:11, 1888:15, 1888:16, 1895:12, 1895:13, 1896:9, 1896:23, 1897:12, 1897:14, 1898:17, 1899:17, 1900:11, 1920:6, 1938:22, 1938:23, 1938:24, 1938:25, 1939:1, 1939:3
**bribed** [1] - 1897:25
**bribery** [4] - 1938:8, 1938:11, 1938:21, 1939:2
**bribing** [2] - 1885:12, 1897:22
**briefly** [2] - 1883:5, 1908:24
**briefs** [1] - 1907:6
**bright** [1] - 1912:22
**bring** [15] - 1873:6, 1881:11, 1888:15, 1895:13, 1895:15, 1904:25, 1909:18, 1946:9, 1946:14, 1953:23, 1960:8, 1961:8, 1962:2, 1966:4, 1972:10
**bringing** [6] - 1894:2, 1899:16, 1903:21, 1904:14, 1905:10, 1954:7
**Brooklyn** [2] - 1870:5, 1870:23
**brother** [2] - 1874:24, 1876:6
**brought** [7] - 1903:16, 1903:17, 1905:2, 1908:1, 1956:24, 1957:12, 1957:13
**Brownell** [1] - 1906:12
**BROWNELL** [3] - 1870:15, 1873:7, 1970:17
**bug** [1] - 1899:20
**bulk** [1] - 1956:17
**burden** [15] - 1898:8, 1898:21, 1910:4, 1917:5, 1917:6, 1928:4, 1936:20, 1936:21, 1936:25, 1937:1, 1937:2, 1938:2, 1938:4, 1952:3
**Bureau** [2] - 1939:11, 1950:14
**business** [2] - 1877:5, 1946:22
**buy** [2] - 1882:16, 1893:8
**buying** [1] - 1883:17
**BY** [1] - 1870:14

## C

**Cadman** [1] - 1870:22
**cafeteria** [1] - 1961:18
**Camacho** [18] - 1885:25, 1886:11, 1888:15, 1896:20, 1898:12, 1899:12,

1920:7, 1920:20, 1933:13, 1933:18, 1933:22, 1934:2, 1936:12, 1938:9, 1938:15, 1938:17, 1939:4, 1939:5
**Camacho's** [1] - 1886:6
**CAMPBELL** [1] - 1870:13
**candid** [1] - 1914:13
**candor** [1] - 1945:3
**cannot** [5] - 1882:10, 1888:21, 1903:20, 1906:7, 1918:6
**capable** [4] - 1907:8, 1907:24, 1943:7, 1943:10
**caprice** [1] - 1911:5
**care** [3] - 1874:6, 1883:10, 1916:4
**careful** [1] - 1892:14
**carefully** [2] - 1910:23, 1914:2
**carelessness** [1] - 1919:1
**carried** [1] - 1940:18
**carry** [2] - 1926:7, 1945:12
**case** [85] - 1873:22, 1873:23, 1874:10, 1874:20, 1875:17, 1875:19, 1877:10, 1877:20, 1880:4, 1880:5, 1880:10, 1880:25, 1882:19, 1882:21, 1882:23, 1883:1, 1883:20, 1885:7, 1885:22, 1891:25, 1894:5, 1897:19, 1900:21, 1903:6, 1903:23, 1906:1, 1908:22, 1909:3, 1909:10, 1909:14, 1909:20, 1910:6, 1912:1, 1912:2, 1912:16, 1913:16, 1914:23, 1914:24, 1915:4, 1915:20, 1917:3, 1917:19, 1917:20, 1917:21, 1918:4, 1918:20, 1919:3, 1919:22, 1920:21, 1921:9, 1921:10, 1922:11, 1927:9, 1931:3, 1931:8, 1931:21, 1932:11, 1933:2, 1933:6, 1933:20, 1933:23, 1934:12, 1934:15, 1935:6, 1935:11, 1936:24, 1943:14, 1944:6, 1944:9, 1944:15, 1944:17, 1944:18, 1944:25, 1945:13, 1949:9, 1951:6, 1951:13, 1953:10, 1957:18, 1957:23, 1958:19, 1959:21, 1960:3, 1965:3, 1975:13
**cases** [3] - 1916:23, 1922:13, 1927:5
**cash** [2] - 1891:14, 1891:22
**CAT** [1] - 1870:25
**catalog** [1] - 1948:25
**catch** [1] - 1899:13
**caught** [5] - 1888:20, 1893:24, 1893:25, 1895:12, 1897:6
**caused** [1] - 1925:3
**caution** [2] - 1916:4, 1960:8
**cautious** [1] - 1892:17
**cease** [1] - 1910:13
**cellular** [1] - 1941:11
**certain** [5] - 1879:3, 1912:6, 1926:14, 1972:18, 1972:20
**certainly** [1] - 1890:1
**certainty** [1] - 1913:20
**chain** [1] - 1912:18
**change** [3] - 1945:7, 1961:1, 1964:6
**changed** [1] - 1913:5
**character** [2] - 1911:2, 1923:15

**characterized** [1] - 1922:9
**charge** [35] - 1872:1, 1872:9, 1872:16, 1902:17, 1907:18, 1907:21, 1908:20, 1910:12, 1910:19, 1911:13, 1911:15, 1919:20, 1920:1, 1921:11, 1923:1, 1928:6, 1928:22, 1936:9, 1938:11, 1940:7, 1941:16, 1948:20, 1948:23, 1949:21, 1950:12, 1950:17, 1952:16, 1960:9, 1960:12, 1960:18, 1963:10, 1963:11, 1963:12, 1964:6
**Charge** [1] - 1938:7
**charged** [33] - 1875:11, 1902:16, 1902:17, 1902:18, 1904:23, 1908:23, 1909:23, 1916:16, 1918:15, 1919:21, 1920:5, 1920:6, 1920:7, 1920:9, 1921:6, 1921:19, 1922:17, 1922:19, 1922:22, 1924:3, 1924:9, 1924:14, 1924:16, 1926:16, 1926:18, 1927:6, 1927:11, 1928:5, 1928:25, 1929:1, 1936:4, 1939:15
**charges** [28] - 1909:24, 1910:1, 1910:2, 1910:8, 1913:17, 1917:22, 1918:20, 1918:23, 1920:2, 1920:13, 1926:19, 1927:7, 1928:9, 1928:24, 1930:3, 1930:7, 1934:4, 1936:24, 1937:7, 1938:3, 1938:7, 1938:8, 1939:7, 1943:18, 1943:19, 1949:5, 1964:14
**charging** [1] - 1909:1
**Chase** [1] - 1881:20
**check** [2] - 1891:19, 1891:21
**checking** [1] - 1971:14
**Chinaman** [2] - 1920:18, 1931:14
**choice** [4] - 1901:23, 1902:3, 1902:4, 1974:10
**choices** [3] - 1902:7, 1905:20, 1906:12
**choose** [5] - 1914:8, 1914:21, 1943:25, 1969:13, 1969:14
**chooses** [1] - 1927:24
**chose** [2] - 1917:12, 1917:13
**chosen** [1] - 1905:16
**circulated** [1] - 1872:8
**circumstances** [7] - 1912:19, 1913:2, 1913:4, 1914:3, 1919:3, 1922:11, 1955:2
**circumstantial** [4] - 1912:18, 1912:21, 1913:6, 1913:12
**Citibank** [1] - 1881:20
**civilian** [1] - 1881:7
**claim** [3] - 1898:9, 1899:22, 1924:13
**clapping** [1] - 1881:14
**clarified** [1] - 1907:20
**Clark** [1] - 1920:17
**Clarke** [20] - 1881:16, 1890:6, 1890:7, 1920:11, 1930:4, 1930:6, 1930:10, 1930:15, 1930:17, 1930:18, 1931:1, 1931:7, 1931:8, 1931:11, 1931:17, 1933:23, 1933:24, 1939:9, 1939:16
**Clarke's** [4] - 1886:7, 1901:10, 1901:14, 1929:19

**class** [2] - 1888:9, 1962:23
**classes** [1] - 1880:6
**CLE** [2] - 1880:6, 1888:9
**clear** [8] - 1886:20, 1905:11, 1905:13, 1907:8, 1907:11, 1907:16, 1907:18, 1909:2
**clearly** [1] - 1929:10
**CLERK** [9] - 1948:3, 1951:23, 1958:16, 1961:10, 1961:22, 1962:1, 1970:19, 1972:8, 1972:11
**client** [23] - 1874:5, 1875:20, 1875:25, 1876:4, 1876:11, 1878:11, 1880:19, 1881:24, 1881:25, 1882:4, 1883:13, 1898:20, 1899:11, 1900:22, 1901:3, 1901:9, 1901:13, 1905:7, 1905:23, 1926:23, 1927:18, 1943:16
**clients** [1] - 1876:3
**clock** [1] - 1976:5
**close** [2] - 1898:11, 1959:1
**closing** [1] - 1912:9
**coached** [1] - 1902:1
**coaching** [3] - 1884:25, 1893:21, 1902:13
**code** [1] - 1971:23
**coincidence** [3] - 1898:13, 1900:13, 1900:14
**cold** [2] - 1889:7, 1889:17
**colleagues** [1] - 1952:23
**collect** [1] - 1897:2
**color** [1] - 1916:11
**coming** [4] - 1894:6, 1894:18, 1900:4, 1912:23
**commence** [3] - 1908:16, 1943:21, 1953:14
**commerce** [4] - 1940:19, 1941:4, 1942:9
**commission** [2] - 1929:8, 1929:12
**commit** [16] - 1902:4, 1906:6, 1921:1, 1921:2, 1921:19, 1923:4, 1924:7, 1924:14, 1924:18, 1924:21, 1926:17, 1926:18, 1929:2, 1929:6, 1929:9, 1929:11
**commits** [1] - 1906:7
**committed** [2] - 1916:16, 1923:5
**committing** [1] - 1929:5
**common** [5] - 1910:21, 1913:10, 1921:23, 1922:7, 1922:16
**communicate** [3] - 1945:16, 1945:18, 1945:19
**communication** [2] - 1941:10, 1966:14
**communications** [5] - 1907:25, 1940:23, 1941:10, 1941:25, 1943:8
**company** [3] - 1939:9, 1953:7
**compared** [1] - 1914:17
**compensate** [1] - 1915:25
**complete** [1] - 1909:15
**completed** [1] - 1929:1
**completely** [1] - 1896:18
**comply** [6] - 1903:21, 1904:1,

1904:10, 1946:4, 1959:5, 1959:14
**computer** [3] - 1876:8, 1887:19, 1904:7
**computers** [2] - 1898:3, 1943:6
**concepts** [1] - 1918:21
**concern** [3] - 1884:1, 1917:25, 1940:5
**concerning** [1] - 1911:12
**conclusion** [1] - 1944:6
**conclusions** [2] - 1913:8, 1945:1
**conduct** [12] - 1919:2, 1919:8, 1919:11, 1922:11, 1923:3, 1926:14, 1926:22, 1927:11, 1929:12, 1936:13, 1937:13, 1939:2
**conduit** [1] - 1901:15
**conference** [1] - 1872:10
**confidential** [1] - 1916:13
**conformity** [8] - 1920:21, 1931:2, 1931:20, 1932:10, 1933:1, 1933:19, 1934:14, 1935:6
**confounded** [1] - 1905:6
**connection** [3] - 1928:22, 1929:14, 1940:7
**conscience** [1] - 1944:21
**conscientious** [2] - 1944:23, 1945:10
**conscious** [1] - 1919:6
**consent** [1] - 1941:9
**consequences** [1] - 1901:24
**consider** [15] - 1908:16, 1909:14, 1913:12, 1914:16, 1917:14, 1918:11, 1918:18, 1919:14, 1922:15, 1923:1, 1927:8, 1938:19, 1960:9, 1962:15, 1963:2
**consideration** [6] - 1911:11, 1911:16, 1915:9, 1918:7, 1928:22, 1945:10
**considered** [1] - 1912:7
**considering** [17] - 1894:12, 1921:12, 1922:21, 1924:3, 1924:10, 1927:5, 1927:6, 1927:12, 1928:16, 1938:11, 1938:14, 1938:16, 1940:17, 1940:24, 1941:16, 1941:18, 1942:3
**consist** [1] - 1929:6
**consisted** [1] - 1912:3
**consistent** [1] - 1914:18
**consisting** [1] - 1926:25
**consists** [1] - 1970:20
**consolation** [1] - 1885:8
**conspiracy** [34] - 1875:11, 1920:1, 1920:12, 1920:24, 1920:25, 1921:3, 1921:6, 1921:7, 1921:11, 1921:13, 1921:20, 1922:8, 1922:10, 1922:13, 1922:18, 1922:19, 1922:22, 1922:24, 1923:1, 1923:4, 1923:8, 1923:12, 1923:13, 1923:15, 1923:19, 1923:20, 1923:25, 1924:1, 1924:3, 1924:5, 1927:6, 1936:8, 1952:12
**conspirator** [1] - 1923:9
**conspirators** [5] - 1921:2, 1922:2, 1922:5, 1923:21, 1924:17
**conspire** [1] - 1921:20, 1924:7
**conspired** [1] - 1920:17

**conspiring** [5] - 1902:20, 1919:22, 1920:13, 1924:14, 1926:17

**constitute** [2] - 1927:12, 1929:9

**Constitution** [1] - 1917:3

**constructive** [5] - 1942:16, 1942:21, 1942:22, 1942:23, 1943:1

**consult** [1] - 1944:17

**consulting** [2] - 1945:20, 1945:21

**contact** [5] - 1874:18, 1931:6, 1932:13, 1976:9

**contends** [1] - 1929:21

**context** [6] - 1890:15, 1922:12, 1923:1, 1937:4, 1937:21

**continue** [1] - 1928:1

**Continued** [7] - 1895:25, 1935:13, 1950:24, 1959:24, 1964:25, 1965:15, 1967:10

**continued** [2] - 1925:5, 1947:3

**continues** [2] - 1961:20, 1970:18

**continuing** [1] - 1926:1

**contract** [2] - 1939:10, 1950:14

**contracting** [1] - 1961:4

**contradictions** [1] - 1914:19

**contrary** [1] - 1916:22

**control** [1] - 1942:18

**controversial** [2] - 1954:21, 1959:9

**controversy** [1] - 1959:13

**convene** [1] - 1959:16

**conversation** [3] - 1887:16, 1903:1, 1954:2

**conversations** [5] - 1896:2, 1901:9, 1957:25, 1958:2, 1958:5

**convey** [1] - 1887:1

**conveys** [1] - 1901:15

**convict** [2] - 1911:10, 1911:18

**convicted** [3] - 1903:20, 1913:14, 1918:8

**conviction** [1] - 1907:15

**convince** [5] - 1882:7, 1883:6, 1883:7, 1921:22, 1926:13

**convinced** [2] - 1910:18, 1945:8

**convincing** [1] - 1911:2

**cooperating** [1] - 1884:13

**cooperator** [1] - 1881:13

**copier** [2] - 1972:3, 1972:6

**copies** [5] - 1963:9, 1963:24, 1964:9, 1964:18, 1974:25

**copy** [6] - 1964:9, 1971:18, 1971:21, 1973:21, 1975:8

**correct** [2] - 1934:7, 1950:18

**corrected** [1] - 1950:15

**corrections** [1] - 1884:11

**correctly** [1] - 1971:7

**correspondence** [1] - 1966:23

**corrupt** [1] - 1919:23

**corruptly** [10] - 1872:3, 1920:17, 1921:8, 1924:25, 1926:12, 1928:14, 1928:20, 1929:25, 1930:14, 1930:21

**costs** [1] - 1905:21

**counsel** [13] - 1873:25, 1882:13, 1901:2, 1906:17, 1908:6, 1908:12, 1915:11, 1917:18, 1927:19, 1945:20, 1945:21, 1947:1, 1971:17

**Count** [29] - 1872:2, 1872:4, 1872:6, 1907:25, 1908:1, 1920:12, 1924:16, 1926:16, 1926:20, 1927:6, 1927:25, 1928:9, 1929:2, 1929:15, 1930:3, 1930:10, 1931:12, 1931:17, 1932:3, 1932:19, 1933:12, 1934:3, 1934:23, 1936:3, 1936:8, 1936:9, 1936:10, 1938:7

**count** [13] - 1919:16, 1927:25, 1928:23, 1932:23, 1936:4, 1938:20, 1939:6, 1939:14, 1940:10, 1941:12, 1946:23, 1950:1

**country** [2] - 1888:2, 1908:1

**counts** [21] - 1872:4, 1872:5, 1919:13, 1919:17, 1920:5, 1926:17, 1928:2, 1928:6, 1928:7, 1932:6, 1933:15, 1934:11, 1934:24, 1935:2, 1937:10, 1940:9, 1943:4, 1943:7, 1952:8, 1952:12, 1952:13

**Counts** [4] - 1872:11, 1924:18, 1927:14, 1938:3

**couple** [2] - 1951:2, 1958:3

**course** [18] - 1873:20, 1878:8, 1880:9, 1883:8, 1887:6, 1889:1, 1890:5, 1908:12, 1909:5, 1909:6, 1912:11, 1916:20, 1917:1, 1917:9, 1929:12, 1944:22, 1952:24, 1954:14

**COURT** [123] - 1870:1, 1871:2, 1871:5, 1871:8, 1871:25, 1872:15, 1872:23, 1873:2, 1873:6, 1873:9, 1873:16, 1903:8, 1903:10, 1906:16, 1906:19, 1906:25, 1907:21, 1908:3, 1908:5, 1926:1, 1934:9, 1936:1, 1948:2, 1948:6, 1948:14, 1948:19, 1949:22, 1949:24, 1950:2, 1950:4, 1950:9, 1950:21, 1950:23, 1951:2, 1951:20, 1951:24, 1952:7, 1952:19, 1952:21, 1953:18, 1953:22, 1954:4, 1954:7, 1954:14, 1954:17, 1954:20, 1955:15, 1956:10, 1956:25, 1957:10, 1958:19, 1959:21, 1960:3, 1960:15, 1961:3, 1961:6, 1961:8, 1961:12, 1961:15, 1961:19, 1961:21, 1961:24, 1962:2, 1962:7, 1963:14, 1963:16, 1963:20, 1963:23, 1964:3, 1964:7, 1964:11, 1964:17, 1964:22, 1965:3, 1966:5, 1966:8, 1966:10, 1966:17, 1967:2, 1967:5, 1968:3, 1968:7, 1968:11, 1968:15, 1968:19, 1968:21, 1968:25, 1969:2, 1969:5, 1969:7, 1969:17, 1969:20, 1970:4, 1970:10, 1970:15, 1970:20, 1971:6, 1971:13, 1971:19, 1972:1, 1972:7, 1972:9, 1972:15, 1973:3, 1973:7, 1973:16, 1973:18, 1973:21, 1974:2, 1974:7, 1974:17, 1974:19, 1974:21, 1974:24, 1975:3,

**1975:6, 1975:19, 1975:22, 1975:24, 1976:2, 1976:8, 1976:13, 1976:15**

**Court** [12] - 1870:22, 1872:21, 1918:3, 1945:9, 1951:5, 1951:15, 1964:24, 1969:24, 1974:23, 1977:6, 1977:10, 1977:12

**court** [15] - 1894:10, 1908:4, 1909:18, 1912:22, 1927:22, 1945:20, 1946:10, 1946:15, 1948:5, 1951:1, 1952:20, 1954:16, 1957:9, 1962:10, 1965:4

**Courthouse** [1] - 1870:4

**courtroom** [7] - 1871:13, 1871:18, 1912:23, 1913:4, 1951:19, 1958:25, 1962:19

**cousin** [2] - 1876:21, 1877:2

**cover** [2] - 1898:2, 1971:16

**covered** [1] - 1897:22

**cracking** [3] - 1971:2, 1971:23, 1972:23

**crazy** [3] - 1892:8, 1893:2, 1893:7

**credibility** [4] - 1909:8, 1913:25, 1914:11, 1915:12

**credit** [1] - 1915:14

**crime** [30] - 1897:3, 1904:24, 1913:14, 1916:16, 1921:1, 1921:2, 1921:3, 1921:19, 1923:4, 1923:5, 1923:6, 1924:8, 1924:12, 1924:17, 1924:20, 1924:22, 1926:15, 1927:11, 1928:5, 1929:1, 1929:2, 1929:4, 1929:5, 1929:6, 1929:9, 1929:11, 1929:13, 1931:16, 1935:2, 1940:14

**crimes** [8] - 1902:4, 1906:6, 1906:7, 1908:23, 1924:16, 1929:19, 1938:2, 1938:5

**criminal** [9] - 1876:17, 1910:6, 1920:24, 1921:13, 1921:24, 1922:23, 1923:3, 1927:5, 1943:14

**criminals** [2] - 1906:4, 1906:5

**critical** [1] - 1955:5

**cross** [7] - 1889:14, 1890:12, 1912:4, 1914:17, 1915:1, 1955:8, 1971:23

**cross-examination** [2] - 1915:1, 1955:8

**cross-examinations** [1] - 1912:4

**crowd** [1] - 1902:6

**crystal** [1] - 1886:20

**culminate** [1] - 1929:12

**culprit** [1] - 1876:13

**curry** [1] - 1916:3

# D

**D'Alessandro** [2] - 1877:21, 1906:12

**D'ALESSANDRO** [35] - 1870:14, 1871:4, 1871:7, 1871:10, 1871:22, 1934:7, 1950:6, 1950:10, 1950:22, 1956:15, 1957:8, 1959:18, 1960:25, 1963:15, 1963:19, 1963:22, 1966:6, 1966:9, 1966:18, 1967:3, 1967:8,

1968:5, 1968:14, 1968:23, 1969:4,
1969:6, 1970:16, 1971:5, 1971:10,
1971:15, 1971:25, 1972:3, 1973:25,
1976:1, 1976:14
 **damn** [1] - 1883:11
 **Dancing** [1] - 1874:21
 **danger** [1] - 1926:9
 **DANIEL** [1] - 1870:15
 **date** [2] - 1874:12, 1913:20
 **dates** [5] - 1913:17, 1913:18, 1913:19,
1913:22
 **David** [10] - 1886:6, 1920:11, 1920:17,
1929:19, 1930:4, 1930:6, 1930:14,
1939:9, 1939:16, 1967:1
 **dawned** [1] - 1892:8
 **days** [5] - 1874:13, 1892:8, 1893:4,
1899:2, 1899:14
 **dead** [1] - 1884:14
 **deal** [5] - 1877:10, 1890:19, 1953:25,
1954:9, 1958:23
 **dealer** [1] - 1876:20
 **dealing** [5] - 1874:16, 1875:9, 1877:2,
1896:1, 1927:3
 **dealt** [1] - 1890:20
 **Deb** [8] - 1891:18, 1891:20, 1891:21,
1897:13, 1901:8, 1901:9, 1901:11,
1903:3
 **decide** [3] - 1903:6, 1909:3, 1916:5,
1944:25
 **decided** [2] - 1905:21, 1906:5
 **decision** [4] - 1901:23, 1915:13,
1939:24
 **decisions** [5] - 1882:15, 1901:24,
1914:11, 1914:12, 1940:3
 **defend** [2] - 1906:4, 1943:13
 **defendant** [69] - 1874:9, 1886:14,
1886:19, 1898:7, 1899:23, 1910:6,
1910:8, 1910:9, 1910:11, 1910:14,
1910:16, 1911:13, 1911:14, 1911:22,
1911:23, 1913:13, 1916:16, 1917:2,
1917:3, 1917:6, 1917:8, 1917:24,
1918:8, 1919:1, 1919:8, 1919:10,
1919:11, 1919:15, 1919:17, 1919:19,
1919:20, 1921:12, 1922:21, 1923:10,
1923:14, 1923:22, 1924:2, 1924:10,
1924:24, 1925:1, 1926:7, 1927:12,
1927:23, 1928:2, 1928:14, 1928:16,
1929:4, 1930:13, 1930:16, 1936:5,
1936:20, 1936:25, 1938:10, 1938:14,
1938:16, 1938:20, 1938:24, 1939:6,
1939:13, 1940:13, 1940:17, 1940:24,
1941:15, 1941:17, 1942:3, 1942:8,
1953:15
 **defendant's** [12] - 1872:16, 1877:7,
1880:8, 1886:7, 1899:21, 1910:18,
1911:17, 1913:15, 1919:5, 1920:21,
1923:18, 1939:2
 **Defendants** [2] - 1870:6, 1870:17
 **defendants** [41] - 1874:19, 1880:12,
1882:19, 1882:25, 1883:1, 1884:24,

1885:18, 1886:21, 1888:25, 1905:4,
1905:24, 1906:3, 1906:9, 1909:17,
1909:21, 1909:22, 1909:25, 1910:4,
1910:6, 1911:19, 1914:25, 1915:24,
1917:20, 1917:22, 1918:4, 1919:21,
1920:3, 1920:6, 1920:13, 1920:16,
1924:21, 1926:16, 1927:5, 1928:9,
1928:25, 1930:6, 1935:1, 1938:8,
1940:11, 1940:16, 1941:13
 **defending** [1] - 1949:7
 **defense** [42] - 1873:3, 1882:6,
1882:13, 1883:4, 1885:15, 1889:7,
1889:12, 1892:12, 1900:17, 1903:13,
1915:11, 1927:24, 1928:3, 1931:2,
1931:20, 1932:1, 1932:11, 1932:15,
1933:1, 1933:6, 1933:19, 1933:23,
1934:15, 1934:19, 1935:6, 1936:18,
1936:19, 1936:20, 1937:5, 1937:10,
1937:12, 1938:1, 1949:3, 1949:9,
1949:25, 1952:2, 1952:5, 1952:11,
1964:14, 1966:24, 1966:25, 1971:17
 **deference** [1] - 1945:5
 **define** [1] - 1910:20
 **defined** [1] - 1938:4
 **definition** [1] - 1963:11
 **definitions** [1] - 1930:23
 **degree** [1] - 1945:4
 **deliberate** [6] - 1952:22, 1952:23,
1953:3, 1956:24, 1974:9, 1975:14
 **deliberately** [1] - 1919:5
 **deliberating** [4] - 1952:25, 1953:6,
1957:11, 1965:12
 **deliberation** [1] - 1945:11
 **deliberations** [30] - 1908:16, 1908:25,
1910:10, 1912:13, 1916:14, 1917:15,
1917:17, 1918:1, 1918:10, 1930:24,
1943:21, 1943:22, 1944:22, 1945:7,
1945:15, 1945:24, 1946:20, 1946:21,
1949:19, 1951:4, 1951:10, 1951:13,
1952:24, 1953:8, 1953:14, 1953:17,
1957:3, 1957:20, 1958:7, 1963:5
 **delicate** [1] - 1976:8
 **delightful** [1] - 1951:12
 **demonstrates** [1] - 1951:6
 **denied** [2] - 1872:10, 1908:3
 **deny** [2] - 1888:21
 **Department** [1] - 1939:11
 **deposit** [1] - 1942:20
 **deprive** [1] - 1955:20
 **depriving** [1] - 1956:22
 **describe** [3] - 1889:23, 1890:1,
1924:17
 **described** [2] - 1872:3, 1934:11
 **describes** [1] - 1924:20
 **deserve** [1] - 1915:21
 **deserves** [1] - 1914:1
 **deserving** [1] - 1915:8
 **design** [7] - 1904:22, 1922:7, 1922:16,
1940:21, 1941:1, 1941:23, 1942:4
 **designed** [5] - 1904:19, 1904:21,

1904:25, 1905:1
 **desk** [1] - 1884:19
 **desperately** [1] - 1872:19
 **detailed** [2] - 1898:6, 1898:19
 **details** [1] - 1923:25
 **detention** [2] - 1939:10, 1940:8
 **determination** [1] - 1916:18
 **determine** [2] - 1918:4, 1956:7
 **determined** [1] - 1911:22
 **determining** [3] - 1909:13, 1922:14,
1927:9
 **deterring** [1] - 1926:3
 **devastating** [2] - 1889:16, 1889:17
 **device** [11] - 1940:19, 1940:21,
1940:25, 1941:1, 1941:6, 1941:7,
1941:20, 1941:23, 1942:4, 1942:8
 **devising** [1] - 1929:7
 **difference** [1] - 1908:11
 **different** [5] - 1881:17, 1889:2,
1897:19, 1923:21, 1937:18
 **difficult** [1] - 1892:16
 **direct** [6] - 1912:3, 1912:16, 1913:2,
1913:11, 1914:16, 1922:9
 **directed** [1] - 1899:4
 **directing** [1] - 1881:5
 **dirt** [1] - 1880:21
 **dirty** [1] - 1884:8
 **disagree** [1] - 1973:3
 **discharge** [1] - 1916:24
 **discovered** [1] - 1960:20
 **discovery** [2] - 1903:22, 1903:25
 **discredit** [1] - 1880:22
 **discuss** [6] - 1917:16, 1918:22,
1944:15, 1944:17, 1945:6, 1975:13
 **discussed** [2] - 1898:6, 1900:22
 **discussing** [2] - 1928:24, 1951:12
 **discussion** [2] - 1878:10, 1878:13
 **displayed** [1] - 1880:8
 **disposal** [1] - 1891:25
 **dispute** [3] - 1966:3, 1972:16, 1973:13
 **disputes** [1] - 1909:18
 **disputing** [1] - 1880:14
 **disregard** [2] - 1914:7, 1914:9
 **disregarded** [1] - 1912:12
 **disrespect** [1] - 1975:17
 **dissuade** [4] - 1931:8, 1932:15,
1933:24, 1934:20
 **dissuading** [1] - 1949:11
 **distinct** [2] - 1921:1, 1923:20
 **distinction** [1] - 1913:11, 1938:21
 **distracted** [1] - 1894:16
 **DISTRICT** [3] - 1870:1, 1870:1,
1870:10
 **document** [1] - 1898:1
 **documents** [1] - 1898:3
 **dollars** [4] - 1890:18, 1891:11,
1891:14, 1891:16
 **dominant** [1] - 1963:11
 **dominion** [1] - 1942:18

**done** [9] - 1883:22, 1885:5, 1889:3, 1896:7, 1901:19, 1909:5, 1927:25, 1957:11, 1971:15
**donuts** [1] - 1884:19
**door** [1] - 1976:11
**doors** [1] - 1912:24
**double** [1] - 1971:14
**double-checking** [1] - 1971:14
**doubt** [43] - 1880:15, 1882:20, 1910:3, 1910:5, 1910:12, 1910:14, 1910:18, 1910:20, 1910:21, 1910:22, 1910:24, 1911:1, 1911:4, 1911:5, 1911:6, 1911:9, 1911:14, 1911:17, 1913:15, 1916:15, 1917:6, 1917:23, 1918:5, 1918:16, 1918:19, 1921:4, 1921:18, 1922:21, 1924:9, 1924:23, 1927:10, 1928:4, 1937:3, 1937:7, 1937:19, 1938:4, 1938:13, 1939:14, 1940:1, 1940:14, 1941:17, 1943:2
**doubting** [1] - 1882:24
**down** [17] - 1871:15, 1872:20, 1873:19, 1875:16, 1881:16, 1887:4, 1888:1, 1894:2, 1894:9, 1896:3, 1897:8, 1899:19, 1900:13, 1902:11, 1940:10, 1966:4, 1974:25
**dozen** [1] - 1963:20
**draft** [2] - 1872:9, 1933:6
**drafted** [1] - 1892:25
**draw** [3] - 1892:16, 1913:8, 1916:21
**drawer** [1] - 1898:11
**drawing** [1] - 1907:14
**drawn** [1] - 1917:13
**drive** [2] - 1877:9
**drive-by** [1] - 1877:9
**driving** [2] - 1890:7, 1892:6
**dropped** [1] - 1949:1
**drug** [6] - 1876:20, 1877:10, 1929:18, 1931:4, 1931:21
**dry** [1] - 1912:22
**due** [1] - 1907:10
**duly** [1] - 1952:20
**dumb** [1] - 1898:11
**duration** [1] - 1924:2
**during** [37] - 1873:20, 1876:19, 1878:1, 1878:10, 1880:9, 1887:6, 1889:1, 1889:13, 1889:14, 1908:10, 1909:6, 1912:11, 1912:13, 1915:6, 1916:1, 1916:19, 1916:20, 1917:15, 1917:16, 1926:21, 1941:13, 1944:22, 1945:7, 1945:15, 1945:24, 1949:8, 1951:3, 1951:10, 1951:13, 1952:16, 1952:24, 1953:8, 1954:11, 1955:4, 1955:7, 1958:4
**duties** [1] - 1927:1
**duty** [6] - 1900:19, 1909:14, 1911:7, 1911:14, 1918:1, 1944:16

# E

**e-mails** [2] - 1904:20, 1904:21
**eager** [1] - 1901:3
**ear** [1] - 1892:7
**early** [2] - 1964:21, 1964:22
**easier** [1] - 1886:1
**East** [1] - 1870:22
**EASTERN** [1] - 1870:1
**easy** [1] - 1972:1
**eat** [1] - 1958:20
**eating** [1] - 1884:19
**eavesdropping** [6] - 1920:8, 1940:12, 1941:14, 1941:19, 1966:12, 1966:13
**education** [1] - 1915:17
**effect** [3] - 1944:2, 1944:24, 1960:22
**effort** [1] - 1949:7
**efforts** [2] - 1892:14, 1905:24
**Eight** [3] - 1934:3, 1936:12, 1938:3
**eight** [4] - 1920:1, 1920:5, 1935:3, 1952:9
**either** [13] - 1900:18, 1909:16, 1920:20, 1925:2, 1931:1, 1931:19, 1932:10, 1932:25, 1933:18, 1934:14, 1940:13, 1946:8, 1950:20
**elaborate** [1] - 1921:15
**elapsed** [1] - 1889:9
**electronic** [3] - 1940:23, 1941:24, 1943:8
**element** [3] - 1921:11, 1922:18, 1922:20
**elements** [34] - 1872:3, 1908:23, 1918:15, 1918:22, 1921:4, 1921:15, 1921:16, 1924:12, 1924:22, 1926:15, 1927:10, 1928:5, 1928:13, 1930:12, 1931:16, 1931:17, 1932:6, 1932:22, 1932:23, 1933:15, 1934:10, 1935:2, 1937:7, 1938:2, 1938:5, 1938:13, 1939:22, 1940:15, 1941:3, 1943:18
**elevator** [3] - 1871:14, 1871:16, 1871:17
**elevators** [1] - 1871:17
**eleven** [1] - 1964:18
**Eleven** [1] - 1939:6
**eliciting** [1] - 1949:11
**email** [5] - 1874:11, 1875:16, 1875:25, 1892:11, 1893:1
**emergency** [2] - 1948:8, 1948:9
**emphasize** [3] - 1919:13, 1937:25, 1962:13
**employed** [2] - 1915:7, 1915:23
**employee** [1] - 1920:10
**encourage** [2] - 1936:14, 1937:14
**end** [3] - 1874:3, 1892:21, 1973:14
**enemies** [1] - 1931:3
**enforcement** [9] - 1883:25, 1884:3, 1885:7, 1897:15, 1915:5, 1915:7, 1915:10, 1915:12, 1915:15
**engage** [1] - 1926:14

**engaged** [3] - 1919:12, 1923:16, 1937:13
**engages** [1] - 1919:8
**enjoy** [1] - 1953:6
**enlargement** [1] - 1964:13
**ensuring** [1] - 1949:16
**enter** [3] - 1916:14, 1917:25, 1918:9
**entered** [2] - 1921:5, 1921:18
**entire** [6] - 1878:2, 1878:4, 1914:9, 1924:1, 1949:7, 1955:5
**entirely** [1] - 1912:12
**entitled** [1] - 1944:2
**entry** [1] - 1944:10
**equal** [1] - 1909:18
**equally** [1] - 1937:23
**equipment** [21] - 1903:25, 1904:5, 1904:8, 1904:15, 1904:16, 1904:23, 1905:10, 1907:4, 1907:24, 1920:8, 1940:9, 1940:12, 1941:12, 1941:14, 1941:20, 1943:13, 1943:15, 1966:12, 1966:13, 1966:15, 1966:20
**error** [1] - 1883:7
**ESQ** [4] - 1870:17, 1870:17, 1870:19, 1870:20
**establish** [2] - 1901:3, 1913:20
**established** [2] - 1913:7, 1913:22
**establishes** [2] - 1922:5, 1937:11
**Europe** [2] - 1900:19, 1904:25
**evaluate** [1] - 1915:2
**EVAN** [1] - 1870:17
**evasive** [1] - 1914:15
**event** [6] - 1912:17, 1936:16, 1937:15, 1953:12, 1962:3, 1974:11
**events** [1] - 1917:19
**evidence** [95] - 1873:22, 1874:25, 1875:2, 1875:13, 1875:17, 1880:24, 1884:8, 1885:24, 1886:5, 1886:18, 1886:19, 1886:20, 1889:3, 1889:6, 1889:16, 1891:16, 1897:24, 1897:25, 1898:5, 1898:9, 1898:19, 1903:7, 1903:22, 1903:23, 1906:13, 1908:5, 1908:21, 1909:9, 1909:14, 1909:25, 1910:7, 1910:23, 1911:12, 1911:16, 1911:23, 1912:2, 1912:4, 1912:5, 1912:9, 1912:10, 1912:11, 1912:12, 1912:15, 1912:16, 1912:18, 1912:21, 1913:2, 1913:6, 1913:12, 1913:16, 1913:23, 1914:4, 1915:14, 1915:20, 1917:4, 1918:3, 1918:6, 1918:12, 1919:15, 1927:9, 1936:22, 1937:5, 1937:11, 1937:12, 1937:18, 1937:20, 1937:22, 1937:23, 1938:19, 1944:2, 1944:6, 1944:18, 1944:24, 1945:3, 1945:6, 1945:11, 1946:12, 1946:14, 1952:4, 1954:24, 1956:2, 1957:1, 1957:16, 1958:3, 1958:4, 1958:8, 1959:6
**evil** [1] - 1926:13
**Ex** [3] - 1966:11, 1966:12, 1966:18
**exact** [4] - 1886:15, 1891:18, 1896:22,

1913:20
  **exactly** [7] - 1875:17, 1878:22, 1878:23, 1898:13, 1900:12, 1904:13, 1972:22
  **examination** [3] - 1914:16, 1915:1, 1955:8
  **examinations** [1] - 1912:4
  **examine** [3] - 1914:2, 1915:2, 1945:2
  **example** [8] - 1912:20, 1929:17, 1931:3, 1931:21, 1935:6, 1942:19, 1949:14
  **except** [4] - 1920:3, 1945:19, 1960:8, 1965:6
  **exception** [1] - 1949:19
  **exclusively** [2] - 1909:4, 1918:2
  **excuse** [5] - 1887:5, 1888:3, 1888:18, 1890:16, 1911:6
  **excused** [4] - 1951:5, 1951:15, 1951:18, 1952:23
  **excuses** [1] - 1889:19
  **exercise** [1] - 1942:17
  **Exhibit** [10] - 1874:11, 1874:22, 1892:12, 1964:24, 1966:25, 1969:24, 1974:23, 1977:6, 1977:10, 1977:12
  **Exhibits** [2] - 1966:19, 1966:21
  **exhibits** [9] - 1873:21, 1912:4, 1946:11, 1946:13, 1959:3, 1959:4, 1959:7, 1959:12, 1966:24
  **existed** [4] - 1922:14, 1922:16, 1924:9, 1936:13
  **existence** [4] - 1912:19, 1918:17, 1922:10, 1922:18
  **expeditiously** [1] - 1959:5
  **expensive** [1] - 1897:8
  **experience** [6] - 1913:9, 1915:18, 1960:18, 1960:19, 1963:9
  **experiment** [1] - 1881:12
  **expert** [4] - 1897:16, 1904:7, 1915:16, 1915:20
  **expertise** [1] - 1915:18
  **experts** [1] - 1915:17
  **explain** [1] - 1924:12
  **explained** [3] - 1922:24, 1930:20, 1942:10
  **explaining** [1] - 1878:10
  **explanation** [2] - 1890:17, 1902:12
  **explanatory** [1] - 1939:22
  **explicit** [1] - 1936:2
  **express** [2] - 1921:25, 1926:5
  **expressing** [2] - 1909:2, 1909:7
  **expressly** [1] - 1907:4
  **exquisite** [2] - 1885:24, 1886:4
  **extent** [1] - 1923:18
  **eyeshades** [2] - 1960:11, 1960:14
  **eyewitness** [3] - 1897:12, 1897:14, 1912:17

**F**

  **face** [1] - 1919:17
  **facility** [2] - 1939:10, 1940:8
  **facing** [1] - 1919:20
  **fact** [15] - 1872:1, 1909:13, 1912:20, 1915:7, 1916:22, 1917:11, 1917:16, 1918:17, 1918:19, 1923:6, 1937:25, 1939:23, 1943:10, 1944:10, 1963:1
  **facts** [11] - 1909:3, 1909:8, 1909:10, 1909:11, 1912:6, 1912:15, 1912:20, 1913:7, 1919:2, 1962:21, 1963:1
  **fails** [1] - 1910:14
  **fair** [6] - 1872:23, 1911:11, 1911:15, 1927:2, 1944:6, 1964:15
  **faith** [1] - 1926:25
  **faithfulness** [1] - 1927:1
  **false** [13] - 1895:13, 1914:7, 1914:8, 1920:10, 1931:9, 1932:16, 1933:25, 1934:20, 1939:18, 1939:19, 1940:7, 1949:11
  **falsely** [6] - 1926:19, 1936:16, 1937:15, 1939:7
  **falsus** [1] - 1872:15
  **family** [4] - 1878:17, 1878:18, 1878:20, 1879:16
  **fantastic** [2] - 1881:15, 1886:18
  **far** [2] - 1891:13, 1961:14
  **Farrah** [4] - 1920:20, 1934:24, 1935:5, 1949:12
  **father** [1] - 1879:7
  **fault** [1] - 1902:7
  **favor** [1] - 1916:3
  **favorite** [1] - 1888:10
  **fear** [3] - 1890:7, 1892:6, 1926:3
  **fearful** [1] - 1926:11
  **Fed** [3] - 1966:11, 1966:12, 1966:18
  **federal** [2] - 1894:10, 1909:24
  **fee** [2] - 1896:16, 1897:1
  **feelings** [1] - 1916:12
  **feet** [1] - 1884:19
  **fellow** [1] - 1945:1
  **few** [7] - 1873:24, 1889:20, 1924:18, 1927:8, 1928:12, 1943:20, 1976:10
  **fide** [4] - 1926:23, 1926:24, 1927:13, 1927:15
  **fifth** [1] - 1939:19
  **filing** [1] - 1953:20
  **fill** [1] - 1878:14
  **filled** [1] - 1878:19
  **filling** [2] - 1879:12, 1879:14
  **Finally** [1] - 1898:11
  **finally** [5] - 1874:8, 1898:10, 1899:1, 1903:17
  **financial** [1] - 1916:2
  **fine** [6] - 1891:5, 1897:1, 1974:16, 1975:19, 1976:12
  **Fine** [1] - 1904:17
  **Fineman** [8] - 1893:14, 1895:20,

  1896:14, 1896:16, 1900:2, 1900:24, 1902:11, 1902:14
  **firewall** [1] - 1897:20
  **first** [20] - 1874:4, 1879:1, 1883:25, 1884:7, 1884:25, 1895:17, 1897:17, 1900:25, 1921:5, 1921:17, 1922:18, 1924:24, 1928:14, 1938:13, 1939:15, 1940:16, 1941:19, 1951:3, 1952:12
  **First** [1] - 1930:13
  **five** [23] - 1872:22, 1875:5, 1893:16, 1896:11, 1896:21, 1899:2, 1899:14, 1901:25, 1903:9, 1908:19, 1932:23, 1952:8, 1964:21, 1964:22, 1970:5, 1970:7, 1970:20, 1975:11, 1976:3, 1976:5, 1976:10, 1977:11
  **Five** [3] - 1932:3, 1936:10, 1938:3
  **flash** [1] - 1885:19
  **flatter** [2] - 1894:9
  **flood** [1] - 1948:10
  **focus** [8] - 1877:13, 1879:6, 1880:3, 1885:18, 1924:19, 1932:5, 1934:4
  **focuses** [8] - 1930:4, 1930:10, 1931:13, 1931:15, 1932:20, 1932:21, 1933:14, 1934:24
  **focusing** [1] - 1887:19
  **FODEMAN** [24] - 1870:14, 1871:6, 1871:24, 1872:19, 1873:1, 1873:14, 1873:17, 1896:1, 1903:9, 1903:11, 1964:16, 1968:18, 1968:20, 1969:19, 1972:17, 1973:2, 1973:5, 1973:9, 1973:14, 1973:17, 1973:20, 1973:22, 1973:24, 1974:18
  **Fodeman** [4] - 1873:12, 1906:16, 1907:3, 1907:13
  **follow** [2] - 1908:13, 1962:25
  **following** [12] - 1871:1, 1880:18, 1940:15, 1953:16, 1958:18, 1960:1, 1963:6, 1964:1, 1965:1, 1966:1, 1968:1, 1972:14
  **footsteps** [3] - 1901:4, 1955:19, 1956:8
  **forbids** [2] - 1919:9, 1919:11
  **foreign** [2] - 1940:19, 1942:9
  **Foreign** [1] - 1941:4
  **foreperson** [5] - 1943:22, 1943:24, 1943:25, 1945:17, 1946:17
  **foreperson's** [2] - 1944:1
  **forget** [2] - 1871:25, 1953:9
  **forgot** [1] - 1906:5
  **form** [6] - 1878:14, 1878:19, 1878:25, 1879:13, 1879:14, 1879:20
  **formal** [1] - 1922:1
  **forth** [3] - 1902:24, 1903:24, 1966:23
  **forthright** [1] - 1914:13
  **forty** [2] - 1872:22, 1908:19
  **forty-five** [2] - 1872:22, 1908:19
  **forward** [1] - 1952:17
  **four** [9] - 1876:11, 1893:16, 1932:7, 1951:9, 1965:6, 1968:7, 1969:25, 1975:7, 1977:9

**Four** [1] - 1931:12
**fourth** [2] - 1939:18, 1942:7
**framed** [1] - 1907:3
**framework** [1] - 1944:7
**frankness** [1] - 1945:4
**free** [2] - 1943:24, 1976:6
**fresh** [1] - 1965:7
**friend** [5] - 1876:6, 1878:21, 1879:8, 1879:16, 1879:22
**frightened** [1] - 1926:9
**frightening** [1] - 1926:2
**front** [1] - 1972:22
**full** [1] - 1945:10
**fullest** [1] - 1945:12
**fully** [1] - 1923:24
**function** [5] - 1918:3, 1940:6, 1944:5, 1944:8, 1962:25
**fundamental** [2] - 1899:13, 1906:6
**funny** [1] - 1891:20
**furthering** [1] - 1923:17
**Furthermore** [2] - 1904:5, 1904:6
**furthers** [1] - 1923:7

## G

**gain** [1] - 1916:9
**gang** [2] - 1884:14, 1884:15
**gates** [1] - 1948:10
**gather** [2] - 1892:14, 1951:16
**gathering** [2] - 1892:17, 1892:22
**Gene** [1] - 1870:22
**general** [1] - 1912:14
**gentlemen** [18] - 1875:2, 1875:5, 1877:1, 1881:23, 1885:17, 1887:5, 1888:20, 1888:23, 1891:2, 1892:1, 1895:8, 1905:4, 1905:17, 1906:8, 1906:15, 1944:5, 1958:14, 1974:8
**GEO** [4] - 1905:9, 1939:8, 1939:9, 1940:8
**George** [6] - 1890:19, 1920:18, 1931:13, 1949:14, 1949:15
**GERALD** [1] - 1870:17
**gestures** [1] - 1926:6
**get-go** [1] - 1895:17
**girl** [1] - 1895:21
**gist** [1] - 1900:17
**given** [8] - 1873:2, 1909:9, 1914:2, 1914:18, 1927:3, 1938:17, 1944:7, 1954:2
**glad** [2] - 1894:2, 1967:2
**GLEESON** [1] - 1870:9
**GO** [3] - 1884:11, 1950:13
**goal** [2] - 1921:13, 1922:23
**goals** [4] - 1921:13, 1922:23, 1923:13, 1924:6
**gong** [1] - 1960:15
**government** [65] - 1872:2, 1876:17, 1876:18, 1876:20, 1876:22, 1877:16, 1877:19, 1877:22, 1882:3, 1884:9,

1885:18, 1885:19, 1888:3, 1895:15, 1897:2, 1897:4, 1903:13, 1903:18, 1904:4, 1905:9, 1905:11, 1905:15, 1908:23, 1909:17, 1909:20, 1910:2, 1910:11, 1910:13, 1911:8, 1915:23, 1915:25, 1916:3, 1917:22, 1918:13, 1919:9, 1920:16, 1921:3, 1921:17, 1921:25, 1924:8, 1927:10, 1928:4, 1928:25, 1929:14, 1930:25, 1931:18, 1932:8, 1932:24, 1933:17, 1935:4, 1937:2, 1937:6, 1938:1, 1938:11, 1938:12, 1939:14, 1939:20, 1939:24, 1940:4, 1940:6, 1940:14, 1941:16, 1943:14, 1952:10, 1966:14
**Government** [6] - 1870:13, 1874:10, 1874:21, 1892:12, 1966:19, 1966:21
**government's** [9] - 1885:14, 1889:5, 1910:4, 1916:13, 1916:17, 1934:12, 1939:24, 1940:3, 1972:20
**grab** [1] - 1903:2
**grand** [1] - 1896:11
**grant** [1] - 1902:3
**granted** [1] - 1971:17
**great** [8] - 1881:13, 1881:14, 1881:15, 1886:12, 1886:17, 1894:1, 1899:6, 1976:14
**greater** [3] - 1915:9, 1937:22, 1944:3
**greatest** [1] - 1878:9
**green** [2] - 1960:11, 1960:14
**Group** [3] - 1939:8, 1939:9, 1940:8
**guess** [3] - 1885:19, 1894:21, 1930:9
**guessing** [1] - 1908:19
**guilt** [8] - 1885:24, 1910:18, 1911:8, 1911:17, 1911:21, 1911:24, 1913:15, 1923:19
**guilty** [18] - 1885:24, 1886:19, 1886:21, 1903:22, 1904:24, 1910:1, 1910:5, 1910:11, 1910:14, 1910:15, 1910:17, 1917:6, 1918:5, 1937:9, 1938:11, 1939:13, 1940:13, 1941:16
**gun** [2] - 1882:9, 1893:25
**guy** [7] - 1890:11, 1892:8, 1893:2, 1893:25, 1894:6, 1894:7, 1895:4
**Guyana** [7] - 1875:16, 1876:6, 1894:20, 1895:1, 1896:3, 1900:20, 1933:9
**guys** [2] - 1879:10, 1903:2

## H

**half** [10] - 1872:23, 1884:2, 1887:7, 1898:13, 1903:17, 1905:2, 1906:8, 1963:20, 1965:11
**hand** [5] - 1907:21, 1911:15, 1916:12, 1945:2, 1952:19
**hands** [1] - 1881:14
**handwriting** [1] - 1875:22
**hang** [1] - 1972:9
**hard** [1] - 1880:13

**hardball** [2] - 1897:5, 1897:7
**hardly** [1] - 1944:8
**Harlem** [2] - 1970:14, 1970:15
**harm** [2] - 1893:8, 1926:6
**harming** [1] - 1883:16
**haul** [1] - 1962:10
**head** [2] - 1882:9, 1897:1
**heads** [1] - 1959:3
**hear** [12] - 1882:5, 1889:15, 1896:12, 1901:4, 1946:14, 1955:8, 1956:8, 1962:4, 1974:5, 1975:10, 1976:9
**heard** [17] - 1875:2, 1882:5, 1887:5, 1897:10, 1908:5, 1908:6, 1915:5, 1915:16, 1915:22, 1917:18, 1920:8, 1927:4, 1936:7, 1956:13, 1961:6, 1969:18, 1976:5
**hearing** [1] - 1898:23
**hears** [1] - 1907:12
**hearts** [1] - 1892:6
**heat** [1] - 1890:22
**heels** [1] - 1955:8
**held** [1] - 1906:9
**help** [5] - 1874:20, 1921:14, 1922:24, 1924:5, 1957:2
**helped** [1] - 1884:14
**helpful** [1] - 1974:14
**helping** [1] - 1902:19
**helps** [1] - 1889:10
**herring** [1] - 1904:17
**hesitate** [3] - 1910:24, 1911:3, 1945:7
**hiding** [1] - 1914:14
**high** [1] - 1887:9
**highlight** [1] - 1950:16
**himself** [1] - 1930:1
**hiring** [1] - 1880:16
**Hodges** [2] - 1951:4, 1951:14
**hold** [2] - 1906:11, 1942:16
**holding** [1] - 1963:10
**holds** [1] - 1942:15
**home** [5] - 1877:12, 1970:7, 1975:12, 1975:15
**honestly** [2] - 1890:13
**honesty** [1] - 1927:1
**Honor** [27] - 1871:4, 1872:12, 1873:14, 1903:9, 1907:6, 1934:8, 1948:21, 1949:5, 1949:20, 1953:19, 1954:1, 1956:5, 1956:15, 1956:19, 1959:18, 1959:19, 1959:20, 1960:25, 1961:7, 1961:10, 1961:22, 1962:1, 1963:8, 1966:7, 1972:11, 1974:22, 1975:18
**Honor's** [2] - 1907:12, 1950:11
**HONORABLE** [1] - 1870:9
**hope** [1] - 1953:6
**hopes** [1] - 1916:8
**horrific** [1] - 1900:14
**hour** [7] - 1872:21, 1872:24, 1882:24, 1884:2, 1902:16, 1965:9, 1965:11
**hours** [7] - 1876:5, 1876:11, 1882:23, 1894:5, 1912:23

**human** [1] - 1963:8
**hurt** [2] - 1892:19, 1893:7
**hurting** [3] - 1881:5, 1891:5, 1892:9

## I

**idea** [1] - 1889:5
**identical** [1] - 1920:3
**identified** [1] - 1936:24
**identifies** [1] - 1956:19
**identifying** [1] - 1956:11
**identities** [1] - 1923:23
**ignorance** [1] - 1918:25
**ignored** [4] - 1904:6, 1904:10, 1906:3, 1946:7
**Ill** [1] - 1900:6
**Ilene** [8] - 1873:6, 1951:16, 1951:20, 1959:1, 1959:13, 1961:9, 1975:12, 1975:17
**ill** [1] - 1905:16
**ill-chosen** [1] - 1905:16
**illegal** [3] - 1894:9, 1896:17, 1923:17
**illegally** [1] - 1882:8
**imagine** [1] - 1876:4
**immaterial** [1] - 1950:15
**impartial** [2] - 1911:11, 1911:15
**impartiality** [1] - 1909:15
**impeachment** [1] - 1906:23
**implicate** [1] - 1918:21
**implication** [2] - 1885:11, 1885:14
**implicit** [1] - 1936:2
**importance** [1] - 1910:25
**important** [9] - 1909:20, 1911:4, 1944:8, 1951:7, 1953:3, 1955:5, 1957:2, 1962:10, 1962:25
**imported** [3] - 1940:11, 1943:9, 1943:11
**importing** [1] - 1920:7
**imposed** [1] - 1918:7
**imposing** [1] - 1918:1
**impossible** [1] - 1889:20
**impressed** [1] - 1914:12
**impression** [1] - 1955:2
**inappropriate** [1] - 1873:2
**incentive** [1] - 1916:2
**inclined** [1] - 1954:3
**include** [1] - 1941:10
**included** [1] - 1936:5
**includes** [1] - 1926:2
**including** [1] - 1921:23
**inconsistent** [1] - 1904:14
**inconvenience** [1] - 1964:5
**incorporate** [1] - 1872:5
**indeed** [2] - 1916:25, 1917:15
**Indian** [1] - 1879:7
**indicate** [2] - 1929:10, 1946:20
**indicates** [1] - 1957:21
**indication** [1] - 1955:9
**indictment** [1] - 1909:23

**indirect** [1] - 1912:17
**indirectly** [1] - 1938:14
**individual** [2] - 1911:21, 1944:20
**individually** [1] - 1944:13
**induce** [3] - 1926:14, 1936:14, 1939:5
**induced** [1] - 1925:3
**infer** [3] - 1913:3, 1913:5, 1922:10
**inference** [3] - 1892:17, 1916:21, 1917:12
**inferences** [1] - 1913:8
**inferred** [1] - 1907:9
**influence** [8] - 1918:1, 1918:8, 1919:24, 1921:8, 1925:2, 1927:22, 1928:17, 1930:17
**influenced** [3] - 1914:22, 1939:23, 1940:3
**informant** [4] - 1915:23, 1916:6, 1916:17, 1921:21
**informants** [3] - 1916:1, 1916:2, 1916:13
**information** [13] - 1892:14, 1901:16, 1902:24, 1927:21, 1929:22, 1931:7, 1931:25, 1932:14, 1933:5, 1933:7, 1933:22, 1934:18, 1935:10
**informed** [1] - 1923:24
**initial** [3] - 1876:19, 1878:10, 1952:16
**innocence** [3] - 1910:13, 1910:16, 1911:25
**innocent** [5] - 1881:24, 1882:1, 1910:8, 1910:9, 1917:9
**inquiry** [1] - 1924:2
**inside** [3] - 1975:21, 1975:22, 1975:24
**inspect** [2] - 1904:7, 1943:15
**inspection** [1] - 1946:13
**inspired** [1] - 1872:9
**inspiring** [1] - 1926:3
**instead** [3] - 1872:6, 1884:22, 1885:5
**instruct** [5] - 1908:7, 1927:16, 1927:24, 1952:10, 1956:6
**instructed** [1] - 1918:11
**instruction** [4] - 1891:3, 1904:18, 1906:21, 1906:24
**instructions** [21] - 1907:12, 1908:9, 1908:13, 1908:14, 1908:17, 1908:20, 1908:22, 1908:25, 1909:6, 1913:19, 1924:15, 1928:21, 1930:22, 1957:18, 1960:6, 1962:8, 1962:12, 1962:14, 1962:15, 1962:16, 1963:2
**intend** [8] - 1926:7, 1930:1, 1938:24, 1939:3, 1955:1, 1960:13, 1970:2, 1974:13
**intended** [9] - 1909:7, 1921:2, 1931:8, 1932:15, 1933:24, 1934:19, 1948:13, 1948:14, 1975:17
**intending** [2] - 1921:14, 1922:23
**intends** [1] - 1929:9
**intent** [13] - 1887:1, 1889:16, 1918:21, 1919:24, 1921:8, 1924:5, 1925:1, 1928:17, 1928:18, 1929:5, 1929:10, 1930:17, 1930:18

**intention** [6] - 1923:12, 1926:6, 1936:14, 1937:14, 1942:17, 1943:12
**intentionally** [9] - 1918:24, 1919:4, 1919:8, 1919:12, 1922:25, 1923:15, 1940:16, 1940:18, 1941:19
**intercepted** [1] - 1941:10
**intercepting** [4] - 1907:8, 1907:25, 1940:22, 1941:24
**interception** [3] - 1941:8, 1943:7, 1943:11
**interest** [3] - 1874:5, 1914:22, 1915:3
**interested** [2] - 1874:6, 1874:15
**interrupt** [1] - 1949:22
**interview** [9] - 1916:24, 1927:17, 1931:7, 1931:25, 1932:14, 1933:5, 1933:22, 1934:18, 1935:10
**interviewed** [1] - 1916:20
**interviewing** [7] - 1880:19, 1949:12
**intimidate** [7] - 1921:7, 1929:25, 1930:21, 1932:2, 1932:18, 1933:11, 1934:22
**intimidation** [5] - 1872:6, 1919:23, 1924:24, 1926:2, 1930:14
**introduced** [1] - 1873:22
**invested** [2] - 1882:19, 1894:5
**investigation** [1] - 1915:24
**investigations** [1] - 1916:1
**investigative** [1] - 1918:14
**investigator** [7] - 1891:13, 1891:24, 1897:10, 1897:11, 1900:24, 1901:8, 1927:20
**Investigator** [1] - 1884:6
**investigators** [4] - 1880:17, 1891:17, 1897:11, 1905:14
**involved** [3] - 1877:8, 1922:12, 1931:4
**involvement** [2] - 1929:18, 1931:21
**involves** [1] - 1872:6
**involving** [1] - 1920:25
**iota** [1] - 1898:4
**irrelevant** [2] - 1916:14, 1916:17
**IRVING** [1] - 1870:6
**Irving** [29] - 1870:20, 1876:16, 1877:17, 1877:23, 1878:7, 1878:19, 1879:8, 1879:11, 1879:17, 1899:4, 1900:16, 1906:2, 1909:22, 1917:2, 1917:12, 1917:16, 1920:5, 1924:13, 1929:15, 1930:25, 1931:18, 1932:8, 1933:17, 1934:13, 1935:4, 1936:3, 1955:6, 1955:18, 1966:22
**issue** [16] - 1878:24, 1880:3, 1880:4, 1883:20, 1893:17, 1904:22, 1905:1, 1907:3, 1917:21, 1923:19, 1936:23, 1940:2, 1950:16, 1953:25, 1954:9, 1960:22
**issues** [6] - 1909:13, 1944:18, 1945:3, 1945:6, 1945:11, 1945:13
**item** [2] - 1942:25, 1957:1
**items** [1] - 1942:22
**itself** [2] - 1951:6, 1958:9

# J

**jack** [1] - 1895:24
**Jackson** [2] - 1951:4, 1951:14
**Jagnarain** [7] - 1920:20, 1934:4, 1934:14, 1934:18, 1934:22, 1935:7, 1936:10
**jail** [12] - 1875:20, 1876:2, 1876:7, 1877:12, 1878:13, 1879:21, 1884:12, 1897:16, 1899:21, 1900:7, 1902:22, 1939:25
**Jainarine** [6] - 1920:18, 1932:4, 1932:9, 1932:14, 1932:16, 1932:18
**JAVIER** [1] - 1870:19
**Jenab** [3] - 1951:11, 1951:22, 1953:5
**job** [5] - 1883:6, 1883:8, 1902:2, 1908:6, 1929:17
**JOHN** [1] - 1870:9
**joined** [3] - 1901:22, 1921:23, 1924:3
**joins** [1] - 1962:4
**joint** [1] - 1922:7
**Judge** [12] - 1871:6, 1873:1, 1894:18, 1907:2, 1950:22, 1952:6, 1963:25, 1967:4, 1972:17, 1974:18, 1976:1
**JUDGE** [1] - 1870:10
**judge** [13] - 1871:24, 1872:19, 1880:7, 1882:14, 1884:1, 1902:10, 1903:5, 1909:11, 1955:3, 1961:11, 1969:11, 1970:2, 1972:8
**judge's** [1] - 1960:6
**judges** [2] - 1909:10, 1913:24
**judges's** [1] - 1904:18
**judgment** [2] - 1913:9, 1944:20
**July** [1] - 1895:18
**June** [5] - 1875:21, 1890:17, 1893:4, 1940:11
**juries** [1] - 1946:5
**jurisdiction** [2] - 1939:20, 1940:4
**Juror** [1] - 1943:23
**juror** [2] - 1943:25, 1948:3
**jurors** [17] - 1871:14, 1871:20, 1909:14, 1910:17, 1913:24, 1918:6, 1944:4, 1945:1, 1945:13, 1951:8, 1953:19, 1955:16, 1956:20, 1962:21, 1965:6, 1965:9, 1976:9
**Jury** [1] - 1954:5
**jury** [73] - 1870:10, 1871:1, 1871:10, 1873:6, 1873:8, 1882:14, 1882:15, 1886:1, 1900:19, 1905:4, 1905:17, 1906:15, 1907:3, 1907:11, 1909:5, 1910:10, 1913:14, 1915:6, 1917:25, 1918:18, 1919:18, 1927:24, 1944:14, 1946:9, 1946:13, 1946:17, 1949:25, 1950:12, 1950:17, 1951:13, 1951:16, 1953:11, 1953:13, 1953:16, 1953:23, 1954:22, 1955:16, 1955:20, 1956:16, 1956:17, 1958:18, 1959:7, 1960:1, 1960:4, 1960:19, 1961:21, 1961:23, 1962:13, 1963:4, 1963:6, 1963:9,

1963:10, 1963:11, 1964:1, 1965:1, 1965:4, 1966:1, 1966:11, 1968:1, 1968:7, 1969:25, 1970:3, 1970:20, 1972:14, 1975:3, 1975:23, 1977:5, 1977:7, 1977:8, 1977:9, 1977:11, 1977:13
**jury's** [1] - 1946:5
**justice** [4] - 1902:16, 1902:18, 1902:19, 1902:20
**Justice** [1] - 1939:12
**justified** [1] - 1913:9

# K

**keep** [8] - 1882:18, 1891:4, 1897:20, 1948:2, 1951:3, 1951:9, 1951:11, 1970:3
**keeping** [1] - 1887:16
**keeps** [1] - 1942:19
**kept** [1] - 1883:23
**key** [2] - 1924:2, 1942:10
**Khan** [40] - 1875:6, 1876:24, 1877:11, 1878:14, 1879:19, 1880:12, 1898:22, 1898:24, 1899:14, 1900:21, 1901:17, 1919:23, 1920:15, 1921:9, 1927:16, 1928:11, 1928:18, 1929:18, 1929:23, 1930:18, 1931:3, 1931:8, 1931:10, 1932:17, 1933:2, 1933:6, 1933:20, 1933:23, 1933:25, 1934:15, 1934:19, 1934:21, 1936:16, 1937:16, 1938:18, 1943:14, 1943:16, 1949:7, 1949:10
**Khan's** [9] - 1875:23, 1884:14, 1929:18, 1930:2, 1931:21, 1932:1, 1932:15, 1935:11, 1935:12
**kill** [2] - 1890:11, 1892:19
**killed** [2] - 1885:5, 1885:8
**killing** [1] - 1890:25
**kind** [2] - 1905:22, 1963:12
**knowingly** [8] - 1918:24, 1919:1, 1919:11, 1922:25, 1925:1, 1926:13, 1928:17, 1930:16
**knowledge** [7] - 1914:21, 1915:19, 1918:21, 1921:13, 1922:22, 1923:6, 1923:11
**known** [7] - 1920:18, 1920:19, 1923:23, 1931:13, 1932:4, 1932:20
**knows** [5] - 1879:18, 1899:16, 1901:25, 1923:5, 1959:1

# L

**lack** [7] - 1910:23, 1911:12, 1911:23, 1912:2, 1918:12, 1929:18, 1931:21
**ladies** [18] - 1875:2, 1875:5, 1877:1, 1881:23, 1885:17, 1887:5, 1888:20, 1888:23, 1891:2, 1892:1, 1895:8, 1905:4, 1905:17, 1906:8, 1906:15, 1944:5, 1958:14, 1974:8
**lady** [2] - 1884:10, 1895:12

**language** [3] - 1907:7, 1907:16, 1907:23
**laptop** [1] - 1943:6
**laptops** [2] - 1971:3, 1972:24
**last** [9] - 1887:6, 1887:15, 1904:4, 1907:12, 1908:19, 1934:3, 1934:23, 1957:11, 1965:11
**late** [2] - 1949:2, 1970:6
**laughed** [1] - 1891:22
**launch** [1] - 1905:12
**law** [36] - 1875:13, 1883:25, 1884:3, 1885:7, 1897:15, 1908:7, 1908:8, 1908:11, 1908:12, 1908:13, 1908:15, 1909:1, 1909:11, 1909:12, 1909:19, 1909:24, 1910:7, 1911:8, 1912:14, 1913:11, 1913:13, 1913:21, 1915:5, 1915:7, 1915:10, 1915:12, 1915:14, 1919:8, 1919:10, 1920:25, 1923:9, 1936:18, 1942:13, 1944:7, 1962:17, 1962:23
**LAW** [1] - 1972:11
**lawful** [5] - 1926:23, 1927:12, 1927:15, 1936:13, 1937:13
**LAWRENCE** [1] - 1870:20
**lawyer** [16] - 1877:22, 1881:3, 1881:6, 1881:8, 1884:15, 1887:3, 1888:7, 1889:22, 1890:3, 1891:2, 1896:20, 1901:20, 1905:23, 1907:19, 1926:22, 1962:20
**lawyer's** [1] - 1926:23
**lawyerese** [1] - 1890:3
**lawyers** [19] - 1880:14, 1883:5, 1890:10, 1890:11, 1905:15, 1906:3, 1906:7, 1907:13, 1907:17, 1908:10, 1912:8, 1960:10, 1960:16, 1960:21, 1962:18, 1962:19, 1962:20, 1962:21, 1963:17
**leads** [1] - 1880:18
**learning** [1] - 1915:18
**least** [5] - 1896:5, 1897:22, 1921:22, 1923:11, 1924:4
**leave** [15] - 1876:8, 1876:9, 1879:17, 1879:18, 1926:20, 1951:18, 1955:1, 1955:23, 1957:15, 1957:19, 1958:12, 1974:9, 1975:3, 1976:6, 1976:10
**leaving** [1] - 1955:8
**ledge** [1] - 1893:11
**left** [1] - 1909:4
**legal** [6] - 1888:8, 1896:16, 1896:18, 1926:23, 1927:13, 1927:15
**legalese** [1] - 1888:6
**legitimate** [5] - 1880:11, 1891:12, 1891:17, 1900:23, 1915:11
**length** [1] - 1873:3
**lengthy** [1] - 1971:22
**Leslie** [1] - 1885:25
**Leslyn** [13] - 1886:6, 1886:11, 1888:15, 1896:19, 1898:12, 1899:12, 1900:1, 1920:6, 1920:20, 1933:12, 1938:9, 1938:15

**less** [2] - 1915:9, 1952:25
**lesser** [2] - 1915:9, 1937:20
**letter** [10] - 1872:14, 1874:21, 1874:22, 1874:23, 1875:6, 1875:18, 1875:24, 1876:5, 1876:12, 1900:9
**letters** [4] - 1875:20, 1876:1, 1903:24, 1904:3
**leverage** [1] - 1899:19
**lexicon** [1] - 1891:2
**liar** [4] - 1878:12, 1879:10, 1893:2, 1894:6
**licensed** [2] - 1880:17, 1897:11
**lie** [4] - 1882:4, 1884:12, 1895:14, 1916:9
**lies** [1] - 1905:9
**life** [4] - 1886:6, 1886:7, 1902:7, 1911:1
**light** [2] - 1907:10, 1913:9
**likely** [1] - 1937:21
**limit** [1] - 1952:15
**limited** [3] - 1880:1, 1880:2, 1896:25
**line** [8] - 1878:4, 1890:17, 1900:3, 1973:1, 1973:2, 1973:11, 1973:13
**linking** [1] - 1900:2
**LIPTON** [4] - 1870:17, 1961:17, 1964:20, 1970:13
**list** [3] - 1879:2, 1887:7, 1894:21
**listen** [20] - 1877:12, 1887:17, 1888:24, 1888:25, 1889:11, 1889:12, 1899:24, 1899:25, 1903:1, 1904:17, 1945:5, 1955:13, 1956:3, 1956:4, 1956:7, 1956:10, 1956:12
**listened** [1] - 1955:17
**literally** [1] - 1969:16
**live** [1] - 1902:8
**loaded** [2] - 1882:11, 1891:6
**locate** [7] - 1927:20, 1929:22, 1931:24, 1933:4, 1933:21, 1934:17, 1935:9
**located** [1] - 1933:9
**locked** [1] - 1877:8
**locker** [2] - 1887:10, 1891:9
**logical** [1] - 1963:11
**Loo** [1] - 1896:3
**look** [18] - 1874:4, 1877:1, 1878:24, 1884:24, 1887:15, 1889:24, 1891:14, 1892:23, 1893:19, 1895:16, 1895:21, 1896:4, 1904:3, 1905:19, 1948:17, 1960:17
**Look** [1] - 1897:3
**looking** [3] - 1887:24, 1889:7, 1971:17
**loose** [1] - 1887:12
**lose** [3] - 1896:13, 1902:2, 1963:1
**losing** [1] - 1960:9
**louder** [2] - 1892:2, 1922:13
**love** [1] - 1962:20
**lower** [1] - 1900:8
**Lower** [1] - 1970:17
**lowering** [1] - 1900:10
**luck** [2] - 1897:9, 1898:12

**lunatic** [1] - 1893:2, 1894:7
**lunch** [4] - 1953:8, 1958:24, 1964:21, 1964:22
**lying** [1] - 1879:19, 1888:11, 1888:13, 1888:16, 1893:18, 1895:16, 1916:7

# M

**machine** [1] - 1975:8
**mail** [3] - 1940:17, 1940:18, 1942:9
**Mail** [1] - 1903:2
**mailing** [1] - 1903:1
**mails** [2] - 1904:20, 1904:21
**main** [1] - 1875:12
**major** [1] - 1923:22
**man** [1] - 1891:3
**Man** [1] - 1874:21
**managing** [1] - 1939:9
**Manhattan** [1] - 1970:17
**manipulative** [1] - 1905:6
**manner** [1] - 1960:21
**March** [1] - 1939:7
**marked** [9] - 1960:5, 1964:25, 1966:16, 1968:9, 1969:24, 1970:1, 1971:4, 1974:23, 1975:5
**MARSHAL** [1] - 1952:18
**marshal** [4] - 1945:23, 1952:17, 1952:20, 1965:10
**Marshal** [1] - 1950:15
**Martin** [8] - 1891:19, 1891:20, 1891:21, 1897:13, 1901:8, 1901:10, 1901:11, 1903:3
**Marvin** [4] - 1876:21, 1876:22, 1876:23, 1877:7
**mastermind** [1] - 1901:20
**material** [3] - 1892:22, 1939:17, 1939:23
**materiality** [1] - 1940:2
**materials** [2] - 1892:18, 1892:24
**matter** [15] - 1881:3, 1881:15, 1881:23, 1881:25, 1882:3, 1907:4, 1907:13, 1909:6, 1910:25, 1912:14, 1914:4, 1917:4, 1926:8, 1939:20, 1946:19
**matters** [1] - 1961:4
**Mazzella** [5] - 1883:21, 1884:6, 1884:18, 1886:2, 1906:13
**MCC** [2] - 1954:12, 1956:3
**mean** [19] - 1876:4, 1886:18, 1887:21, 1888:5, 1890:25, 1893:18, 1919:9, 1954:25, 1963:19, 1968:10, 1968:13, 1968:15, 1968:16, 1968:21, 1969:2, 1969:9, 1969:10, 1969:22
**meaning** [7] - 1886:23, 1886:25, 1887:1, 1887:2, 1930:20, 1930:22, 1942:12
**means** [22] - 1891:5, 1922:3, 1922:6, 1922:25, 1924:7, 1926:5, 1926:12, 1926:25, 1928:20, 1929:8, 1937:6, 1937:18, 1937:20, 1937:21, 1940:5,

1941:4, 1942:16, 1951:4, 1958:20, 1958:22, 1969:16
**meant** [2] - 1888:22, 1888:25
**mechanical** [1] - 1870:24
**meet** [2] - 1883:6, 1959:10
**meeting** [20] - 1874:5, 1874:13, 1874:14, 1874:17, 1876:19, 1878:2, 1878:4, 1878:11, 1884:25, 1893:4, 1893:6, 1893:9, 1893:16, 1899:5, 1899:7, 1899:11, 1899:12, 1902:17, 1955:6
**meetings** [4] - 1877:18, 1877:24, 1900:18, 1901:2
**member** [10] - 1878:17, 1878:18, 1878:20, 1921:12, 1922:22, 1923:3, 1923:19, 1923:23, 1924:1, 1924:10
**members** [1] - 1884:15
**memo** [4] - 1883:12, 1898:6, 1899:1, 1899:2, 1899:4, 1901:12
**memos** [1] - 1898:6
**mention** [1] - 1898:15
**mentioned** [10] - 1883:4, 1909:4, 1915:6, 1926:21, 1928:12, 1951:21, 1952:1, 1952:4, 1954:10, 1961:2
**mere** [3] - 1915:7, 1929:6, 1938:22
**merely** [2] - 1923:2, 1923:7
**merit** [1] - 1955:16
**message** [1] - 1874:8
**messages** [1] - 1880:7
**messaging** [1] - 1900:19
**met** [1] - 1896:11
**might** [7] - 1889:1, 1889:4, 1898:16, 1903:5, 1913:3, 1913:5, 1956:12
**mind** [6] - 1893:10, 1911:21, 1926:25, 1928:2, 1945:4, 1958:8
**mindlessly** [1] - 1900:24
**minimum** [1] - 1898:1
**minor** [1] - 1923:22
**minute** [5] - 1882:24, 1882:25, 1926:19, 1948:11, 1961:15
**minutes** [11] - 1872:22, 1875:5, 1901:25, 1903:9, 1908:20, 1924:18, 1943:20, 1964:21, 1964:22, 1965:10, 1976:10
**mirror** [1] - 1905:20
**mischaracterized** [1] - 1879:25
**misconstrued** [1] - 1892:15
**misfortune** [1] - 1906:1
**misrepresenting** [1] - 1877:16
**miss** [1] - 1967:2
**misstatement** [1] - 1970:23
**mistake** [4] - 1889:22, 1905:17, 1918:25, 1919:7
**moment** [1] - 1891:11
**momentarily** [1] - 1928:24
**moments** [2] - 1927:8, 1928:12
**Monday** [1] - 1885:3
**money** [17] - 1882:21, 1886:12, 1896:8, 1896:14, 1897:5, 1897:7, 1898:20, 1898:24, 1920:22, 1931:5,

**1931:22, 1932:11, 1933:2, 1933:20, 1934:16, 1935:8, 1938:15
  monitor** [1] - 1874:2
  **months** [4] - 1899:3, 1899:9, 1904:6, 1953:10
  **morning** [8] - 1871:2, 1871:4, 1871:5, 1871:6, 1871:13, 1873:9, 1873:17, 1885:4
  **MORRIS** [1] - 1870:14
  **most** [8] - 1892:16, 1892:25, 1900:18, 1911:3, 1939:22, 1941:7, 1962:2, 1962:19
  **mother** [5] - 1890:22, 1890:24, 1890:25, 1901:11, 1901:14
  **motion** [6] - 1894:16, 1894:17, 1895:4, 1902:10, 1971:11, 1971:16
  **motions** [1] - 1972:5
  **motivated** [1] - 1916:8
  **motivation** [2] - 1916:9, 1916:11
  **mouth** [1] - 1888:19
  **moved** [1] - 1872:15
  **MR** [129] - 1871:4, 1871:6, 1871:7, 1871:10, 1871:21, 1871:22, 1871:24, 1872:12, 1872:17, 1872:19, 1873:1, 1873:5, 1873:7, 1873:14, 1873:17, 1896:1, 1903:9, 1903:11, 1906:23, 1907:1, 1907:23, 1934:7, 1948:13, 1948:17, 1948:18, 1948:20, 1948:21, 1948:22, 1949:23, 1950:1, 1950:3, 1950:6, 1950:7, 1950:10, 1950:20, 1950:22, 1952:6, 1953:19, 1954:1, 1954:13, 1955:3, 1956:5, 1956:14, 1956:15, 1957:7, 1957:8, 1959:18, 1959:19, 1959:20, 1960:13, 1960:25, 1961:5, 1961:7, 1961:11, 1961:14, 1961:17, 1963:8, 1963:15, 1963:19, 1963:22, 1963:25, 1964:5, 1964:10, 1964:16, 1964:19, 1964:20, 1964:21, 1966:3, 1966:6, 1966:9, 1966:18, 1966:25, 1967:3, 1967:8, 1968:5, 1968:6, 1968:10, 1968:14, 1968:18, 1968:20, 1968:23, 1968:24, 1969:1, 1969:4, 1969:6, 1969:11, 1969:19, 1970:2, 1970:8, 1970:12, 1970:13, 1970:14, 1970:16, 1970:17, 1971:5, 1971:10, 1971:14, 1971:15, 1971:24, 1971:25, 1972:3, 1972:17, 1973:1, 1973:2, 1973:4, 1973:5, 1973:9, 1973:12, 1973:14, 1973:17, 1973:19, 1973:20, 1973:22, 1973:23, 1973:24, 1973:25, 1974:4, 1974:5, 1974:16, 1974:18, 1974:20, 1974:22, 1975:17, 1975:21, 1975:23, 1976:1, 1976:7, 1976:12, 1976:14
  **murder** [1] - 1881:22
  **murdered** [1] - 1881:21
  **murderer** [1] - 1881:21
  **must** [33] - 1908:13, 1908:24, 1909:11, 1910:2, 1910:9, 1910:15, 1911:1, 1911:20, 1911:22, 1912:1, 1912:12,

1916:21, 1918:18, 1919:6, 1921:4, 1921:17, 1921:22, 1923:10, 1923:15, 1924:22, 1937:4, 1937:8, 1937:24, 1938:12, 1938:19, 1938:24, 1939:14, 1940:1, 1940:5, 1940:14, 1941:16, 1944:9
  **mutual** [1] - 1922:6

# N

  **named** [1] - 1879:15
  **narcotics** [3] - 1920:15, 1928:11, 1943:16
  **narcotics-trafficking** [2] - 1920:15, 1943:16
  **narrow** [1] - 1880:3, 1936:23
  **nature** [2] - 1922:8, 1929:17
  **necessary** [7] - 1916:25, 1917:24, 1918:2, 1945:15, 1951:9, 1961:2, 1961:3
  **need** [26] - 1871:7, 1872:4, 1881:17, 1882:16, 1894:19, 1894:22, 1910:6, 1913:20, 1921:25, 1922:1, 1923:22, 1923:24, 1923:25, 1926:7, 1943:21, 1947:2, 1948:25, 1950:11, 1950:16, 1950:18, 1951:20, 1953:11, 1961:25, 1966:11, 1970:23, 1973:25
  **needed** [2] - 1888:2, 1953:12
  **needs** [3] - 1890:20, 1924:8, 1974:1
  **neutralize** [4] - 1890:6, 1890:7, 1890:10
  **never** [14] - 1876:12, 1885:16, 1888:13, 1888:16, 1893:13, 1893:14, 1894:8, 1896:4, 1896:11, 1897:6, 1910:5, 1917:7, 1917:8, 1917:9
  **nevertheless** [1] - 1937:8
  **NEW** [1] - 1870:1
  **new** [1] - 1971:1
  **New** [2] - 1870:5, 1870:23
  **news** [1] - 1885:19
  **next** [20] - 1872:16, 1874:17, 1879:13, 1893:6, 1893:9, 1895:25, 1898:24, 1900:11, 1900:12, 1925:5, 1935:13, 1947:3, 1950:24, 1959:10, 1959:15, 1959:24, 1964:25, 1965:15, 1967:10, 1973:12
  **nice** [3] - 1873:10, 1912:22, 1967:3
  **Nigel** [2] - 1881:11, 1881:12
  **night** [2] - 1872:20, 1887:15
  **nightmare** [1] - 1903:4
  **Nine** [2] - 1924:19, 1934:23
  **nine** [8] - 1878:5, 1924:16, 1926:17, 1927:14, 1928:8, 1950:2, 1952:12, 1952:14
  **non** [1] - 1915:10, 1954:21, 1959:9
  **non-controversial** [2] - 1954:21, 1959:9
  **non-law-enforcement** [1] - 1915:10
  **nonexistence** [1] - 1912:19

**nonresponsive** [1] - 1972:20
  **note** [41] - 1874:14, 1898:25, 1907:3, 1945:16, 1945:18, 1945:23, 1946:12, 1946:16, 1946:18, 1956:22, 1957:16, 1957:21, 1957:24, 1958:22, 1959:4, 1959:5, 1959:8, 1959:15, 1960:3, 1960:4, 1962:7, 1965:4, 1966:10, 1966:11, 1968:4, 1968:7, 1969:15, 1969:25, 1970:5, 1970:20, 1971:1, 1972:21, 1974:7, 1975:3, 1977:5, 1977:7, 1977:8, 1977:9, 1977:11, 1977:13
  **notes** [19] - 1959:12, 1970:21, 1971:16, 1972:4, 1974:1
  **nothing** [20] - 1874:7, 1876:18, 1880:16, 1880:18, 1880:19, 1880:21, 1884:19, 1884:20, 1884:21, 1889:3, 1897:4, 1899:22, 1900:3, 1901:1, 1901:2, 1909:5, 1946:25, 1950:10, 1955:18, 1975:10
  **nothing's** [1] - 1901:5
  **notice** [1] - 1954:7
  **noticed** [3] - 1889:1, 1898:14, 1953:20
  **number** [6] - 1871:21, 1871:23, 1879:14, 1895:23, 1948:3
  **numbers** [3] - 1891:18, 1897:7, 1900:13
  **numerical** [1] - 1946:23

# O

  **o'clock** [5] - 1870:6, 1958:23, 1966:2, 1974:10, 1975:4
  **oath** [3] - 1893:12, 1918:6, 1945:12
  **oaths** [1] - 1906:3
  **object** [4] - 1922:3, 1955:14, 1969:11, 1975:16
  **objected** [1] - 1952:10
  **objection** [19] - 1912:10, 1948:15, 1948:22, 1950:5, 1950:19, 1950:20, 1955:15, 1960:24, 1963:14, 1963:16, 1964:16, 1968:14, 1968:23, 1968:24, 1971:11, 1971:12, 1974:17, 1974:21, 1975:25
  **objections** [5] - 1950:9, 1959:17, 1971:8, 1971:16, 1972:5
  **objective** [1] - 1919:6
  **objectives** [2] - 1923:8, 1923:11
  **obligation** [4] - 1917:3, 1918:14, 1918:15, 1928:3
  **obligations** [1] - 1927:2
  **obliged** [1] - 1916:22
  **observance** [1] - 1927:2
  **observe** [1] - 1913:3
  **observed** [1] - 1913:4
  **obstruct** [3] - 1902:19, 1902:20
  **obstructing** [1] - 1902:16
  **obstruction** [1] - 1902:18
  **obtain** [9] - 1927:21, 1931:7, 1931:25,

1932:14, 1933:5, 1933:22, 1934:18, 1935:10, 1941:7
**obtaining** [1] - 1929:7
**obvious** [2] - 1906:6, 1956:8
**obviously** [9] - 1882:9, 1895:3, 1903:19, 1944:1, 1951:6, 1954:23, 1956:18, 1960:21, 1962:24
**occurred** [11] - 1871:1, 1953:16, 1954:11, 1958:18, 1960:1, 1963:6, 1964:1, 1965:1, 1966:1, 1968:1, 1972:14
**OF** [3] - 1870:1, 1870:3, 1870:9
**offense** [9] - 1913:21, 1921:1, 1928:12, 1929:7, 1930:12, 1932:22, 1949:6, 1950:13, 1960:16
**offenses** [1] - 1918:15
**offer** [3] - 1920:22, 1938:22, 1938:25
**offered** [3] - 1874:20, 1938:15, 1939:1
**offeree** [1] - 1939:1
**offering** [5] - 1931:9, 1932:16, 1933:24, 1934:20, 1938:21
**Office** [1] - 1897:18
**office** [11] - 1875:13, 1884:7, 1896:5, 1900:20, 1903:18, 1905:2, 1908:2, 1933:7, 1939:5, 1970:10, 1970:15
**officer** [3] - 1884:11, 1894:1, 1915:8
**official** [3] - 1925:3, 1925:4, 1940:8
**often** [1] - 1922:13
**oftentimes** [1] - 1899:11
**old** [1] - 1875:16
**once** [2] - 1893:15, 1971:19
**One** [8] - 1920:12, 1924:16, 1926:16, 1926:20, 1927:6, 1927:25, 1936:8, 1938:3
**one** [75] - 1871:14, 1871:22, 1871:25, 1877:23, 1879:4, 1879:8, 1880:13, 1882:6, 1882:23, 1882:24, 1882:25, 1883:5, 1883:6, 1886:16, 1887:15, 1892:3, 1892:6, 1893:11, 1893:18, 1895:20, 1895:23, 1897:21, 1898:4, 1901:12, 1901:14, 1901:15, 1901:19, 1901:20, 1904:4, 1906:22, 1908:9, 1908:14, 1912:16, 1914:25, 1916:9, 1916:10, 1920:4, 1921:19, 1927:14, 1937:9, 1943:23, 1945:25, 1948:3, 1949:1, 1950:2, 1951:8, 1951:23, 1951:24, 1952:1, 1952:8, 1953:7, 1953:15, 1958:20, 1958:22, 1960:4, 1960:18, 1961:15, 1962:3, 1962:16, 1962:18, 1963:20, 1964:9, 1964:17, 1965:6, 1966:21, 1970:22, 1971:11, 1972:9, 1972:19, 1973:25, 1975:1, 1977:5
**one's** [2] - 1901:18, 1927:1
**ones** [2] - 1952:15, 1958:2
**open** [9] - 1908:4, 1945:4, 1945:20, 1946:15, 1948:5, 1948:10, 1951:1, 1954:16, 1957:9
**opening** [3] - 1886:23, 1898:14, 1949:8

**openings** [1] - 1912:9
**operability** [1] - 1904:22
**operate** [1] - 1910:13
**operational** [1] - 1904:23
**opinion** [2] - 1909:2, 1909:7
**opinions** [2] - 1915:20, 1945:7
**opposite** [2] - 1896:22, 1899:8
**oral** [3] - 1940:23, 1941:24, 1943:8
**orally** [1] - 1945:20
**order** [8] - 1917:15, 1931:25, 1932:14, 1933:22, 1934:18, 1935:10, 1939:13, 1943:22
**ordered** [2] - 1877:11, 1912:11
**orderly** [1] - 1943:23
**original** [2] - 1904:7, 1904:8
**originally** [1] - 1872:20
**otherwise** [3] - 1895:22, 1963:10, 1975:12
**ought** [1] - 1896:9
**outcome** [2] - 1914:23, 1915:4
**outset** [1] - 1962:14
**outside** [3] - 1913:6, 1941:5, 1945:24
**over-analyzing** [1] - 1905:14
**overruled** [1] - 1969:17
**overview** [1] - 1919:21
**overwhelming** [1] - 1886:20
**overzealous** [1] - 1905:13
**own** [7] - 1889:8, 1897:16, 1905:8, 1905:16, 1910:25, 1911:4, 1916:12
**ownership** [1] - 1943:2

## P

**pads** [1] - 1958:16
**page** [20] - 1877:6, 1877:14, 1877:21, 1878:4, 1879:13, 1889:24, 1890:1, 1895:25, 1925:5, 1935:13, 1947:3, 1950:24, 1952:6, 1959:24, 1964:25, 1965:15, 1967:10, 1972:25, 1973:12
**pages** [3] - 1876:6, 1876:7
**paid** [4] - 1891:11, 1891:19, 1915:22, 1916:1
**Panasonic** [1] - 1943:6
**paper** [1] - 1969:25
**paragraph** [1] - 1972:20
**paraphrasing** [1] - 1876:18
**park** [1] - 1965:9
**parking** [1] - 1880:6
**parsing** [1] - 1962:24
**part** [10] - 1876:25, 1877:13, 1879:5, 1891:20, 1909:8, 1914:7, 1929:21, 1939:11, 1946:2, 1974:1
**participants** [2] - 1917:19, 1922:16
**participated** [1] - 1923:10
**participation** [1] - 1923:18
**particular** [20] - 1908:23, 1910:12, 1910:19, 1911:12, 1911:13, 1913:18, 1914:5, 1914:7, 1916:16, 1918:23, 1919:10, 1924:19, 1927:11, 1936:24,

1937:9, 1941:6, 1946:1, 1955:7, 1974:14
**particular's** [1] - 1946:3
**parties** [9] - 1909:17, 1909:18, 1912:6, 1918:16, 1922:11, 1941:9, 1945:9, 1951:5, 1951:15
**partnership** [1] - 1920:24
**password** [1] - 1971:2
**passwords** [1] - 1972:23
**past** [2] - 1960:18, 1974:11
**patient** [1] - 1946:4
**Paul** [4] - 1874:24, 1875:1, 1875:3, 1876:6
**pause** [7] - 1961:16, 1961:20, 1970:9, 1970:18, 1972:2, 1973:15, 1975:2
**pay** [7] - 1888:16, 1891:21, 1896:20, 1897:7, 1898:12, 1905:8, 1939:3
**paying** [5] - 1880:6, 1881:4, 1892:5, 1892:7, 1933:20
**payment** [7] - 1892:22, 1931:4, 1931:22, 1932:11, 1933:2, 1934:15, 1935:8
**payments** [5] - 1891:17, 1927:21, 1931:11, 1934:1
**Peduzzi** [3] - 1951:11, 1951:22, 1953:5
**Pemberton** [7] - 1920:19, 1932:20, 1932:25, 1933:5, 1933:9, 1933:11, 1936:4, 1936:6, 1936:11
**pencils** [1] - 1959:9
**people** [36] - 1873:19, 1874:15, 1879:3, 1880:22, 1881:4, 1881:5, 1881:22, 1882:7, 1882:8, 1882:17, 1883:6, 1883:16, 1883:17, 1883:19, 1884:14, 1885:5, 1885:20, 1892:9, 1892:16, 1893:7, 1893:8, 1894:18, 1896:4, 1896:11, 1902:1, 1902:4, 1905:18, 1912:23, 1920:25, 1921:5, 1921:18, 1941:7, 1962:19
**perceived** [1] - 1914:24
**percent** [2] - 1881:9, 1903:20
**perfect** [3] - 1949:13, 1949:14, 1964:10
**perfectly** [1] - 1954:25
**perform** [2] - 1923:20, 1923:21
**performance** [1] - 1911:7
**period** [8] - 1930:7, 1930:11, 1931:15, 1932:5, 1932:21, 1933:15, 1934:9, 1941:13
**perjury** [2] - 1893:22, 1893:25
**permissible** [2] - 1927:17, 1927:19
**permit** [1] - 1882:14
**permitted** [1] - 1915:25
**person** [26] - 1881:7, 1891:3, 1910:22, 1910:24, 1911:2, 1918:24, 1919:4, 1921:19, 1923:3, 1923:5, 1923:6, 1923:8, 1924:14, 1924:25, 1925:2, 1925:3, 1926:2, 1926:8, 1926:11, 1926:14, 1929:9, 1933:10, 1942:15, 1942:19, 1942:22, 1963:10
**personal** [3] - 1910:25, 1916:8,

1916:12

**persons** [3] - 1921:23, 1929:22, 1939:25

**persuade** [9] - 1872:3, 1920:17, 1921:8, 1928:15, 1928:21, 1929:25, 1930:14, 1930:21, 1975:11

**persuaded** [1] - 1924:25

**persuades** [1] - 1926:12

**persuasion** [1] - 1919:23

**pertaining** [2] - 1966:14, 1966:23

**pertains** [1] - 1941:12

**phone** [3] - 1904:22, 1958:1, 1965:7

**photograph** [2] - 1966:13, 1966:20

**photographs** [1] - 1966:20

**photos** [1] - 1880:8

**phrase** [4] - 1926:12, 1930:21, 1960:11

**phrases** [3] - 1942:10, 1960:21, 1962:24

**physical** [2] - 1926:9, 1942:20

**physically** [4] - 1942:15, 1942:16, 1942:25, 1958:25

**picked** [2] - 1889:5

**piece** [2] - 1969:25, 1971:1

**place** [6] - 1884:7, 1899:9, 1923:2, 1941:5, 1951:20

**plainest** [1] - 1907:23

**plan** [9] - 1895:16, 1895:18, 1895:19, 1895:21, 1899:2, 1899:9, 1899:10, 1901:18, 1922:7

**planet** [1] - 1890:17

**planned** [1] - 1929:12

**planning** [1] - 1929:7

**plans** [1] - 1901:13

**play** [9] - 1881:9, 1882:14, 1885:25, 1897:5, 1897:7, 1923:21, 1923:22, 1924:15, 1946:15

**played** [1] - 1887:4

**playing** [3] - 1889:6, 1889:14

**Plaza** [1] - 1870:22

**pleaded** [1] - 1910:1

**plural** [1] - 1878:3

**pm** [6] - 1960:2, 1963:7, 1964:2, 1965:2, 1966:2, 1968:2

**pocket** [1] - 1894:1

**point** [11] - 1874:4, 1875:12, 1878:16, 1885:16, 1885:17, 1899:13, 1907:1, 1948:24, 1952:22, 1952:24, 1956:6

**pointed** [1] - 1955:7

**points** [3] - 1876:20, 1912:19, 1955:9

**police** [1] - 1894:1

**polite** [1] - 1871:20

**portion** [2] - 1969:13, 1969:14

**portions** [1] - 1972:18

**position** [4] - 1907:20, 1949:3, 1955:3, 1955:11

**possessed** [5] - 1908:2, 1941:14, 1941:19, 1943:9, 1943:12

**possessing** [3] - 1904:23, 1920:8,

1942:25

**possession** [14] - 1907:9, 1941:22, 1942:2, 1942:7, 1942:13, 1942:14, 1942:16, 1942:20, 1942:21, 1942:22, 1942:24, 1943:1, 1966:15

**possible** [3] - 1911:9, 1916:23, 1917:23

**possibly** [3] - 1887:8, 1889:19, 1901:7

**Post** [6] - 1898:25, 1971:16, 1972:4, 1974:1, 1975:7

**Post-it** [5] - 1898:25, 1971:16, 1972:4, 1974:1

**Post-its** [1] - 1975:7

**postured** [1] - 1949:8

**potential** [7] - 1927:17, 1927:18, 1927:20, 1929:23, 1929:25, 1935:11, 1937:14

**pounds** [1] - 1975:7

**pour** [1] - 1891:15

**power** [2] - 1899:23, 1942:17

**practice** [2] - 1970:3, 1970:4

**precinct** [1] - 1894:3

**precisely** [2] - 1907:22, 1976:10

**prefer** [3] - 1974:9, 1975:3, 1975:18

**preference** [1] - 1950:12

**prejudice** [1] - 1909:16

**preparation** [2] - 1916:20, 1926:6

**prepare** [1] - 1916:23

**preponderance** [7] - 1936:21, 1937:5, 1937:11, 1937:12, 1937:17, 1937:19, 1952:3

**preposterous** [2] - 1885:10, 1892:4

**prepping** [1] - 1894:7

**presence** [1] - 1877:8

**present** [11] - 1873:8, 1878:1, 1907:16, 1917:4, 1923:2, 1953:1, 1954:5, 1958:25, 1961:23, 1962:6, 1975:14

**presentation** [2] - 1889:3, 1889:13

**presented** [4] - 1886:20, 1909:13, 1911:24, 1949:17

**preserve** [1] - 1948:23

**pressure** [1] - 1969:13

**presumed** [1] - 1910:9

**presumes** [1] - 1910:7

**presumption** [2] - 1910:13, 1910:15

**pretrial** [1] - 1954:10

**pretty** [2] - 1886:2, 1972:1

**prevent** [5] - 1919:24, 1921:9, 1925:2, 1928:17, 1930:17

**primarily** [6] - 1940:22, 1941:1, 1941:6, 1941:23, 1942:4, 1942:10

**principle** [1] - 1906:6

**prison** [1] - 1920:10

**Prisons** [2] - 1939:11, 1950:14

**private** [1] - 1939:9

**problem** [1] - 1964:4

**proceed** [1] - 1943:22

**proceeding** [2] - 1925:3, 1925:4

**Proceedings** [1] - 1870:24

**produce** [3] - 1898:8, 1910:7, 1959:13

**produced** [1] - 1870:25

**product** [2] - 1919:6, 1919:7

**profession** [1] - 1927:3

**promise** [2] - 1895:23, 1938:22, 1953:9

**promised** [1] - 1938:15

**promising** [1] - 1938:22

**proof** [15] - 1874:21, 1911:1, 1911:9, 1912:18, 1913:20, 1921:22, 1922:5, 1922:9, 1922:16, 1936:21, 1937:3, 1943:2, 1952:3

**properly** [2] - 1912:15, 1916:24

**propose** [1] - 1964:8

**proposed** [1] - 1955:19

**proposition** [1] - 1907:7

**prosecution** [1] - 1917:7

**prosecution's** [1] - 1917:5

**prosecutions** [1] - 1916:1

**prosecutor** [3] - 1897:19, 1897:20, 1900:9

**prospective** [1] - 1936:15

**protectors** [1] - 1880:5

**prove** [30] - 1874:3, 1886:16, 1886:21, 1899:21, 1908:24, 1910:2, 1910:4, 1910:14, 1911:8, 1917:5, 1917:8, 1918:15, 1919:10, 1921:3, 1921:4, 1921:17, 1921:25, 1922:1, 1924:8, 1928:3, 1928:4, 1937:4, 1937:17, 1937:20, 1939:13, 1939:14, 1939:25, 1940:1, 1940:14, 1941:16

**proved** [7] - 1910:11, 1912:7, 1922:20, 1924:23, 1937:6, 1938:12, 1943:2

**proven** [5] - 1917:22, 1918:5, 1918:19, 1919:2, 1927:10

**proves** [5] - 1899:6, 1899:8, 1901:12, 1937:9, 1937:12

**provide** [1] - 1943:14

**provided** [1] - 1944:19

**providing** [1] - 1927:15

**proving** [2] - 1937:18, 1938:2

**pull** [1] - 1886:9

**pun** [2] - 1948:13, 1948:14

**punishment** [2] - 1917:24, 1918:7

**purpose** [10] - 1922:17, 1923:8, 1923:16, 1926:13, 1927:1, 1941:2, 1941:6, 1941:7, 1942:5, 1949:10

**purposefully** [1] - 1919:5

**purposes** [4] - 1922:3, 1923:11, 1924:4, 1956:11

**pursuant** [3] - 1939:10, 1949:18, 1964:6

**pursue** [1] - 1885:3

**put** [21] - 1871:11, 1874:2, 1879:16, 1882:8, 1885:18, 1890:15, 1890:21, 1894:17, 1897:1, 1901:6, 1959:3, 1959:10, 1959:15, 1966:6, 1966:10, 1968:12, 1968:16, 1969:9, 1972:4, 1973:25

**putting** [3] - 1889:8, 1950:22, 1969:13

## Q

**quality** [1] - 1902:22
**quantity** [2] - 1902:15, 1902:21
**quarter** [2] - 1965:8, 1970:5
**quarterbacking** [1] - 1885:4
**questions** [5] - 1877:18, 1877:19, 1886:8, 1912:9, 1959:17
**quick** [1] - 1948:10
**quickly** [1] - 1892:3

## R

**rain** [1] - 1913:6
**raincoats** [1] - 1912:24
**raining** [1] - 1913:3
**raise** [1] - 1952:19
**raised** [5] - 1876:23, 1879:13, 1895:18, 1937:25, 1954:10
**rather** [9] - 1901:22, 1906:4, 1908:15, 1912:5, 1919:6, 1921:22, 1929:1, 1956:22, 1969:7
**reach** [1] - 1944:5
**reached** [4] - 1946:16, 1946:17, 1946:24, 1946:25
**reaching** [2] - 1911:20, 1944:19
**read** [7] - 1875:5, 1877:14, 1879:9, 1887:7, 1946:10, 1969:16, 1972:22
**readback** [1] - 1946:8
**readbacks** [1] - 1946:5
**reading** [1] - 1969:7
**ready** [5] - 1873:5, 1873:12, 1959:7, 1966:4, 1969:3
**real** [1] - 1922:12
**realized** [1] - 1871:15
**really** [23] - 1876:9, 1877:20, 1878:20, 1878:22, 1881:15, 1883:10, 1885:7, 1885:24, 1893:10, 1895:19, 1895:21, 1896:9, 1900:5, 1900:7, 1900:10, 1901:8, 1902:14, 1903:3, 1955:9, 1960:20
**rear** [1] - 1912:24
**reason** [14] - 1884:6, 1884:16, 1896:7, 1899:16, 1910:21, 1940:25, 1942:3, 1942:8, 1943:5, 1945:16, 1949:14, 1955:20, 1957:12, 1960:7
**reasonable** [43] - 1910:3, 1910:5, 1910:12, 1910:14, 1910:18, 1910:20, 1910:22, 1910:24, 1911:1, 1911:2, 1911:4, 1911:5, 1911:6, 1911:9, 1911:13, 1911:17, 1913:8, 1913:15, 1916:15, 1917:6, 1917:23, 1918:5, 1918:16, 1918:19, 1921:4, 1921:18, 1922:21, 1924:8, 1924:23, 1926:10, 1927:2, 1927:10, 1928:4, 1937:3, 1937:7, 1937:19, 1938:4, 1938:12, 1939:14, 1940:1, 1940:14, 1941:17, 1943:2

**reasons** [1] - 1917:21
**rebuttal** [4] - 1872:20, 1873:13, 1906:20, 1907:10
**received** [3] - 1912:5, 1915:20, 1946:12
**recess** [9] - 1958:19, 1959:21, 1959:23, 1963:25, 1965:14, 1967:9, 1972:12, 1972:13, 1976:16
**recognizes** [2] - 1912:14, 1942:13
**record** [18] - 1871:11, 1873:18, 1873:23, 1873:24, 1874:10, 1876:15, 1879:25, 1896:4, 1946:6, 1950:22, 1959:11, 1959:15, 1964:12, 1965:3, 1966:6, 1966:10, 1967:6, 1970:11
**recorded** [5] - 1870:24, 1954:2, 1957:25, 1958:1, 1958:4
**recorder** [2] - 1896:3
**recording** [1] - 1958:8
**recordings** [6] - 1900:7, 1902:23, 1904:8, 1904:9, 1943:13
**records** [3] - 1891:14, 1891:15, 1898:20
**red** [1] - 1904:17
**redacted** [2] - 1967:1, 1974:1
**refer** [1] - 1913:17
**reference** [5] - 1872:4, 1872:6, 1906:19, 1913:19, 1936:7
**referred** [1] - 1936:18
**referring** [1] - 1963:13
**reflection** [1] - 1888:24
**reflects** [1] - 1964:12
**refuse** [7] - 1920:22, 1931:1, 1931:19, 1932:10, 1932:25, 1933:18, 1934:14
**regard** [18] - 1872:2, 1911:24, 1914:11, 1924:16, 1927:25, 1931:17, 1932:6, 1936:4, 1936:8, 1937:8, 1938:20, 1942:13, 1952:2, 1952:5, 1952:8, 1952:11, 1957:18
**regarding** [1] - 1929:16
**regards** [3] - 1956:21, 1971:2, 1972:23
**regular** [1] - 1881:7
**relate** [2] - 1930:7, 1940:9
**related** [4] - 1872:10, 1877:9, 1879:4, 1879:19
**relates** [4] - 1906:22, 1930:10, 1936:23, 1938:9
**relationship** [1] - 1879:15
**relationships** [1] - 1929:17
**relative** [3] - 1879:6, 1879:16, 1879:22
**relax** [1] - 1893:6
**relevant** [7] - 1931:7, 1932:1, 1932:15, 1933:5, 1933:23, 1934:19, 1935:10
**relied** [1] - 1939:25
**relieves** [1] - 1938:1
**reluctant** [1] - 1883:18
**rely** [4] - 1889:17, 1911:3, 1913:12, 1949:5
**relying** [2] - 1872:2, 1945:9
**remains** [3] - 1917:7, 1937:1, 1963:23
**remarks** [1] - 1907:2

**remember** [17] - 1874:1, 1874:22, 1874:23, 1876:21, 1878:12, 1879:13, 1881:11, 1887:8, 1891:20, 1892:4, 1895:11, 1900:7, 1945:9, 1953:10, 1962:25, 1971:7, 1971:8
**remind** [5] - 1911:19, 1917:5, 1921:6, 1938:19, 1975:13
**reminded** [1] - 1906:21
**reminder** [1] - 1958:3
**removed** [2] - 1872:10, 1971:17
**render** [2] - 1909:15, 1919:16, 1945:14
**rendered** [4] - 1940:22, 1941:1, 1941:23, 1942:4
**renew** [1] - 1961:1
**repeated** [1] - 1945:22
**report** [1] - 1914:20
**Reporter** [1] - 1870:22
**reporter** [1] - 1965:5
**reporting** [3] - 1896:1, 1901:15, 1902:24
**representation** [5] - 1926:23, 1927:13, 1927:15, 1939:17, 1949:10
**representative** [1] - 1939:8
**represented** [4] - 1880:15, 1927:19, 1939:8, 1939:16
**representing** [1] - 1927:5
**request** [12] - 1872:9, 1872:13, 1903:25, 1949:4, 1955:24, 1956:8, 1958:7, 1960:6, 1963:9, 1964:6, 1968:7, 1971:1
**requested** [2] - 1906:22, 1949:2
**requests** [3] - 1904:7, 1946:5, 1946:7
**require** [2] - 1910:16, 1911:8
**required** [7] - 1917:8, 1917:9, 1919:9, 1923:9, 1923:10, 1939:25, 1949:18
**requires** [3] - 1907:17, 1913:13, 1913:21
**reservation** [2] - 1893:3, 1893:5
**resolve** [1] - 1937:24
**resolved** [2] - 1966:3, 1966:4
**respect** [16] - 1875:18, 1907:10, 1908:24, 1911:22, 1919:15, 1919:17, 1920:4, 1937:9, 1948:20, 1948:23, 1954:12, 1954:14, 1955:25, 1962:18, 1972:18, 1972:19
**respects** [1] - 1937:1
**respond** [1] - 1884:20
**responded** [1] - 1959:8
**responds** [1] - 1970:22
**response** [1] - 1884:20
**responsibility** [1] - 1916:24
**responsible** [1] - 1906:11
**responsive** [1] - 1946:6
**rest** [2] - 1900:23, 1928:1
**restroom** [2] - 1948:4, 1953:2
**rests** [1] - 1918:2
**resume** [1] - 1963:4
**retain** [1] - 1927:20
**retire** [2] - 1908:15, 1943:20

**return** [3] - 1944:14, 1953:13, 1963:4
**review** [1] - 1908:21
**reviewing** [1] - 1915:13
**reworked** [1] - 1871:25
**ricco** [1] - 1927:4
**Ricco** [2] - 1915:17, 1926:21
**Ricco's** [4] - 1968:7, 1969:8, 1971:8, 1974:25
**ricco's** [1] - 1970:23
**ridiculous** [1] - 1885:10
**rise** [2] - 1917:19, 1958:15
**risk** [3] - 1962:22, 1963:17, 1963:23
**RK** [1] - 1902:9
**road** [2] - 1884:20, 1899:19
**rob** [1] - 1881:20
**robbed** [1] - 1881:20
**robber** [1] - 1881:19
**ROBERT** [1] - 1870:5
**Robert** [18] - 1870:18, 1874:11, 1875:14, 1883:9, 1883:18, 1885:11, 1886:12, 1890:6, 1893:12, 1894:15, 1895:9, 1901:16, 1905:22, 1909:22, 1914:25, 1927:14, 1929:15
**Rodney** [3] - 1881:11, 1881:12, 1881:16
**Roger** [18] - 1874:14, 1875:6, 1875:22, 1877:11, 1880:12, 1884:14, 1892:13, 1899:5, 1899:14, 1901:17, 1919:22, 1920:15, 1927:16, 1928:11, 1929:18, 1938:17, 1943:16
**role** [6] - 1882:14, 1885:25, 1901:17, 1908:21, 1924:16, 1963:11
**roles** [2] - 1923:22
**room** [19] - 1887:10, 1891:9, 1919:18, 1944:14, 1945:24, 1946:9, 1946:13, 1951:16, 1952:23, 1953:11, 1953:13, 1955:9, 1955:10, 1955:18, 1959:7, 1960:19, 1962:13, 1963:4, 1975:23
**rooms** [1] - 1878:3
**Rudolph** [1] - 1870:22
**rule** [1] - 1882:1
**Rule** [4] - 1894:16, 1895:4, 1949:18, 1949:21
**rules** [2] - 1881:9, 1902:10
**run** [5] - 1895:15, 1897:2, 1897:19, 1962:22, 1972:3
**running** [3] - 1896:10, 1897:18, 1902:6
**runs** [1] - 1963:17
**ruse** [2] - 1895:14, 1939:4
**rush** [1] - 1948:6
**Ryan** [5] - 1920:19, 1932:20, 1932:25, 1936:4, 1936:5

## S

**safe** [1] - 1942:20
**Sancho** [2] - 1920:19, 1932:21
**satisfied** [4] - 1910:11, 1911:16, 1913:14, 1916:15

**saw** [4] - 1875:21, 1901:22, 1912:23, 1957:12
**scan** [1] - 1876:7
**scheme** [3] - 1921:24, 1922:3, 1923:24
**school** [2] - 1887:9, 1962:23
**scope** [1] - 1923:25
**screen** [1] - 1894:17
**screwing** [2] - 1890:22, 1890:24
**scrutinized** [1] - 1916:4
**seat** [2] - 1873:11, 1961:21
**seated** [7] - 1871:3, 1954:17, 1958:21, 1961:24, 1964:3, 1968:3, 1972:15
**second** [20] - 1871:25, 1872:13, 1876:4, 1882:25, 1895:20, 1921:11, 1922:20, 1924:9, 1925:1, 1928:16, 1930:16, 1934:3, 1938:15, 1939:17, 1940:21, 1941:22, 1946:3, 1949:22, 1971:1, 1973:25
**secrecy** [1] - 1922:9
**section** [3] - 1963:12, 1972:19, 1973:6
**sections** [1] - 1973:24
**see** [22] - 1872:12, 1873:10, 1884:15, 1887:4, 1889:24, 1900:1, 1906:17, 1913:1, 1936:1, 1946:11, 1947:1, 1947:2, 1948:18, 1949:5, 1957:13, 1959:13, 1959:14, 1960:7, 1962:14, 1967:3, 1970:4, 1976:3
**seek** [2] - 1905:18, 1949:7
**seeking** [4] - 1883:14, 1936:19, 1937:10, 1964:13
**seem** [3] - 1913:8, 1914:14
**seized** [1] - 1933:7
**selection** [1] - 1915:6
**self** [1] - 1939:22
**self-explanatory** [1] - 1939:22
**Selwyn** [41] - 1874:4, 1874:6, 1874:8, 1874:16, 1874:19, 1875:9, 1876:1, 1876:16, 1876:19, 1876:20, 1882:11, 1883:12, 1884:6, 1884:22, 1884:25, 1885:2, 1885:13, 1888:12, 1889:25, 1890:14, 1893:6, 1893:20, 1894:12, 1895:1, 1895:13, 1896:5, 1896:8, 1896:10, 1901:7, 1901:13, 1905:6, 1915:22, 1920:17, 1921:21, 1928:10, 1928:15, 1929:3, 1929:16, 1932:2, 1954:3
**send** [40] - 1876:2, 1882:11, 1884:6, 1887:2, 1892:11, 1896:3, 1904:19, 1904:21, 1945:16, 1946:9, 1946:12, 1946:16, 1950:12, 1953:8, 1954:22, 1955:24, 1955:25, 1956:2, 1956:23, 1957:20, 1957:24, 1959:10, 1960:7, 1962:22, 1963:24, 1964:8, 1964:14, 1964:17, 1967:5, 1968:13, 1969:3, 1970:5, 1970:25, 1973:16, 1974:7, 1974:13, 1975:7, 1975:8, 1975:15
**sending** [5] - 1875:16, 1880:7, 1891:6, 1969:14
**sends** [1] - 1884:22
**sense** [9] - 1875:15, 1910:22, 1913:10,

1917:25, 1918:9, 1922:12, 1955:11, 1955:12, 1955:21
**sent** [22] - 1875:13, 1875:25, 1876:3, 1876:12, 1885:2, 1885:23, 1892:23, 1933:9, 1940:16, 1940:18, 1940:21, 1940:25, 1942:9, 1956:23, 1957:17, 1958:7, 1962:8, 1970:22, 1974:24
**sentence** [1] - 1918:2
**sentences** [1] - 1889:9
**separate** [6] - 1871:17, 1919:16, 1919:19, 1920:2, 1923:20, 1948:16
**separately** [4] - 1911:22, 1919:15, 1938:20, 1951:12
**September** [14] - 1897:11, 1899:1, 1899:2, 1920:14, 1928:10, 1930:5, 1930:12, 1931:16, 1932:5, 1933:14, 1934:10, 1934:25, 1938:14, 1940:11
**service** [1] - 1904:25
**Service** [1] - 1950:15
**set** [1] - 1873:24
**seven** [4] - 1881:17, 1928:23, 1934:11, 1952:8
**Seven** [3] - 1933:12, 1936:11, 1938:3
**seventeen** [1] - 1973:13
**several** [1] - 1912:23
**shaking** [1] - 1912:24
**shall** [1] - 1889:2
**shame** [1] - 1967:5
**SHARGEL** [58] - 1870:17, 1871:21, 1872:12, 1872:17, 1873:5, 1906:23, 1907:1, 1907:23, 1948:13, 1948:17, 1948:20, 1948:22, 1949:23, 1950:1, 1950:3, 1950:7, 1950:20, 1952:6, 1953:19, 1954:1, 1954:13, 1956:14, 1957:7, 1959:19, 1960:13, 1961:5, 1961:11, 1961:14, 1963:8, 1963:25, 1964:5, 1964:10, 1964:19, 1964:21, 1966:3, 1966:25, 1968:6, 1968:10, 1969:1, 1969:11, 1970:2, 1970:8, 1970:12, 1970:14, 1971:14, 1971:24, 1973:1, 1973:4, 1973:12, 1973:19, 1973:23, 1974:5, 1974:16, 1975:17, 1975:21, 1975:23, 1976:7, 1976:12
**Shargel** [16] - 1871:12, 1872:24, 1874:2, 1874:22, 1876:13, 1881:12, 1883:21, 1883:22, 1884:18, 1885:21, 1886:23, 1896:9, 1898:14, 1900:10, 1905:22, 1952:9
**Shargel's** [1] - 1936:7
**sharing** [1] - 1953:7
**sheet** [3] - 1919:19, 1948:15
**sheets** [5] - 1936:2, 1944:10, 1948:16, 1952:21, 1953:15
**shifts** [2] - 1910:5, 1917:8
**shit** [1] - 1883:13
**Shoo** [1] - 1896:3
**show** [5] - 1892:13, 1895:24, 1896:24, 1903:25, 1914:4
**showed** [2] - 1878:19, 1903:24
**showing** [1] - 1896:25

**shows** [1] - 1876:25
**shred** [1] - 1898:4
**shut** [1] - 1912:25
**shuttle** [1] - 1905:12
**side** [6] - 1948:1, 1952:9, 1954:4, 1961:2, 1971:17, 1973:23
**Side** [3] - 1948:12, 1954:6, 1954:19
**sidebar** [2] - 1906:17, 1947:1
**Sidebar** [1] - 1906:18
**sidebars** [2] - 1971:9, 1971:10
**sift** [1] - 1946:6
**sight** [2] - 1960:9, 1963:1
**signalled** [1] - 1956:18
**signed** [2] - 1945:17, 1946:17
**significance** [1] - 1917:11
**signs** [1] - 1884:20
**silent** [1] - 1902:2
**SIMELS** [1] - 1870:5
**Simels** [66] - 1870:18, 1874:11, 1875:14, 1883:9, 1883:18, 1884:11, 1885:11, 1885:24, 1886:12, 1890:6, 1890:14, 1893:12, 1894:15, 1895:9, 1899:5, 1899:10, 1900:14, 1901:16, 1901:17, 1905:22, 1906:1, 1909:22, 1914:25, 1920:9, 1920:11, 1924:13, 1927:14, 1927:23, 1929:15, 1929:21, 1930:25, 1931:6, 1931:10, 1931:18, 1931:24, 1932:8, 1932:13, 1932:17, 1932:24, 1933:4, 1933:8, 1933:17, 1933:21, 1933:24, 1934:12, 1934:17, 1934:20, 1935:4, 1935:9, 1936:12, 1936:20, 1936:25, 1937:4, 1937:8, 1937:11, 1937:24, 1937:25, 1939:3, 1939:7, 1939:15, 1939:19, 1940:6, 1943:4, 1952:3, 1961:11, 1973:8
**Simels's** [5] - 1882:21, 1889:13, 1971:2, 1971:22, 1972:23
**similarity** [1] - 1913:22
**simple** [1] - 1912:20
**simply** [8] - 1892:14, 1907:11, 1924:2, 1945:1, 1945:23, 1946:12, 1956:19, 1973:12
**simultaneously** [1] - 1953:4
**Singh** [6] - 1920:20, 1934:24, 1935:5, 1935:9, 1935:11, 1936:12
**single** [6] - 1886:6, 1893:16, 1893:17, 1899:11, 1908:14, 1962:16
**sit** [2] - 1881:16, 1884:19
**sitting** [1] - 1951:12
**Six** [4] - 1932:19, 1936:3, 1936:10, 1938:3
**six** [6] - 1883:23, 1933:16, 1952:8, 1963:20, 1975:3, 1977:13
**skullduggery** [1] - 1887:15
**slightest** [1] - 1962:22
**slot** [1] - 1879:22
**Solano** [13] - 1871:12, 1876:14, 1877:13, 1878:9, 1878:16, 1879:5, 1879:9, 1891:12, 1901:3, 1902:9, 1903:4, 1974:3, 1974:19

**SOLANO** [11] - 1870:19, 1948:18, 1948:21, 1955:3, 1956:5, 1959:20, 1961:7, 1968:24, 1974:4, 1974:20, 1974:22
**sole** [6] - 1909:10, 1913:24, 1918:15, 1936:14, 1937:13, 1943:12
**solely** [3] - 1911:23, 1918:5, 1936:13
**someone** [11] - 1880:24, 1885:25, 1893:23, 1896:20, 1896:21, 1914:19, 1921:20, 1928:21, 1942:24, 1953:2, 1974:7
**sometimes** [5] - 1892:1, 1895:6, 1951:7, 1959:12, 1974:13
**Son** [2] - 1920:19, 1932:4
**sorry** [5] - 1871:19, 1895:1, 1900:6, 1964:5, 1966:4
**sort** [1] - 1880:3
**sound** [2] - 1874:15, 1886:10
**sounded** [1] - 1886:2
**sounds** [2] - 1887:3, 1903:19
**source** [1] - 1898:22
**sources** [1] - 1929:22
**specialized** [1] - 1915:19
**specific** [2] - 1919:13, 1946:1
**specifically** [1] - 1920:15
**specified** [1] - 1952:15
**spectacular** [1] - 1885:7
**speculate** [1] - 1917:20
**speculation** [1] - 1911:5
**spend** [1] - 1882:24
**spends** [1] - 1876:5
**spent** [4] - 1882:20, 1882:21, 1882:23, 1883:21
**spin** [1] - 1889:8
**spoken** [2] - 1939:4, 1958:9
**spot** [2] - 1886:15, 1902:4
**squeeze** [1] - 1872:22
**stage** [1] - 1976:8
**stand** [10] - 1882:18, 1891:4, 1893:12, 1902:1, 1907:7, 1914:6, 1917:10, 1917:14, 1946:21, 1946:23
**standard** [2] - 1927:2, 1937:20
**start** [5] - 1875:9, 1884:25, 1890:10, 1895:17, 1956:11
**started** [4] - 1874:22, 1874:25, 1885:12, 1888:19
**starting** [2] - 1875:11, 1973:10
**starts** [1] - 1973:2
**state** [2] - 1908:12, 1926:25
**statement** [11] - 1886:23, 1898:14, 1914:6, 1920:10, 1939:15, 1939:17, 1939:19, 1940:1, 1940:2, 1940:5, 1940:8
**statements** [3] - 1912:8, 1912:9, 1922:15
**STATES** [3] - 1870:1, 1870:3, 1870:10
**States** [8] - 1870:13, 1894:19, 1895:2, 1939:11, 1939:21, 1940:5, 1941:5, 1941:6
**stating** [2] - 1908:15, 1962:17

**statute** [5] - 1907:17, 1926:24, 1938:21, 1938:23, 1939:2
**statutory** [2] - 1907:7, 1907:15
**stay** [2] - 1970:6, 1974:11
**stenography** [1] - 1870:24
**step** [3] - 1929:5, 1929:11, 1951:24
**STEVEN** [1] - 1870:14
**stick** [1] - 1974:15
**still** [4] - 1904:21, 1904:25, 1905:1, 1952:23
**sting** [19] - 1886:14, 1888:17, 1895:9, 1895:10, 1895:11, 1895:14, 1896:15, 1897:5, 1897:9, 1898:2, 1898:4, 1898:5, 1898:7, 1899:2, 1899:13, 1899:17, 1899:22, 1900:4, 1900:6
**stinging** [1] - 1900:9
**stipulated** [1] - 1918:19
**stipulation** [2] - 1918:17, 1918:18
**stipulations** [1] - 1912:6
**stop** [4] - 1885:21, 1901:22, 1944:15, 1953:3
**stopped** [1] - 1894:2
**straight** [2] - 1873:24, 1890:9
**street** [2] - 1887:25, 1891:8
**stress** [1] - 1923:2
**stricken** [1] - 1912:11
**strike** [2] - 1971:11, 1972:5
**strikes** [1] - 1976:5
**string** [1] - 1928:6
**strong** [2] - 1960:8, 1963:3
**stronger** [1] - 1893:1
**structure** [1] - 1957:2
**stuff** [6] - 1903:21, 1904:15, 1904:24, 1951:17, 1971:7, 1972:10
**stupid** [3] - 1901:10, 1901:11, 1955:17
**subject** [3] - 1874:18, 1927:4, 1943:6
**subjected** [1] - 1915:1
**submit** [5] - 1880:9, 1884:24, 1888:23, 1889:12, 1892:12
**submitted** [1] - 1907:6
**suborn** [1] - 1893:22
**suborning** [1] - 1893:25
**subsequent** [2] - 1872:4, 1872:5
**substantial** [3] - 1913:21, 1929:5, 1929:11
**substitute** [1] - 1951:8
**succeed** [3] - 1921:14, 1922:24, 1924:5
**sufficient** [4] - 1910:16, 1911:9, 1919:7, 1922:4
**sufficiently** [1] - 1954:21
**suggest** [4] - 1875:17, 1884:8, 1901:3, 1968:12
**suggested** [3] - 1880:25, 1885:13, 1896:9
**suggesting** [1] - 1969:12
**suggestion** [2] - 1885:14, 1899:23
**suggestive** [1] - 1969:12
**suggests** [1] - 1884:5

**sum** [1] - 1923:14
**summation** [8] - 1873:13, 1874:3, 1874:23, 1889:14, 1906:20, 1907:11, 1936:8, 1949:8
**summations** [2] - 1873:3, 1908:10
**sunny** [1] - 1912:22
**support** [1] - 1898:9
**supposed** [8] - 1876:16, 1877:4, 1880:14, 1880:23, 1881:1, 1881:2, 1881:3, 1886:5
**suppressed** [1] - 1906:20
**surely** [1] - 1968:15
**surge** [1] - 1880:5
**Surinam** [1] - 1877:8
**surrender** [1] - 1944:23
**surreptitious** [4] - 1941:8, 1942:11, 1943:7, 1943:11
**surreptitiously** [2] - 1940:22, 1941:24
**surrounding** [1] - 1919:3
**suspect** [1] - 1914:15
**suspicion** [1] - 1911:6
**sustained** [1] - 1912:10
**sworn/affirmed** [1] - 1952:20
**sympathy** [4] - 1903:5, 1903:6, 1909:16, 1911:7
**system** [1] - 1880:22

## T

**T-26** [1] - 1896:24
**T-28** [1] - 1896:24
**table** [1] - 1940:10
**tacitly** [1] - 1922:5
**tagged** [1] - 1971:13
**talks** [2] - 1876:22, 1974:8
**tamper** [29] - 1881:13, 1881:15, 1881:17, 1882:22, 1919:22, 1920:12, 1920:14, 1928:7, 1928:10, 1929:3, 1930:3, 1930:6, 1931:12, 1932:3, 1932:19, 1933:12, 1934:4, 1934:23, 1935:1, 1936:5, 1936:8, 1936:9, 1936:10, 1936:11, 1936:12, 1938:6, 1952:12, 1952:13
**tampered** [1] - 1920:4
**tampering** [9] - 1920:2, 1924:13, 1924:15, 1924:22, 1926:16, 1926:24, 1927:7, 1928:24, 1949:4
**tape** [27] - 1886:9, 1886:24, 1886:25, 1888:20, 1889:14, 1895:12, 1895:15, 1896:5, 1897:6, 1899:5, 1899:7, 1899:10, 1899:14, 1899:15, 1899:18, 1899:24, 1900:3, 1902:21, 1906:20, 1954:12, 1956:7, 1956:11, 1956:12, 1958:1, 1958:4, 1958:9
**tape-recorded** [2] - 1958:1, 1958:4
**tapes** [21] - 1886:21, 1887:17, 1888:4, 1888:24, 1889:6, 1889:11, 1889:13, 1889:15, 1889:16, 1903:1, 1903:2, 1904:16, 1905:12, 1905:13, 1946:14,

1946:15, 1954:15, 1954:23, 1956:1, 1958:5
**task** [2] - 1909:3, 1951:12
**team** [2] - 1880:17, 1897:10
**techniques** [3] - 1883:25, 1884:4, 1918:14
**telephone** [1] - 1941:11
**ten** [2] - 1896:21, 1973:13
**Ten** [2] - 1938:7
**tendency** [1] - 1926:10
**tends** [1] - 1914:4
**tense** [1] - 1907:16
**terms** [2] - 1890:20, 1901:10
**terrible** [1] - 1903:19
**testified** [4] - 1914:3, 1914:13, 1914:25, 1926:22
**testify** [28] - 1883:13, 1894:8, 1894:12, 1896:21, 1917:2, 1917:4, 1917:12, 1917:16, 1920:21, 1920:22, 1929:16, 1931:2, 1931:20, 1932:10, 1933:1, 1933:19, 1934:14, 1935:5, 1936:15, 1936:16, 1937:14, 1937:15
**testifying** [2] - 1893:15, 1902:14
**testimony** [66] - 1872:16, 1882:16, 1892:10, 1912:3, 1912:16, 1914:1, 1914:2, 1914:8, 1914:9, 1914:16, 1914:17, 1914:18, 1915:2, 1915:3, 1915:5, 1915:8, 1915:10, 1915:14, 1915:16, 1915:22, 1916:3, 1916:11, 1916:19, 1917:18, 1919:24, 1919:25, 1921:9, 1921:10, 1925:2, 1925:4, 1927:4, 1927:8, 1927:22, 1928:18, 1928:19, 1930:17, 1930:19, 1931:9, 1932:16, 1933:25, 1934:21, 1938:17, 1945:22, 1946:2, 1946:3, 1946:8, 1946:10, 1949:11, 1968:10, 1968:17, 1968:22, 1969:2, 1969:8, 1969:10, 1969:15, 1969:16, 1969:22, 1969:23, 1970:24, 1970:25, 1971:2, 1971:8, 1971:22, 1972:23, 1974:25
**text** [1] - 1900:19
**text-messaging** [1] - 1900:19
**THE** [133] - 1870:9, 1871:2, 1871:5, 1871:8, 1871:25, 1872:15, 1872:23, 1873:2, 1873:6, 1873:9, 1873:16, 1903:8, 1903:10, 1906:16, 1906:19, 1906:25, 1907:21, 1908:3, 1908:5, 1926:1, 1934:9, 1936:1, 1948:2, 1948:3, 1948:6, 1948:14, 1948:19, 1949:22, 1949:24, 1950:2, 1950:4, 1950:9, 1950:21, 1950:23, 1951:2, 1951:20, 1951:23, 1951:24, 1952:7, 1952:18, 1952:19, 1952:21, 1953:18, 1953:22, 1954:4, 1954:7, 1954:14, 1954:17, 1954:20, 1955:15, 1956:10, 1956:25, 1957:10, 1958:16, 1958:19, 1959:21, 1960:3, 1960:15, 1961:3, 1961:6, 1961:8, 1961:10, 1961:12, 1961:15, 1961:19, 1961:21, 1961:22, 1961:24, 1962:1, 1962:2, 1962:7,

1963:14, 1963:16, 1963:20, 1963:23, 1964:3, 1964:7, 1964:11, 1964:17, 1964:22, 1965:3, 1966:5, 1966:8, 1966:10, 1966:17, 1967:2, 1967:5, 1968:3, 1968:7, 1968:11, 1968:15, 1968:19, 1968:21, 1968:25, 1969:2, 1969:5, 1969:7, 1969:17, 1969:20, 1970:4, 1970:10, 1970:15, 1970:19, 1970:20, 1971:6, 1971:13, 1971:19, 1972:1, 1972:7, 1972:8, 1972:9, 1972:11, 1972:15, 1973:3, 1973:7, 1973:16, 1973:18, 1973:21, 1974:2, 1974:7, 1974:17, 1974:19, 1974:21, 1974:24, 1975:3, 1975:6, 1975:19, 1975:22, 1975:24, 1976:2, 1976:8, 1976:13, 1976:15
**themselves** [5] - 1905:19, 1910:21, 1929:10, 1954:20, 1956:1
**theory** [11] - 1920:21, 1927:24, 1928:3, 1931:2, 1931:20, 1932:11, 1933:1, 1933:19, 1934:12, 1934:15, 1935:6
**therefore** [3] - 1910:2, 1911:1, 1922:10
**thinking** [4] - 1879:19, 1879:23, 1883:23, 1885:22
**thinks** [5] - 1885:21, 1894:6, 1896:20, 1926:9, 1973:8
**third** [3] - 1888:2, 1939:18, 1942:2
**Third** [1] - 1940:24
**Thirteen** [4] - 1908:1, 1940:9, 1941:12, 1943:4
**thoroughly** [1] - 1916:23
**thousand** [6] - 1890:18, 1891:11, 1891:14, 1891:16, 1896:21
**threat** [3] - 1926:7, 1926:10, 1930:21
**threaten** [3] - 1882:8, 1882:17, 1892:20, 1921:7, 1926:5, 1929:24, 1930:14, 1932:2, 1932:18, 1933:10, 1934:22
**threatened** [3] - 1920:23, 1924:25, 1926:8
**threatening** [3] - 1881:4, 1883:16, 1891:5
**threats** [9] - 1872:7, 1919:23, 1926:4, 1931:5, 1931:23, 1932:12, 1933:3, 1934:16, 1935:8
**three** [14] - 1874:13, 1892:7, 1893:15, 1932:7, 1932:23, 1933:16, 1934:11, 1935:3, 1941:3, 1952:8, 1953:10, 1965:8, 1966:11, 1977:8
**Three** [6] - 1872:6, 1930:3, 1930:10, 1931:17, 1936:9, 1938:3
**throughout** [6] - 1910:10, 1917:1, 1917:7, 1930:22, 1930:23, 1946:19
**timber** [1] - 1877:5
**timeline** [1] - 1874:2
**tinkered** [1] - 1872:5
**Title** [1] - 1900:6
**title** [1] - 1888:9
**together** [7] - 1881:14, 1911:20,

1921:23, 1922:17, 1931:4, 1959:3, 1965:9

**token** [1] - 1923:6
**tomorrow** [1] - 1976:4
**Tony** [1] - 1969:8
**took** [6] - 1871:17, 1888:18, 1893:12, 1953:20, 1956:17
**tool** [1] - 1891:25
**topic** [3] - 1876:23, 1891:10, 1898:18
**toss** [1] - 1882:1
**total** [1] - 1904:17
**touching** [1] - 1942:23
**tough** [1] - 1902:3
**toward** [1] - 1949:16
**towards** [3] - 1874:3, 1929:5, 1944:18
**traditionally** [2] - 1943:21, 1943:23
**trafficking** [5] - 1920:15, 1929:19, 1931:4, 1931:22, 1943:16
**TRANSCRIPT** [1] - 1870:9
**transcript** [12] - 1870:24, 1877:21, 1878:24, 1899:25, 1946:9, 1953:21, 1955:19, 1957:14, 1957:20, 1958:5, 1958:10, 1972:19
**transcripts** [13] - 1889:7, 1889:18, 1954:20, 1954:22, 1955:4, 1955:13, 1955:14, 1955:21, 1956:3, 1956:17, 1956:22, 1957:25, 1958:6
**trash** [2] - 1887:11, 1891:8
**treat** [1] - 1956:25
**trial** [39] - 1873:20, 1875:7, 1875:9, 1880:9, 1885:20, 1889:2, 1891:21, 1894:6, 1894:19, 1894:22, 1894:23, 1909:5, 1912:12, 1916:19, 1916:21, 1916:25, 1917:1, 1917:7, 1920:15, 1926:21, 1928:11, 1928:18, 1928:19, 1930:2, 1930:18, 1930:19, 1934:19, 1935:12, 1938:17, 1943:16, 1954:1, 1954:11, 1955:5, 1958:4, 1958:19, 1959:22, 1960:3, 1965:4
**TRIAL** [1] - 1870:9
**trick** [2] - 1879:10, 1938:25
**tricked** [2] - 1903:21, 1905:10
**tried** [3] - 1871:16, 1884:12, 1911:19
**trim** [1] - 1872:20
**true** [11] - 1874:10, 1887:2, 1890:12, 1893:22, 1895:7, 1923:4, 1933:8, 1937:2, 1937:21, 1945:14
**truly** [1] - 1945:13
**trust** [2] - 1896:10, 1906:10
**truth** [18] - 1878:20, 1882:6, 1882:7, 1882:10, 1883:4, 1883:8, 1883:10, 1883:14, 1883:19, 1916:7, 1916:10, 1936:19, 1937:10, 1944:24, 1949:7, 1949:11, 1949:17, 1964:13
**truth-seeking** [2] - 1936:19, 1937:10
**truthfully** [2] - 1936:15, 1937:15
**try** [5] - 1872:21, 1882:7, 1883:7, 1945:13, 1961:12
**trying** [13] - 1874:3, 1878:11, 1879:10, 1880:21, 1888:1, 1895:12, 1896:16,

1899:22, 1904:1, 1904:10, 1914:20, 1938:25, 1953:9
**turn** [9] - 1877:14, 1904:25, 1918:20, 1918:22, 1919:13, 1924:18, 1928:6, 1938:7, 1962:23
**turned** [2] - 1871:19, 1887:22
**turning** [2] - 1927:7, 1938:6
**turns** [1] - 1877:6
**twelve** [5] - 1951:8, 1952:25, 1953:3, 1963:9, 1963:17
**Twelve** [4] - 1907:25, 1940:9, 1940:10, 1943:4
**twice** [1] - 1893:15
**twisted** [1] - 1887:23
**two** [40] - 1871:23, 1874:7, 1875:16, 1885:20, 1887:7, 1893:4, 1894:11, 1899:3, 1899:9, 1904:6, 1905:17, 1906:8, 1912:14, 1920:25, 1921:4, 1921:5, 1921:15, 1921:18, 1921:22, 1924:22, 1926:17, 1928:7, 1928:13, 1930:12, 1938:13, 1942:13, 1943:5, 1945:25, 1948:2, 1948:11, 1951:3, 1951:18, 1952:14, 1958:20, 1958:22, 1965:4, 1970:21, 1971:10, 1974:25, 1977:7
**Two** [6] - 1872:2, 1872:4, 1924:18, 1928:9, 1929:2, 1929:15
**two-and-a-half** [1] - 1887:7
**two-year-old** [1] - 1875:16
**types** [2] - 1912:14, 1942:14

## U

**U.S** [3] - 1870:4, 1870:15, 1897:18
**umbrellas** [1] - 1912:25
**unanimous** [1] - 1944:9
**unanimously** [1] - 1910:17
**under** [7] - 1914:3, 1917:3, 1918:6, 1918:13, 1923:9, 1950:14, 1955:2
**undercover** [3] - 1885:23, 1886:5, 1921:21
**underlying** [1] - 1921:1
**undertaking** [1] - 1923:17
**underway** [2] - 1923:3, 1923:7
**uneasy** [1] - 1902:3
**unfavorable** [2] - 1892:16, 1916:21
**unfortunate** [1] - 1887:13
**UNITED** [3] - 1870:1, 1870:3, 1870:10
**United** [8] - 1870:13, 1894:18, 1895:2, 1939:10, 1939:21, 1940:5, 1941:5
**unlawful** [7] - 1921:19, 1922:6, 1922:17, 1923:13, 1923:15, 1924:6, 1934:1
**unless** [5] - 1910:17, 1974:7, 1975:11, 1975:14, 1976:3
**unlike** [1] - 1881:16
**unlikely** [2] - 1953:11, 1962:3
**uno** [1] - 1872:15
**unobjected** [1] - 1907:22

**unpleasant** [1] - 1911:7
**unsigned** [1] - 1875:4
**unwilling** [1] - 1894:25
**unworthy** [2] - 1914:9, 1935:7
**up** [23] - 1871:15, 1871:17, 1877:8, 1880:18, 1881:11, 1884:8, 1884:19, 1887:15, 1889:5, 1894:6, 1895:24, 1897:20, 1900:4, 1901:18, 1903:10, 1903:12, 1905:11, 1905:12, 1948:24, 1951:16, 1954:4, 1954:8, 1972:10
**upstairs** [1] - 1961:17
**useful** [7] - 1940:22, 1941:2, 1941:6, 1941:23, 1942:4, 1942:11, 1954:21
**utilize** [1] - 1943:13

## V

**valuables** [1] - 1942:19
**Vaughn** [69] - 1874:4, 1874:6, 1874:8, 1874:16, 1874:19, 1875:9, 1876:1, 1876:17, 1876:20, 1876:21, 1877:7, 1877:7, 1878:12, 1878:13, 1878:16, 1879:5, 1879:6, 1879:10, 1879:13, 1879:15, 1879:18, 1882:11, 1883:12, 1884:7, 1884:22, 1884:25, 1885:2, 1885:13, 1886:25, 1888:1, 1888:12, 1889:25, 1890:14, 1893:20, 1894:12, 1895:1, 1895:13, 1896:6, 1896:8, 1896:10, 1901:7, 1901:13, 1905:6, 1915:22, 1920:17, 1921:22, 1921:23, 1928:11, 1928:15, 1928:18, 1928:19, 1929:3, 1929:16, 1929:22, 1929:24, 1930:1, 1931:1, 1931:19, 1932:2, 1932:9, 1932:18, 1933:18, 1934:13, 1934:22, 1935:5, 1939:4, 1954:3, 1958:1
**vault** [1] - 1942:21
**verdict** [12] - 1909:16, 1911:21, 1919:18, 1919:19, 1936:1, 1944:10, 1946:24, 1948:15, 1948:16, 1952:21, 1953:15, 1964:23
**verdicts** [16] - 1908:8, 1911:20, 1912:1, 1918:9, 1918:13, 1919:16, 1944:8, 1944:11, 1944:12, 1944:19, 1945:14, 1946:16, 1946:18, 1946:19, 1946:25
**vernacular** [2] - 1888:8, 1890:3
**version** [3] - 1872:13, 1949:6, 1949:21
**versions** [1] - 1949:20
**victims** [10] - 1905:5, 1905:6, 1905:7, 1905:8, 1905:9, 1905:11, 1905:13, 1905:14, 1905:16, 1905:18
**video** [2] - 1874:2, 1894:19
**videotape** [1] - 1894:23
**view** [3] - 1908:8, 1944:18, 1972:20
**viewed** [1] - 1916:4
**views** [3] - 1944:1, 1944:3, 1945:5
**Vijai** [2] - 1920:18, 1932:3
**Vijay** [1] - 1932:9

**violate** [3] - 1920:25, 1926:24, 1939:2
**violating** [1] - 1944:20
**violation** [1] - 1938:23
**violations** [1] - 1909:24
**violence** [9] - 1882:17, 1893:10, 1920:23, 1931:5, 1931:23, 1932:12, 1933:3, 1934:16, 1935:8
**violent** [1] - 1891:1
**visa** [2] - 1879:14
**visas** [1] - 1894:24
**visit** [1] - 1920:11
**visitor** [1] - 1879:13
**voice** [1] - 1874:8
**voluntarily** [1] - 1918:25
**vote** [3] - 1911:17, 1944:1, 1944:3
**vouchers** [3] - 1966:11, 1966:12, 1966:18

## W

**wait** [3] - 1902:10, 1961:15, 1974:5
**Waite** [1] - 1920:10
**Waite's** [1] - 1905:8
**waiting** [2] - 1888:18, 1907:2
**walk** [1] - 1957:12
**walked** [2] - 1897:16, 1957:14
**walking** [1] - 1900:20
**walks** [1] - 1897:9
**wants** [5] - 1876:22, 1883:13, 1899:5, 1899:17, 1902:10
**waste** [1] - 1894:7
**wasted** [1] - 1876:11
**ways** [2] - 1883:7, 1901:16
**weapon** [2] - 1882:12, 1891:6
**wearing** [1] - 1912:24
**weather** [1] - 1913:5
**week** [1] - 1899:11
**weekend** [1] - 1872:14
**weeks** [4] - 1874:5, 1874:7, 1887:7, 1906:9
**weigh** [1] - 1918:3
**weighing** [1] - 1910:23
**weight** [10] - 1909:9, 1914:1, 1915:9, 1915:15, 1915:21, 1916:5, 1937:22, 1944:2, 1944:3, 1944:24
**wet** [2] - 1912:24, 1912:25
**whereas** [1] - 1943:1
**whim** [1] - 1911:5
**whole** [15] - 1874:23, 1894:16, 1899:9, 1899:13, 1899:15, 1899:16, 1908:17, 1914:7, 1949:10, 1960:10, 1960:17, 1962:16, 1963:2, 1973:16
**willing** [2] - 1881:16, 1954:25
**win** [2] - 1891:25, 1905:21
**winding** [1] - 1903:12
**window** [1] - 1913:1
**Wire** [1] - 1941:10
**wire** [4] - 1886:25, 1940:23, 1941:24, 1943:8

**wiretap** [5] - 1904:15, 1904:16, 1905:10, 1906:19, 1906:20
**wiretaps** [1] - 1903:11
**wish** [2] - 1914:15, 1943:25
**withhold** [5] - 1919:25, 1921:10, 1925:4, 1928:19, 1930:18
**witness** [59] - 1879:2, 1881:14, 1884:13, 1885:12, 1888:12, 1893:20, 1894:10, 1894:21, 1896:16, 1897:1, 1902:13, 1906:1, 1910:7, 1914:3, 1914:5, 1914:6, 1914:12, 1914:13, 1914:14, 1914:18, 1914:19, 1914:22, 1914:23, 1914:24, 1915:1, 1915:3, 1915:7, 1915:10, 1915:12, 1915:15, 1915:16, 1916:8, 1917:10, 1917:14, 1920:2, 1920:3, 1924:13, 1924:15, 1924:22, 1926:15, 1926:24, 1927:7, 1927:17, 1927:18, 1928:7, 1928:23, 1929:25, 1930:1, 1930:4, 1931:13, 1932:20, 1934:4, 1935:11, 1937:14, 1938:8, 1949:16
**witness'** [1] - 1927:22
**witness's** [6] - 1914:9, 1914:16, 1914:17, 1915:8, 1946:2, 1946:3
**witnesses** [29] - 1880:19, 1881:4, 1882:4, 1882:12, 1882:22, 1885:13, 1891:7, 1892:24, 1895:16, 1896:15, 1901:14, 1909:8, 1912:3, 1913:25, 1915:6, 1915:17, 1916:20, 1916:25, 1919:22, 1919:25, 1920:13, 1920:14, 1927:20, 1929:23, 1936:9, 1936:15, 1938:7, 1952:13
**witnesses'** [1] - 1914:1
**witnessing** [1] - 1902:1
**woman** [1] - 1896:17
**wonder** [1] - 1891:12
**word** [5] - 1873:19, 1900:1, 1903:11, 1905:7
**words** [18] - 1882:12, 1883:23, 1886:23, 1886:24, 1887:6, 1889:8, 1892:2, 1894:11, 1905:16, 1907:12, 1910:20, 1922:2, 1922:13, 1926:5, 1930:20, 1939:4, 1958:9
**works** [2] - 1899:3, 1907:14
**world** [3] - 1888:2, 1893:1, 1900:5
**worst** [1] - 1890:5
**worthy** [1] - 1914:5
**wrap** [1] - 1903:10
**write** [4] - 1879:22, 1899:4, 1957:16, 1968:12
**writes** [1] - 1899:4
**writing** [8] - 1874:12, 1876:5, 1876:11, 1902:11, 1902:15, 1922:2, 1945:19, 1950:13
**written** [3] - 1875:6, 1934:7, 1962:15
**wrongful** [2] - 1907:15, 1926:13
**wrote** [2] - 1878:21, 1900:8

## Y

**year** [1] - 1875:16
**years** [1] - 1880:15
**yellow** [2] - 1877:15, 1958:16
**yesterday** [6] - 1872:9, 1873:25, 1874:2, 1880:7, 1881:12, 1894:17
**yesterday's** [1] - 1872:13
**YORK** [1] - 1870:1
**York** [2] - 1870:5, 1870:23
**yourself** [3] - 1897:22, 1898:2, 1901:1
**yourselves** [2] - 1916:6, 1944:25