1978

```
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK
 2
    - - - - - - - - - - - - - - - - - X
 3
    UNITED STATES OF AMERICA,        :    08-CR-640
 4
                  v.                 :    U.S. Courthouse
 5                                        Brooklyn, New York
    ROBERT SIMELS                    :
 6  ARIENNE IRVING                        August 12, 2009
                       Defendants.  :    9:30 o'clock a.m.
 7
    - - - - - - - - - - - - - - - - - X
 8

 9                   TRANSCRIPT OF TRIAL
                BEFORE THE HONORABLE JOHN GLEESON
10              UNITED STATES DISTRICT JUDGE, and a jury.

11
    APPEARANCES:
12

13  For the Government:        BENTON J. CAMPBELL
                               United States Attorney
14                             BY:  STEVEN L. D'ALESSANDRO
                                    MORRIS FODEMAN
15                                  DANIEL BROWNELL
                                    Assistant U.S. Attorneys
16

17  For the Defendants:        GERALD SHARGEL, ESQ.
                               EVAN L. LIPTON, ESQ.
18                             For Robert Simels

19
                               JAVIER A. SOLANO, ESQ.
20                             LAWRENCE BERG, ESQ.
                               For Arienne Irving
21

22  Court Reporter:            Gene Rudolph
                               225 Cadman Plaza East
23                             Brooklyn, New York 11201
                               (718) 613-2538
24
    Proceedings recorded by mechanical stenography, transcript
25  produced by CAT.
```

1979

1      (The following occurred in the absence of the jury

2  at 10:20 am.)

3          THE COURT:  Good morning.

4          Have a seat, please.

5          All right.  We have three notes already this

6  morning.

7          Please define dominion and control for Count

8  Thirteen.

9          Jury note eight, please send in -- first it said

10 three and then it said five -- Advils.

11         We sent in some Advils.

12         Jury note nine says please supply Ms. Irving's

13 instant messages with Willems Greenhart for base equipment.

14         I asked Ilene to ask you to put your heads together

15 on that.

16         Have you agreed on that?

17         MR. SOLANO:  No, Your Honor.

18         MR. FODEMAN:  No, Judge.

19         (So marked.)

20         THE COURT:  Okay.

21         Let's deal with that first.  What's the dispute?

22         MR. FODEMAN:  Judge, I think that we have agreed

23 that the responsive document at least is 804, Government

24 Exhibit 804.

25         MR. SOLANO:  Correct.  Although the note says

1   Willems Greenhart, it's clear that the base equipment

2   discussion is with Regan Mark, the instant message with Regan

3   Mark.

4            THE COURT:  Okay.

5            MR. SOLANO:  Does Your Honor have the document?

6            THE COURT:  You can educate me about what you

7   disagree on.

8            MR. SOLANO:  I think the argument -- the

9   disagreement is, I think the note should be -- the answer

10  should be most responsive to the note, as direct as possible.

11  I believe the government's position is the entire conversation

12  or the most expansive part of the conversation should go in.

13           So if Your Honor looks at --

14           THE COURT:  Just so I understand, what we are

15  arguing about is how much of 804 ought to go in?

16           MR. SOLANO:  Yes.

17           THE COURT:  You think less ought to go in than the

18  government?

19           MR. SOLANO:  Yes.

20           THE COURT:  What do you want?

21           MR. SOLANO:  Page four on that document, it's the --

22  the middle of the document that begins, Friday, June 20th, at

23  13:36.

24           THE COURT:  Yes?

25           MR. SOLANO:  And I agree, that it should be that

GR      OCR      CM      CRR      CSR

1   entire page -- I'm sorry.  That entire part,  from 13:36 down

2   to the second to last line, which says, yes, it was.  That the

3   line that begins, the last line, from Regan, but they have

4   both deserted Rog should not go in.

5           Do you want the government's  position at this

6   point?

7           THE COURT:  Sure.

8           MR. FODEMAN:  With respect to that segment, first of

9   all, I am not sure what the harm is in just giving them the

10  document.  The only reason this entire document was introduced

11  was to show instant messages between Ms. Irving and Willems

12  Greenhart or Regan Mark.  That would be our basic position.

13          But if we are going to take out segments, I would

14  say that it should continue to the top --

15          THE COURT:  I'm sorry to interrupt.  This is the

16  only piece that you think should go in?

17          MR. SOLANO:  No, Your Honor.  As -- does Your Honor

18  want me to finish?  Two other sections.

19          MR. FODEMAN:  Three segments total that are in

20  dispute, that are up for discussion.

21          THE COURT:  As to this piece, the government agrees,

22  this ought to go in?

23          MR. FODEMAN:  It ought to go in and should continue

24  until the top of the next page where it ends, especially

25  Justin.  Then at 13:47.

GR      OCR      CM      CRR      CSR

1982

1        THE COURT:  All right.

2        MR. FODEMAN:  Then the conversation returns and the

3   same text message conversation, 13:54.

4        THE COURT:  What page?

5        MR. FODEMAN:  Page five.

6        It says, about a little below the middle of the

7   page, if you can work on that guy, and on the equipment base,

8   that will be perfect.

9        THE COURT:  What's the timing?

10       MR. FODEMAN:  13:54.

11       THE COURT:   Got it.

12       MR. FODEMAN:  I think the best thing to do is just

13   continue the conversation up to that point -- through that

14   point.

15       THE COURT:  Ending with that?  Or going past that?

16       MR. FODEMAN:  I think ending with that is fine.

17   Although --

18       (Pause.)

19       THE COURT:  What's at stake here?  If we send in

20   more than what you claim is precisely requested?  What happens

21   to Ms. Irving?

22       MR. SOLANO:  Judge, there are conversations, if you

23   can see the top of page five, which talks about people being

24   scared, why they are scared.  The portion that the government

25   wants to continue to introduce talks about plea bargaining and

1  other people.  It is just not responsive to the note and this

2  whole issue of people being scared I just don't think needs to

3  go in and should go in.

4           THE COURT:  All right.

5           MR. SOLANO:  Plus, Your Honor -- I'm sorry.  Your

6  Honor specifically told the jury to be as specific as

7  possible.  I think they are doing that.  They are being very

8  specific about --

9           THE COURT:  No.  I was talking about readbacks.

10          MR. SOLANO:  Maybe I am inferring that they are also

11 being specific in terms of what they are requesting.

12          THE COURT:  What else?

13          MR. FODEMAN:  Your Honor, on the -- the other

14 discussion, the other text message that's relevant is Monday,

15 June 23rd, starts on the top of page of -- a third of the way

16 down.  We would just give that session -- that text message.

17          THE COURT:  Beginning where?

18          MR. FODEMAN:  Beginning 9:08, the time 9:08.  And

19 continuing through the end of the message, which the session

20 closes at 11:28, top of page eight.

21          THE COURT:  This is about the base equipment?

22          MR. FODEMAN:  Yes.  They talk about the base

23 specifically on -- at 9:09, you can see it.

24          THE COURT:  I see.

25          MR. SOLANO:  Your Honor, I certainly have no problem

1984

1   with beginning on June 23rd, from the top at 9:08 or a quarter

2   of the page down.  But I think that it should end at the end

3   of that page, at 9:15, where Irving says, he said he didn't

4   send it yet.  Again, to continue to the second page where it

5   talks about people being worried and people being scared and

6   instant messages being the safest or the hardest thing to

7   detect --

8            THE COURT:  Where is that?

9            MR. SOLANO:  That's at the top of page eight.

10           THE COURT:  Where does the government say this

11  segment should end?

12           MR. FODEMAN:  That's --

13           MR. D'ALESSANDRO:  That's a different conversation.

14  It's August 14th.  You have different pages, Mr. Solano.

15           (Pause.)

16           THE COURT:  Do you need to see this?

17           MR. D'ALESSANDRO:  Please, Your Honor.

18           Thank you.

19           (Pause continues.)

20           MR. FODEMAN:  Thank you, Judge.

21           MR. SOLANO:  I have no problem with that then, Your

22  Honor, from 9:08, the whole session of Monday, June 23rd.

23           MR. FODEMAN:  To the end of that session.  So

24  that's -- we are in agreement on that, I guess.

25           THE COURT:  I really only want to hear what you are

GR      OCR      CM      CRR      CSR

1    in disagreement on.

2          MR. SOLANO:  I guess at this point, Your Honor, the

3    only thing that we are in disagreement on is the session of

4    June 20th.

5          THE COURT:  Okay.  Can I have it back, please?  The

6    one just described to me?

7          MR. SOLANO:  Correct.

8          THE COURT:  You want that to end on page four,

9    second line from the bottom?

10         MR. SOLANO:  Correct.

11         THE COURT:  All right.

12         MR. SOLANO:  I would agree with the government, that

13   on page five, at 13:54, the line that says -- the line there

14   they want to end on, if you can work on that guy and on the

15   equipment base, that would be perfect, that line should be

16   included.

17         THE COURT:  Just that line?

18         MR. SOLANO:  Just that line.

19         THE COURT:  I don't get that.

20         MR. SOLANO:  Judge, everything before that --

21         THE COURT:  Redact it out and then have that one

22   line?

23         MR. SOLANO:  Judge, everything before that, I would

24   submit, has nothing to do with the computer base or the base

25   to the equipment.

1986

1      THE COURT:  Tell me where the harm is in here again.

2      MR. SOLANO:  Judge, it is just -- I don't want this

3  jury to speculate about, you know, people fleeing the federal

4  authority there in your country.

5      THE COURT:  Where is that?

6      MR. SOLANO:  13:48.

7      THE COURT:  So what?  The person in -- this is Regan

8  Mark.  The person in question there was said to have fled the

9  federal authority there in your country.  So what?

10      MR. SOLANO:  I guess --

11      THE COURT:  Regan Mark, we don't know how and why

12  but it must have taken a plea bargain.

13      I am missing --

14      MR. SOLANO:  I guess that's my point.  If there is

15  no problem with it, why do we need them to look at something

16  that's -- that I would say is not responsive and they would be

17  speculating to it.

18      THE COURT:  Overruled.  Your objection is overruled.

19      Prepare with your Post-its a redacted version of

20  this and I will copy it and we will send it in.

21      That objection is overruled.

22      That's the only disagreement you have?

23      MR. FODEMAN:  It seems that way, yes.

24      MR. SOLANO:  Yes.

25      THE COURT:  All right.  Prepare a redacted version.

GR      OCR      CM      CRR      CSR

1987

1          Who wants to be heard on how I should define

2     dominion and control for Count Thirteen?

3          I looked at a few cases.  That's the problem with

4     sending in your charge.  You can't just reread your charge

5     because they have what you said on it already.

6          I looked at some cases and thought I ought

7     to -- whatever I say ought to convey a couple of things that

8     can be gleaned from any number of Second Circuit cases.  I

9     looked at, for example, US versus Rivera, 844 F.2d 916.  It

10    cites an older case, US versus Tribunella, 749 F.2d, 104.

11         Based on these and just cruising around in Sands's

12    treatise, Sands's Modern Federal Jury Instructions, I thought

13    I ought to say, at the very least, that the mere proximity to

14    the equipment is not enough.  I guess I just can't repeat

15    what's necessary is that the defendant be in a position to

16    exercise dominion and control.  I could give some examples.

17         But I think the gist of it is the defendant is in a

18    position to obtain physical possession and already has

19    sufficient control, although it is not in his actual

20    possession, has sufficient control over the object that it can

21    be said that he effectively has physical possession.

22         I am just thinking out loud.  Those are the

23    principles from which I will craft something, unless you've

24    got something that you persuade me I ought to say.

25              MR. SOLANO:  Judge, I think that -- I would ask Your

1988

1    Honor to consider an instruction that includes that the person

2    has the authority to -- one second.

3              (Pause.)

4              THE COURT:  While you are thinking, another

5    iteration, and this is from the Tribunella case, constructive

6    possession exists when a person knowingly has the power and

7    the intention at a given time -- it says to exercise dominion

8    and control.  I am not sure dominion is that useful to a lay

9    jury.  Power and intention at a given time to exercise control

10   over an object.

11             I think I need to emphasize that mere proximity,

12   merely being around it, doesn't constitute constructive

13   possession.  There needs to be the power to exercise

14   possession over it and the -- I don't know about authority.  I

15   don't know if that's --

16             MR. D'ALESSANDRO:  And --

17             THE COURT:  If that's right.

18             What were you going to say, Mr. Solano or

19   Mr. D'Alessandro?

20             MR. SOLANO:  Judge, I -- the line that Your Honor

21   read with the word power, that was the feeling that I was

22   getting to.  I would respectfully submit that Your Honor

23   consider using authority but I understand -- sounds like I

24   understand what Your Honor's  position is going to be with

25   power.

1989

1        MR. D'ALESSANDRO:  Your Honor, with regard to power,

2  it's kind of building off what Mr. Solano's statement was

3  about authority, you can break into somebody's house and steal

4  something.  You have no authority to take it but you are in an

5  actual possession --

6        THE COURT:  I am not going to say authority.

7        MR. D'ALESSANDRO:  My point is with regards to the

8  word power, it can be -- it can be construed by a juror to

9  insinuate authority.  Clearly, if you have the authority,

10  that's fine.  But you don't need the authority.  I think the

11  use of the word power could implicate that there needs to be

12  some type of authority.

13        THE COURT:  Just so you will know, it is not my

14  word.

15        MR. D'ALESSANDRO:  I understand.

16        THE COURT:  I am just a grunt sitting down here in a

17  trial court.  It's all over the Second Circuit opinions.

18        This Rivera case says we conclude the evidence

19  provided a sufficient basis for a reasonable juror -- I'm

20  sorry.  This is Tribunella again -- had the power and the

21  intent to exercise dominion and control.  That's what is

22  quoted in Rivera.

23        I think it is a power issue.  I think that

24  distinguishes the merely present -- the near proximity, the

25  difference between being in its proximity and not

1990

1  constructively possessing, from being in its proximity and

2  constructively possessing is that power over the item.

3          Why don't I just say, constructive -- if it is not

4  enough they will tell us.  I think I will leave out the word

5  dominion.

6          I will say, mere proximity to the item in

7  question -- here it's the base, the equipment, right?  Count

8  Thirteen?

9          MR. D'ALESSANDRO:  Yes, Judge.

10         THE COURT:  Mere proximity to it is not enough.

11  Constructive possession only exists when the person has the

12  power and the intention at a given time to exercise control

13  over it.

14         If that doesn't answer their -- if they need further

15  clarification, we will be happy to provide it.  Just ask for

16  it in a note.

17         MR. D'ALESSANDRO:  Very well.

18         THE COURT:  Any objection?

19         MR. SOLANO:  No, Your Honor.

20         MR. D'ALESSANDRO:  No, Your Honor.

21         THE COURT:  All right.  Let's bring them in, please.

22         We could give them examples, reading from cases, but

23  I really don't like doing that.  We will deal with that if

24  there is another note.

25         Should we be bringing the alternates in on readbacks

1991

1    and stuff?

2         I don't think so.  I think with alternates, God

3    forbid we need them, I think we have to tell them to start

4    from scratch.  So I don't think I should bring them.

5         Does anybody have a different view?

6         MR. D'ALESSANDRO:  Not from the government, Your

7    Honor.

8         MR. SOLANO:  No, Your Honor.

9         THE COURT:  Not bringing them in makes it a lot

10   easier to forget about them until three weeks from now.

11        (Jury present.)

12        THE COURT:  Good morning.

13        Nice to see you.

14        Have a seat.

15        Okay.  Got your notes.

16        The instant messages you asked for are here.

17        This is from Government Exhibit what?

18        MR. FODEMAN:  I think it's 804.

19        THE COURT:  Okay.  I have marked it as Court

20   Exhibit 5.  You will take it back into the jury room with you.

21        (So marked.)

22        THE COURT:  I brought you back in to respond to your

23   request that I define dominion and control for Count Thirteen.

24   I will take a crack at clarifying it for you now.  Obviously,

25   you have what I have said in the charge already.

GR     OCR     CM     CRR     CSR

1    This may help.  In this instant, and in all

2   instances, if what I do in response to one of your notes

3   doesn't help, don't think that's the end of it.  Go back in

4   there, write me another note and say it was not enough and I

5   will put my head together with counsel again and try to help

6   you out.

7    Okay?

8    You know about actual possession, when you

9   physically have something in your possession.  Dominion and

10  control are attributes, are part of the definition of

11  constructive possession.  That is, when the law holds someone

12  accountable for possessing an item even though it is not in

13  that person's actual possession.

14    In addition to what I have told you in the charge of

15  which you have a copy, let me say this in the hope that it

16  helps.

17    Mere proximity to the item in question -- and here

18  it is that equipment that is the subject of those counts,

19  twelve and thirteen, and I guess thirteen is the possession

20  count -- mere proximity to that equipment, just being around

21  it, near it, is not enough.  The law requires more.

22  Constructive possession exists when a person knowingly has the

23  power, the power and the intention to exercise actual control,

24  actual physical control, over the item in question.

25    Now, based just on your faces it looks like that

1993

1  might not be enough.  If it isn't, you will tell me that and I

2  will work with counsel on providing, shedding more light on

3  this issue for you.  But that's the light I am shedding on it

4  now.

5          Okay?

6          Please return to the jury room and resume your

7  deliberations.

8          (The following occurred in the absence of the jury.)

9          THE COURT:  Before they get started deliberating

10  again, any objection to that instruction?

11          MR. SOLANO:  No, Your Honor.

12          MR. SHARGEL:  No.

13          MR. D'ALESSANDRO:  No.

14          (Recess taken.)

15          (Continued on next page.)

16

17

18

19

20

21

22

23

24

25

1994

1          (The following occurred in the absence of the jury

2    at 11:30 am.)

3          THE COURT:  Please be seated, everyone.

4          MR. LIPTON:  I will get Mr. Shargel.

5          THE COURT:  Please do.

6          (All parties present.)

7          THE COURT:  All right.  No shortage of notes from

8    this jury.

9          Jury note -- one thing I should mention is, orally,

10   to Ilene this morning, when they were arriving, they asked for

11   an additional pad, you know, the flip-over pad for the easel,

12   a request we complied with this morning.

13         Note 11, requesting Ms. Wait e's testimony.

14         (So marked.)

15         If you could please do your Post-it thing on that.

16   I will copy it and send it in.

17         Note 10:  For charge 13, does using or operating a

18   device amount to control or actual possession?

19         (So marked.)

20         You have seen this note already, correct?

21         MR. D'ALESSANDRO:  Yes.

22         MR. SHARGEL:  Yes.

23         MR. SOLANO:  Yes.

24         THE COURT:  I have thought about it, discussed it

25   with my law clerks.  I think the right answer to that is, no,

1    that using or operating it, if there is evidence of that, that

2    can be considered along with all the other evidence in

3    determining whether there is constructive possession, but it

4    doesn't equal control or actual possession.

5            Then I would just reiterate that constructive

6    possession exists when a person knowingly has the power and

7    the intention at a given time to exercise control.

8            I think there is something in the concept of power

9    that renders use and operating insufficient to do the trick.

10   I can imagine situations where people are operating, in this

11   instance, this equipment without constructively possessing it.

12           But I don't purport to have a monopoly on the

13   correct answer to this.  Does anybody want to be heard?

14           MR. D'ALESSANDRO:  Your Honor, from our perspective,

15   I think the answer is, it amounts to both.  The scenarios that

16   we are looking at, that come to my mind, are, which is kind of

17   the point I was raising earlier, if I am a burglar and I break

18   into your house and I take something, the fact that I have no

19   authority to have it really doesn't factor into the equation.

20           By the same token, if I borrow Mr. Fodeman's

21   BlackBerry and I am using it, I am in actual possession of it.

22           The charge that was given is when a person

23   physically holds something.  If a person is using or operating

24   a device, they are in physical possession of it.  By the same

25   token, then they would also have control over it.  That is, to

1996

1    the exclusion of others.

2         THE COURT:  Just suppose -- I will hear you in a

3    second.

4         MR. SHARGEL:  Yes.

5         THE COURT:  Just suppose, hypothetically, doesn't

6    happen to be true, that I am really bad with like Word, the

7    software Word, and I don't know how to put a footnote in on

8    that and my law clerk comes along and takes the mouse, shows

9    me how I can find the footnote insertion device, uses the

10   mouse and then walks away.  That person, my law clerk, has

11   operated the device.  I don't think it can be fairly said that

12   he has the power and the intention to exercise control over

13   it.  I don't think he possesses it at the moment.

14        I think the person off the street would say, he is

15   not really possessing my computer even though he is operating

16   it.  That's kind of what we are talking about here.  We are

17   talking about computer type equipment and laptops.

18        MR. D'ALESSANDRO:  You in that scenario have to the

19   extent that you are the person exercising control over it,

20   your computer, have given that, even for a short amount of

21   time to your law clerk for the purpose of using that

22   equipment, to use it for a purpose that you want.

23        Now, I wouldn't expect your law clerk to pick it up

24   and go running away but he could.  He's in physical control

25   over that device.  He's using it full well --

1997

1       THE COURT:  In fact, no, he couldn't.

2       I get it.

3       What's your position on this?

4       MR. SOLANO:  Your Honor, my position is exactly what

5   Your Honor proposed.  I wouldn't change one thing.

6       THE COURT:  Mr. Shargel?

7       MR. SHARGEL:  I agree.

8       THE COURT:  Anything further?

9       MR. D'ALESSANDRO:  No, Your Honor.

10      THE COURT:  Bring in the jury, please.

11      THE CLERK:  Yes, Your Honor.

12      THE COURT:  Hold the jury a moment.

13      To be more specific, I intend to say, in answer to

14  their question, not necessarily.  It may be evidence of

15  actual -- of control or actual -- actual control.  But it

16  doesn't equal.  What is required is a person knowingly have

17  the power and the intention to exercise control.

18      All right?

19      MR. SOLANO:  Yes, Your Honor.

20      THE COURT:  Mr. Shargel?

21      MR. SHARGEL:  That was my initial reaction.  The

22  reason that I came to Your Honor was no, going back to the

23  language of the note, where it says using or operating a

24  device amount to control or actual possession.  The correct

25  answer, Your Honor's first instinct, the correct answer is a

GR      OCR      CM      CRR      CSR

1998

1   literal no.

2          I don't object to the additional language, that it

3   could be part of the calculus -- part of the calculus to

4   arrive at a conclusion.  But I think the literal answer is no.

5          THE COURT:  All right.  You've got your objection.

6          You can bring them in.

7          THE CLERK:  Yes, Your Honor.

8          (Jury present.)

9          THE COURT:  Please be seated.

10         Got your note.  Jury note ten takes me up on my

11  offer to provide further clarification.

12         It says:  For charge 13, does using or operating a

13  device amount to control or actual possession?

14         The short answer is no.  Certainly, not necessarily.

15  Using or operating doesn't equal possession.  It is possible

16  to use or operate and not possess.

17         Remember what I said to you earlier, the key to

18  constructive possession, at least, key to constructive

19  possession, is when a person knowingly has the power and the

20  intention to exercise control over an object.

21         Another way of putting it is, using or operating a

22  device -- and we all know what device we are talking about

23  here, this is Count Thirteen -- can be considered by you as

24  evidence of possession.  Okay?  And of constructive

25  possession.  But it doesn't equal that.

1999

1    Does that make sense?

2    No?

3    All right.  We won't do it from the hip.  One juror

4    shook her head.

5    What I would like to you do, please, is, if you can,

6    refine this question based on what I have just told you, just

7    answered your question.  But if it doesn't either make sense

8    or doesn't go all the way towards clarifying your concerns, I

9    want you to be as precise as you can in telling me how.

10    All right?

11    I don't want to give you further instruction without

12    consulting with counsel.

13    Please return to the jury room and resume your

14    deliberations.

15    (The following occurred in the absence of the jury.)

16    THE COURT:  Please be seated.

17    I think since most of what I told them relates to

18    constructive possession, there may be an actual possession

19    dimension to this that we will hear about.  That's my guess.

20    MR. SHARGEL:  I'm sorry.  I didn't hear.  You

21    dropped your voice.

22    THE COURT:  I think there may be a question with

23    regard to the intersection of using and operating and actual

24    possession issue that I haven't addressed.

25    MR. SHARGEL:  It is an interesting point about the

1   actual possession.  I would offer this analogy.

2           If you came over and said, can I check my email on

3   your computer and you were checking it.  You really don't even

4   have the power to keep it.  If I said to you, I really need to

5   use it now and I take it from you, I have the power to do

6   that, to take it from you.

7           The mere fact that you are using it, unlike are you

8   possessing cocaine or are you possessing the gun or some

9   object like that, you really don't have actual possession of

10  that.  You may be using it but you don't have actual

11  possession of it because you have to cede the power, cede the

12  power or cede the possession at any time you are asked.

13          Does that make sense to you?  Maybe I shouldn't have

14  asked that question.

15          THE COURT:  Yes.  I already regret asking that

16  question.  Yes, it does make sense.  You know, in so many

17  ways, we are adapting principles that have been around for

18  decades to new technology.  This is kind of one facet of that

19  problem, when you are using a computer.  I think it is, at

20  least.

21          MR. D'ALESSANDRO:  I think this highlights my point,

22  is that what Mr. Shargel's example is is that since it is his

23  computer, even though he's allowed somebody to use it, that

24  person can never be in actual possession or constructive

25  possession.

2001

1         But I don't think that's right.  Because that would

2    mean by extension that the person that unlawfully takes

3    something, they don't have any right to take, could say well,

4    I didn't have the power to exercise dominion and control

5    because I unlawfully took it and the rightful owner never gave

6    me permission to use it.

7         I don't think that's right.

8         MR. FODEMAN:  Maybe we should wait for the note.

9         THE COURT:  Jury note 12:  Requesting GO's facility

10   log sheet.

11        MR. FODEMAN:  Judge, imagine --

12        THE COURT:  Do we have that testimony?

13        MR. FODEMAN:  Yes.  We are in agreement.  I was just

14   redacting it.

15        THE COURT:  Could I task one of you, Andrew, to make

16   a copy of that?

17        THE LAW CLERK:  Yes, Your Honor.

18        THE COURT:  Please.

19        THE LAW CLERK:  Just one?

20        THE COURT:  I agree with that argument,

21   Mr. D'Alessandro.  But it is different to -- somebody who uses

22   Mr. Shargel's car doesn't own the car but obviously possesses

23   it while that person is out riding around.  Whether they

24   borrow it or steal it, they possess it.

25        But we have a narrower context here.  It involves

2002

1  using or operating a computer and the software within the

2  computer.  I am not so sure that those principles can be

3  imported pound for pound into this setting.

4        MR. D'ALESSANDRO:  Can I add another factor to it?

5        THE COURT:  Yes.

6        MR. D'ALESSANDRO:  I think the -- the focusing on

7  the possession issue it does.  The statute would require for

8  the government to convict them to prove that they know what

9  they are doing.  This takes care of the situation where, you

10 know, somebody borrows a computer from someone and they don't

11 know but on there is a child pornography file.

12       The government would never be able to in those

13 limited circumstances, where someone borrows a computer and is

14 using it for an email.  In the government's view, they are in

15 actual possession of it.

16       Do they know that there is child pornography on it?

17 That's a separate issue.

18       What's at a stake here is are they actually or

19 constructively in possession of this equipment.  By accessing

20 it, by using it, they are exercising dominion and control over

21 it, to the exclusion of others.  They are accessing this

22 equipment.

23       To convict them --

24       THE COURT:  Why to the exclusion -- I don't

25 understand to the exclusion of others.  Obviously, you think

2003

1  the person brought in to break the code, not just used, but

2  possessed this equipment?

3          MR. D'ALESSANDRO:  They had physical possession of

4  it.

5          Would the government be able to convict them of this

6  crime?  No.  Unless we had evidence that that person knew or

7  had reason to know that the primary design of that equipment

8  rendered it or, rather, the design of that equipment rendered

9  it primarily --

10          THE COURT:  I understand there are other elements of

11  the offense.  I am kind of just hung up on your equating mere

12  operation of a computer with its possession.  You might be

13  right.  But --

14          MR. FODEMAN:  Judge, imagine, to use your example,

15  imagine a world, hypothetical world that possession of

16  computer mice was illegal.  Just possessing it would be

17  illegal.  Andrew comes over to use your mouse.  He's using it.

18  Even though you have asked him to do it.  He is in possession

19  of it.  He is possessing the mouse.  Right?  He's in actual

20  possession of that mouse.  So when he's using the mouse he's

21  in possession of it.  The mere fact that you asked him to do

22  it, the mere fact that it's temporary, the mere fact that it

23  is at your direction and that he is about to give it right

24  back to you as soon as he puts the footnote in, is of no

25  moment.

2004

1        The question here is, is he in actual possession of

2    it.  We are sort of conflating, I think, the issue of what's

3    actual possession and what constructive possession is, what

4    constitutes -- I think this is what you were getting at

5    originally, the -- the intersection of those things.

6        THE COURT:  I have treated this as though they were

7    asking about constructive possession.  The word actual

8    possession is in the note.

9        Still, in your hypothetical with the -- the next

10   question is, fine, possesses the mouse.  But by operating the

11   mouse does he possess the computer equipment to which access

12   is afforded by the mouse?  That's really our issue, not

13   whether he possesses the mouse.

14       MR. FODEMAN:  Because he is not touching the

15   computer or -- that is part of the computer.

16       THE COURT:  Even touching the computer doesn't mean

17   you are possessing it.

18       MR. D'ALESSANDRO:  That's not -- that certainly is

19   not what the jury is asking for.  They are asking for

20   operating it.  They are asking about operating it.

21       THE COURT:  I understand.

22       MR. D'ALESSANDRO:  We are not at the point where

23   it's just -- they are just touching it.

24       MR. SHARGEL:  There is another interesting issue

25   here.  That is, that possession -- we talk about the

GR      OCR      CM      CRR      CSR

2005

1    equipment.  But possession of the computer -- since the

2    testimony was clear, and as clear as could be from Mr. Myers,

3    that the computer was incapable of recording any conversation,

4    couldn't record a conversation.

5          That wasn't -- this was really not the

6    offending -- the offending equipment.  The offending

7    equipment, according to the evidence in the case is the -- is

8    N-72.  Is that the number?

9          MR. SOLANO:  Yes.

10         MR. SHARGEL:  That's the offensive equipment.

11         This could have been --

12         THE COURT:  N-72?

13         MR. SOLANO:  Yes.

14         MR. SHARGEL:  The base, what we have been calling

15   the base.  I think that -- let me get right to the point.

16         I don't think that the computers, the two laptops,

17   can support a conviction.  I think as a matter of law they

18   can't support a conviction.  I think that should be made clear

19   to the jury.  They are spending so much time focusing on,

20   obviously, the laptops.  These questions don't pertain to the

21   base.  There is no evidence in this record that anyone was

22   operating the base.  The only evidence in the record is that

23   it was inoperable.

24         I think that even though it doesn't respond directly

25   to the question, the jury should understand, to avert a

2006

1   situation where they are finding guilt on an improper basis,

2   that the laptops are not the offending equipment.

3           MR. D'ALESSANDRO:  Can --

4           THE COURT:  I am not surprised that your adversary

5   has drawn a distinction, which contain the intercepted

6   conversations and the N-72.

7           What's your answer to that?

8           MR. D'ALESSANDRO:  The computers are part of the

9   equipment.  The computers and the software and the base are

10  the wiretapping equipment.  It's components of it.

11          MR. SHARGEL:  Can I say one thing in response?

12          Do you remember Mr. Myers said what you need here

13  also is an antenna and something else.  Let's just say the

14  antenna.  It could be bought in Radio Shack.  I think there

15  was something else you needed from Radio Shack, a cable or

16  something.  Let's just talk about the antenna.

17          If the jury were asking questions about an antenna,

18  assuming we had one here, it can't be said, even though you

19  need that to intercept the conversation, that the antenna

20  offended the statute.  It's the device that's -- the device

21  that -- actually, if I may say one thing more?  I think the

22  question on direct examination of Mr. Myers by Mr. Fodeman --

23          THE COURT:  Excuse me.

24          This is Waite's testimony, Court Exhibit 6.  You can

25  send it in.

2007

1          Thank you.

2          (So marked.)

3          MR. SHARGEL:  The question that Mr. Fodeman asked of

4   Mr. Myers was not -- was all this equipment together designed,

5   rendering it primarily useful for interception.  It's the

6   N-72.  That's what he was asked to look at.  That's what

7   was -- even if you put aside my argument about does it work or

8   not, that was the device that offends the statute, not the

9   laptops.

10          THE COURT:  Fair enough.

11          Even accepting the government's argument, that it's

12   their components, components of a larger system,

13   Mr. D'Alessandro, why would it even be conceivable on our

14   facts for anybody to use or operate that system?  Using or

15   operating a device?

16          Assume for a second they have a misconception about

17   using the Tough Books on which the intercepted conversations

18   are held.  That's where they reside.  It looks like they might

19   be thinking that using or operating those Tough Books might

20   result in control or actual possession of the contraband,

21   counts twelve, thirteen.

22          These counts have really turned into a vanguard in

23   this case.

24          MR. SHARGEL:  If you adopt my suggestion, that kind

25   of makes it easier to deal with the question.

2008

1          THE COURT:  Your argument is well, those things are

2    part of a larger -- the components of a larger system.  But on

3    these facts, that larger system was impossible to use or

4    operate while the defendants had them.

5          Right?

6          MR. D'ALESSANDRO:  Correct.

7          THE COURT:  Mr. Shargel is suggesting if they come

8    back -- we are really violating my rule about not dealing with

9    a note until we get it.  But Mr. Shargel is suggesting if they

10   come back for clarification I ought to make it clear to them

11   that whatever effect using or operating the system might have

12   on -- I don't mean to put words in your mouth, but I think the

13   idea is, whatever effect using or operating the device might

14   have on the question of actual or constructive possession, it

15   would only be using or operating a device that includes the

16   N-74.

17         MR. SOLANO:  72.

18         THE COURT:  Sorry.  We have been -- I may as well

19   tell you this.  I am getting hung up on it.  We have been

20   referring, partly because of the accent of the witnesses, we

21   have been referring to that equipment as the Bun Vac 6000 in

22   chambers, from Wallace and Gromit.  I can't get --

23         MR. SHARGEL:  Is that from Our Man in Havana?

24         THE COURT:  It's a Wallace and Gromit movie

25   involving a machine that sucks bunch these out of the ground.

2009

1          It was the accent of the witness together with the

2    name of the equipment, that's why I keep getting hung up on

3    it.  I know it's not the Bun Vac 6000.

4          But Mr. Shargel is suggesting that the jury ought to

5    be told that it is that -- that base is part of the equipment.

6    Right?

7          MR. SHARGEL:  Yes.

8          And I think they should be told that, at all events,

9    note or not.  Again, I go back to the proposition, that given

10   the two notes and the head shaking of juror number eleven, to

11   permit the possibility of a conviction on an

12   erroneous understanding of what offends the statute, while it

13   still can be corrected, I think not only invites but requires

14   correction.

15         That's my request.

16         THE COURT:  What do you want me to tell them?

17         MR. SHARGEL:  I would like you to tell them that you

18   have asked two questions about the equipment, and you can

19   refer to the two questions.  I want to make clear that the

20   equipment that is alleged to offend the statute, and basically

21   put this in the -- is in the record is the N-72 or the base,

22   and that the base was inoperable at the time of the

23   possession, again according to the testimony of Mr. Myers.

24         THE COURT:  Putting aside whether or not we bring

25   them back in to tell them that, is there anything incorrect

2010

1    about what was just said?

2         MR. D'ALESSANDRO:  It's the -- the base is part of

3    the system.  It's not just the base.  It's the computers and

4    the software and the base.

5         THE COURT:  It's a necessary part.  It was

6    inoperable.

7         MR. D'ALESSANDRO:  I don't have a problem with what

8    Your Honor's suggestion was, is to alert the jury, to the

9    extent they even need it, that the equipment includes the

10   base.

11        Mr. Shargel's suggestion is to limit it just solely

12   to the base.

13        I don't have a problem telling the jury you have to

14   consider the base in -- that it includes the base.

15        THE COURT:  Why don't I bring them back in and tell

16   them, because we have been dwelling on this without clarifying

17   it, that the equipment that's alleged to offend the statute

18   necessarily includes that N-72, the base, which both sides

19   agree was inoperable at the time of possession.

20        MR. FODEMAN:  Just to clarify, N-74 is the DEA

21   exhibit number.  I think the government exhibit number for the

22   trial was 614.

23        MR. SHARGEL:  I think that's right.

24        THE COURT:  Of the base?

25        MR. FODEMAN:  Yes, exactly.

2011

1          THE COURT:  What is it?

2          MR. FODEMAN:  614.

3          THE COURT:  The base, 614?  That's the exhibit

4    number you mean?

5          MR. FODEMAN:  Yes, exactly.

6          THE COURT:  I see.

7          All right.  Bring them back in, please.

8          (Jury present.)

9          THE COURT:  Please be seated.

10         You might be wondering why we brought you back in

11   since we don't have any unanswered notes pending, I think.  I

12   think we sent in the exhibits and the testimony.

13         I wanted to make something clear to you because on a

14   couple of occasions we have been focusing on the concept of

15   dominion and control and actual and constructive possession in

16   connection with this Count Thirteen.

17         It occurred to me after consulting with counsel that

18   I ought to make clear to you, as a factual matter, that the

19   equipment that's alleged to offend the statute in Count

20   Thirteen necessarily includes that base, that Government

21   Exhibit 614, that big clunky thing that I was afraid was going

22   to scratch the witness stand, which everyone agrees was

23   inoperable at the time of the defendants' possession of it.

24         Since one of your notes explicitly referred to the

25   effect of operating a device, I thought it important to just

2012

1   remind you that the offending equipment here necessarily

2   includes this inoperative component of that base.

3           Okay?  Okay or not, you go back, please, and resume

4   your deliberations.

5           Thank you, ladies and gentlemen.

6           (The following occurred in the absence of the jury.)

7           MR. SHARGEL:  At least we turned the head shake into

8   a nod, the same juror.

9           THE COURT:  Oh, okay.

10          (Recess taken.)

11          (Continued on next page.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

GR      OCR      CM      CRR      CSR

2013

1           (The following occurred in the absence of the jury

2   at 2:15 pm.)

3           THE COURT:  Please be seated, everyone.

4           Ilene, this is alternate one, is that right?

5           THE CLERK:  Yes, Your Honor.

6           THE COURT:  Mr. Boyd, I wanted to speak to you,

7   because Mr. Boyd -- no.  Mr. Jenab, who works for Loreal Boyd,

8   is running out of days on which he can be on jury duty and

9   still get paid.  He's an alternate.

10          I would like to -- I think it's unlikely that we

11  will need them, but I would like to send him back to work but

12  not excuse him.  Tell him not to discuss the case.  In the

13  unlikely event we will need him and the other alternate, we

14  will call him back.

15          Does anybody want to be heard?

16          MR. D'ALESSANDRO:  No objection, Your Honor.

17          MR. SOLANO:  One second, Your Honor.

18          (Pause.)

19          THE COURT:  It strikes me that the only down side

20  would be we might have -- might, if for some reason we were to

21  lose a juror and not have consent to proceed with eleven, I

22  could substitute the alternate.  The down side would be we'd

23  have to wait whatever period of time it would take for him to

24  return to the courthouse.

25          In the meantime, I will strictly order him, and I

2014

1   would do the same thing with the other alternate, not to

2   discuss the case, that they are still sworn jurors in the

3   case.

4           Mr. Solano, Mr. Shargel?

5           MR. SHARGEL:  The only thought that I have is that

6   it is unlikely in the extreme that I would consent.  I know

7   what the rule is with respect to eleven jurors, whether I

8   consent or not.  But it is unlikely in the extreme that I

9   would consent to replace one of the jurors with an alternate

10  at this point.

11          THE COURT:  That's a different issue.

12          MR. SHARGEL:  True.

13          THE COURT:  If I were to overrule that and I were to

14  replace him.

15          The question is whether you want to be heard on the

16  difference between the alternate biding his time back at work

17  as opposed to sitting in a room down the hall.

18          MR. SOLANO:  I have no objection to whatever Your

19  Honor proposes.

20          MR. SHARGEL:  I have no problem with that either.

21          THE COURT:  All right.  I will speak to them both.

22  I will go with Ilene.  I will speak to them both.  I will tell

23  them they can go back about their business.  To the extent

24  they are excused, I hope they are excused in absentia because

25  we have a verdict from all 12 jurors.  But until they hear

2015

1    from Ilene that they are excused, they can't discuss the case

2    with anyone, they need to be available to us in case we call

3    them back.

4            We will have the argument you anticipate having when

5    we are there.  All right?

6            MR. SHARGEL:  Very well.

7            THE COURT:  Thank you.

8            There is a note:

9            Request break after lunch.

10           They got it.

11           It is jury note 13.

12           (So marked.)

13           Thank you.

14           (Recess taken.)

15           (Continued on next page.)

16

17

18

19

20

21

22

23

24

25

GR      OCR      CM      CRR      CSR

2016

1          (The following occurred in the absence of the jury

2     at 4:25 pm.)

3          THE COURT:  Okay.  It's 4:25.  Since we last

4     convened, we got jury note 14, which asked for Simels

5     testimony regarding GEO facility.  That was a while ago.  It

6     has been complied with, by agreement.

7          Now we've got jury note 15, which has a list of

8     questions for us to answer.  It's 4:25.  We have a woman in

9     there who has to go.

10          What I propose we do is, I will go in, excuse them,

11    tell them good night, don't discuss the case.  I will tell

12    them -- I will just tell them we will respond to this note

13    first thing in the morning, and send them on their way.

14          Why don't we -- I am going to jot down a few

15    proposed answers to this.  Why don't we reconvene maybe twenty

16    to five, fifteen minutes from now, about this note.

17          All right?

18          MR. SHARGEL:  That's fine.

19          MR. D'ALESSANDRO:  Very well, Judge.

20          (Recess taken.)

21          (After recess.)

22          (The following occurred in the absence of the jury.)

23          THE COURT:  Please be seated.

24          Okay.  I will give my preliminary thoughts on how we

25    should answer these questions, from jury note 15.

2017

1          Question one:  Are there instances where it is legal
2     to pay for information?
3          Yes.
4          Question two:  Are there examples that may be
5     pertinent to this case?
6          I would say, left to my own devices, that it is
7     reasonable to pay an investigator to gather information about
8     potential witnesses and it is reasonable to pay others with
9     knowledge relevant to the defense, as long as -- and I don't
10    have all the iteration in front of me -- but as long
11    as -- where is the charge?
12              MR. SHARGEL:  It's not to influence their testimony.
13              THE COURT:  It's not to influence their testimony.
14          The one thing I wanted to address to you, because it
15    looks to me, reading tea leaves, it looks like they are
16    working backwards.  This is to the bribery count and we ought
17    to say, as long as it is not to influence testimony or as part
18    of an attempt to -- list the three things that the witness
19    tampering statute forbids.
20          I imagine the defendants might say well, that's not
21    paying for information.  But I am up in the air on that.
22              MR. SHARGEL:  My position is, that goes beyond the
23    question.
24              THE COURT:  I understand that's your position.
25          Let me tell you the rest of the answers.

GR      OCR      CM      CRR      CSR

2018

1          As long as you interrupted me, it may be what we
2   will say is, explicitly root my answer in that bribery count,
3   just so we are clear, that's what we are talking about.  We
4   can come back to that.

5          If yes, what is a reasonable amount to pay?

6          My inclination there would be, you can consider the
7   amount involved in determining the purpose.  But as long as it
8   is not for the improper purpose, it's really not relevant.

9          That's what I think is the right answer.

10         Number four, or --

11         MR. SHARGEL:  Roman numeral II.

12         THE COURT:  Roman II, how is information from an
13   expert witness different from information from a non-expert
14   witness?

15         It is different in that non-experts testify to
16   facts.  Experts testify not to facts.  They don't have
17   relevant facts but they testify to opinions.  Here you heard
18   testimony that was intended to help you decide the facts of
19   the case.  Specifically, it was intended to assist you in
20   determining whether Simels's conduct constituted lawful
21   bona fide legal representation.

22         I want to add, even though it only asks about
23   what -- I want to balance this.  It only asks about how an
24   expert is different.  But I want to add, that it is the same,
25   and that it is still the jury's job to determine the facts of

2019

1   the case and they are free to give an expert's opinion

2   whatever weight the jury believes it deserves, just as is true

3   with a non-expert.

4           Roman III, what would represent a character witness

5   against David Clarke?

6           I propose I answer that by saying, assuming David

7   Clarke were to testify in a trial, character witness would be

8   someone who, for example, would testify regarding his

9   reputation for being truthful.

10          MR. SHARGEL:  And bias and hostility.

11          THE COURT:  Or bias -- reputation for being truthful

12   or biased.  Hostility is a form of bias.

13          MR. SHARGEL:  On that, I don't think it is limited

14   to whether he testified.  Under Rule 806, if he's a declarant,

15   whether a non-hearsay declarant under 801(d)(2)(E) or

16   otherwise, hearsay declarant, he can be impeached in the exact

17   same way.

18          THE COURT:  Why don't I just say, assuming his

19   testimony or statements were used at a trial, character

20   witness would be someone who testifies regarding his

21   reputation for being truthful or being biased.

22          MR. SHARGEL:  Could I visit one issue?

23          THE COURT:  Sure.  All of can you visit any of the

24   issues.

25          MR. SHARGEL:  I have read Roman II in the same way

2020

1   that you did until we analyzed it further.

2           Here is what I suggest.  This is in the context, as

3   Your Honor I think correctly put it, is in the context of the

4   bribery issue and they are -- it does seem that they are

5   working backwards.

6           If you take that as a given and recognize the

7   questions that are being asked in Roman I, then I read this in

8   the following way.  Remember, the first thing they asked in

9   connection with the expert was Mr. Ricco's address, not

10  meaning his literal address, but his address to the jury.

11  This is how I read it.  I gather that the writer means, how is

12  information -- because this is information, it's not

13  testimony -- from an expert witness different than information

14  from a, quote, non-expert, end quote, witness.

15          Indulge me.  I think that what the intention of this

16  note, which would only make sense in the context of Roman I,

17  is that they are saying getting expert -- getting information

18  from an investigator or a licensed investigator as opposed to

19  a person, and that this use of the word expert, if you think

20  about it for a minute, the use of the word expert is not about

21  Mr. Ricco or expert testimony.  It is about a licensed person,

22  a professional provider of information, if you will, as

23  opposed to a lay provider of information.

24          I think if you take a moment, Your Honor, this is

25  not a tortured reading.  To me it is what makes sense in the

2021

1   light of the context.

2          THE COURT:  Let me step back a little bit in light

3   of your comment.  What I have to say pertains both to the

4   content of the instruction I had proposed with regard to when

5   it is reasonable to pay others and to this.

6          I think as a general matter it is very important

7   never to play kind of gotcha with the jury, twenty questions,

8   don't ask the right questions, you lose.

9          I agree with you, to the extent they haven't asked

10  for it, and this is what you mentioned in regard to legal to

11  pay for information, so they are not talking about tampering,

12  my general approach is to answer the question as asked but to

13  say to them, to the extent your question seeks to address X,

14  and in this latter instance X is the difference between an

15  investigator and some other source, a non-investigator, my

16  preference is to answer the question but tell them to the

17  extent you are looking for something else -- in the first

18  instance about the witness tampering statute -- I've got stuff

19  to tell you if you want to hear that.

20         And here, with regard to your construction, propose

21  that to them, tell them we don't mean to deprive them of that.

22  If that's what they mean, they need to be more explicit.

23         Understood?

24         MR. SHARGEL:  Yes.  I think that's fair.

25         THE COURT:  All right.  Does anybody else have any

GR      OCR      CM      CRR      CSR

1   comments about any of these?

2           MR. D'ALESSANDRO:  Nothing from the government.

3           THE COURT:  All right.

4           MR. SOLANO:  Nothing, Your Honor.

5           THE COURT:  All right.  With any luck I will

6   remember what I said in the morning --

7           MR. D'ALESSANDRO:  Mr. Rudolph --

8           THE COURT:  -- and repeat it.

9           MR. SHARGEL:  May I just raise one thing?  I was

10  thinking, going back to Roman I and the first "if yes, are

11  there any examples that may be pertinent to this case?"

12          If they want something that's grounded in the facts

13  of the case, I think that it's clear from the testimony of

14  Mr. Simels and I think with all the evidence in the case that

15  Farrah Singh was never going to be a witness.  So to pay a

16  person, if they want specific examples, Farrah Singh was a

17  source of information.  She didn't qualify as a witness and I

18  don't think any -- anyone discussed her as a witness.

19          Yes, there was one reference, I'll be frank to say,

20  where they said well -- paraphrasing -- because they say she

21  is a stripper, works in a strip club, she will say anything.

22          But I don't think there was ever -- nothing in this

23  record to suggest she was going to be called to the stand.

24  That wasn't -- the whole take was to just get information

25  about Alicia and David Persaud and the relationship.

2023

1          THE COURT:  What do you want me to say?

2          MR. SHARGEL:  That that's a specific example.  That

3   I think would satisfy the question.  For example, the -- at

4   least the defense contends that they were paying Farrah Singh

5   for information and that's perfectly proper.

6          THE COURT:  Yes?

7          MR. FODEMAN:  Two points on that.

8          First of all, I think that's -- it certainly would

9   have to be couched in terms of, that's the defense's

10  contention, because that's clearly not our contention.

11  Mr. Shargel is right.  We are relying on that section of the

12  transcript where she says she will say anything.  That's

13  number one.

14         Number two is, if you are going to say that, then I

15  think that it's appropriate to remind the jury that that's, as

16  far as I understand the defense, the only witness that -- the

17  only person that that's what they are claiming.  They are not

18  claiming, for example, that they were just trying to get

19  information from Ms. Camacho.  Their claim there is that they

20  weren't going to pay her anything.

21         So if you want to limit it to, in this case the

22  defense contends that they were only going to pay for

23  information with respect to Farrah Singh, that's fine.  They

24  don't contend that with respect to any of the other

25  individuals.

2024

1          MR. SHARGEL:  We do actually.

2          MR. FODEMAN:  Maybe I am missing --

3          MR. SHARGEL:  With respect to Selwyn Vaughn, the

4    $1,000 was not to influence testimony or position.  But I

5    don't think you have to do that.  I am not suggesting that.

6          If you want to pick Selwyn Vaughn, you can pick

7    Selwyn Vaughn.  I think Farrah is a perfect example.

8          As -- the instruction that an example, to answer

9    your question, an example that is pertinent to the case

10   is -- deals with Farrah Singh.  The defense contends that any

11   payment to her was for the purpose of obtaining information.

12   If you accept that, that's perfectly legal.  The government

13   contends otherwise.  Put that before the jury.

14         THE COURT:  I think you said that already.

15         MR. SHARGEL:  Now that I am saying it, I don't like

16   it.

17         THE COURT:  It spares me the need to reject your

18   request.

19         MR. SHARGEL:  Yes.

20         THE COURT:  All right.  See you tomorrow.

21         MR. SHARGEL:  See you tomorrow.

22         MR. D'ALESSANDRO:  Judge, what time?

23         THE COURT:  9:30.

24         Oh, as I let them -- cut them loose, I asked them

25   whether anybody had a problem sitting Friday, knowing that at

2025

1    least one of them had a problem sitting Friday.  Two of them

2    said they had a problem sitting Friday.  I told them we'd give

3    them a clear answer in the morning, but I haven't yet asked

4    whether anybody has a problem sitting Monday because remember,

5    based on the representations that I got from both of you, I

6    told them we'd be done by Friday.

7              MR. SHARGEL:  What is Monday's date?  The 17th?

8              THE COURT:  Yes.

9              Let's hope we don't have a problem with people

10   sitting Monday.  I am going to tell them in the morning.  I

11   told them they wouldn't have to sit Fridays.  I am not about

12   to excuse a couple of jurors who are deliberating because they

13   can't come sit on a day when I told them they wouldn't have to

14   sit.

15             MR. SHARGEL:  I agree.

16             MR. SOLANO:  Yes.

17             THE COURT:  Good night.

18             MR. SHARGEL:  Good night, Judge.

19             MR. D'ALESSANDRO:  Good night.

20             MR. SOLANO:  Good night.

21             (Recess taken until 9:30, August 13, 2009.)

22

23

24

25

2026

                           I N D E X

C O U R T    E X H I B I T S:

 jury note eight                                    1979

 jury note nine                                     1979

 Court Exhibit 5                                    1991

 note 11                                            1994

 note 10                                            1994

 jury note 12                                       2001

 Court Exhibit 6                                    2006

 jury note 13                                       2015

 jury note 14                                       2016

 jury note 15                                       2016

## $

**$1,000** [1] - 2024:4

## 0

**08-CR-640** [1] - 1978:3

## 1

**10** [2] - 1994:17, 2026:9
**104** [1] - 1987:10
**10:20** [1] - 1979:2
**11** [2] - 1994:13, 2026:8
**11201** [1] - 1978:23
**11:28** [1] - 1983:20
**11:30** [1] - 1994:2
**12** [4] - 1978:6, 2001:9, 2014:25, 2026:10
**13** [5] - 1994:17, 1998:12, 2015:11, 2025:21, 2026:12
**13:36** [2] - 1980:23, 1981:1
**13:47** [1] - 1981:25
**13:48** [1] - 1986:6
**13:54** [3] - 1982:3, 1982:10, 1985:13
**14** [2] - 2016:4, 2026:13
**14th** [1] - 1984:14
**15** [3] - 2016:7, 2016:25, 2026:14
**17th** [1] - 2025:7
**1979** [2] - 2026:5, 2026:6
**1991** [1] - 2026:7
**1994** [2] - 2026:8, 2026:9

## 2

**2001** [1] - 2026:10
**2006** [1] - 2026:11
**2009** [2] - 1978:6, 2025:21
**2015** [1] - 2026:12
**2016** [2] - 2026:13, 2026:14
**20th** [2] - 1980:22, 1985:4
**225** [1] - 1978:22
**23rd** [3] - 1983:15, 1984:1, 1984:22
**2:15** [1] - 2013:2

## 4

**4:25** [3] - 2016:2, 2016:3, 2016:8

## 5

**5** [2] - 1991:20, 2026:7

## 6

**6** [2] - 2006:24, 2026:11
**6000** [2] - 2008:21, 2009:3
**613-2538** [1] - 1978:23
**614** [4] - 2010:22, 2011:2, 2011:3, 2011:21

## 7

**718** [1] - 1978:23
**72** [1] - 2008:17
**749** [1] - 1987:10

## 8

**801(d)(2)(E** [1] - 2019:15
**804** [5] - 1979:23, 1979:24, 1980:15, 1991:18
**806** [1] - 2019:14
**844** [1] - 1987:9

## 9

**916** [1] - 1987:9
**9:08** [4] - 1983:18, 1984:1, 1984:22
**9:09** [1] - 1983:23
**9:15** [1] - 1984:3
**9:30** [3] - 1978:6, 2024:23, 2025:21

## A

**a.m** [1] - 1978:6
**able** [2] - 2002:12, 2003:5
**absence** [8] - 1979:1, 1993:8, 1994:1, 1999:15, 2012:6, 2013:1, 2016:1, 2016:22
**absentia** [1] - 2014:24
**accent** [2] - 2008:20, 2009:1
**accept** [1] - 2024:12
**accepting** [1] - 2007:11
**access** [1] - 2004:11
**accessing** [2] - 2002:19, 2002:21
**according** [2] - 2005:7, 2009:23
**accountable** [1] - 1992:12
**actual** [28] - 1987:19, 1989:5, 1992:8, 1992:13, 1992:23, 1992:24, 1994:18, 1995:4, 1995:21, 1997:15, 1997:24, 1998:13, 1999:18, 1999:23, 2000:1, 2000:9, 2000:10, 2000:24, 2002:15, 2003:19, 2004:14, 2004:3, 2004:7, 2007:20, 2008:14, 2011:15
**adapting** [1] - 2000:17
**add** [3] - 2002:4, 2018:22, 2018:24
**addition** [1] - 1992:14
**additional** [2] - 1994:11, 1998:2

**address** [5] - 2017:14, 2020:9, 2020:10, 2021:13
**addressed** [1] - 1999:24
**adopt** [1] - 2007:24
**adversary** [1] - 2006:4
**Advils** [2] - 1979:10, 1979:11
**afforded** [1] - 2004:12
**afraid** [1] - 2011:21
**ago** [1] - 2016:5
**agree** [7] - 1980:25, 1985:12, 1997:7, 2001:20, 2010:19, 2021:9, 2025:15
**agreed** [2] - 1979:16, 1979:22
**agreement** [3] - 1984:24, 2001:13, 2016:6
**agrees** [2] - 1981:21, 2011:22
**air** [1] - 2017:21
**alert** [1] - 2010:8
**Alicia** [1] - 2022:25
**alleged** [3] - 2009:20, 2010:17, 2011:19
**allowed** [1] - 2000:23
**alternate** [7] - 2013:4, 2013:9, 2013:13, 2013:22, 2014:1, 2014:9, 2014:16
**alternates** [2] - 1990:25, 1991:2
**AMERICA** [1] - 1978:3
**amount** [6] - 1994:18, 1996:20, 1997:24, 1998:13, 2018:5, 2018:7
**amounts** [1] - 1995:15
**analogy** [1] - 2000:1
**analyzed** [1] - 2020:1
**Andrew** [2] - 2001:15, 2003:17
**answer** [20] - 1980:9, 1990:14, 1994:25, 1995:13, 1995:15, 1997:13, 1997:25, 1998:4, 1998:14, 2006:7, 2016:8, 2016:25, 2018:2, 2018:9, 2019:6, 2021:12, 2021:16, 2024:8, 2025:3
**answered** [1] - 1999:7
**answers** [2] - 2016:15, 2017:25
**antenna** [5] - 2006:13, 2006:14, 2006:16, 2006:17, 2006:19
**anticipate** [1] - 2015:4
**APPEARANCES** [1] - 1978:11
**approach** [1] - 2021:12
**appropriate** [1] - 2023:15
**arguing** [1] - 1980:15
**argument** [6] - 1980:8, 2001:20, 2007:7, 2007:11, 2008:1, 2015:4
**ARIENNE** [1] - 1978:6
**Arienne** [1] - 1978:20
**arrive** [1] - 1998:4
**arriving** [1] - 1994:10
**aside** [2] - 2007:7, 2009:24
**assist** [1] - 2018:19
**Assistant** [1] - 1978:15
**assume** [1] - 2007:16
**assuming** [3] - 2006:18, 2019:6, 2019:18

**attempt** [1] - 2017:18
**Attorney** [1] - 1978:13
**Attorneys** [1] - 1978:15
**attributes** [1] - 1992:10
**August** [3] - 1978:6, 1984:14, 2025:21
**authority** [13] - 1986:4, 1986:9, 1988:2, 1988:14, 1988:23, 1989:3, 1989:4, 1989:6, 1989:9, 1989:10, 1989:12, 1995:19
**available** [1] - 2015:2
**avert** [1] - 2005:25

## B

**backwards** [2] - 2017:16, 2020:5
**bad** [1] - 1996:6
**balance** [1] - 2018:23
**bargain** [1] - 1986:12
**bargaining** [1] - 1982:25
**base** [29] - 1979:13, 1980:1, 1982:7, 1983:21, 1983:22, 1985:15, 1985:24, 1990:7, 2005:14, 2005:15, 2005:21, 2005:22, 2006:9, 2009:5, 2009:21, 2009:22, 2010:2, 2010:3, 2010:4, 2010:10, 2010:12, 2010:14, 2010:18, 2010:24, 2011:3, 2011:20, 2012:2
**based** [4] - 1987:11, 1992:25, 1999:6, 2025:5
**basic** [1] - 1981:12
**basis** [1] - 1989:19, 2006:1
**BEFORE** [1] - 1978:9
**beginning** [3] - 1983:17, 1983:18, 1984:1
**begins** [2] - 1980:22, 1981:3
**believes** [1] - 2019:2
**below** [1] - 1982:6
**BENTON** [1] - 1978:13
**BERG** [1] - 1978:20
**best** [1] - 1982:12
**between** [4] - 1981:11, 1989:25, 2014:16, 2021:14
**beyond** [1] - 2017:22
**bias** [3] - 2019:10, 2019:11, 2019:12
**biased** [2] - 2019:12, 2019:21
**biding** [1] - 2014:16
**big** [1] - 2011:21
**bit** [1] - 2021:2
**BlackBerry** [1] - 1995:21
**bona** [1] - 2018:21
**Books** [2] - 2007:17, 2007:19
**borrow** [2] - 1995:20, 2001:24
**borrows** [2] - 2002:10, 2002:13
**bottom** [1] - 1985:9
**bought** [1] - 2006:14
**Boyd** [3] - 2013:6, 2013:7
**break** [4] - 1989:3, 1995:17, 2003:1, 2015:9
**bribery** [3] - 2017:16, 2018:2, 2020:4
**bring** [7] - 1990:21, 1991:4, 1997:10,

1998:6, 2009:24, 2010:15, 2011:7
**bringing** [2] - 1990:25, 1991:9
**Brooklyn** [2] - 1978:5, 1978:23
**brought** [3] - 1991:22, 2003:1, 2011:10
**BROWNELL** [1] - 1978:15
**building** [1] - 1989:2
**Bun** [2] - 2008:21, 2009:3
**bunch** [1] - 2008:25
**burglar** [1] - 1995:17
**business** [1] - 2014:23
**BY** [1] - 1978:14

## C

**cable** [1] - 2006:15
**Cadman** [1] - 1978:22
**calculus** [2] - 1998:3
**Camacho** [1] - 2023:19
**CAMPBELL** [1] - 1978:13
**car** [2] - 2001:22
**care** [1] - 2002:9
**case** [19] - 1987:10, 1988:5, 1989:18, 2005:7, 2007:23, 2013:12, 2014:2, 2014:3, 2015:1, 2015:2, 2016:11, 2017:5, 2018:19, 2019:1, 2022:11, 2022:13, 2022:14, 2023:21, 2024:9
**cases** [4] - 1987:3, 1987:6, 1987:8, 1990:22
**CAT** [1] - 1978:25
**cede** [3] - 2000:11, 2000:12
**certainly** [4] - 1983:25, 1998:14, 2004:18, 2023:8
**chambers** [1] - 2008:22
**change** [1] - 1997:5
**character** [3] - 2019:4, 2019:7, 2019:19
**charge** [8] - 1987:4, 1991:25, 1992:14, 1994:17, 1995:22, 1998:12, 2017:11
**check** [1] - 2000:2
**checking** [1] - 2000:3
**child** [2] - 2002:11, 2002:16
**Circuit** [2] - 1987:8, 1989:17
**circumstances** [1] - 2002:13
**cites** [1] - 1987:10
**claim** [2] - 1982:20, 2023:19
**claiming** [2] - 2023:17, 2023:18
**clarification** [3] - 1990:15, 1998:11, 2008:10
**clarify** [1] - 2010:20
**clarifying** [3] - 1991:24, 1999:8, 2010:16
**Clarke** [2] - 2019:5, 2019:7
**clear** [11] - 1980:1, 2005:2, 2005:18, 2008:10, 2009:19, 2011:13, 2011:18, 2018:3, 2022:13, 2025:3
**clearly** [2] - 1989:9, 2023:10
**clerk** [4] - 1996:8, 1996:10, 1996:21, 1996:23

**CLERK** [5] - 1997:11, 1998:7, 2001:17, 2001:19, 2013:5
**clerks** [1] - 1994:25
**closes** [1] - 1983:20
**club** [1] - 2022:21
**clunky** [1] - 2011:21
**cocaine** [1] - 2000:8
**code** [1] - 2003:1
**comment** [1] - 2021:3
**comments** [1] - 2022:1
**complied** [2] - 1994:12, 2016:6
**component** [1] - 2012:2
**components** [4] - 2006:10, 2007:12, 2008:2
**computer** [19] - 1985:24, 1996:15, 1996:17, 1996:20, 2000:3, 2000:19, 2000:23, 2002:1, 2002:2, 2002:10, 2002:13, 2003:12, 2003:16, 2004:11, 2004:16, 2004:16, 2005:1, 2005:3
**computers** [4] - 2005:16, 2006:8, 2006:9, 2010:3
**conceivable** [1] - 2007:13
**concept** [2] - 1995:8, 2011:14
**concerns** [1] - 1999:8
**conclude** [1] - 1989:18
**conclusion** [1] - 1998:4
**conduct** [1] - 2018:20
**conflating** [1] - 2004:2
**connection** [2] - 2011:16, 2020:9
**consent** [4] - 2013:21, 2014:6, 2014:8, 2014:9
**consider** [4] - 1988:1, 1988:23, 2010:14, 2018:6
**considered** [1] - 1995:2, 1998:23
**constitute** [1] - 1988:12
**constituted** [1] - 2018:20
**constitutes** [1] - 2004:4
**construction** [1] - 2021:20
**constructive** [17] - 1988:5, 1988:12, 1990:3, 1990:11, 1992:11, 1992:22, 1995:3, 1995:5, 1998:18, 1998:24, 1999:18, 2000:24, 2004:3, 2004:7, 2008:14, 2011:15
**constructively** [4] - 1990:1, 1990:2, 1995:11, 2002:19
**construed** [1] - 1989:8
**consulting** [2] - 1999:12, 2011:17
**contain** [1] - 2006:5
**contend** [1] - 2023:24
**contends** [4] - 2023:4, 2023:22, 2024:10, 2024:13
**content** [1] - 2021:4
**contention** [2] - 2023:10
**context** [5] - 2001:25, 2020:2, 2020:3, 2020:16, 2021:1
**continue** [1] - 1981:14, 1981:23, 1982:13, 1982:25, 1984:4
**Continued** [3] - 1993:15, 2012:11, 2015:15

**continues** [1] - 1984:19
**continuing** [1] - 1983:19
**contraband** [1] - 2007:20
**control** [30] - 1979:7, 1987:2, 1987:16, 1987:19, 1987:20, 1988:8, 1988:9, 1989:21, 1990:12, 1991:23, 1992:10, 1992:23, 1992:24, 1994:18, 1995:4, 1995:7, 1995:25, 1996:12, 1996:19, 1996:24, 1997:15, 1997:17, 1997:24, 1998:13, 1998:20, 2001:4, 2002:20, 2007:20, 2011:15
**convened** [1] - 2016:4
**conversation** [9] - 1980:11, 1980:12, 1982:2, 1982:3, 1982:13, 1984:13, 2005:3, 2005:4, 2006:19
**conversations** [3] - 1982:22, 2006:6, 2007:17
**convey** [1] - 1987:7
**convict** [3] - 2002:8, 2002:23, 2003:5
**conviction** [3] - 2005:17, 2005:18, 2009:11
**copy** [4] - 1986:20, 1992:15, 1994:16, 2001:16
**correct** [8] - 1979:25, 1985:7, 1985:10, 1994:20, 1995:13, 1997:24, 1997:25, 2008:6
**corrected** [1] - 2009:13
**correction** [1] - 2009:14
**correctly** [1] - 2020:3
**couched** [1] - 2023:9
**counsel** [4] - 1992:5, 1993:2, 1999:12, 2011:17
**Count** [7] - 1979:7, 1987:2, 1990:7, 1991:23, 1998:23, 2011:16, 2011:19
**count** [3] - 1992:20, 2017:16, 2018:2
**country** [2] - 1986:4, 1986:9
**counts** [3] - 1992:18, 2007:21, 2007:22
**couple** [3] - 1987:7, 2011:14, 2025:12
**Court** [5] - 1978:22, 1991:19, 2006:24, 2026:7, 2026:11
**court** [1] - 1989:17
**COURT** [127] - 1978:1, 1979:3, 1979:20, 1980:4, 1980:6, 1980:14, 1980:17, 1980:20, 1980:24, 1981:7, 1981:15, 1981:21, 1982:1, 1982:4, 1982:9, 1982:11, 1982:15, 1982:19, 1983:4, 1983:9, 1983:12, 1983:17, 1983:21, 1983:24, 1984:8, 1984:10, 1984:16, 1984:25, 1985:5, 1985:8, 1985:11, 1985:17, 1985:19, 1985:21, 1986:1, 1986:5, 1986:7, 1986:11, 1986:18, 1986:25, 1988:4, 1988:17, 1989:6, 1989:13, 1989:16, 1990:10, 1990:18, 1990:21, 1991:9, 1991:12, 1991:19, 1991:22, 1993:9, 1994:3, 1994:5, 1994:7, 1994:24, 1996:2, 1996:5, 1997:1, 1997:6, 1997:8, 1997:10, 1997:12, 1997:20, 1998:5, 1998:9, 1999:16, 1999:22, 2000:15,

2001:9, 2001:12, 2001:15, 2001:18, 2001:20, 2002:5, 2002:24, 2003:10, 2004:6, 2004:16, 2004:21, 2005:12, 2006:4, 2006:23, 2007:10, 2008:1, 2008:7, 2008:18, 2008:24, 2009:16, 2009:24, 2010:5, 2010:15, 2010:24, 2011:1, 2011:3, 2011:6, 2011:9, 2012:9, 2013:3, 2013:6, 2013:19, 2014:11, 2014:13, 2014:21, 2015:7, 2016:3, 2016:23, 2017:13, 2017:24, 2018:12, 2019:11, 2019:18, 2019:23, 2021:2, 2021:25, 2022:3, 2022:5, 2022:8, 2023:1, 2023:6, 2024:14, 2024:17, 2024:20, 2024:23, 2025:8, 2025:17
**courthouse** [1] - 2013:24
**Courthouse** [1] - 1978:4
**crack** [1] - 1991:24
**craft** [1] - 1987:23
**crime** [1] - 2003:6
**cruising** [1] - 1987:11
**cut** [1] - 2024:24

# D

**D'ALESSANDRO** [33] - 1978:14, 1984:13, 1984:17, 1988:16, 1989:1, 1989:7, 1989:15, 1990:9, 1990:17, 1990:20, 1991:6, 1993:13, 1994:21, 1995:14, 1996:18, 1997:9, 2000:21, 2002:4, 2002:6, 2003:3, 2004:18, 2004:22, 2006:3, 2006:8, 2008:6, 2010:2, 2010:7, 2013:16, 2016:19, 2022:2, 2022:7, 2024:22, 2025:19
**D'Alessandro** [3] - 1988:19, 2001:21, 2007:13
**DANIEL** [1] - 1978:15
**date** [1] - 2025:7
**David** [3] - 2019:5, 2019:6, 2022:25
**days** [1] - 2013:8
**DEA** [1] - 2010:20
**deal** [3] - 1979:21, 1990:23, 2007:25
**dealing** [1] - 2008:8
**deals** [1] - 2024:10
**decades** [1] - 2000:18
**decide** [1] - 2018:18
**declarant** [3] - 2019:14, 2019:15, 2019:16
**defendant** [2] - 1987:15, 1987:17
**Defendants** [2] - 1978:6, 1978:17
**defendants** [2] - 2008:4, 2017:20
**defendants'** [1] - 2011:23
**defense** [5] - 2017:9, 2023:4, 2023:16, 2023:22, 2024:10
**defense's** [1] - 2023:9
**define** [3] - 1979:7, 1987:1, 1991:23
**definition** [1] - 2002:10
**deliberating** [2] - 1993:9, 2025:12
**deliberations** [3] - 1993:7, 1999:14,

2012:4
**deprive** [1] - 2021:21
**described** [1] - 1985:6
**deserted** [1] - 1981:4
**deserves** [1] - 2019:2
**design** [2] - 2003:7, 2003:8
**designed** [1] - 2007:4
**detect** [1] - 1984:7
**determine** [1] - 2018:25
**determining** [3] - 1995:3, 2018:7, 2018:20
**device** [16] - 1994:18, 1995:24, 1996:9, 1996:11, 1996:25, 1997:24, 1998:13, 1998:22, 2006:20, 2007:8, 2007:15, 2008:13, 2008:15, 2011:25
**devices** [1] - 2017:6
**difference** [3] - 1989:25, 2014:16, 2021:14
**different** [9] - 1984:13, 1984:14, 1991:5, 2001:21, 2014:11, 2018:13, 2018:15, 2018:24, 2020:13
**dimension** [1] - 1999:19
**direct** [2] - 1980:10, 2006:22
**direction** [1] - 2003:23
**directly** [1] - 2005:24
**disagree** [1] - 1980:7
**disagreement** [4] - 1980:9, 1985:1, 1985:3, 1986:22
**discuss** [4] - 2013:12, 2014:2, 2015:1, 2016:11
**discussed** [2] - 1994:24, 2022:18
**discussion** [3] - 1980:2, 1981:20, 1983:14
**dispute** [2] - 1979:21, 1981:20
**distinction** [1] - 2006:5
**distinguishes** [1] - 1989:24
**DISTRICT** [3] - 1978:1, 1978:1, 1978:10
**document** [6] - 1979:23, 1980:5, 1980:21, 1980:22, 1981:10
**dominion** [12] - 1979:7, 1987:2, 1987:16, 1988:7, 1988:8, 1989:21, 1990:5, 1991:23, 1992:9, 2001:4, 2002:20, 2011:15
**done** [8] - 1981:1, 1983:16, 1984:2, 1989:16, 2013:19, 2013:22, 2014:17, 2016:14
**down** [8] - 1981:1, 1983:16, 1984:2, 1989:16, 2013:19, 2013:22, 2014:17, 2016:14
**drawn** [1] - 2006:5
**dropped** [1] - 1999:21
**duty** [1] - 2013:8
**dwelling** [1] - 2010:16

# E

**e's** [1] - 1994:13
**easel** [1] - 1994:11
**easier** [2] - 1991:10, 2007:25
**East** [1] - 1978:22

**EASTERN** [1] - 1978:1
**educate** [1] - 1980:6
**effect** [3] - 2008:11, 2008:13, 2011:25
**effectively** [1] - 1987:21
**eight** [4] - 1979:9, 1983:20, 1984:9, 2026:5
**either** [2] - 1999:7, 2014:20
**elements** [1] - 2003:10
**eleven** [3] - 2009:10, 2013:21, 2014:7
**email** [2] - 2000:2, 2002:14
**emphasize** [1] - 1988:11
**end** [9] - 1983:19, 1984:2, 1984:11, 1984:23, 1985:8, 1985:14, 1992:3, 2020:14
**ending** [2] - 1982:15, 1982:16
**ends** [1] - 1981:24
**entire** [4] - 1980:11, 1981:1, 1981:10
**equal** [4] - 1995:4, 1997:16, 1998:15, 1998:25
**equating** [1] - 2003:11
**equation** [1] - 1995:19
**equipment** [36] - 1979:13, 1980:1, 1982:7, 1983:21, 1985:15, 1985:25, 1987:14, 1990:7, 1992:18, 1992:20, 1995:11, 1996:17, 1996:22, 2002:19, 2002:22, 2003:2, 2003:7, 2003:8, 2004:11, 2005:1, 2005:6, 2005:7, 2005:10, 2006:2, 2006:9, 2006:10, 2007:4, 2008:21, 2009:2, 2009:5, 2009:18, 2009:20, 2010:9, 2010:17, 2011:19, 2012:1
**erroneous** [1] - 2009:12
**especially** [1] - 1981:24
**ESQ** [4] - 1978:17, 1978:17, 1978:19, 1978:20
**EVAN** [1] - 1978:17
**event** [1] - 2013:13
**events** [1] - 2009:8
**evidence** [10] - 1989:18, 1995:1, 1995:2, 1997:14, 1998:24, 2003:6, 2005:7, 2005:21, 2005:22, 2022:14
**exact** [1] - 2019:16
**exactly** [3] - 1997:4, 2010:25, 2011:5
**examination** [1] - 2006:22
**example** [10] - 1987:9, 2000:22, 2003:14, 2019:8, 2023:2, 2023:3, 2023:18, 2024:7, 2024:8, 2024:9
**examples** [5] - 1987:16, 1990:22, 2017:4, 2022:11, 2022:16
**exclusion** [4] - 1996:1, 2002:21, 2002:24, 2002:25
**excuse** [4] - 2006:23, 2013:12, 2016:10, 2025:12
**excused** [3] - 2014:24, 2015:1
**exercise** [12] - 1987:16, 1988:7, 1988:9, 1988:13, 1989:21, 1990:12, 1992:23, 1995:7, 1996:12, 1997:17, 1998:20, 2001:4
**exercising** [2] - 1996:19, 2002:20
**exhibit** [3] - 2010:21, 2011:3

**Exhibit** [7] - 1979:24, 1991:17, 1991:20, 2006:24, 2011:21, 2026:7, 2026:11
**exhibits** [1] - 2011:12
**exists** [4] - 1988:6, 1990:11, 1992:22, 1995:6
**expansive** [1] - 1980:12
**expect** [1] - 1996:23
**expert** [11] - 2018:13, 2018:24, 2019:3, 2020:9, 2020:13, 2020:14, 2020:17, 2020:19, 2020:20, 2020:21
**expert's** [1] - 2019:1
**experts** [2] - 2018:15, 2018:16
**explicit** [1] - 2021:22
**explicitly** [2] - 2011:24, 2018:2
**extension** [1] - 2001:2
**extent** [6] - 1996:19, 2010:9, 2014:23, 2021:9, 2021:13, 2021:17
**extreme** [2] - 2014:6, 2014:8

**F**

**F.2d** [2] - 1987:9, 1987:10
**faces** [1] - 1992:25
**facet** [1] - 2000:18
**facility** [2] - 2001:9, 2016:5
**fact** [6] - 1995:18, 1997:1, 2000:7, 2003:21, 2003:22
**factor** [2] - 1995:19, 2002:4
**facts** [8] - 2007:14, 2008:3, 2018:16, 2018:17, 2018:18, 2018:25, 2022:12
**factual** [1] - 2011:18
**fair** [2] - 2007:10, 2021:24
**fairly** [1] - 1996:11
**far** [1] - 2023:16
**Farrah** [4] - 2022:15, 2022:16, 2023:4, 2023:23, 2024:7, 2024:10
**federal** [2] - 1986:3, 1986:9
**Federal** [1] - 1987:12
**few** [2] - 1987:3, 2016:14
**fide** [1] - 2018:21
**fifteen** [1] - 2016:16
**file** [1] - 2002:11
**fine** [5] - 1982:16, 1989:10, 2004:10, 2016:18, 2023:23
**finish** [1] - 1981:18
**first** [9] - 1979:9, 1979:21, 1981:8, 1997:25, 2016:13, 2020:8, 2021:17, 2022:10, 2023:8
**five** [5] - 1979:10, 1982:5, 1982:23, 1985:13, 2016:16
**fled** [1] - 1986:8
**fleeing** [1] - 1986:3
**flip** [1] - 1994:11
**flip-over** [1] - 1994:11
**focusing** [3] - 2002:6, 2005:19, 2011:14
**Fodeman** [2] - 2006:22, 2007:3
**FODEMAN** [30] - 1978:14, 1979:18,

1979:22, 1981:8, 1981:19, 1981:23, 1982:2, 1982:5, 1982:10, 1982:12, 1982:16, 1983:13, 1983:18, 1983:22, 1984:12, 1984:20, 1984:23, 1986:23, 1991:18, 2001:8, 2001:11, 2001:13, 2003:14, 2004:14, 2010:20, 2010:25, 2011:2, 2011:5, 2023:7, 2024:2
**Fodeman's** [1] - 1995:20
**following** [9] - 1979:1, 1993:8, 1994:1, 1999:15, 2012:6, 2013:1, 2016:1, 2016:22, 2020:8
**footnote** [5] - 1996:7, 1996:9, 2003:24
**forbid** [1] - 1991:3
**forbids** [1] - 2017:19
**forget** [1] - 1991:10
**form** [1] - 2019:12
**four** [3] - 1980:21, 1985:8, 2018:10
**frank** [1] - 2022:19
**free** [1] - 2019:1
**Friday** [5] - 1980:22, 2024:25, 2025:1, 2025:2, 2025:6
**Fridays** [1] - 2025:11
**front** [1] - 2017:10
**full** [1] - 1996:25

**G**

**gather** [2] - 2017:7, 2020:11
**Gene** [1] - 1978:22
**general** [2] - 2021:6, 2021:12
**gentlemen** [1] - 2012:5
**GEO** [1] - 2016:5
**GERALD** [1] - 1978:17
**gist** [1] - 1987:17
**given** [8] - 1988:7, 1988:9, 1990:12, 1995:7, 1995:22, 1996:20, 2009:9, 2020:6
**gleaned** [1] - 1987:8
**GLEESON** [1] - 1978:9
**GO's** [1] - 2001:9
**God** [1] - 1991:2
**gotcha** [1] - 2021:7
**government** [12] - 1980:18, 1981:21, 1982:24, 1984:10, 1985:12, 1991:6, 2002:8, 2002:12, 2003:5, 2010:21, 2022:2, 2024:12
**Government** [4] - 1978:13, 1979:23, 1991:17, 2011:20
**government's** [4] - 1980:11, 1981:5, 2002:14, 2007:11
**Greenhart** [3] - 1979:13, 1980:1, 1981:12
**Gromit** [2] - 2008:22, 2008:24
**ground** [1] - 2008:25
**grounded** [1] - 2022:12
**grunt** [1] - 1989:16
**guess** [7] - 1984:24, 1985:2, 1986:10, 1986:14, 1987:14, 1992:19, 1999:19
**guilt** [1] - 2006:1

**gun** [1] - 2000:8
**guy** [2] - 1982:7, 1985:14

## H

**hall** [1] - 2014:17
**happy** [1] - 1990:15
**hardest** [1] - 1984:6
**harm** [2] - 1981:9, 1986:1
**Havana** [1] - 2008:23
**head** [4] - 1992:5, 1999:4, 2009:10, 2012:7
**heads** [1] - 1979:14
**hear** [6] - 1984:25, 1996:2, 1999:19, 1999:20, 2014:25, 2021:19
**heard** [5] - 1987:1, 1995:13, 2013:15, 2014:15, 2018:17
**hearsay** [2] - 2019:15, 2019:16
**held** [1] - 2007:18
**help** [4] - 1992:1, 1992:3, 1992:5, 2018:18
**helps** [1] - 1992:16
**highlights** [1] - 2000:21
**hip** [1] - 1999:3
**hold** [1] - 1997:12
**holds** [2] - 1992:11, 1995:23
**Honor** [37] - 1979:17, 1980:5, 1980:13, 1981:17, 1983:5, 1983:6, 1983:13, 1983:25, 1984:17, 1984:22, 1985:2, 1988:1, 1988:20, 1988:22, 1989:1, 1990:19, 1990:20, 1991:7, 1991:8, 1993:11, 1995:14, 1997:4, 1997:5, 1997:9, 1997:11, 1997:19, 1997:22, 1998:7, 2001:17, 2013:5, 2013:16, 2013:17, 2014:19, 2020:3, 2020:24, 2022:4
**Honor's** [3] - 1988:24, 1997:25, 2010:8
**HONORABLE** [1] - 1978:9
**hope** [3] - 1992:15, 2014:24, 2025:9
**hostility** [2] - 2019:10, 2019:12
**house** [2] - 1989:3, 1995:18
**hung** [3] - 2003:11, 2008:19, 2009:2
**hypothetical** [2] - 2003:15, 2004:9
**hypothetically** [1] - 1996:5

## I

**idea** [1] - 2008:13
**II** [3] - 2018:11, 2018:12, 2019:25
**III** [1] - 2019:4
**Ilene** [5] - 1979:14, 1994:10, 2013:4, 2014:22, 2015:1
**illegal** [2] - 2003:16, 2003:17
**imagine** [5] - 1995:10, 2001:11, 2003:14, 2003:15, 2017:20
**impeached** [1] - 2019:16
**implicate** [1] - 1989:11
**important** [2] - 2011:25, 2021:6

**imported** [1] - 2002:3
**impossible** [1] - 2008:3
**improper** [2] - 2006:1, 2018:8
**incapable** [1] - 2005:3
**inclination** [1] - 2018:6
**included** [1] - 1985:16
**includes** [7] - 1988:1, 2008:15, 2010:9, 2010:14, 2010:18, 2011:20, 2012:2
**incorrect** [1] - 2009:25
**individuals** [1] - 2023:25
**indulge** [1] - 2020:15
**inferring** [1] - 1983:10
**influence** [4] - 2017:12, 2017:13, 2017:17, 2024:4
**information** [18] - 2017:2, 2017:7, 2017:21, 2018:12, 2018:13, 2020:12, 2020:13, 2020:17, 2020:22, 2020:23, 2021:11, 2022:17, 2022:24, 2023:5, 2023:19, 2023:23, 2024:11
**initial** [1] - 1997:21
**inoperable** [5] - 2005:23, 2009:22, 2010:6, 2010:19, 2011:23
**inoperative** [1] - 2012:2
**insertion** [1] - 1996:9
**insinuate** [1] - 1989:9
**instance** [3] - 1995:11, 2021:14, 2021:18
**instances** [2] - 1992:2, 2017:1
**instant** [6] - 1979:13, 1980:2, 1981:11, 1984:6, 1991:16, 1992:1
**instinct** [1] - 1997:25
**instruction** [5] - 1988:1, 1993:10, 1999:11, 2021:4, 2024:8
**Instructions** [1] - 1987:12
**insufficient** [1] - 1995:9
**intend** [1] - 1997:13
**intended** [2] - 2018:18, 2018:19
**intent** [1] - 1989:21
**intention** [9] - 1988:7, 1988:9, 1990:12, 1992:23, 1995:7, 1996:12, 1997:17, 1998:20, 2020:15
**intercept** [1] - 2006:19
**intercepted** [2] - 2006:5, 2007:17
**interception** [1] - 2007:5
**interesting** [2] - 1999:25, 2004:24
**interrupt** [1] - 1981:15
**interrupted** [1] - 2018:1
**intersection** [2] - 1999:23, 2004:5
**introduce** [1] - 1982:25
**introduced** [1] - 1981:10
**investigator** [5] - 2017:7, 2020:18, 2021:15
**invites** [1] - 2009:13
**involved** [1] - 2018:7
**involves** [1] - 2001:25
**involving** [1] - 2008:25
**IRVING** [1] - 1978:6
**Irving** [4] - 1978:20, 1981:11, 1982:21,

1984:3
**Irving's** [1] - 1979:12
**issue** [12] - 1983:2, 1989:23, 1993:3, 1999:24, 2002:7, 2002:17, 2004:2, 2004:12, 2004:24, 2014:11, 2019:22, 2020:4
**issues** [1] - 2019:24
**item** [5] - 1990:2, 1990:6, 1992:12, 1992:17, 1992:24
**iteration** [1] - 1988:5, 2017:10

## J

**JAVIER** [1] - 1978:19
**Jenab** [1] - 2013:7
**job** [1] - 2018:25
**JOHN** [1] - 1978:9
**jot** [1] - 2016:14
**Judge** [5] - 1979:18, 1984:20, 1990:9, 2016:19, 2025:18
**JUDGE** [1] - 1978:10
**judge** [10] - 1979:22, 1982:12, 1985:20, 1985:23, 1986:2, 1987:25, 1988:20, 2001:11, 2003:14, 2024:22
**June** [5] - 1980:22, 1983:15, 1984:1, 1984:22, 1985:4
**juror** [6] - 1989:8, 1989:19, 1999:3, 2009:10, 2012:8, 2013:21
**jurors** [5] - 2014:2, 2014:7, 2014:9, 2014:25, 2025:12
**jury** [49] - 1978:10, 1979:1, 1979:9, 1979:12, 1983:6, 1986:3, 1988:9, 1991:11, 1991:20, 1993:6, 1993:8, 1994:1, 1994:8, 1994:9, 1997:10, 1997:12, 1998:8, 1998:10, 1999:13, 1999:15, 2001:9, 2004:19, 2005:19, 2005:25, 2006:17, 2009:4, 2010:8, 2010:13, 2011:8, 2012:6, 2013:1, 2013:8, 2015:11, 2016:1, 2016:4, 2016:7, 2016:22, 2016:25, 2019:2, 2020:10, 2021:7, 2023:15, 2024:13, 2026:5, 2026:6, 2026:10, 2026:12, 2026:13, 2026:14
**Jury** [1] - 1987:12
**jury's** [1] - 2018:25
**Justin** [1] - 1981:25

## K

**keep** [2] - 2000:4, 2009:2
**key** [2] - 1998:17, 1998:18
**kind** [7] - 1989:2, 1995:16, 1996:16, 2000:18, 2003:11, 2007:24, 2021:7
**knowing** [1] - 2024:25
**knowingly** [5] - 1988:6, 1992:22, 1995:6, 1997:16, 1998:19
**knowledge** [1] - 2017:9

## L

**ladies** [1] - 2012:5
**language** [2] - 1997:23, 1998:2
**laptops** [5] - 1996:17, 2005:16, 2005:20, 2006:2, 2007:9
**larger** [4] - 2007:12, 2008:2, 2008:3
**last** [3] - 1981:2, 1981:3, 2016:3
**latter** [1] - 2021:14
**LAW** [2] - 2001:17, 2001:19
**law** [8] - 1992:11, 1992:21, 1994:25, 1996:8, 1996:10, 1996:21, 1996:23, 2005:17
**lawful** [1] - 2018:20
**LAWRENCE** [1] - 1978:20
**lay** [2] - 1988:8, 2020:23
**least** [7] - 1979:23, 1987:13, 1998:18, 2000:20, 2012:7, 2023:4, 2025:1
**leave** [1] - 1990:4
**leaves** [1] - 2017:15
**left** [1] - 2017:6
**legal** [4] - 2017:1, 2018:21, 2021:10, 2024:12
**less** [1] - 1980:17
**licensed** [2] - 2020:18, 2020:21
**light** [4] - 1993:2, 1993:3, 2021:1, 2021:2
**limit** [2] - 2010:11, 2023:21
**limited** [2] - 2002:13, 2019:13
**line** [11] - 1981:2, 1981:3, 1985:9, 1985:13, 1985:15, 1985:17, 1985:18, 1985:22, 1988:20
**LIPTON** [2] - 1978:17, 1994:4
**list** [2] - 2016:7, 2017:18
**literal** [3] - 1998:1, 1998:4, 2020:10
**log** [1] - 2001:10
**look** [2] - 1986:15, 2007:6
**looked** [3] - 1987:3, 1987:6, 1987:9
**looking** [2] - 1995:16, 2021:17
**looks** [5] - 1980:13, 1992:25, 2007:18, 2017:15
**loose** [1] - 2024:24
**Loreal** [1] - 2013:7
**lose** [2] - 2013:21, 2021:8
**loud** [1] - 1987:22
**luck** [1] - 2022:5
**lunch** [1] - 2015:9

## M

**machine** [1] - 2008:25
**Man** [1] - 2008:23
**Mark** [5] - 1980:2, 1980:3, 1981:12, 1986:8, 1986:11
**marked** [7] - 1979:19, 1991:19, 1991:21, 1994:14, 1994:19, 2007:2, 2015:12
**matter** [3] - 2005:17, 2011:18, 2021:6

**mean** [6] - 2001:2, 2004:16, 2008:12, 2011:4, 2021:21, 2021:22
**meaning** [1] - 2020:10
**means** [1] - 2020:11
**meantime** [1] - 2013:25
**mechanical** [1] - 1978:24
**mention** [1] - 1994:9
**mentioned** [1] - 2021:10
**mere** [11] - 1987:13, 1988:11, 1990:6, 1990:10, 1992:17, 1992:20, 2000:7, 2003:11, 2003:21, 2003:22
**merely** [2] - 1988:12, 1989:24
**message** [5] - 1980:2, 1982:3, 1983:14, 1983:16, 1983:19
**messages** [4] - 1979:13, 1981:11, 1984:6, 1991:16
**mice** [1] - 2003:16
**middle** [2] - 1980:22, 1982:6
**might** [10] - 1993:1, 2003:12, 2007:18, 2007:19, 2008:11, 2008:13, 2011:10, 2013:20, 2017:20
**mind** [1] - 1995:16
**minute** [1] - 2020:20
**minutes** [1] - 2016:16
**misconception** [1] - 2007:16
**missing** [2] - 1986:13, 2024:2
**Modern** [1] - 1987:12
**moment** [4] - 1996:13, 1997:12, 2003:25, 2020:24
**Monday** [4] - 1983:14, 1984:22, 2025:4, 2025:10
**Monday's** [1] - 2025:7
**monopoly** [1] - 1995:12
**morning** [9] - 1979:3, 1979:6, 1991:12, 1994:10, 1994:12, 2016:13, 2022:6, 2025:3, 2025:10
**MORRIS** [1] - 1978:14
**most** [3] - 1980:10, 1980:12, 1999:17
**mouse** [10] - 1996:8, 1996:10, 2003:17, 2003:19, 2003:20, 2004:10, 2004:11, 2004:12, 2004:13
**mouth** [1] - 2008:12
**movie** [1] - 2008:24
**MR** [146] - 1979:17, 1979:18, 1979:22, 1979:25, 1980:5, 1980:8, 1980:16, 1980:19, 1980:21, 1980:25, 1981:8, 1981:17, 1981:19, 1981:23, 1982:2, 1982:5, 1982:10, 1982:12, 1982:16, 1982:22, 1983:5, 1983:10, 1983:13, 1983:18, 1983:22, 1983:25, 1984:9, 1984:12, 1984:13, 1984:17, 1984:20, 1984:21, 1984:23, 1985:2, 1985:7, 1985:10, 1985:12, 1985:18, 1985:20, 1985:23, 1986:2, 1986:6, 1986:10, 1986:14, 1986:23, 1986:24, 1987:25, 1988:16, 1988:20, 1989:1, 1989:7, 1989:15, 1990:9, 1990:17, 1990:19, 1990:20, 1990:14, 1991:8, 1991:18, 1993:11, 1993:12, 1993:13, 1994:4, 1994:21, 1994:22, 1994:23, 1995:14,

**1996:4, 1996:18, 1997:4, 1997:7, 1997:9, 1997:19, 1997:21, 1999:20, 1999:25, 2000:21, 2001:8, 2001:11, 2001:13, 2002:4, 2002:6, 2003:3, 2003:14, 2004:14, 2004:18, 2004:22, 2004:24, 2005:9, 2005:10, 2005:13, 2005:14, 2006:3, 2006:8, 2006:11, 2007:3, 2007:24, 2008:6, 2008:17, 2008:23, 2009:7, 2009:17, 2010:2, 2010:7, 2010:20, 2010:23, 2010:25, 2011:2, 2011:5, 2012:7, 2013:16, 2013:17, 2014:5, 2014:12, 2014:18, 2014:20, 2015:6, 2016:18, 2016:19, 2017:12, 2017:22, 2018:11, 2019:10, 2019:13, 2019:22, 2019:25, 2021:24, 2022:2, 2022:4, 2022:7, 2022:9, 2023:2, 2023:7, 2024:1, 2024:2, 2024:3, 2024:15, 2024:19, 2024:21, 2024:22, 2025:7, 2025:15, 2025:16, 2025:18, 2025:19, 2025:20
**must** [1] - 1986:12
**Myers** [5] - 2005:2, 2006:12, 2006:22, 2007:4, 2009:23

## N

**N-72** [6] - 2005:8, 2005:12, 2006:6, 2007:6, 2009:21, 2010:18
**N-74** [2] - 2008:16, 2010:20
**name** [1] - 2009:2
**narrower** [1] - 2001:25
**near** [2] - 1989:24, 1992:21
**necessarily** [5] - 1997:14, 1998:14, 2010:18, 2011:20, 2012:1
**necessary** [2] - 1987:15, 2010:5
**need** [15] - 1984:16, 1986:15, 1988:11, 1989:10, 1990:14, 1991:3, 2000:4, 2006:12, 2006:19, 2010:9, 2013:11, 2013:13, 2015:2, 2021:22, 2024:17
**needed** [1] - 2006:15
**needs** [3] - 1983:2, 1988:13, 1989:11
**never** [5] - 2000:24, 2001:5, 2002:12, 2021:7, 2022:15
**NEW** [1] - 1978:1
**new** [1] - 2000:18
**New** [2] - 1978:5, 1978:23
**next** [5] - 1981:24, 1993:15, 2004:9, 2012:11, 2015:15
**nice** [1] - 1991:13
**night** [5] - 2016:11, 2025:17, 2025:18, 2025:19, 2025:20
**nine** [2] - 1979:12, 2026:6
**non** [6] - 2018:13, 2018:15, 2019:3, 2019:15, 2020:14, 2021:15
**non-expert** [3] - 2018:13, 2019:3, 2020:14
**non-experts** [1] - 2018:15
**non-hearsay** [1] - 2019:15
**non-investigator** [1] - 2021:15

**note** [37] - 1979:9, 1979:12, 1979:25, 1980:9, 1980:10, 1983:1, 1990:16, 1990:24, 1992:4, 1994:9, 1994:13, 1994:17, 1994:20, 1997:23, 1998:10, 2001:8, 2001:9, 2004:8, 2008:9, 2009:9, 2015:8, 2015:11, 2016:4, 2016:7, 2016:12, 2016:16, 2016:25, 2020:16, 2026:5, 2026:6, 2026:8, 2026:9, 2026:10, 2026:12, 2026:13, 2026:14

**notes** [7] - 1979:5, 1991:15, 1992:2, 1994:7, 2009:10, 2011:11, 2011:24

**nothing** [4] - 1985:24, 2022:2, 2022:4, 2022:22

**number** [9] - 1987:8, 2005:8, 2009:10, 2010:21, 2011:4, 2018:10, 2023:13, 2023:14

**numeral** [1] - 2018:11

## O

**o'clock** [1] - 1978:6
**object** [5] - 1987:20, 1988:10, 1998:2, 1998:20, 2000:9
**objection** [7] - 1986:18, 1986:21, 1990:18, 1993:10, 1998:5, 2013:16, 2014:18
**obtain** [1] - 1987:18
**obtaining** [1] - 2024:11
**obviously** [4] - 1991:24, 2001:22, 2002:25, 2005:20
**occasions** [1] - 2011:14
**occurred** [9] - 1979:1, 1993:8, 1994:1, 1999:15, 2011:17, 2012:6, 2013:1, 2016:1, 2016:22
**OF** [3] - 1978:1, 1978:3, 1978:9
**offend** [3] - 2009:20, 2010:17, 2011:19
**offended** [1] - 2006:20
**offending** [5] - 2005:6, 2006:2, 2012:1
**offends** [2] - 2007:8, 2009:12
**offense** [1] - 2003:11
**offensive** [1] - 2005:10
**offer** [2] - 1998:11, 2000:1
**older** [1] - 1987:10
**one** [24] - 1985:6, 1985:21, 1988:2, 1992:2, 1994:9, 1997:5, 1999:3, 2000:18, 2001:15, 2001:19, 2006:11, 2006:18, 2006:21, 2011:24, 2013:4, 2013:17, 2014:9, 2017:1, 2017:14, 2019:22, 2022:9, 2022:19, 2023:13, 2025:1
**operate** [3] - 1998:16, 2007:14, 2008:4
**operated** [1] - 1996:11
**operating** [22] - 1994:17, 1995:1, 1995:9, 1995:10, 1995:23, 1996:15, 1997:23, 1998:12, 1998:15, 1998:21, 1999:23, 2002:1, 2004:10, 2004:20, 2005:22, 2007:15, 2007:19, 2008:11, 2008:13, 2008:15, 2011:25

**operation** [1] - 2003:12
**opinion** [1] - 2019:1
**opinions** [2] - 1989:17, 2018:17
**opposed** [3] - 2014:17, 2020:18, 2020:23
**orally** [1] - 1994:9
**order** [1] - 2013:25
**originally** [1] - 2004:5
**otherwise** [2] - 2019:16, 2024:13
**ought** [12] - 1980:15, 1980:17, 1981:22, 1981:23, 1987:6, 1987:7, 1987:13, 1987:24, 2008:10, 2009:4, 2011:18, 2017:16
**overrule** [1] - 2014:13
**overruled** [3] - 1986:18, 1986:21
**own** [2] - 2001:22, 2017:6
**owner** [1] - 2001:5

## P

**pad** [2] - 1994:11
**page** [18] - 1980:21, 1981:1, 1981:24, 1982:4, 1982:5, 1982:7, 1982:23, 1983:15, 1983:20, 1984:2, 1984:3, 1984:4, 1984:9, 1985:8, 1985:13, 1993:15, 2012:11, 2015:15
**pages** [1] - 1984:14
**paid** [1] - 2013:9
**paraphrasing** [1] - 2022:20
**part** [12] - 1980:12, 1981:1, 1992:10, 1998:3, 2004:15, 2006:8, 2008:2, 2009:5, 2010:2, 2010:5, 2017:17
**parties** [1] - 1994:6
**partly** [1] - 2008:20
**past** [1] - 1982:15
**pause** [5] - 1982:18, 1984:15, 1984:19, 1988:3, 2013:18
**pay** [9] - 2017:2, 2017:7, 2017:8, 2018:5, 2021:5, 2021:11, 2022:15, 2023:20, 2023:22
**paying** [2] - 2017:21, 2023:4
**payment** [1] - 2024:11
**pending** [1] - 2011:11
**people** [8] - 1982:23, 1983:1, 1983:2, 1984:5, 1986:3, 1995:10, 2025:9
**perfect** [1] - 1982:8, 1985:15, 2024:7
**perfectly** [2] - 2023:5, 2024:12
**period** [1] - 2013:23
**permission** [1] - 2001:6
**permit** [1] - 2009:11
**Persaud** [1] - 2022:25
**person** [23] - 1986:7, 1986:8, 1988:1, 1988:6, 1990:11, 1992:22, 1995:6, 1995:22, 1995:23, 1996:10, 1996:14, 1996:19, 1997:16, 1998:19, 2000:24, 2001:2, 2001:23, 2003:1, 2003:6, 2020:19, 2020:21, 2022:16, 2023:17
**person's** [1] - 1992:13
**perspective** [1] - 1995:14

**persuade** [1] - 1987:24
**pertain** [1] - 2005:20
**pertains** [1] - 2021:3
**pertinent** [3] - 2017:5, 2022:11, 2024:9
**physical** [6] - 1987:18, 1987:21, 1992:24, 1995:24, 1996:24, 2003:3
**physically** [2] - 1992:9, 1995:23
**pick** [3] - 1996:23, 2024:6
**piece** [2] - 1981:16, 1981:21
**play** [1] - 2021:7
**Plaza** [1] - 1978:22
**plea** [2] - 1982:25, 1986:12
**plus** [1] - 1983:5
**pm** [2] - 2013:2, 2016:2
**point** [12] - 1981:6, 1982:13, 1982:14, 1985:2, 1986:14, 1989:7, 1995:17, 1999:25, 2000:21, 2004:22, 2005:15, 2014:10
**points** [1] - 2023:7
**pornography** [2] - 2002:11, 2002:16
**portion** [1] - 1982:24
**position** [11] - 1980:11, 1981:5, 1981:12, 1987:15, 1987:18, 1988:24, 1997:3, 1997:4, 2017:22, 2017:24, 2024:4
**possess** [3] - 1998:16, 2001:24, 2004:11
**possessed** [1] - 2003:2
**possesses** [4] - 1996:13, 2001:22, 2004:10, 2004:13
**possessing** [10] - 1990:1, 1990:2, 1992:12, 1995:11, 1996:15, 2000:8, 2003:16, 2003:19, 2004:17
**possession** [58] - 1987:18, 1987:20, 1987:21, 1988:6, 1988:13, 1988:14, 1989:5, 1990:11, 1992:8, 1992:9, 1992:11, 1992:13, 1992:19, 1992:22, 1994:18, 1995:3, 1995:4, 1995:6, 1995:21, 1995:24, 1997:24, 1998:13, 1998:15, 1998:18, 1998:19, 1998:24, 1998:25, 1999:18, 1999:24, 2000:1, 2000:9, 2000:11, 2000:12, 2000:24, 2000:25, 2002:7, 2002:15, 2002:19, 2003:3, 2003:12, 2003:15, 2003:18, 2003:20, 2003:21, 2004:1, 2004:3, 2004:7, 2004:8, 2004:25, 2005:1, 2007:20, 2008:14, 2009:23, 2010:19, 2011:15, 2011:23
**possibility** [1] - 2009:11
**possible** [3] - 1980:10, 1983:7, 1998:15
**Post** [2] - 1986:19, 1994:15
**Post-it** [1] - 1994:15
**Post-its** [1] - 1986:19
**potential** [1] - 2017:8
**pound** [2] - 2002:3
**power** [24] - 1988:6, 1988:9, 1988:13, 1988:21, 1988:25, 1989:1, 1989:8, 1989:11, 1989:20, 1989:23, 1990:2, 1990:12, 1992:23, 1995:6, 1995:8,

1996:12, 1997:17, 1998:19, 2000:4,
2000:5, 2000:11, 2000:12, 2001:4
**precise** [1] - 1999:9
**precisely** [1] - 1982:20
**preference** [1] - 2021:16
**preliminary** [1] - 2016:24
**prepare** [2] - 1986:19, 1986:25
**present** [5] - 1989:24, 1991:11,
1994:6, 1998:8, 2011:8
**primarily** [2] - 2003:9, 2007:5
**primary** [1] - 2003:7
**principles** [3] - 1987:23, 2000:17,
2002:2
**problem** [13] - 1983:25, 1984:21,
1986:15, 1987:3, 2000:19, 2010:7,
2010:13, 2014:20, 2024:25, 2025:1,
2025:2, 2025:4, 2025:9
**proceed** [1] - 2013:21
**Proceedings** [1] - 1978:24
**produced** [1] - 1978:25
**professional** [1] - 2020:22
**proper** [1] - 2023:5
**propose** [3] - 2016:10, 2019:6,
2021:20
**proposed** [3] - 1997:5, 2016:15,
2021:4
**proposes** [1] - 2014:19
**proposition** [1] - 2009:9
**prove** [1] - 2002:8
**provide** [2] - 1990:15, 1998:11
**provided** [1] - 1989:19
**provider** [2] - 2020:22, 2020:23
**providing** [1] - 1993:2
**proximity** [9] - 1987:13, 1988:11,
1989:24, 1989:25, 1990:1, 1990:6,
1990:10, 1992:17, 1992:20
**purport** [1] - 1995:12
**purpose** [5] - 1996:21, 1996:22,
2018:7, 2018:8, 2024:11
**put** [8] - 1979:14, 1992:5, 1996:7,
2007:7, 2008:12, 2009:21, 2020:3,
2024:13
**puts** [1] - 2003:24
**putting** [1] - 1998:21, 2009:24

**Q**

**qualify** [1] - 2022:17
**quarter** [1] - 1984:1
**questions** [9] - 2005:20, 2006:17,
2009:18, 2009:19, 2016:8, 2016:25,
2020:7, 2021:7, 2021:8
**quote** [2] - 2020:14
**quoted** [1] - 1989:22

**R**

**Radio** [2] - 2006:14, 2006:15

**raise** [1] - 2022:9
**raising** [1] - 1995:17
**rather** [1] - 2003:8
**reaction** [1] - 1997:21
**read** [4] - 1988:21, 2019:25, 2020:7,
2020:11
**readbacks** [2] - 1983:9, 1990:25
**reading** [3] - 1990:22, 2017:15,
2020:25
**really** [13] - 1984:25, 1990:23,
1995:19, 1996:6, 1996:15, 2000:3,
2000:4, 2000:9, 2004:12, 2005:5,
2007:22, 2008:8, 2018:8
**reason** [4] - 1981:10, 1997:22, 2003:7,
2013:20
**reasonable** [5] - 1989:19, 2017:7,
2017:8, 2018:5, 2021:5
**recess** [6] - 1993:14, 2012:10,
2015:14, 2016:20, 2016:21, 2025:21
**recognize** [1] - 2020:6
**reconvene** [1] - 2016:15
**record** [5] - 2005:4, 2005:21, 2005:22,
2009:21, 2022:23
**recorded** [1] - 1978:24
**recording** [1] - 2005:3
**redact** [1] - 1985:21
**redacted** [2] - 1986:19, 1986:25
**redacting** [1] - 2001:14
**refer** [1] - 2009:19
**reference** [1] - 2022:19
**referred** [1] - 2011:24
**referring** [2] - 2008:20, 2008:21
**refine** [1] - 1999:6
**Regan** [6] - 1980:2, 1981:3, 1981:12,
1986:7, 1986:11
**regard** [5] - 1991:9, 1999:23, 2021:4,
2021:10, 2021:20
**regarding** [3] - 2016:5, 2019:8,
2019:20
**regards** [1] - 1989:7
**regret** [1] - 2000:15
**reiterate** [1] - 1995:5
**reject** [1] - 2024:17
**relates** [1] - 1999:17
**relationship** [1] - 2022:25
**relevant** [4] - 1983:14, 2017:9, 2018:8,
2018:17
**relying** [1] - 2023:11
**remember** [5] - 1998:17, 2006:12,
2020:8, 2022:6, 2025:4
**remind** [2] - 2012:1, 2023:15
**rendered** [1] - 2003:8
**rendering** [1] - 2007:5
**renders** [1] - 1995:9
**repeat** [2] - 1987:14, 2022:8
**replace** [2] - 2014:9, 2014:14
**Reporter** [1] - 1978:22
**represent** [1] - 2019:4
**representation** [1] - 2018:21

**representations** [1] - 2025:5
**reputation** [3] - 2019:9, 2019:11,
2019:21
**request** [5] - 1991:23, 1994:12,
2009:15, 2015:9, 2024:18
**requested** [1] - 1982:20
**requesting** [3] - 1983:11, 1994:13,
2001:9
**require** [1] - 2002:7
**required** [1] - 1997:16
**requires** [2] - 1992:21, 2009:13
**reread** [1] - 1987:4
**reside** [1] - 2007:18
**respect** [5] - 1981:8, 2014:7, 2023:23,
2023:24, 2024:3
**respectfully** [1] - 1988:22
**respond** [3] - 1991:22, 2005:24,
2016:12
**response** [2] - 1992:2, 2006:11
**responsive** [4] - 1979:23, 1980:10,
1983:1, 1986:16
**rest** [1] - 2017:25
**result** [1] - 2007:20
**resume** [3] - 1993:6, 1999:13, 2012:3
**return** [3] - 1993:6, 1999:13, 2013:24
**returns** [1] - 1982:2
**Ricco** [1] - 2020:21
**Ricco's** [1] - 2020:9
**riding** [1] - 2001:23
**rightful** [1] - 2001:5
**Rivera** [3] - 1987:9, 1989:18, 1989:22
**ROBERT** [1] - 1978:5
**Robert** [1] - 1978:18
**Rog** [1] - 1981:4
**Roman** [7] - 2018:11, 2018:12, 2019:4,
2019:25, 2020:7, 2020:16, 2022:10
**room** [4] - 1991:20, 1993:6, 1999:13,
2014:17
**root** [1] - 2018:2
**Rudolph** [2] - 1978:22, 2022:7
**rule** [2] - 2008:8, 2014:7
**Rule** [1] - 2019:14
**running** [2] - 1996:24, 2013:8

**S**

**safest** [1] - 1984:6
**Sands's** [2] - 1987:11, 1987:12
**satisfy** [1] - 2023:3
**scared** [4] - 1982:24, 1983:2, 1984:5
**scenario** [1] - 1996:18
**scenarios** [1] - 1995:15
**scratch** [2] - 1991:4, 2011:22
**seat** [2] - 1979:4, 1991:14
**seated** [6] - 1994:3, 1998:9, 1999:16,
2011:9, 2013:3, 2016:23
**second** [7] - 1981:2, 1984:4, 1985:9,
1988:2, 1996:3, 2007:16, 2013:17
**Second** [2] - 1987:8, 1989:17

**section** [1] - 2023:11
**sections** [1] - 1981:18
**see** [8] - 1982:23, 1983:23, 1983:24, 1984:16, 1991:13, 2011:6, 2024:20, 2024:21
**seeks** [1] - 2021:13
**seem** [1] - 2020:4
**segment** [2] - 1981:8, 1984:11
**segments** [2] - 1981:13, 1981:19
**Selwyn** [3] - 2024:3, 2024:6, 2024:7
**send** [8] - 1979:9, 1982:19, 1984:4, 1986:20, 1994:16, 2006:25, 2013:11, 2016:13
**sending** [1] - 1987:4
**sense** [6] - 1999:1, 1999:7, 2000:13, 2000:16, 2020:16, 2020:25
**sent** [2] - 1979:11, 2011:12
**separate** [1] - 2002:17
**session** [5] - 1983:16, 1983:19, 1984:22, 1984:23, 1985:3
**setting** [1] - 2002:3
**Shack** [2] - 2006:14, 2006:15
**shake** [1] - 2012:7
**shaking** [1] - 2009:10
**Shargel** [8] - 1994:4, 1997:6, 1997:20, 2008:7, 2008:9, 2009:4, 2014:4, 2023:11
**SHARGEL** [42] - 1978:17, 1993:12, 1994:22, 1996:4, 1997:7, 1997:21, 1999:20, 1999:25, 2004:24, 2005:10, 2005:14, 2006:11, 2007:3, 2007:24, 2008:23, 2009:7, 2009:17, 2010:23, 2012:7, 2014:5, 2014:12, 2014:20, 2015:6, 2016:18, 2017:12, 2017:22, 2018:11, 2019:10, 2019:13, 2019:22, 2019:25, 2021:24, 2022:9, 2023:2, 2024:1, 2024:3, 2024:15, 2024:19, 2024:21, 2025:7, 2025:15, 2025:18
**Shargel's** [3] - 2000:22, 2001:22, 2010:11
**shedding** [2] - 1993:2, 1993:3
**sheet** [1] - 2001:10
**shook** [1] - 1999:4
**short** [2] - 1996:20, 1998:14
**shortage** [1] - 1994:7
**show** [1] - 1981:11
**shows** [1] - 1996:8
**side** [2] - 2013:19, 2013:22
**sides** [1] - 2010:18
**SIMELS** [1] - 1978:5
**Simels** [3] - 1978:18, 2016:4, 2022:14
**Simels's** [1] - 2018:20
**Singh** [5] - 1922:15, 2022:16, 2023:4, 2023:23, 2024:10
**sit** [3] - 2025:11, 2025:13, 2025:14
**sitting** [7] - 1989:16, 2014:17, 2024:25, 2025:1, 2025:2, 2025:4, 2025:10
**situation** [2] - 2002:9, 2006:1
**situations** [1] - 1995:10

**software** [4] - 1996:7, 2002:1, 2006:9, 2010:4
**Solano** [3] - 1984:14, 1988:18, 2014:4
**SOLANO** [44] - 1978:19, 1979:17, 1979:25, 1980:5, 1980:8, 1980:16, 1980:19, 1980:21, 1980:25, 1981:17, 1982:22, 1983:5, 1983:10, 1983:25, 1984:9, 1984:21, 1985:2, 1985:7, 1985:10, 1985:12, 1985:18, 1985:20, 1985:23, 1986:2, 1986:6, 1986:10, 1986:14, 1986:24, 1987:25, 1988:20, 1990:19, 1991:8, 1993:11, 1994:23, 1997:4, 1997:19, 2005:9, 2005:13, 2008:17, 2013:17, 2014:18, 2022:4, 2025:16, 2025:20
**Solano's** [1] - 1989:2
**solely** [1] - 2010:11
**someone** [5] - 1992:11, 2002:10, 2002:13, 2019:8, 2019:20
**soon** [1] - 2003:24
**sorry** [6] - 1981:1, 1981:15, 1983:5, 1989:20, 1999:20, 2008:18
**sort** [1] - 2004:2
**sounds** [1] - 1988:23
**source** [2] - 2021:15, 2022:17
**spares** [1] - 2024:17
**specific** [6] - 1983:6, 1983:8, 1983:11, 1997:13, 2022:16, 2023:2
**specifically** [3] - 1983:6, 1983:23, 2018:19
**speculate** [1] - 1986:3
**speculating** [1] - 1986:17
**spending** [1] - 2005:19
**stake** [2] - 1982:19, 2002:18
**stand** [2] - 2011:22, 2022:23
**start** [1] - 1991:3
**started** [1] - 1993:9
**starts** [1] - 1983:15
**statement** [1] - 1989:2
**statements** [1] - 2019:19
**STATES** [3] - 1978:1, 1978:3, 1978:10
**States** [1] - 1978:13
**statute** [9] - 2002:7, 2006:20, 2007:8, 2009:12, 2009:20, 2010:17, 2011:19, 2017:19, 2021:18
**steal** [2] - 1989:3, 2001:24
**stenography** [1] - 1978:24
**step** [1] - 2021:2
**STEVEN** [1] - 1978:14
**still** [5] - 2004:9, 2009:13, 2013:9, 2014:2, 2018:25
**street** [1] - 1996:14
**strictly** [1] - 2013:25
**strikes** [1] - 2013:19
**strip** [1] - 2022:21
**stripper** [1] - 2022:21
**stuff** [2] - 1991:1, 2021:18
**subject** [1] - 1992:18
**submit** [2] - 1985:24, 1988:22

**substitute** [1] - 2013:22
**sucks** [1] - 2008:25
**sufficient** [3] - 1987:19, 1987:20, 1989:19
**suggest** [2] - 2020:2, 2022:23
**suggesting** [2] - 2008:7, 2008:9, 2009:4, 2024:5
**suggestion** [3] - 2007:24, 2010:8, 2010:11
**supply** [1] - 1979:12
**support** [2] - 2005:17, 2005:18
**suppose** [2] - 1996:2, 1996:5
**surprised** [1] - 2006:4
**sworn** [1] - 2014:2
**system** [6] - 2007:12, 2007:14, 2008:2, 2008:3, 2008:11, 2010:3

**T**

**talks** [3] - 1982:23, 1982:25, 1984:5
**tampering** [3] - 2017:19, 2021:11, 2021:18
**task** [1] - 2001:15
**tea** [1] - 2017:15
**technology** [1] - 2000:18
**temporary** [1] - 2003:22
**ten** [1] - 1998:10
**terms** [2] - 1983:11, 2023:9
**testified** [1] - 2019:14
**testifies** [1] - 2019:20
**testify** [5] - 2018:15, 2018:16, 2018:17, 2019:7, 2019:8
**testimony** [16] - 1994:13, 2001:12, 2005:2, 2006:24, 2009:23, 2011:12, 2016:5, 2017:12, 2017:17, 2018:18, 2019:19, 2020:13, 2020:21, 2022:13, 2024:4
**text** [3] - 1982:3, 1983:14, 1983:16
**THE** [132] - 1978:9, 1979:3, 1979:20, 1980:4, 1980:6, 1980:14, 1980:17, 1980:20, 1980:24, 1981:7, 1981:15, 1981:21, 1982:1, 1982:4, 1982:9, 1982:11, 1982:15, 1982:19, 1983:4, 1983:9, 1983:12, 1983:17, 1983:21, 1983:24, 1984:8, 1984:10, 1984:16, 1984:25, 1985:5, 1985:8, 1985:11, 1985:17, 1985:19, 1985:21, 1986:1, 1986:5, 1986:7, 1986:11, 1986:18, 1986:25, 1988:4, 1988:17, 1989:6, 1989:13, 1989:16, 1990:10, 1990:18, 1990:21, 1991:9, 1991:12, 1991:19, 1991:22, 1993:9, 1994:3, 1994:5, 1994:7, 1994:24, 1996:2, 1996:5, 1997:1, 1997:6, 1997:8, 1997:10, 1997:11, 1997:12, 1997:20, 1998:5, 1998:7, 1998:9, 1999:16, 1999:22, 2000:15, 2001:9, 2001:12, 2001:15, 2001:17, 2001:18, 2001:19, 2001:20, 2002:5, 2002:24, 2003:10, 2004:6,

2004:16, 2004:21, 2005:12, 2006:4, 2006:23, 2007:10, 2008:1, 2008:7, 2008:18, 2008:24, 2009:16, 2009:24, 2010:5, 2010:15, 2010:24, 2011:1, 2011:3, 2011:6, 2011:9, 2012:9, 2013:3, 2013:5, 2013:6, 2013:19, 2014:11, 2014:13, 2014:21, 2015:7, 2016:3, 2016:23, 2017:13, 2017:24, 2018:12, 2019:11, 2019:18, 2019:23, 2021:2, 2021:25, 2022:3, 2022:5, 2022:8, 2023:1, 2023:6, 2024:14, 2024:17, 2024:20, 2024:23, 2025:8, 2025:17

**thinking** [4] - 1987:22, 1988:4, 2007:19, 2022:10

**third** [1] - 1983:15

**Thirteen** [7] - 1979:8, 1987:2, 1990:8, 1991:23, 1998:23, 2011:16, 2011:20

**thirteen** [3] - 1992:19, 2007:21

**thoughts** [1] - 2016:24

**three** [5] - 1979:5, 1979:10, 1981:19, 1991:10, 2017:18

**timing** [1] - 1982:9

**together** [4] - 1979:14, 1992:5, 2007:4, 2009:1

**token** [2] - 1995:20, 1995:25

**tomorrow** [2] - 2024:20, 2024:21

**took** [1] - 2001:5

**top** [7] - 1981:14, 1981:24, 1982:23, 1983:15, 1983:20, 1984:1, 1984:9

**tortured** [1] - 2020:25

**total** [1] - 1981:19

**touching** [3] - 2004:14, 2004:16, 2004:23

**Tough** [2] - 2007:17, 2007:19

**towards** [1] - 1999:8

**transcript** [2] - 1978:24, 2023:12

**TRANSCRIPT** [1] - 1978:9

**treated** [1] - 2004:6

**treatise** [1] - 1987:12

**trial** [4] - 1989:17, 2010:22, 2019:7, 2019:19

**TRIAL** [1] - 1978:9

**Tribunella** [3] - 1987:10, 1988:5, 1989:20

**trick** [1] - 1995:9

**true** [3] - 1996:6, 2014:12, 2019:2

**truthful** [3] - 2019:9, 2019:11, 2019:21

**try** [1] - 1992:5

**trying** [1] - 2023:18

**turned** [2] - 2007:22, 2012:7

**twelve** [2] - 1992:19, 2007:21

**twenty** [2] - 2016:15, 2021:7

**two** [9] - 1981:18, 2005:16, 2009:10, 2009:18, 2009:19, 2017:4, 2023:7, 2023:14, 2025:1

**type** [2] - 1989:12, 1996:17

## U

**U.S** [2] - 1978:4, 1978:15

**unanswered** [1] - 2011:11

**under** [2] - 1978:14, 2019:15

**understood** [1] - 2021:23

**UNITED** [3] - 1978:1, 1978:3, 1978:10

**United** [1] - 1978:13

**unlawfully** [2] - 2001:2, 2001:5

**unless** [2] - 1987:23, 2003:6

**unlike** [1] - 2000:7

**unlikely** [4] - 2013:10, 2013:13, 2014:6, 2014:8

**up** [8] - 1981:20, 1982:13, 1996:23, 1998:10, 2003:11, 2008:19, 2009:2, 2017:21

**US** [2] - 1987:9, 1987:10

**useful** [2] - 1988:8, 2007:5

**uses** [2] - 1996:9, 2001:21

## V

**Vac** [2] - 2008:21, 2009:3

**vanguard** [1] - 2007:22

**Vaughn** [3] - 2024:3, 2024:6, 2024:7

**verdict** [1] - 2014:25

**version** [2] - 1986:19, 1986:25

**versus** [2] - 1987:9, 1987:10

**view** [2] - 1991:5, 2002:14

**violating** [1] - 2008:8

**visit** [2] - 2019:22, 2019:23

**voice** [1] - 1999:21

## W

**wait** [3] - 1994:13, 2001:8, 2013:23

**Waite's** [1] - 2006:24

**walks** [1] - 1996:10

**Wallace** [2] - 2008:22, 2008:24

**wants** [2] - 1982:25, 1987:1

**ways** [1] - 2000:17

**weeks** [1] - 1991:10

**weight** [1] - 2019:2

**whole** [3] - 1983:2, 1984:22, 2022:24

**Willems** [3] - 1979:13, 1980:1, 1981:11

**wiretapping** [1] - 2006:10

**witness** [15] - 2009:1, 2011:22, 2017:18, 2018:13, 2018:14, 2019:4, 2019:7, 2019:20, 2020:13, 2020:14, 2021:18, 2022:15, 2022:17, 2022:18, 2023:16

**witnesses** [2] - 2008:20, 2017:8

**woman** [1] - 2016:8

**wondering** [1] - 2011:10

**word** [8] - 1988:21, 1989:8, 1989:11, 1989:14, 1990:4, 2004:7, 2020:19,

2020:20

**Word** [2] - 1996:6, 1996:7

**words** [1] - 2008:12

**works** [2] - 2013:7, 2022:21

**world** [2] - 2003:15

**worried** [1] - 1984:5

**write** [1] - 1992:4

**writer** [1] - 2020:11

## Y

**YORK** [1] - 1978:1

**York** [2] - 1978:5, 1978:23