UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

UNITED STATES OF AMERICA  **MEMORANDUM & ORDER**
                          08-CR-640 (PKC)

      - against –

ROBERT SIMELS,

             Defendant.
-----------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

Pending before the Court is Defendant Robert Simels's motion for early termination of his supervised release. (Dkts. 296, 297.) The Government "does not object" to the requested early termination. (Dkt. 298, at 1.) For the reasons that follow and despite the Government's consent, that application is denied.

**I.     Legal Standard**

Pursuant to 18 U.S.C. § 3564(c), the Court is authorized to terminate the remainder of a defendant's term of supervised release, "pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation," 18 U.S.C. § 3564(c), "where a defendant has served at least one year of his supervised release and his conduct and the interests of justice so require[.]" *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997) (noting that a defendant's "exceptionally good behavior" could justify reduction of a supervised release term). The defendant bears the burden of proving that he is eligible for early termination of supervised release under Section 3583(e)(1). *See United States v. Key*, 602 F.3d 492, 494 (2d Cir. 2010) ("To be eligible for termination of supervised release under 18 U.S.C. § 3583(e)(1), a defendant must establish that the termination is warranted by (1) the conduct of the defendant and (2) the interest of justice.") (internal quotation marks omitted).

Early termination is "not warranted as a matter of course; on the contrary, it is only 'occasionally' justified." *United States v. McKay*, 352 F. Supp. 2d 359, 361 (E.D.N.Y. 2005) (quoting *Lussier*, 104 F.3d at 36); *see also United States v. Fenza*, No. 03-CR-921 (ADS), 2013 WL 3990914, at *2 (E.D.N.Y. Aug. 2, 2013) (reiterating that early termination "is not warranted as a matter of course"). As the Second Circuit explained in *Lussier*:

> Section 3583(e) provides the district court with retained authority to revoke, discharge, or modify terms and conditions of supervised release following its initial imposition of a supervised release term in order to account for new or unforeseen circumstances. Occasionally, changed circumstances—for instance, exceptionally good behavior by the defendant or a downward turn in the defendant's ability to pay a fine or restitution imposed as conditions of release—will render a previously imposed term or condition of release either too harsh or inappropriately tailored to serve the general punishment goals of section 3553(a). In such cases, the court may invoke either subsection (1), which "works to the advantage of the defendant," or subsection (2), which "can be employed either to the defendant's advantage or his disadvantage," . . . to discharge the defendant from supervised release, to modify and make less demanding the conditions of release, or to reduce the length of the term of release.

104 F.3d at 36 (citations omitted).

It is well established that mere compliance with the terms of supervised release and the law is insufficient to justify termination. *See, e.g., United States v. Rusin*, 105 F. Supp. 3d 291, 292 (S.D.N.Y. 2015) ("[F]ull compliance with the terms of supervised release is what is expected of [the defendant] . . . and does not warrant early termination[,]" noting that termination is not necessarily justified "where a defendant did nothing more than that which he was required to do by law." (citations omitted)); *United States v. Weiss*, No. 21-CR-457 (PMH), 2022 WL 3214914, at *3 (S.D.N.Y. Aug. 9, 2022) (denying insurance fraud defendant's motion for early termination of his term of supervised release despite defendant's good behavior and re-integration); *United States v. Stein*, No. 09-CR-377 (RPK), 2020 WL 4059472, at *2 (E.D.N.Y. July 19, 2020)

("Exceptionally good behavior is not established by mere compliance with the terms of supervised release.").

In deciding whether to grant early termination of supervised release, the Court also must consider the "factors set forth in 18 U.S.C. 3553(a) to the extent that they are applicable." 18 U.S.C. § 3564(c); *see also* 18 U.S.C. § 3583(e) ("The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) [. . .] terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, [. . .] if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice[.]").

## II. Defendant Has Failed to Demonstrate That Early Termination is Warranted

In seeking early termination of his supervised release, Defendant relies on nine factors identified by the Judicial Conference on Criminal Law for district courts to consider in exercising their authority under 18 U.S.C. § 3583(e) to terminate a term of supervised release early. (Dkt. 297, at 2–3; Dkt. 298, at 1–2.) While the Court recognizes that the majority of these factors weigh in favor of early termination, the Court finds that the "interests of justice," *Lussier*, 104 F.3d at 36, and the Section 3553(a) factors do not, and that Defendant's mere compliance with the requirements of his supervised release does not constitute "exceptionally good behavior," *Stein*, 2020 WL 4059472, at *2, and "does not warrant early termination." *See Rusin*, 105 F. Supp. 3d at 292.

As an initial matter, the Court finds that three important factors out of the nine identified by the Judicial Conference do not support the early termination of Defendant's supervised release. As the Government acknowledges, Defendant, who was a lawyer at the relevant time, engaged in extremely serious criminal conduct involving a "conspiracy to locate potential witnesses and

3

cooperators against his client and to use whatever means necessary to silence them or have them testify falsely, including via bribes, threats, intimidation, and outright violence." (Dkt. 298, at 2.) At trial, Defendant was convicted of eight counts of attempted obstruction of justice, one count of obstruction of justice conspiracy, and one count of bribery. (*Id*.) As a defense attorney, Defendant played a central role in the scheme to use violence, threats, and intimidation to silence potential witnesses – the plan was only thwarted because the person whom Defendant hired to execute it was a DEA informant. (*Id*.) Defendant's conduct was all the more egregious because he was an attorney and thus an officer of the court. Based on this conduct, the Court cannot find that either the third or fourth Judicial Conference factor – *i.e.*, "no aggravated role in the offense of conviction"[1] or "no history of violence" (Dkt. 297, at 2) – supports Defendant's application. As discussed *infra*, the Court also is not convinced that, as the defense argues, Defendant "is not a risk to any individual or the community" – which implicates the ninth Judicial Conference factor, *i.e.*, "no identifiable risk to public safety based on the Risk Prediction Index (RPI)."[2] (*Id*. at 3.)

Rather, as discussed, the Court simply does not find that Defendant's compliant conduct while on supervised release qualifies as "[e]xceptionally good behavior," *Lussier*, 104 F.3d at 36, so as to warrant early termination. Indeed, as the Honorable Jed Rakoff noted in *United States v. Gonzales*, if being a "model probationer" and "present[ing] a low risk of recidivism, . . . standing alone, were sufficient to grant early termination, . . . 'the exception would swallow the rule.'"

---

[1] The Court understands that an aggravating or leadership role enhancement might not have been applied at the time of Defendant's sentencing, but finds that this fact does not govern its consideration of this Judicial Conference factor in the current context.

[2] While Defendant's Probation Officer reportedly supports this application (Dkt. 297 at 4), the Court has not received any information regarding an RPI assessment by the Probation Department for Defendant.

4

No. 94-CR-134 (JSR), 2015 WL 4940607, at *1 (quoting *United States v. Medina*, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998)); *see also McKay*, 352 F. Supp. 2d at 361 (finding that "[w]hile [defendant's] behavior in prison and on supervised release is laudable, it is not so unusual as to merit early termination.").

The Court also finds that the relevant Section 3553(a) sentencing factors do not justify the relief Defendant seeks. As the Second Circuit has explained, "[i]n imposing a term of supervised release, the district court is required to consider, among other factors, 'the nature and circumstances of the offense and the history and characteristics of the defendant,' 18 U.S.C. § 3553(a)(1); the need for the sentence imposed to 'protect the public from further crimes of the defendant' and 'provide the defendant with needed . . . training, medical care, or other correctional treatment,' 18 U.S.C. § 3553(a)(2)(C)-(D); 'the applicable guidelines or policy statements issued by the Sentencing Commission,' 18 U.S.C. § 3553(a)(4)(B); and 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct,' 18 U.S.C. § 3553(a)(6)." *United States v. Brooks*, 889 F.3d 95, 99 (2d Cir. 2018) (noting that "[b]ecause 'supervised release is not, fundamentally, part of the punishment,' . . . the omission of the § 3553(a)(2)(A) factors accords with the purpose of supervised release, which is to 'fulfill[] rehabilitative ends, distinct from those served by incarceration'") (quotations and citations omitted)).

The Court finds that, despite Defendant's compliance with the terms of his supervised release, these factors, as well as the need for the sentence to "afford adequate deterrence to criminal conduct," 18 U.S.C. § 3553(a)(2)(B), continue to justify the three-year term of supervised release imposed in this matter. As discussed, Defendant's personal history and characteristics – as someone who secretly plotted to threaten and harm government witnesses while serving as an

5

attorney and going so far as to hire someone to carry out the plot – do not support early termination of his supervised release. This extremely serious and brazen criminal conduct also prevents the Court from finding that Defendant's mere compliance with the terms of his home confinement and supervised release and his "stable, law-abiding life" for the last few years, *i.e.*, "what is expected of [him]," *Gonzales*, 2015 WL 4940607, at *1, eliminates the risk of future misconduct by Defendant.

The Court similarly disagrees with the Government's argument that "given the more than 15 years that [have] expired since the conduct occurred and the present day, it cannot be said that Simels poses a current, identifiable risk to [the witnesses and cooperators who were the targets of the plot to obstruct justice], especially given his advanced age, the fact that the case against his then-client has long since resolved itself, and the fact that he no longer is a licensed member of the bar[.]" (Dkt. 298, at 3.) The Court's concern about the potential for recidivism is not limited to the crimes Defendant committed 15 years ago but extends to his potential for committing other crimes, given the contempt and disregard for the criminal justice system he demonstrated by seeking to obstruct justice under the cover of being a lawyer. For this reason, the Court's concern about recidivism is not allayed by the fact that Defendant is now employed as a licensed real estate agent who also "provide[s] consultation services to attorneys and others regarding sentencing and related matters." (Dkt. 296, at ¶ 9.) In the Court's view, this is a defendant who should serve his entire term of supervised release to ensure that Defendant's rehabilitation continues and to ensure general and specific deterrence.

Finally, despite Defendant's argument to the contrary, the Court finds Defendant's circumstances materially different from those of Edward Meirov, whose application for early termination of probation this Court granted. (Dkt. 297, at 4). First, the crime committed by

6

Defendant Meirov – filing false individual and corporate tax returns resulting in approximately $100,000 of tax loss – was far less egregious and brazen than the crimes committed by Defendant. *See United States v. Meirov*, 19-CR-520, Dkts. 5, 19-1 at ¶¶ 3–4. Second, Defendant Meirov quickly accepted responsibility for his tax fraud and pled guilty to an Information, without a complaint or Indictment being filed. Third, Defendant Meirov presented "new or unforeseen circumstances," *Lussier*, 104 F.3d at 36, warranting early termination, namely, the need to travel overseas to see family members, specifically an elderly aunt who was in poor health, and for religious purposes. *Meirov*, 19-CR-520, Dkt. 19-1, at ¶ 6. Thus, the Court granted early termination in Defendant Meirov's case not simply because he was compliant while on supervised release,[3] but because the sentencing factors (including deterrence value and protecting the public from harm) weighed in favor of early termination.

## CONCLUSION

Accordingly, Defendant's request for early termination of supervised release is denied.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: July 18, 2023
      Brooklyn, New York

---

[3] The Court did consider Defendant Meirov's compliance with the terms of his supervised release – as the Court has considered in the instant case – in determining whether there was a need for deterrence or to protect the public from harm by Defendant Meirov.